UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/20/10

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

GOLDMAN, SACHS & CO. and
FABRICE TOURRE,

Defendants.

10-CV-3229 (BSJ)

## CONSENT OF DEFENDANT GOLDMAN, SACHS & CO.

1.    Defendant Goldman, Sachs & Co. ("Defendant" or "Goldman") acknowledges having been served with the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.    Without admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

> (a)    permanently restrains and enjoins Defendant from violation of Section 17(a) of the Securities Act of 1933 [15 U.S.C. §77q(a)];
>
> (b)    orders Defendant to pay disgorgement in the amount of $15,000,000;
>
> (c)    orders Defendant to pay a civil penalty in the amount of $535,000,000 under Section 20(d)(2) of the Securities Act [15 U.S.C. §77t(d)(2)]; and

(d)     orders Defendant to comply with specified undertakings for three (3) years
from the entry of the Final Judgment.

3.      Goldman acknowledges that the marketing materials for the ABACUS 2007-AC1
transaction contained incomplete information. In particular, it was a mistake for the Goldman
marketing materials to state that the reference portfolio was "selected by" ACA Management
LLC without disclosing the role of Paulson & Co. Inc. in the portfolio selection process and that
Paulson's economic interests were adverse to CDO investors. Goldman regrets that the
marketing materials did not contain that disclosure.

4.      Defendant acknowledges that the civil penalty paid pursuant to the Final
Judgment may be distributed pursuant to the Fair Fund provisions of Section 308(a) of the
Sarbanes-Oxley Act of 2002. Regardless of whether any such Fair Fund distribution is made, the
civil penalty shall be treated as a penalty paid to the government for all purposes, including all
tax purposes. To preserve the deterrent effect of the civil penalty, Defendant agrees that it shall
not, after offset or reduction of any award of compensatory damages in any Related Investor
Action based on Defendant's payment of disgorgement in this action, argue that it is entitled to,
nor shall it further benefit by, offset or reduction of such compensatory damages award by the
amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If
the court in any Related Investor Action grants such a Penalty Offset, Defendant agrees that it
shall, within 30 days after entry of a final order granting the Penalty Offset, notify the
Commission's counsel in this action and pay the amount of the Penalty Offset to the United
States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be
deemed an additional civil penalty and shall not be deemed to change the amount of the civil
penalty imposed in this action. For purposes of this paragraph, a "Related Investor Action"

2

means a private damages action brought against Defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the complaint in this action.

5.      Defendant agrees that it shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Defendant further agrees that it shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

6.      Defendant acknowledges that the Court is not imposing a civil penalty in excess of $535,000,000 based on Defendant's agreement to cooperate as set forth in Paragraph 17 below. Defendant consents that if at any time following the entry of the Final Judgment the Defendant does not comply in any material respect with its agreement to cooperate, the Commission may, at its sole discretion with reasonable notice to the Defendant, petition the Court for an order requiring Defendant to pay an additional civil penalty. In connection with the Commission's motion for civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that it did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Final Judgment, this Consent, or any related Undertakings; (c) the allegations of the Complaint, solely for the purposes of such motion, shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of

3

sworn deposition or investigative testimony, and documentary evidence without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. Under these circumstances, the parties may take discovery, including discovery from appropriate non-parties.

7.     Defendant agrees to comply with the following undertakings, which shall expire three (3) years from the entry of the Final Judgment herein:

       (a)     Product Review and Approval

Firmwide Capital Committee. Defendant shall expand the role of its Firmwide Capital Committee (or any successor committee, the "FCC") in the vetting and approval process for offerings of residential mortgage-related securities, including, but not limited to, collateralized debt obligations that reference such securities (collectively "mortgage securities"). Except as described below, offerings of mortgage securities by Defendant's Mortgage Department will first be presented to the Structured Finance Capital Committee (or any successor committee, the "SFCC"), formerly the Mortgage Capital Committee. If the transaction is approved by the SFCC, it shall then be presented to the FCC, which, among other things, shall have the right in its sole discretion to approve or reject any such offerings. The FCC, in its discretion, may direct that some or all mortgage securities offerings shall be brought directly to the FCC. The FCC shall ensure that processes are in place so that written marketing materials (as defined below) for mortgage securities offerings do not include any material misstatement or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

       (b)     Role of Internal Legal and Compliance

             1.     Marketing Materials. All written marketing materials (i.e., investor presentations or "flip books," term sheets, and offering circulars/prospectuses) used in

4

connection with mortgage securities offerings must be reviewed by representatives of

Defendant's Legal Department or Compliance Department.  The review process shall also

include a review of the relevant memoranda presented to the FCC/SFCC as part of the approval

process for mortgage securities offerings and all other material terms of the proposed transaction.

