UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------x
:
SECURITIES AND EXCHANGE :
COMMISSION, :    Civil Action
:    No.: 10-cv-3229 (KBF)
        Plaintiff, :
:    ELECTRONICALLY FILED
   v. :
:
FABRICE TOURRE, :
:
        Defendant. :
---------------------------------------x

**MEMORANDUM OF LAW OF FABRICE TOURRE IN SUPPORT OF HIS
DAUBERT MOTION TO LIMIT THE PROPOSED EXPERT
TESTIMONY OF DWIGHT M. JAFFEE**


Pamela Rogers Chepiga
David C. Esseks
Andrew Rhys Davies
Brandon D. O'Neil

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

*Attorneys for Fabrice Tourre*

Dated:  March 8, 2013
       New York, New York

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ...................................................................................................................1

STANDARD OF LAW ..........................................................................................................3

ARGUMENT .........................................................................................................................3

I.     JAFFEE'S PROPOSED TESTIMONY ON IRRELEVANT MATTERS FROM THE *STOKER* LITIGATION SHOULD BE EXCLUDED ............................................................3

II.    JAFFEE SHOULD BE PROHIBITED FROM NARRATING THE COMPLAINT'S ALLEGATIONS AND FROM MAKING BALD ASSERTIONS AS TO THE ULTIMATE LEGAL ISSUE IN THIS CASE ................................................................5

CONCLUSION ......................................................................................................................8

i

# **TABLE OF AUTHORITIES**

## **CASES**

*Andrews v. Metro N. Commuter R.R. Co.*,
    882 F.2d 705 (2d Cir. 1989) ................................................................................................5

*Daubert v. Merrell Down Pharms., Inc.*,
    509 U.S. 579 (1993) ...................................................................................................1, 3, 8

*Highland Capital Mgmt., L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005) ..................................................................................5

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) .............................................................................................................3

*In re Rezulin Prods. Liability Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ..................................................................................5

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) ..........................................................................................3, 7

*United States v. Onumonu*,
    967 F.2d 782 (2d Cir. 1992) .................................................................................................3

*Washington v. Schriver*,
    255 F.3d 45 (2d Cir. 2001) ...................................................................................................3

## **STATUTES**

Fed. R. Evid. 403 .........................................................................................................................3

Fed. R. Evid. 702 .....................................................................................................................3, 7

Fed. R. Evid. 703 .........................................................................................................................6

Defendant Fabrice Tourre respectfully submits this memorandum of law in support of his *Daubert* motion, pursuant to Federal Rules of Evidence 403, 702 and 703, to limit the proposed expert testimony of Dwight M. Jaffee as set forth herein.

## PRELIMINARY STATEMENT

The SEC retained Jaffee in this matter very shortly before expert reports were due. Jaffee was able to submit a report on such short notice because, even though he has, by his own admission, reviewed "no evidence" relevant to this case, he served as the SEC's expert witness in another structured finance-related case, *SEC v. Stoker*, 11 Civ. 7388(JSR) (S.D.N.Y.), which was tried before the Honorable Jed S. Rakoff last summer. Jaffee's report in this case is essentially a cut-and-paste version of the report he submitted in *Stoker*.

There are, however, several significant differences between this case and *Stoker*, and certain of the matters on which Jaffee offered expert testimony in *Stoker* are irrelevant to this case. Several of those matters are, however, included in Jaffee's report in this case. Jaffee should not be permitted to testify to those irrelevant matters, which create a real risk of prejudice and confusion, in a case that is complex enough already.

Further, Jaffee's proposed opinions contain extensive passages in which he does nothing but narrate and comment on allegations from the Amended Complaint, and in which he makes unsupported assertions about the ultimate legal issue in this case. Jaffee clearly should not be permitted to offer opinion testimony on those matters, which intrude, respectively, on the roles of the jury and of the Court in this matter.

