UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                        :
SECURITIES AND EXCHANGE                                 :
COMMISSION,                                             :   Civil Action
                                                        :   No.: 10-cv-3229 (KBF)
            Plaintiff,                                  :
                                                        :   <u>ELECTRONICALLY FILED</u>
        v.                                              :
                                                        :
FABRICE TOURRE,                                         :
                                                        :
            Defendant.                                  :
------------------------------------------------------- x

**MEMORANDUM OF LAW OF FABRICE TOURRE IN SUPPORT
OF HIS DAUBERT MOTION TO LIMIT THE PROPOSED
<u>EXPERT TESTIMONY OF ANDREW DAVIDSON</u>**

Pamela Rogers Chepiga
David C. Esseks
Andrew Rhys Davies
Brandon D. O'Neil

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 610-6300

*Attorneys for Fabrice Tourre*

Dated: March 8, 2013
       New York, New York

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ....................................................................................................................2

STANDARD OF LAW............................................................................................................3

ARGUMENT...........................................................................................................................3

    DAVIDSON'S REPORT IMPROPERLY INTERPRETS LAY EVIDENCE,
    SPECULATES AS TO MOTIVE AND INTENT, AND DRAWS CONCLUSIONS
    EMBODYING ULTIMATE LEGAL ISSUES ................................................................3

CONCLUSION........................................................................................................................8

# **TABLE OF AUTHORITIES**

## **CASES**

*Andrews v. Metro N. Commuter R.R. Co.*,
   882 F.2d 705 (2d Cir. 1989) ...........................................................................................5

*Daubert v. Merrell Down Pharms., Inc.*,
   509 U.S. 579 (1993) .......................................................................................................3

*General Elec. v. Joiner,*
   522 U.S. 136 (1997) .......................................................................................................7

*Highland Capital Mgmt., L.P. v. Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005) ...........................................................................4

*In re Rezulin Prods. Liability Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) .......................................................................4, 6

*Island Intellectual Prop. LLC v. Deutsche Bank AG*,
   No. 09 Civ. 2675, 2012 WL 526722 (S.D.N.Y. Feb. 14, 2013) ....................................5

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .......................................................................................................3

*SEC v. Badian*,
   822 F. Supp. 2d 352 (S.D.N.Y. 2011) ...........................................................................7

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) .....................................................................................3, 4

## **STATUTES**

Fed. R. Evid. 702 ....................................................................................................................3

Defendant Fabrice Tourre respectfully submits this memorandum of law in support of his *Daubert* motion, pursuant to Federal Rules of Evidence 403, 702 and 703, to limit the proposed expert testimony of Andrew Davidson as set forth herein.

## PRELIMINARY STATEMENT

Davidson is the only one of the SEC's three proposed experts who has undertaken any economic analysis of the ABACUS 2007-AC1 transaction. Inexplicably, given the SEC's allegations and that the SEC is the plaintiff and has the burden of proof, Davidson, who was retained in the spring of 2010, *see* Davies Ex. 15 (Davidson Dep. Tr. at 29)[1], did not submit an opening report, but rather waited until the time came for rebuttal reports to submit his economic analysis. Tellingly, when he was asked at deposition whether he had prepared a report before the December 20, 2012 date for opening reports, the SEC asserted privilege, *id.* at 30-31, suggesting that some strategic decision was taken to wait until rebuttal reports were due before submitting the SEC's economic analysis.

As explained below, the core of Davidson's report consists of an analysis of the performance of the ABACUS 2007-AC1 reference portfolio as compared with other securities. Mr. Tourre will show on cross-examination that Davidson's analysis is replete with errors that make his conclusions wholly worthless. Through this motion, Mr. Tourre simply seeks an order that Davidson may not offer opinions that are unrelated to his economic analysis, and that consist merely of impermissible and demonstrably unreliable commentary upon the factual record, conclusions about the motive and intent of the principal actors in this case, and testimony on ultimate legal issues. These determinations are committed to the jury, and Davidson should not be permitted to usurp the jurors' role.

---

[1] The exhibits to the Declaration of Andrew Rhys Davies dated March 8, 2013 in Support of Mr. Tourre's *Daubert* Motion to Limit the Proposed Expert Testimony of Andrew Davidson are cited in the format "Davies Ex. __."

## BACKGROUND

Davidson is the principal of a firm, Andrew Davidson & Co., that "provide[s] advice and analytics to participants in the mortgage and mortgage-backed securities market." Davidson Dep. Tr. at 33.  Among other things, Davidson's firm licenses models that investors in mortgage-related securities use to make their investment decisions.  *Id.* at 34-35.

Andrew Davidson & Co. has an affiliated investment management company, Vectors Research Management, which is majority-owned by Davidson, and which manages a fund called Vectors Research Opportunity Fund.  *Id.* at 54, 62-65.  Protégé Partners is one of the largest investors in the Vectors Research Opportunity Fund.  *Id.* at 61-63.  Protégé Partners was also one of the largest and earliest investors in Paulson's Credit Opportunities Fund, *i.e.*, the fund that Paulson established to short the subprime market, with an investment that Davidson estimates was around $100 million.  *Id.* at 62-63.

