**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x
   :
SECURITIES AND EXCHANGE   :
COMMISSION,   :   Civil Action
   :   No.: 10-cv-3229 (KBF)
     Plaintiff,   :
   :   <u>ELECTRONICALLY FILED</u>
     v.   :
   :
FABRICE TOURRE,   :
   :
     Defendant.   :
   :
———————————————————————— x

**MEMORANDUM OF LAW OF FABRICE TOURRE IN SUPPORT OF**
**HIS MOTION TO PRECLUDE THE SEC'S RELIANCE ON THE JANUARY 17 CALL**
**<u>AND TO STRIKE THE JANUARY 17 CALL AND RELATED EXHIBITS</u>**

Pamela Rogers Chepiga
David C. Esseks
Andrew Rhys Davies
Brandon D. O'Neil

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

*Attorneys for Fabrice Tourre*

Dated:  March 15, 2013
      New York, New York

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ........................................................................................................2

A.    The SEC Serves Investigative Requests On ACA During The Course Of Its Investigation................................................................................................2

B.    Mr. Tourre Diligently Pursued Discovery Of The SEC And Sought The Production Of All Relevant Materials ...............................................................3

C.    In November 2012, Almost Two Years After the Close of Document Discovery And Four Years After It Received The October 2008 Telephone Log, the SEC Reveals the Existence of The Log And The ACA Audio Files ............................4

D.    Although The SEC's Failure To Disclose The Existence Of The ACA Audio Files Had A Critical Impact On Discovery, The SEC Now Seeks To Prejudice Mr. Tourre By Reliance On An Audio File Never Produced In This Litigation.......................6

ARGUMENT ..............................................................................................................8

I.    THE COURT SHOULD PRECLUDE THE SEC FROM RELYING ON THE JANUARY 17 CALL AND SHOULD STRIKE THE JANUARY 17 CALL AND RELATED EXHIBITS IN THE MOTION FOR PARTIAL SUMMARY JUDGMENT FILED BY THE SEC ................................................................8

CONCLUSION.........................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Ebewo v. Martinez,*
   309 F. Supp. 2d 600 (S.D.N.Y. 2004)..................................................................9, 10

*Gabelli v. SEC,*
   No. 11-1274, 2013 WL 691002 (U.S. Feb. 27, 2013) ............................................8

*Haas v. Delaware and Hudson Railway Co.,*
   282 F. App'x. 84 (2d Cir. 2008) ..............................................................................9

*Patterson v. Balsamico,*
   440 F.3d 104 (2d Cir. 2006).....................................................................................9

*Reilly v. Natwest Mkts. Grp., Inc.,*
   181 F.3d 253 (2d Cir. 1999).....................................................................................9

## RULES

Fed. R. Civ. P. 26(a) ..............................................................................................1, 8, 9

Fed. R. Civ. P. 34(a)(1)(A) .....................................................................................5, 10

Fed. R. Civ. P. 37(c)(1)................................................................................................9

Fed. R. Evid. 801(c)...................................................................................................11

Fed. R. Evid. 802 .......................................................................................................11

Local Civil Rule 26.3............................................................................................5, 10

Defendant Fabrice Tourre respectfully submits this memorandum of law, together with the supporting declaration of Pamela Rogers Chepiga (the "Chepiga Declaration"), in support of his motion to preclude the SEC from introducing into evidence on summary judgment or at trial the audio file of a telephone call on January 17, 2007 (the "January 17 Call") from ACA Financial Guaranty Corp. ("ACA") and to strike the January 17 Call, Exhibits 13 and 14 and related references from the SEC's pending motion for partial summary judgment.