Defendant shall establish and maintain a centralized process to record these reviews through

recordation and retention of:

      a.      The name of each person in the Legal Department or the

Compliance Department who reviewed the materials;

      b.      The date of completion of review; and

      c.      A list of the materials reviewed.

      2.      <u>Internal Audit.</u>  On at least an annual basis, Defendant's internal

audit function shall conduct a review to determine that these requirements are being complied

with.  Any deficiencies noted by internal audit shall be promptly addressed by Defendant.

      (c)      Role of Outside Counsel

In offerings of mortgage securities where Defendant is the lead underwriter and retains

outside counsel to advise on the offering, such counsel will be asked to review the term sheets, if

any, the offering circular or prospectus, and the form of any other marketing materials used in

connection with the offering.  In order to enhance the effectiveness of its review, outside counsel

will be provided with the relevant FCC and/or SFCC memoranda as background information and

such other documents necessary to reflect all material terms of the transaction.

5

(d)     Education and Training

1.     Within sixty (60) days following the hiring by, or transfer to, Defendant's Mortgage Department of new individuals who will be involved with the structuring or marketing of mortgage securities offerings, each such person shall participate in a training program that includes, among other matters, instruction on the disclosure requirements under the Federal securities laws and that specifically addresses the application of those requirements to offerings of mortgage securities.

2.     Not less frequently than annually, each person in Defendant's Mortgage Department who is involved in the structuring or marketing of mortgage securities offerings shall participate in a training seminar that covers, among other matters, disclosure requirements under the Federal securities laws applicable to offerings of mortgage securities. The first training seminar shall take place not later than sixty (60) days following the date of the Final Judgment.

3.     Defendant shall provide for appropriate record keeping to track compliance with these requirements.

(e)     Certification of Compliance by Defendant

The General Counsel or the Global Head of Compliance of Defendant shall certify annually (one year, two years, and three years, respectively, after the date of entry of this Final Judgment), in writing, compliance in all material respects with the undertakings set forth above. The Commission staff may make reasonable requests for further evidence of compliance, and Defendant agrees to provide such evidence. The certification and any such additional materials shall be submitted to Kenneth R. Lench, Chief of the Structured and New Products Unit, with a copy to the Office of Chief Counsel of the Enforcement Division.

6

In addition, Defendant acknowledges that it is presently conducting a comprehensive, firmwide review of its business standards. This review includes, among other things, an evaluation of Defendant's conflict management, disclosure and transparency of firmwide activities, structured products and suitability, education, training and business ethics, and client relationships and responsibilities. The Commission has taken this review into account in connection with the settlement of this matter.

8.      Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

9.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

10.     Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

11.     Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

12.     Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

13.     Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission,

7

within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

14.     Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that it shall not be permitted to contest the factual allegations of the complaint in this action.

15.     Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or

8

creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

16.      Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

17.      In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to require its employees to make themselves available for interviews at such times and places reasonably requested by the Commission staff; (ii) agrees to require that its employees testify at trial and other judicial proceedings when requested by Commission staff; (iii) will produce non-privileged documents and other materials as requested by the Commission staff; (iv) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (v) appoints Defendant's undersigned

9

attorney as agent to receive service of such notices and subpoenas; (vi) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (vii) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

18.   Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

19.   Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: July 14, 2010

Goldman, Sachs & Co.

Goldman, Sachs & Co.

By: _____

Gregory K. Palm
Managing Director and General Counsel
Goldman, Sachs & Co.
200 West Street, 15th Floor
New York, NY 10282

On July 14, 2010, Gregory K Palm, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent with full authority to do so on behalf of Goldman, Sachs & Co as its General Counsel

Notary Public
Commission expires:

NORMAN FEIT
NOTARY PUBLIC, State of New York
No. 31-5005700
Qualified in New York County
Commission Expires Dec 14, 2010

10

Approved as to form:

Richard H. Klapper
Gandalfo V. DiBlasi
Karen Patten Seymour
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
Attorneys for Defendant