## BACKGROUND

Jaffee is a professor of finance and real estate at the University of California at Berkeley. Davies Ex. 9 (Jaffee Report, Appendix A); Ex. 11 (Jaffee Dep. Tr. at 11).[1] His

---

[1] The exhibits to the Declaration of Andrew Rhys Davies dated March 8, 2013 in Support of Mr. Tourre's *Daubert* Motion to Limit the Proposed Expert Testimony of Dwight M. Jaffee are cited in the format "Davies Ex. __."

understanding of the structured finance industry is derived principally from his academic work, as well as from certain policy research he has conducted. *Id.*

The majority of Jaffee's Report consists of a generic discussion about structured finance and CDOs that is not specifically related to the facts of this case. *See* Jaffee Report, ¶¶ 9-31; Jaffee Dep. Tr. at 32. Only the final paragraphs of his report relate specifically to the ABACUS 2007-AC1 transaction. *See* Jaffee Report, ¶¶ 32-40; Jaffee Dep. Tr. at 31.

The SEC retained Jaffee very shortly before the deadline to submit expert reports in this matter. Jaffee Dep. Tr. at 114. Jaffee was able to submit a report on short notice because he previously had served as the SEC's expert witness in *SEC v. Stoker*, 11 Civ. 7388(JSR) (S.D.N.Y.), in which the SEC sued an employee of a different financial institution for misrepresentations purportedly made in connection with a different kind of structured finance product. A copy of Jaffee's report from Stoker appears at Davies Exhibit 12. To prepare his report in this case, Jaffee largely cut-and-pasted his report from *Stoker*. Jaffee Dep. Tr. at 30-31.

As Jaffee candidly stated at his deposition, in formulating his opinions in this case, "I have literally seen no evidence – I have looked at no evidence." Jaffee Dep. Tr. at 108. He assumed the allegations in the SEC's Amended Complaint to be accurate without asking whether discovery had borne out those allegations, and he has examined no deposition testimony at all. Jaffee Dep. Tr. at 20-24. He also has performed no empirical analysis of the ABACUS 2007-AC1 CDO or of its reference portfolio. *Id.* at 25.

As Jaffee recognized at his deposition, there are significant differences between the case before this Court and *Stoker*. Unlike the ABACUS 2007-AC1 CDO at issue in this case, which had a static, synthetic portfolio, the instrument at issue in *Stoker* was a "CDO-squared," *i.e.*, a CDO whose reference portfolio consisted not of RMBS but of CDO notes, it was a "hybrid," meaning that its reference portfolio consisted of cash and synthetic assets, and its reference portfolio was managed, not static. Jaffee Dep. Tr. at 14-15, 71.

Notwithstanding those significant differences, as the chart submitted as Appendix 1 hereto reflects, the report that Jaffee submitted in this case is, in large part, substantially similar

2

to the report he submitted in *Stoker*. Even the conclusions that Jaffee offers in this case are substantially the same as the conclusions he expressed in *Stoker*. *Compare* Davies Ex. 9 (Jaffee Report ¶¶ 8, 41) *with* Davies Ex. 12 (*Stoker* Report ¶¶ 9, 44).

## STANDARD OF LAW

"[T]he trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Down Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also* Fed. R. Evid. 702. "[T]he trial judge's general 'gatekeeping' obligation applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'techincal' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Use of expert testimony must be "carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

## ARGUMENT

### I. JAFFEE'S PROPOSED TESTIMONY ON IRRELEVANT MATTERS FROM THE *STOKER* LITIGATION SHOULD BE EXCLUDED

"Expert testimony is limited by the requirements of relevancy and by the trial court's traditional discretion to prevent prejudicial or confusing testimony." *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001) (internal quotation omitted); *United States v. Onumonu*, 967 F.2d 782, 786 (2d Cir. 1992) ("Expert testimony must be relevant, but even relevant expert testimony, like all relevant evidence, may be excluded under Fed. R. Evid. 403, if its probative value is outweighed by the danger that it would confuse the jury…"). The several portions of Jaffee's reports that compare and contrast cash and synthetic CDOs, that refer to a "CDO Crisis," and that address risks attending the lack of "interest coverage," "over collateralization," or "event of default" triggers in the ABACUS CDO's structure, are imported from Jaffee's opinion in *Stoker*, and are both wholly irrelevant to this case and potentially confusing to the jury. As such, they should be excluded.

3

As Jaffe acknowledged at his deposition, and as explained above, large portions of Jaffee's report in this case are simply copied wholesale from his report in *Stoker*. Among the text that has been copied almost verbatim is a lengthy discussion of certain differences between cash and synthetic CDOs, which concludes, broadly, that synthetic CDOs are riskier than cash CDOs. Jaffee Report ¶ 22; *compare* Davies Ex. 12 (Stoker Report ¶¶ 23-24). Jaffee's discussion of those risks concludes with a suggestion that synthetic CDOs "Created a CDO Crisis." Jaffee Report ¶ 22.iv.