Davidson agreed with Paulson's short strategy on the subprime RMBS market, *id.* at 80, and testified that someone could have formed such a short view based on publicly available information, *id.* at 104.  Indeed, by the middle of 2005, Davidson was encouraging his clients to short the subprime housing market. *Id.* at 99.  Through funds he controls, Davidson himself engaged in short subprime transactions, which yielded profits that he estimates to have been in the range of $10-12.5 million. *Id.* at 152-55.

Davidson testified at deposition that it "couldn't have been a secret to the people in the hedge fund world" that Paulson was shorting the subprime RMBS market, because Paulson announced his strategy at an event held in 2006 to raise money for his short fund. Davidson heard about that event from "a variety of people who were involved in investing in hedge funds." *Id.* at 80-81.

As Protégé Partners understood that Davidson "had a common view" with Paulson on shorting the subprime RMBS market, in late 2006, they arranged for Davidson to meet with John Paulson and Paolo Pellegrini at the Paulson firm.  *Id*. at 59, 100. At that meeting,

2

Davidson discussed with Paulson "ways that you could identify which bonds would underperform that might not be captured in other merits." *Id.* at 70.

Following their meeting, on December 19, 2006, one of Davidson's colleagues, copying Davidson, sent to Mr. Pellegrini some analysis of potential subprime default scenarios, with a note that it was being "provided gratis in the hope that it will spark a dialogue between our firms as to how AD&Co can help Paulson develop the credit analysis tools you need to participate in the sub-prime market." Davies Ex. 16 (Davidson Ex. 14). Davidson testified that he understood by December 2006 that Paulson intended to participate in the subprime market as a short investor. Davidson Dep. Tr. at 110. Indeed, due to their common short view on the subprime market, Davidson considered investing in Paulson's short subprime fund, and Paulson expressed interest in buying Davidson's company. *Id.* at 78-79.

## STANDARD OF LAW

"[T]he trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Down Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also* Fed. R. Evid. 702. "[T]he trial judge's general 'gatekeeping' obligation applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Use of expert testimony must be "carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

## ARGUMENT

### DAVIDSON'S REPORT IMPROPERLY INTERPRETS LAY EVIDENCE, SPECULATES AS TO MOTIVE AND INTENT, AND DRAWS CONCLUSIONS EMBODYING ULTIMATE LEGAL ISSUES

The core of Davidson's report consists of a comparative analysis of the performance of the ABACUS 2007-AC1 reference collateral relative to other securities. The

3

deep flaws in Davidson's analysis will be addressed on cross-examination at trial. Aside from his flawed economic analysis, however, Davidson offers a series of opinions that are simply impermissible under the *Daubert* standard. It is those opinions—which are not derived from Davidson's economic analysis, and which rather consist of his assertions and narration of documentary evidence—that Mr. Tourre respectfully asks the Court to preclude.

*First,* in Davidson's "Summary of Conclusions" comprising paragraphs 9 and 10 of his report, Davies Ex. 14 (Davidson Rebuttal), Davidson asserts that:

- "ABACUS was *intended to* produce worse collateral performance than the universe of deals";

- "there is evidence that effort was put into *deliberately* misleading other participants in the transaction";

- "those participants appear to have been led to believe that the selection process was meant to produce better than average performance when in fact it was *intended to* produce worse than average performance"; and

- "strong under-performance . . . was *cleverly accomplished* . . .[by] diguis[ing] the role of the selection agent";

(emphases added).

This group of conclusions, which are entirely disconnected from the economic analysis Davidson purports to conduct, are inadmissible as "expert" testimony for two principal reasons. In the first instance, expert testimony may not speculate as to the intent, motive, or state of mind of parties or others in the case. *Highland Capital Mgmt., L.P. v. Schneider*, 379 F.Supp.2d 461, 469 (S.D.N.Y. 2005); *In re Rezulin Prods. Liability Litig.*, 309 F.Supp.2d 531, 546 (S.D.N.Y. 2004) ("inferences about the intent or motive of parties or others lie outside the bounds of expert testimony"). Davidson's speculation as to how Goldman "intended" ABACUS to perform, whether things were done deliberately, and whether these assumed goals were "cleverly accomplished," is thus plainly inadmissible.

Further, Davidson's conclusions in this section are improper because they embody legal conclusions on the case's ultimate issues, including the issue of scienter. *See*

4

*United States v. Bilzerian*, 926 F.2d 1285, 1294-95 (2d Cir. 1991) ("testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible.")  As such, Davidson's assertion that ABACUS participants were misled, and the inference that the ABACUS structure was *intended* to be misleading, are also inadmissible.

*Second*, the section of Davidson's report entitled "The Role of the Selection Agent," Davies Ex. 14 (Davidson Rebuttal ¶¶ 37-40), like his "Summary of Conclusions," is in no way drawn from the economic analysis Davidson conducted.  Rather, it impermissibly narrates fact evidence and speculates as to the intents and states of mind of the actors in the case.