## PRELIMINARY STATEMENT

During the course of a two-year investigation of the ABACUS 2007-AC1 transaction from 2008 to 2010, the SEC conducted an extensive investigation of ACA, serving three separate requests for the production of documents and taking the testimony of seven ACA witnesses. And yet, despite having received in October 2008 a log of telephone line recordings maintained by ACA (the "October 2008 Telephone Log"), the SEC never demanded the production of these recordings from ACA, and instead proceeded with this action on the basis of an incomplete record. After filing this action, the SEC did not disclose the existence of the audio recordings or produce the October 2008 Telephone Log to Mr. Tourre as mandated by Rule 26(a)(1)(A)(ii) of the Federal Rules of Civil Procedure and Mr. Tourre's document requests, and the audio files were never produced during discovery in this litigation. As such, not one of the witnesses deposed in this litigation has answered a single question about these audio files, and the audio files were not available to assist in the examination of these witnesses.

Now, more than four years after learning of the existence of the ACA audio files, the SEC seeks to center its pending motion for partial summary judgment on an audio file, never produced in this litigation and on which Mr. Tourre does not appear and is not mentioned at all. Astonishingly, to justify its failings, the SEC now takes the untenable position that an audio file is not a document. That position is contrary to the Federal Rules of Civil Procedure, the Local

Rules of this Court, and universal practice.  Because the SEC knowingly failed to exercise its

investigative authority to secure the production of the ACA audio files, and did not subpoena the

audio files during discovery in this litigation, the SEC should be precluded from relying on the

January 17 Call in support of its motion for summary judgment or at trial and this Court should

strike the January 17 Call, Exhibits 13 and 14 and related references from the SEC's pending

motion for partial summary judgment.

## **BACKGROUND**

A.     **The SEC Serves Investigative Requests On ACA During The
       Course Of Its Investigation**

During the course of a two-year investigation into the ABACUS 2007-AC1

transaction in 2008-2010, the SEC propounded extensive document requests to ACA,[1] a focus of

the SEC's investigation, and took the testimony of seven ACA witnesses.  *See* Chepiga Decl. Exs.

A (July 1, 2008 request); B (October 28, 2008 request).  The SEC Requests were broad in scope,

requiring the production, among other things, of (1) "all documents concerning any

communications with any party acquiring any position in the Abacus CDO;" and (2) "[a]ll

documents concerning ACA's decision to acquire a position in Abacus, including but not limited

to memorandums, e-mails and notes."  *See* Chepiga Decl. Exs. A (July 1, 2008 request at

Request 4); B (October 28, 2008 request at Request 3.)  The SEC Requests contained no

language limiting the definition of "document."

ACA subsequently produced documents to the SEC in connection with the

ABACUS 2007-AC1 investigation.  Specifically, on November 11, 2008, ACA represented that

it was producing documents relating to ACA's "decision to acquire a position in the Abacus

---

[1]     Based on the documents produced to Mr. Tourre by the SEC in connection with this litigation, Mr.
Tourre understands that the SEC served document requests on ACA on July 1, 2008, October 28,
2008 and November 18, 2008.  The SEC, however, has only produced to Mr. Tourre copies of the
requests dated July 1, 2008 and October 28, 2008.  The SEC also served a number of requests for the
production of documents by various ACA employees.

CDO," and, on February 6, 2009 produced "e-mail messages" reflecting "any communications

with any party acquiring any position in the Abacus CDO."  *See* Chepiga Decl. Exs. C (Nov. 11,

2008 letter from K. Groskaufmanis); D (Feb. 6, 2009 letter from K. Groskaufmanis).  ACA did

not produce any audio files in response to the SEC Requests.

      **B.**     **Mr. Tourre Diligently Pursued Discovery Of The SEC And
Sought The Production Of All Relevant Materials**

        Seeking to ensure a fully-developed factual record, Mr. Tourre diligently pursued

discovery from the SEC, serving three separate requests for the production of documents in 2010

and 2011.  *See* Chepiga Decl. Exs. E (July 20, 2010 request), F (Nov. 2, 2010 request), G (Jan.

20, 2011 request).  Further to the Local Rules of the United States District Courts for the

Southern and Eastern District of New York (the "Local Rules") and the Federal Rules of Civil

Procedure, Mr. Tourre's requests expressly provided that the term "document" included "sound

recordings."  *See* Chepiga Decl. Ex. E (July 20, 2010 request).