11

## BOARD RESOLUTIONS REGARDING SETTLEMENT

**WHEREAS,** the Board of Directors (the "Board") of The Goldman Sachs Group, Inc. (the "Corporation") has considered the terms of a potential settlement with the United States Securities and Exchange Commission (the "SEC") relating to the civil enforcement proceeding brought by the SEC with respect to the ABACUS 2007-AC1 CDO offering;

**NOW, THEREFORE, BE IT RESOLVED,** that the Board deems it advisable and in the best interest of the Corporation that the following actions be, and they hereby are, authorized and approved as set forth in the following resolutions:

**RESOLVED,** that each Authorized Person (as defined below) is hereby authorized to: (1) execute and enter into, on behalf of the Corporation and/or Goldman, Sachs & Co. ("GS&Co."), a Consent to the entry of a Final Judgment in the United States District Court for the Southern District of New York (without admitting or denying the allegations in the SEC's complaint) that, among other things, includes the entry of a permanent injunction against violations of Section 17(a) of the Securities Act of 1933, an order to pay the disgorgement and civil penalties described below, and an order to comply with specified undertakings; (2) waive findings of fact and conclusions of law; and (3) waive the right to a jury trial and the right to appeal from the entry of the Final Judgment as provided in the Consent;

**RESOLVED,** that each Authorized Person or any of their designees is hereby authorized and directed to arrange for the following payments contemplated by the Consent and the Final Judgment:  $15 million in disgorgement and $535 million in civil penalties as provided in the Final Judgment, as well as any other administrative or other fees;

**RESOLVED,** that each Authorized Person or any of their designees is hereby authorized and directed to take all actions as are necessary, desirable or appropriate to implement the remedial undertakings included in the Consent and the Final Judgment;

**RESOLVED,** that each Authorized Person or any of their designees is hereby authorized to take all necessary, desirable or appropriate actions to obtain waivers or other appropriate relief from governmental, regulatory and self-regulatory entities and bodies in connection with the Consent and the Final Judgment;

**RESOLVED,** that each Authorized Person or any of their designees is hereby authorized and directed to execute and deliver in the name of and on behalf of the Corporation and/or GS&Co. or in any other capacity, any and all additional documents or agreements and to take or cause to be taken or to authorize such further action as is necessary, desirable or appropriate in order to carry out any or all of the actions authorized by these resolutions and any action reasonably related thereto;

**RESOLVED,** that the execution of any document or instrument or the taking of any other action by an Authorized Person or any of their designees shall be conclusive evidence that such action was determined to be necessary, desirable or appropriate by such person and no further evidence of such determination shall be necessary for the purposes of these resolutions;

**RESOLVED,** that any actions taken by, with the authorization of or at the direction of any Authorized Person or any of their designees prior to the date hereof in furtherance of the actions or transactions authorized by these resolutions, which if taken after the date hereof would be authorized by these resolutions, are hereby ratified, confirmed and approved in all respects; and

**RESOLVED,** that for purposes of these resolutions, "Authorized Persons" shall mean: anyone with the title of Chief Executive Officer, President, Chief Operating Officer, General Counsel, Chief Financial Officer, Global Head of Compliance, Treasurer or Controller of the Corporation, in each case for so long as such Authorized Person is employed by the Corporation or one of its affiliates.

THE GOLDMAN SACHS GROUP, INC.

ASSISTANT SECRETARY'S CERTIFICATE

I, Kenneth L. Josselyn, an Assistant Secretary of The Goldman Sachs Group, Inc., a Delaware corporation (the "Corporation"), hereby certify that attached hereto as <u>Annex A</u> are true and complete copies of resolutions duly adopted by the Board of Directors of the Corporation on July 14, 2010 relating to a potential settlement with the U.S. Securities and Exchange Commission, which resolutions have not been amended, modified or rescinded and remain in full force and effect.

IN WITNESS WHEREOF, I have hereunto signed my name.

Dated: July 14, 2010

THE GOLDMAN SACHS GROUP, INC.

Name: Kenneth L. Josselyn
Title:   Assistant Secretary

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

GOLDMAN, SACHS & CO. and
FABRICE TOURRE,

Defendants.