Although the differences between cash and synthetic CDOs may have been relevant to the hybrid CDO-squared at issue in *Stoker*, the topic is wholly irrelevant in this case. As Jaffee acknowledged at his deposition, ABACUS 2007-AC1 was a synthetic CDO and was clearly disclosed to investors as such. Jaffee Dep. Tr. at 95-96. The issue in this case is whether the ABACUS 2007-AC1 offering materials were materially misleading, not whether a different kind of instrument, *i.e.*, a cash CDO, would have been a better or less risky investment. The proposed testimony on this issue is irrelevant and improper, as its inclusion would add nothing but further complexity to a case that is already sufficiently challenging for the jury. Nor should Jaffee be allowed to assert, without any support, that the kind of instrument at issue in this case caused a "CDO Crisis." Beyond being simply irrelevant, this proposed testimony is inflammatory and prejudicial. Thus, to avoid the undue confusion and prejudice that testimony on these topics would generate, these portions of Jaffee's report should be excluded.

Similarly, Jaffee opines that ABACUS 2007-AC1 had a feature that was "less common," in that it lacked "interest coverage," "over collateralization," and "event of default" triggers, *i.e.*, provisions that confer certain rights on investors in certain scenarios, although he ultimately concludes that "this shortcoming could be considered minor." Jaffee Report, ¶ 36. The existence of such triggers was apparently a relevant issue in *Stoker*, *see* Davies Ex. 12 (Stoker Report ¶¶ 34, 38), but, as Jaffee acknowledged at his deposition, it is not an issue in this case. *See* Jaffee Dep. Tr. at 54-55 ("Q: Is it your understanding that there was an allegation that anyone was misled as to whether the Abacus CDO had these types of triggers? A: My

4

understanding is that that is not part of the complaint or the allegations."). This case is more than complex enough without a discussion of "minor" structural features of CDOs that are not at issue, so Jaffee should not be permitted to testify to those matters.

## II. JAFFEE SHOULD BE PROHIBITED FROM NARRATING THE COMPLAINT'S ALLEGATIONS AND FROM MAKING BALD ASSERTIONS AS TO THE ULTIMATE LEGAL ISSUE IN THIS CASE

Section 2 of Jaffee's report, *see* Jaffee Report ¶¶ 32-40, is the point at which the sections Jaffee copied from his *Stoker* report end and he begins to address the ABACUS 2007-AC1 transaction. It is also the point at which Jaffee stops conducting any expert analysis and begins impermissibly to simply narrate and comment upon allegations in the Amended Complaint.

The case law of this Circuit is emphatic that experts are not permitted to testify "solely for the purpose of constructing a factual narrative based upon record evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005). Nor are experts permitted to draw conclusions upon "lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) ("Because the above-quoted testimony invaded an area in which the jury was not in need of expert assistance, it was not a proper subject for expert testimony."); *Highland Capital Mgmt.,* 379 F. Supp. 2d at 471; *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004). This includes questions regarding a party or other person's intent, knowledge or motivation—each of which are matters exclusively reserved for the jury. *Highland*, 379 F. Supp. 2d at 469; *Rezulin*, 309 F. Supp. 2d at 546.

These last paragraphs of Jaffee's proposed testimony do little more, however. In Paragraph 37, Jaffee opines as to the state of mind of "Goldman," stating that the "importance of the portfolio manager was well understood by [Goldman]." At his deposition, Jaffee disclaimed any view as to who at Goldman may have held the understanding he posits in his opinion, stating that "I was not asked to get into the – that sort of detail, and I haven't seen any documents. I

5

would not know that." *See* Jaffee Dep. Tr. at 56. In his report, however, just as the SEC did in its Amended Complaint, Jaffee expresses this opinion based simply on reading the ABACUS offering circular, term sheet, and flip book. *See* Jaffee Report ¶ 37; *compare* Am. Compl. ¶¶ 2, 38-43.