For example, in paragraph 38, Davidson opines that "Goldman Sachs chose to have a Portfolio Selection Agent in order to make the deal salable to investors who, while sophisticated, may not have been expert at RMBS and CDO analysis or may not have had the resources necessary to perform an expert analysis.  The fact that Goldman Sachs chose to compensate the Portfolio Selection Agent for this role is a strong indication that investors requires an independent expert to select the collateral."  At his deposition, Davidson confirmed that he simply derived these views from reading "various e-mails to Goldman Sachs personnel discussing the idea of having a portfolio selection agent," and from reading Goldman's internal approval memos.  Davidson Dep. Tr. at 132.  As Davidson put it, his opinion is based on "[t]he emails and those documents, and the fact that they did it."  *Id.*

Courts have held consistently that this kind of "opinion" is not permitted, and that experts may not simply narrate facts and interpret lay evidence that a "jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989); *Island Intellectual Prop. LLC v. Deutsche Bank AG,* No. 09 Civ. 2675, 2012 WL 526722 at *2 (S.D.N.Y. Feb. 14, 2013) (an expert may not "directly transmit facts to the jury, about which he has no personal knowledge, simply because his testimony represents the easiest way to do that.").  As that is all Davidson is doing, his testimony should not be permitted.

For the same reason, Davidson should not be permitted to testify to his unsupported view of what "would have been relevant to ACA as Portfolio Selection Agent or to a reasonable investor in the transaction," Davidson Rebuttal ¶ 39, or to what "ACA would not have suspected," *Id.* ¶ 40.

Nor should Davidson be permitted to usurp the jury's fact-finding role by offering the opinion set forth in paragraph 39 that various documents "add[] to the evidence that the Portfolio Selection Agent was misled as to the role of Paulson." Davidson Rebuttal ¶ 39. Indeed, that opinion is particularly objectionable because it rests entirely on Davidson's review and narration of the documents cited in that paragraph. To take one of those documents as an example, Davidson conceded that he does not know what was in the mind of the person who wrote that ACA "can understand Paulson's equity perspective" in the document cited in his rebuttal report as "Exhibit 4." *See* Davidson Dep. Tr. at 156. Nor did Davidson even know who wrote the statement, when it was written, or what else the document said. *Id.* at 156-57.

Vividly demonstrating why Davidson must not be permitted to narrate and interpret documents about which he knows nothing, Davidson is absolutely wrong in interpreting a document as showing *Goldman* telling Paulson that it would "play the role of potential equity investor." Davidson Rebuttal ¶ 39. Davidson claimed that "someone" told him that the author of that email was a Goldman employee, but he did not recall who told him that. Davidson Dep. Tr. at 160-61. Davidson is absolutely wrong, as other evidence in the case has established that the author of that email was in no way affiliated with Goldman and that the email had nothing to do with ABACUS 2007-AC1. *See* Davies Ex. 17 (Paulo Pellegrini Dep. Tr. at 195)

Davidson's error here emphasizes the peril of permitting the SEC to use its experts to marshal and transmit factual evidence to the jury. To the extent the SEC wishes to introduce such evidence, it should do so through fact witnesses capable of identifying the documents they are describing. *See Rezulin*, 309 F.Supp.2d at 551 ("Such material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence.").

6

*Finally,* in paragraph 15 of Davidson's report, addressing the asset selection process for the ABACUS portfolio, he states: "The primary selection occurred at the Paulson step; the additional role that ACA played was inconsequential because the deals they choose from already met the Paulson criteria or were subsequently approved by Paulson." This assertion, too, in no way proceeds from the work Davidson conducted, and indeed, Davidson conceded at this deposition that he did not conduct analysis to support the assertion, and that the opinion is based simply on his review of the factual evidence. Davidson Dep. Tr. at 164. Thus, this is simply lay opinion as to whose role, ACA's or Paulson's, was more important. The answer to that question is not something the jurors will require expert assistance to reach—they may simply review the evidence of the selection process themselves. Davidson's proposed testimony on this point, as such, should be excluded with the rest. *See SEC v. Badian*, 822 F. Supp. 2d 352, (S.D.N.Y. 2011) ("the Court need not 'admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert.'") (quoting *General ElectricCo. v. Joiner*, 522 U.S. 136, 146 (1997)).

## CONCLUSION

For all the foregoing reasons, Fabrice Tourre respectfully requests that the Court grant his *Daubert* motion and limit the proposed testimony of SEC expert Andrew Davidson as set forth herein.

Dated: March 8, 2013
New York, New York

Respectfully submitted,

/s/ Pamela Rogers Chepiga
Pamela Rogers Chepiga
(pamela.chepiga@allenovery.com)
David C. Esseks
(david.esseks@allenovery.com)
Andrew Rhys Davies
(andrew.rhys.davies@allenovery.com)
Brandon D. O'Neil
(brandon.o'neil@allenovery.com)

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

*Attorneys for Fabrice Tourre*