        Mr. Tourre's First Request for the Production of Documents, served on July 20,

2010, sought the "complete investigative file" in the ABACUS 2007-AC1 investigation.  *See id.*

(July 20, 2011 request) at Request 1.  In its objections and responses to Mr. Tourre's First

Request for the Production of Documents dated August 16, 2010, the SEC responded that it

would produce documents related to its investigation known as "ABACUS 2007-AC1, File No.

HO-10911-A."  *See* Chepiga Decl. Ex. H (Aug. 16, 2010 SEC Objections and Responses).  On

August 16, 2010, counsel for Mr. Tourre wrote to the SEC asking that it clarify the "scope and

subject matter of the investigation known as ABACUS 2007-AC1, File No. HO-10911-A" so

that Mr. Tourre could determine whether the SEC's proposed response would capture all relevant

materials.  *See* Chepiga Decl. Ex. I (Aug. 26, 2010 letter from P. Chepiga).  Mr. Tourre also

requested that the SEC confirm whether or not the SEC had "documents or investigative

testimony" relating to, among other entities, ACA.  *See id.*  The SEC responded that the investigation known as ABACUS 2007-AC1, File No. HO-10911-A was the "investigation that led to the claims filed against Goldman Sachs and Mr. Tourre" and further represented that it had produced or would produce all documents that it intended to "use or rely on in this litigation regardless of whether those documents were formally part of the ABACUS 2007-AC1 Investigation."  *See* Chepiga Decl. Ex. J (Sept. 2, 2010 letter from D. Gottesman) (emphasis added).

On September 8, 2010, Mr. Tourre again sought confirmation that the SEC would produce all documents relating to ACA "that the SEC has in any way used or relied on in its investigation …, regardless of whether the SEC consider[ed] those documents to form part of the [ABACUS 2007-AC1] Investigation."  *See* Chepiga Decl. Ex. K. (Sept. 8, 2010 letter from P. Chepiga).  In a letter dated September 17, 2010 the SEC responded that it was producing "all documents" that it "intend[ed] to use or rely on in this litigation, regardless of whether those documents were formally part of the ABACUS 2007-AC1 Investigation."  *See* Chepiga Decl. Ex. L (Sept. 17, 2010 letter from D. Gottesman) (emphasis added).

Over the course of document discovery, the SEC produced to Mr. Tourre over one million documents but did not produce a single ACA audio file or the October 2008 Telephone Log.

**C.    In November 2012, Almost Two Years After the Close of Document Discovery And Four Years After It Received The October 2008 Telephone Log, the SEC Reveals the Existence of The Log And The ACA Audio Files**

On November 15, 2012, almost two years after the close of document discovery on January 31, 2011 and four years after the SEC learned of their existence, the SEC revealed that ACA had "recently" produced to the SEC "roughly 7,000 telephone conversations that were

made or received on ACA trading desk lines between March-July 2007." *See* Chepiga Decl. Ex. M (Nov. 15, 2012 email from M. Martens).  The SEC further indicated that it had been informed by counsel for ACA that there were "potentially thousands of other recordings" for the time period relevant to this litigation.  *See id.*  The SEC provided counsel for Mr. Tourre with a copy of 6,900 audio files on November 21, 2012.

   Over the next several weeks, counsel for Mr. Tourre engaged in numerous meet and confers with the SEC.  *See* Chepiga Decl. ¶ 2.  Most strikingly, counsel for Mr. Tourre learned that the SEC had known of the existence of the audio files since October 2008 when ACA produced to the SEC the October 2008 Telephone Log, titled an "Inventory of Telephonic Recordings."  On November 28, 2012, over four years after it was received by the SEC, the SEC produced to Mr. Tourre for the first time a copy of the October 2008 Telephone Log, which spans almost 1,500 pages and provides the name of the ACA employee associated with the telephone number as well as the start times, end times, and total duration of each recording.  *See* Chepiga Decl. Exs. N (Nov. 28, 2012 letter from C. Schultz); O (October 2008 Telephone Log).  The SEC also informed counsel for Mr. Tourre that there were potentially tens of thousands of additional files for the first half of 2007 alone that had not been produced by ACA.