10-CV-3229 (BSJ)

### FINAL JUDGMENT AS TO DEFENDANT GOLDMAN, SACHS & CO.

The Securities and Exchange Commission having filed a Complaint and Defendant

Goldman, Sachs & Co. ("Defendant" or "Goldman") having entered a general appearance;

consented to the Court's jurisdiction over Defendant and the subject matter of this action;

consented to entry of this Final Judgment without admitting or denying the allegations of the

Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived

any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and

Defendant's agents, servants, employees, attorneys, and all persons in active concert or

participation with them who receive actual notice of this Final Judgment by personal service or

otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities

Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the

use of any means or instruments of transportation or communication in interstate commerce or by

use of the mails, directly or indirectly:

    (a)      to employ any device, scheme, or artifice to defraud;

    (b)      to obtain money or property by means of any untrue statement of a material fact

or any omission of a material fact necessary in order to make the statements

made, in light of the circumstances under which they were made, not misleading;

or

    (c)      to engage in any transaction, practice, or course of business which operates or

would operate as a fraud or deceit upon the purchaser.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant

is liable for disgorgement of $15,000,000 and a civil penalty in the amount of $535,000,000

pursuant to Section 20(d)(2) of the Securities Act [15 U.S.C. §77t(d)(2)]. Defendant shall satisfy

this obligation by disbursing the foregoing disgorgement and civil penalty pursuant to the Fair

Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002 as follows:

    (a)      Defendant shall make a wire transfer in the amount of $150,000,000 payable to IKB

Deutsche Industriebank AG, a bank based in Dusseldorf, Germany, or such other appropriate

party or parties as the Commission staff may identify in consultation with Defendant prior to

payment ("IKB Party"), within thirty (30) days after entry of this Final Judgment. IKB Party

shall be notified, either in the payment or otherwise, of the following: that Goldman is a

defendant in this action; the title and civil action number of this action and the name of this

Court; and that the payment is made pursuant to this Final Judgment. Defendant shall

simultaneously transmit a photocopy of such payment and any notification to the Commission's

2

counsel in this action. By making this payment, Defendant relinquishes all legal and equitable

right, title, and interest in such funds, and no part of the funds shall be returned to Defendant.

Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C.

§1961.

      (b)    Defendant shall make a wire transfer in the amount of $100,000,000 payable to

the Royal Bank of Scotland N.V. (formerly known as ABN AMRO Bank N.V.), a bank based in

Edinburgh, Scotland, or such other appropriate party or parties as the Commission staff may

identify in consultation with Defendant prior to payment ("RBS Party"), within thirty (30) days

after entry of this Final Judgment. RBS Party shall be notified, either in the payment or

otherwise, of the following: that Goldman is a defendant in this action; the title and civil action

number of this action and the name of this Court; and that the payment is made pursuant to this

Final Judgment. Defendant shall simultaneously transmit a photocopy of such payment and any

notification to the Commission's counsel in this action. By making this payment, Defendant

relinquishes all legal and equitable right, title, and interest in such funds, and no part of the funds

shall be returned to Defendant. Defendant shall pay post-judgment interest on any delinquent

amounts pursuant to 28 U.S.C. §1961.

      (c)    Defendant shall make a payment of $300,000,000 within thirty (30) days after

entry of this Final Judgment by wire transfer, certified check, bank cashier's check, or United

States postal money order payable to the Securities and Exchange Commission. The payment

shall be delivered or mailed to the Office of Financial Management, Securities and Exchange

Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia

22312, and shall be accompanied by a letter identifying Goldman as a defendant in this action;

3

setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Defendant shall simultaneously transmit photocopies of such payment and letter to the Commission's counsel in this action. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. §1961. The Commission shall remit the funds paid pursuant to this paragraph to the United States Treasury.

Amounts ordered to be paid as civil penalties pursuant to this Final Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that it is entitled to, nor shall it further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Final Judgment. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

4

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant

shall comply with the following undertakings, which shall expire three (3) years from the entry of

this Final Judgment:

(a)     Product Review and Approval

Firmwide Capital Committee.  Defendant shall expand the role of its Firmwide Capital

Committee (or any successor committee, the "FCC") in the vetting and approval process for

offerings of residential mortgage-related securities, including, but not limited to, collateralized

debt obligations that reference such securities (collectively "mortgage securities").  Except as

described below, offerings of mortgage securities by Defendant's Mortgage Department will first

be presented to the Structured Finance Capital Committee (or any successor committee, the

"SFCC"), formerly the Mortgage Capital Committee.  If the transaction is approved by the

SFCC, it shall then be presented to the FCC, which, among other things, shall have the right in

its sole discretion to approve or reject any such offerings.  The FCC, in its discretion, may direct

that some or all mortgage securities offerings shall be brought directly to the FCC.  The FCC

shall ensure that processes are in place so that written marketing materials (as defined below) for

mortgage securities offerings do not include any material misstatement or omit to state a material

fact necessary in order to make the statements made, in light of the circumstances under which

they were made, not misleading.