The paragraphs that follow simply cite directly to the Amended Complaint while narrating its allegations: stating that Tourre cooperated with Paulson to choose assets for the ABACUS CDO, and that Goldman "acknowledged that the role of Paulson in the portfolio selection process was not disclosed to the CDO investors." Jaffee Report ¶ 38.[2] To the extent the SEC wants the jury to hear such factual evidence, it must present it through a percipient fact witness. Its presence in Wagner's proposed expert testimony is improper and should be excluded.

In his rebuttal report, Davies Ex. 10, Jaffee, who, as described above, has reviewed "no evidence" in this matter, goes on to offer an opinion on the ultimate legal issue in this case—an opinion that is wholly untethered to any analysis he has conducted. At paragraphs 6 and 12 of his rebuttal report, Jaffee asserts, without any support whatever, that it would have been "reassuring" and "highly encouraging" to investors and to the portfolio selection agent to think that Paulson was going to be a long investor. Then, perhaps seeking to use force of repetition to make up for the lack of any supporting analysis, Jaffee asserts that "a reasonable investor would have considered [Paulson's] identity, role and economic interest in ABACUS to be *critical* in making an investment decision regarding ABACUS." Jaffee Rebuttal ¶ 2 (emphasis added), an opinion he repeats in paragraphs 4 and 9 of his rebuttal report.

Jaffee should not be permitted to offer these opinions because they are bald assertions, and not the result of any reliable analysis by Jaffee. *See* Fed. R. Evid. 702. They also

---

[2] This is a reference to the Amended Complaint's allegation that references a statement that Goldman made in connection with its settlement of this case. Jaffee Report ¶ 38; Jaffee Dep. Tr. at 24. Under the schedule set forth in the Court's Individual Practices, Mr. Tourre will move *in limine* for exclusion of any reference to Goldman's settlement, and Jaffee should not be permitted to rely on or refer to it in support of his opinions. *See* Fed. R. Evid. 703.

speculate impermissibly about what unidentified persons would have found "reassuring," "encouraging," or "vital." Finally, they encompass the ultimate legal issue in this case, *i.e.*, whether the omission of disclosure of Paulson's involvement and interest rendered the offering materials materially misleading. *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (noting that "opinions embodying legal conclusions . . . encroach upon the court's duty to instruct on the law").

For all these reasons, Jaffee's testimony should be limited so that he is not permitted to narrate facts or allegations from the Amended Complaint, or to testify to the ultimate legal issue by making bald, unsupported assertions about what unidentified persons would have found "reassuring," "encouraging," or "vital."

## **CONCLUSION**

    For all the foregoing reasons, Fabrice Tourre respectfully requests that the Court grant his *Daubert* motion and exclude those parts of the proposed testimony of SEC expert Dwight M. Jaffee described herein.

Dated: March 8, 2013
   New York, New York

                Respectfully submitted,

                /s/ Pamela Rogers Chepiga
                Pamela Rogers Chepiga
                (pamela.chepiga@allenovery.com)
                David C. Esseks
                (david.esseks@allenovery.com)
                Andrew Rhys Davies
                (andrew.rhys.davies@allenovery.com)
                Brandon D. O'Neil
                (brandon.o'neil@allenovery.com)

                ALLEN & OVERY LLP
                1221 Avenue of the Americas
                New York, New York  10020
                (212) 610-6300

                *Attorneys for Fabrice Tourre*

# APPENDIX 1

## Chart Showing Identical or Substantially Similar Paragraphs in Jaffee's Reports in *SEC v. Tourre and SEC v. Stoker*

| Paragraph in Jaffee's Report in *SEC v. Tourre* | Corresponding Paragraph in Jaffee's Report in *SEC v. Stoker* |
|---|---|
| 6 | 7 |
| 8 | 9 |
| 9 | 11 |
| 10 | 12 |
| 11 | 13 |
| 11 | 15 |
| 13 | 16 |
| 13 | 17 |
| 14 | 18 |
| 15 | 19 |
| 17, 18 | 20 |
| 19 | 21 |
| 20 | 22 |
| 21, 22 | 23 |
| 22, 23 | 24 |
| 25 | 27 |
| 26 | 28 |
| 27 | 29 |
| 29 | 30 |
| 30 | 32 |
| 31 | 33 |
| 37 | 40 |
| 41 | 44 |
| Table 3 | Table 6 |