   To the great surprise of counsel for Mr. Tourre, and contrary to the Local Rules and the Federal Rules of Civil Procedure,[2] the SEC took the position that its investigative document requests to ACA did not call for the telephone recordings because the requests did "not define 'documents' to include audio recordings."  *See* Chepiga Decl. Ex. P (Jan. 3, 2013 email from M. Martens).  Counsel for Mr. Tourre noted that it was "surprised" by the SEC's

---

[2] The Local Rules expressly provide that the term "document" shall have the meaning set forth in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure.  *See* Local Civil Rule 26.3.  Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure, in turn, defines "document" to include, among other things, "sound recordings."  *See* Fed. R. Civ. P. 34(a)(1)(A).

position, given that the generally understood meaning of "document," as reflected in the Local

Rules and Federal Rules of Civil Procedure, includes audio recordings.  *See id.* (Jan. 7, 2013

email from A. Rhys Davies).  The SEC, however, maintained its position, explaining that the

document requests to ACA did not "expressly indicate that audio recordings were sought."  *See*

*id.* (Jan. 7, 2013 email from M. Martens).

> **D.   Although The SEC's Failure To Disclose The Existence Of The
> ACA Audio Files Had A Critical Impact On Discovery, The
> SEC Now Seeks To Prejudice Mr. Tourre By Reliance On An
> Audio File Never Produced In This Litigation**

Upon completion of document discovery on January 31, 2011, the parties engaged

in depositions of fact witnesses.  Further to the discovery schedule in this litigation, domestic

fact discovery commenced on February 1, 2011 and closed on May 31, 2011.  Foreign fact

discovery, which was stayed pending resolution of Mr. Tourre's motion to dismiss this action,

was effectively completed on December 14, 2011.[3]  At the time the depositions were conducted,

the October 2008 Telephone Log and ACA audio files had not been produced.  Thus, none of the

witnesses deposed in this litigation, including three ACA employees and five employees of

Goldman Sachs & Co., were ever questioned by either the SEC or counsel for Mr. Tourre about

the ACA audio files.

More specifically, in the absence of the audio files and based on the evidentiary

record available at the time, neither counsel for Mr. Tourre nor the SEC took the depositions of

either Ms. Kreitman or Mr. Westreich, the only two individuals appearing on the January 17 Call

that the SEC now submits as purported "evidence" of Mr. Tourre's allegedly fraudulent conduct.

Indeed, based on the evidence available at the time of domestic discovery, neither Ms. Kreitman

nor Mr. Westreich had any relevant knowledge of the facts at issue.  In her investigative

---

[3]   Foreign fact discovery was extended through 2012 to accommodate efforts to secure testimony from IKB witnesses in Germany which, as this Court knows, were not successful due to IKB's obstruction. *See* ECF No. 170.

6

testimony before the SEC in June 2009, Ms. Kreitman testified that she had never heard of

Paulson & Co., Inc. ("Paulson") at the time of the ABACUS 2007-AC1 transaction and had no

recollection of having any conversations with Mr. Tourre about Paulson taking equity in the

ABACUS 2007-AC1 transaction.  *See* Chepiga Decl. Ex. Q (June 30, 2009 SEC Tr. at 40:12-

41:6, 55:13-16).  Similarly, in discussions with counsel for Mr. Tourre in May of 2011 to

determine whether a deposition of Mr. Westreich was warranted, Kasowitz Benson Torres &

Friedman LLP ("Kasowitz Benson"), counsel for Mr. Westreich, represented that Mr. Westreich

had no recollection of any substantive discussion concerning Paulson's role in the ABACUS

2007-AC1 transaction.  *See* Chepiga Decl. ¶ 3.