(b)     Role of Internal Legal and Compliance

1.     Marketing Materials.  All written marketing materials (i.e., investor

presentations or "flip books," term sheets, and offering circulars/prospectuses) used in

5

connection with mortgage securities offerings must be reviewed by representatives of
Defendant's Legal Department or Compliance Department. The review process shall also
include a review of the relevant memoranda presented to the FCC/SFCC as part of the approval
process for mortgage securities offerings and all other material terms of the proposed transaction.
Defendant shall establish and maintain a centralized process to record these reviews through
recordation and retention of:

        a.     The name of each person in the Legal Department or the Compliance
Department who reviewed the materials;

        b.     The date of completion of review; and

        c.     A list of the materials reviewed.

        2.     <u>Internal Audit.</u> On at least an annual basis, Defendant's internal audit
function shall conduct a review to determine that these requirements are being complied with.
Any deficiencies noted by internal audit shall be promptly addressed by Defendant.

      (c)     Role of Outside Counsel

In offerings of mortgage securities where Defendant is the lead underwriter and retains
outside counsel to advise on the offering, such counsel will be asked to review the term sheets, if
any, the offering circular or prospectus, and the form of any other marketing materials used in
connection with the offering. In order to enhance the effectiveness of its review, outside counsel
will be provided with the relevant FCC and/or SFCC memoranda as background information and
such other documents necessary to reflect all material terms of the transaction.

      (d)     Education and Training

        1.     Within sixty (60) days following the hiring by, or transfer to, Defendant's

6

Mortgage Department of new individuals who will be involved with the structuring or marketing of mortgage securities offerings, each such person shall participate in a training program that includes, among other matters, instruction on the disclosure requirements under the Federal securities laws and that specifically addresses the application of those requirements to offerings of mortgage securities.

        2.      Not less frequently than annually, each person in Defendant's Mortgage Department who is involved in the structuring or marketing of mortgage securities offerings shall participate in a training seminar that covers, among other matters, disclosure requirements under the Federal securities laws applicable to offerings of mortgage securities. The first training seminar shall take place not later than sixty (60) days following the date of this Final Judgment.

        3.      Defendant shall provide for appropriate record keeping to track compliance with these requirements.

      (e)      Certification of Compliance by Defendant

The General Counsel or the Global Head of Compliance of Defendant shall certify annually (one year, two years, and three years, respectively, after the date of entry of this Final Judgment), in writing, compliance in all material respects with the undertakings set forth above. The Commission staff may make reasonable requests for further evidence of compliance, and Defendant agrees to provide such evidence. The certification and any such additional materials shall be submitted to Kenneth R. Lench, Chief of the Structured and New Products Unit, with a copy to the Office of Chief Counsel of the Enforcement Division.

IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that based on

Defendant's agreement to cooperate in this action and any related actions, the Court is not

ordering Defendant to pay a civil penalty in excess of $535,000,000. Defendant's cooperation

shall include those obligations set forth in Paragraph 17 of the Consent, including, but not limited

to, producing non-privileged documents and other materials to the Commission as requested by

the staff; requiring its employees to make themselves available for interviews at times and places

reasonably requested by the staff; and requiring that employees testify at trial and other judicial

proceedings when requested by the Commission's staff. If at any time following the entry of the

Final Judgment the Defendant knowingly provides materially false or misleading information or

materials to the Commission in this action or in a related proceeding, or otherwise fails to

comply in any material respect with its obligations pursuant to Paragraph 17 of the Consent, the

Commission may, at its sole discretion with reasonable notice to the Defendant, petition the

Court for an order requiring Defendant to pay an additional civil penalty. In connection with any

such petition and at any hearing held on such a motion: (a) Defendant will be precluded from

arguing that it did not violate the federal securities laws as alleged in the Complaint; (b)

Defendant may not challenge the validity of this Final Judgment, the Consent, or any related

Undertakings; (c) the allegations of the Complaint, solely for the purposes of such motion, shall

be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised

in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or

investigative testimony, and documentary evidence without regard to the standards for summary

judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. Under these

8

circumstances, the parties may take discovery, including discovery from appropriate non-parties.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

VII.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: July 20 , 2010

UNITED STATES DISTRICT JUDGE

9