        Despite this, the SEC now submits the January 17 Call, on which Mr. Tourre does

not appear and in which he is not mentioned, as the centerpiece of its claim that Mr. Tourre

perpetrated a fraud on ACA.  In addition to its obvious insufficiency as evidence, the January 17

Call was never produced in connection with this litigation.  Instead, the January 17 Call was

provided to the SEC and Mr. Tourre on December 14, 2012, almost two years after the close of

document discovery, in connection with a production made by ACA in *ACA Financial Guaranty

Corp. v. Goldman, Sachs & Co.*, a separate civil litigation commenced by ACA in New York

State court and in which Kasowitz Benson, the very firm that previously represented that Mr.

Westreich had no recollection of any discussions concerning the ABACUS 2007-AC1

transaction, represents ACA.  *See* Chepiga Decl. Ex. R (Dec. 14, 2012 letter from R. Klapper).

## ARGUMENT

**I.   THE COURT SHOULD PRECLUDE THE SEC FROM RELYING ON THE JANUARY 17 CALL AND SHOULD STRIKE THE JANUARY 17 CALL AND RELATED EXHIBITS IN THE MOTION FOR PARTIAL SUMMARY JUDGMENT FILED BY THE SEC**

Despite an investigation that lasted two years, the SEC instituted this action based on an incomplete factual record.  And yet now, the SEC seeks to support its allegation that Mr. Tourre perpetrated a fraud on ACA by reliance on a single audio file on which Mr. Tourre does not appear and is not even mentioned, and that was never produced in this litigation.  Indeed, despite knowing of the existence of the ACA audio files since October 2008 when ACA produced the log of telephonic recordings to the SEC, the SEC never demanded the production of these audio files from ACA, either in the investigation or during discovery.  Nor did the SEC ever produce the October 2008 Telephone Log or disclose the existence of the files as required by Rule 26(a)(1)(A)(ii) of the Federal Rules of Civil Procedure and by Mr. Tourre's discovery demands.

As the Supreme Court recently held, the SEC is a "different kind of plaintiff," and cases such as the one asserted against Mr. Tourre that seek civil penalties are "intended to punish, and label defendants wrongdoers."  *Gabelli v. SEC*, No. 11-1274, 2013 WL 691002, at *7 (U.S. Feb. 27, 2013) (citations omitted).  The inherent power afforded to the SEC in its capacity as a regulatory authority and as Plaintiff in this litigation only underscores the direct prejudice that results to Mr. Tourre from the SEC's failure to disclose the existence of the audio files, only to later cherry-pick a single audio file to support its claims, two years after the close of document discovery.  This Court should preclude the SEC from relying on the January 17 Call and should

strike the January 17 Call, Exhibits 13 and 14 and related references in ACA's pending motion for partial summary judgment.

Pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, "a party [that] fails to provide information … as required by Rule 26(a) … is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  *See Haas v. Delaware and Hudson Railway Co.*, 282 F. Appx. 84, 85-86 (2d Cir. 2008) (quoting Fed. R. Civ. P. 37(c)(1)).  *See also Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) (holding that it is axiomatic that a district court "has wide discretion in sanctioning a party for discovery abuses").  The purpose of Rule 37(c)(1) is to prevent the practice of "sandbagging" an opposing party with new evidence.  *See Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (citations omitted).  In determining whether the preclusion of evidence is warranted, courts consider four factors:  (1) the explanation for the failure of the party to produce the evidence; (2) the importance of the evidence to the litigation; (3) the prejudice that would be suffered by the party opposing the introduction of the evidence; and (4) the possibility of a continuance. *See Haas*, 282 F. Appx. at 86 (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).  Where, as here, a plaintiff fails to disclose the existence of evidence on which it intends to rely to support its claims, the court should preclude the plaintiff from introducing such evidence on a motion for summary judgment or at trial.  *See Haas*, 282 F. Appx. at 85-86.

There is no justification for the SEC's failure to produce the October 2008 Telephone Log or disclose the existence of the audio files.  The SEC does not—and cannot—dispute that it received an "Inventory of Telephonic Recordings" from ACA in October of 2008, just as it was conducting its investigation into the ABACUS 2007-AC1 transaction.  *See* Chepiga

9

Decl. Ex. N (Nov. 28, 2012 letter from C. Schultz).  And yet, despite repeated assurances that it would produce all documents that it "intend[ed] to rely on or use in this litigation, regardless of whether those documents were formally part of the ABACUS 2007-AC1 Investigation," the SEC failed to produce the October 2008 Telephone Log and failed to disclose the existence of these files, as required by Rule 26(a)(1)(A)(ii) and Mr. Tourre's discovery demands.  *See* Chepiga Decl. Ex. L (Sept. 17, 2010 letter from D. Gottesman).  Most astonishing, however, is the SEC's complete failure to demand the production of these audio files from ACA, despite knowing of their existence since 2008.  The SEC's only retort is that its document requests to ACA which sought the production, among other things, of all documents concerning "any communications with any party acquiring any position in the Abacus CDO" and "ACA's decision to acquire a position in Abacus," somehow did not call for the production of audio files.  *See* Chepiga Decl. Ex. P (Jan. 7, 2013 email from M. Martens).  This argument defies logic and is directly contrary to the well-established definition of "document" provided for under the Federal Rules of Civil Procedure and adopted by this Court's Local Rules, as including "sound recordings."  *See* Local Rules R. 26.3(c)(2); Fed. R. Civ. P. 34(a)(1)(A).

Mr. Tourre should not now be sandbagged by the introduction of cherry-picked evidence never disclosed during discovery.  *See Ebewo*, 309 F. Supp. 2d at 607.  Indeed, although the SEC has offered a single audio file in support of its motion for partial summary judgment, there are tens of thousands of potentially relevant audio files that have never been produced.  To allow the introduction of just a single audio file is thus inherently prejudicial and cannot be remedied.  Indeed, a continuance of the trial would do nothing to mitigate the prejudice as it would require not only the production and review of tens of thousands of audio files, but would also require this Court to re-open the depositions of numerous individuals

already deposed in this litigation as well as allow depositions of individuals who have never been

deposed in this litigation but who appear on audio files.  Having made the affirmative decision

not to produce the October 2008 Telephone Log, disclose the existence of the audio files or

demand their production from ACA, the SEC may not now rely on a single audio file produced

in a separate litigation to support its claim against Mr. Tourre, especially since Mr. Tourre does

not appear on the recording and is not mentioned at all.

                    In addition to being precluded due to the SEC's discovery abuses, as an out of

court statement that does not even reference Mr. Tourre, the January 17 Call is either irrelevant

or inadmissible under the rule against hearsay as to which the SEC has proffered no exception.

*See* Fed. R. Evid. 801(c), 802.

**<u>CONCLUSION</u>**

For all the foregoing reasons, Fabrice Tourre respectfully requests that this Court preclude the SEC from relying on the January 17 Call on summary judgment or at trial and strike the January 17 Call, Exhibits 13 and 14 and related references from the SEC's pending motion for partial summary judgment.


Dated: March 15, 2013
       New York, New York


                              Respectfully submitted,


                              /s/ Pamela Rogers Chepiga
                              Pamela Rogers Chepiga
                              (pamela.chepiga@allenovery.com)
                              David C. Esseks
                              (david.esseks@allenovery.com)
                              Andrew Rhys Davies
                              (andrew.rhys.davies@allenovery.com)
                              Brandon D. O'Neil
                              (brandon.o'neil@allenovery.com)

                              ALLEN & OVERY LLP
                              1221 Avenue of the Americas
                              New York, New York  10020
                              (212) 610-6300

                              *Attorneys for Fabrice Tourre*