UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
:
SECURITIES AND EXCHANGE :
COMMISSION, : Civil Action
: No.: 10-cv-3229 (KBF)
:
Plaintiff, :
: ELECTRONICALLY FILED
v. :
:
FABRICE TOURRE, :
:
Defendant. :
:
------------------------------------x

**MEMORANDUM OF LAW OF FABRICE TOURRE IN OPPOSITION TO
THE SEC'S *DAUBERT* MOTION TO EXCLUDE THE OPINION
TESTIMONY OF DR. CHARLES COX**

 

Pamela Rogers Chepiga
David C. Esseks
Andrew Rhys Davies
Brandon D. O'Neil

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

*Attorneys for Fabrice Tourre*

Dated: March 29, 2013
      New York, New York

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 2

I.  DR. COX'S OPINION WILL ASSIST THE JURY TO REACH A PROPER DETERMINATION ON THE ISSUE OF MATERIALITY ........................................... 2

    A.  The SEC Miscomprehends The Legal Standard For Materiality ........................... 2

    B.  Market Analysis Offered By Dr. Cox Will Equip The Jury To Understand What Constituted The "Total Mix Of Information" Available To Investors ......... 3

    C.  Dr. Cox Does Not Purport To Offer An Opinion On The Views Of 2007 CDO Market Participants, And Is Eminently Qualified To Testify On The Opinions He Does Offer ........................................................................................ 5

    D.  Dr. Cox Does Not Offer An Improper Legal Opinion On Materiality .................. 8

II. THE SEC'S OBJECTIONS TO DR. COX'S METHODOLOGY AND EMPIRICAL STUDIES ARE MISLEADING AND BASELESS .................................. 9

    A.  The Argument That Dr. Cox Applied No Methodology Is Specious And Belied By Dr. Cox's Report ..................................................................................... 9

    B.  The SEC's Objections To The Empirical Studies Offered In Dr. Cox's Report Are Baseless .............................................................................................. 12

CONCLUSION ....................................................................................................................... 14

# **TABLE OF AUTHORITIES**

## **CASES**

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds,*
  __ U.S. __, No. 11-1085, 2013 WL 691001 (Feb. 27, 2013) ................................................ 2

*Arista Records LLC v. Lime Group LLC,*
  No. 06 Civ. 5936(KMW), 2011 WL 1674796 (S.D.N.Y. May 2, 2011) ................................ 6

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988) .............................................................................................................. 2

*Ebbert v. Nassau County,*
  No. 05 Civ. 5445(FB)(AKT), 2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008) ........................ 8

*Glowczenski v. Taser Int'l, Inc.,*
  No. 04 Civ. 4052(WDW), 2012 WL 976050 (E.D.N.Y. March 22, 2012) ......................... 5, 6

*Highland Capital Mgmt., L.P. v. Schneider,*
  379 F. Supp. 2d 461 (S.D.N.Y. 2005) ............................................................................. 8, 12

*In re SLM Corp. Sec. Litig.,*
  No 08 Civ. 1029(WHP), 2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ................................ 8, 9

*Malletier v. Dooney & Bourke, Inc.,*
  525 F. Supp. 2d 558 (S.D.N.Y. 2007) .................................................................................. 11

*Nimely v. City of New York,*
  414 F.3d 381 (2d Cir. 2005) .................................................................................................. 6

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt, LLC,*
  595 F.3d 86 (2d Cir. 2010) .................................................................................................... 2

*S.E.C. v. Badian,*
  822 F. Supp. 2d 352 (S.D.N.Y. 2001) ................................................................... 6, 7, 10, 11

*Sawant v. Ramsey,*
  No. 07 Civ. 0980, 2012 WL 2046812 (D. Conn. Jun. 6, 2012) ............................................ 8

*United States v. Mavashev,*
  08 Cr. 902, 2010 WL 234773 (E.D.N.Y. Jan. 14, 2010) ....................................................... 9

*Weiner v. Snapple Beverage Co.,*
  No. 07 Civ. 8742(DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ................................ 11

*Zaremba v. General Motors Corp.*,
    360 F.3d 355 (2d Cir. 2004) .......................................................................................... 11

**RULES AND STATUTES**

SEC Rule 144A ............................................................................................................. 5, 7

Fabrice Tourre respectfully submits this memorandum of law in opposition to the SEC's *Daubert* Motion To Exclude The Opinion Testimony Of Dr. Charles Cox.[1]

## PRELIMINARY STATEMENT

The SEC's objections to Dr. Cox's proposed testimony reflect two fundamental misapprehensions—one about the opinions Dr. Cox is offering, and the other about the nature and scope of the materiality inquiry in this case.

Contrary to the argument in its Motion for Partial Summary Judgment, the SEC cannot meet its burden on this element merely by offering after-the-fact testimony from ACA employees stating that, had Paulson's views and short strategy been disclosed, they would have regarded the information as "important." In fact, the SEC must persuade the jury that the allegedly omitted information would have been material to a reasonable investor, *i.e.*, that a reasonable investor would have considered it important in making investment decisions, because it would have significantly altered the "total mix" of information available.

The opinion that Dr. Cox proposes to offer will be invaluable to the jury in making its determination on the issue of materiality. As a financial economist, Dr. Cox has performed a rigorous study of: (a) market information available in 2007 that will help the jury understand what the "total mix" of information was, and (b) market information concerning Paulson, which will help the jury determine whether the allegedly omitted information about Paulson would have significantly altered that "total mix." Based on his education, training and experience, Dr. Cox is eminently qualified to offer these opinions. The SEC's contrary argument—that Dr. Cox is unqualified because he is not an expert in the specific CDO instruments at issue in this case and has not performed a survey of CDO industry participants—

---

[1] Dr. Cox's opening report (with exhibits) appears as Exhibit 1 to the SEC's *Daubert* Motion to Exclude the Opinion Testimony of Dr. Charles Cox, and is cited in the format "Cox Rep." Other exhibits referenced herein are exhibited to the Declaration of Andrew Rhys Davies dated March 29, 2012, and are cited in the format "Davies Ex. __." Dr. Cox's Deposition Transcript, which appears as Davies Ex. 1, is cited in the format "Cox Dep. Tr." and the SEC's Memorandum of Law is cited "SEC Cox Mem."

totally misapprehends the opinions he intends to offer, and, therefore, the SEC's motion simply misfires.

## ARGUMENT

I. **DR. COX'S OPINION WILL ASSIST THE JURY TO REACH A PROPER DETERMINATION ON THE ISSUE OF MATERIALITY**

    A. **The SEC Miscomprehends The Legal Standard For Materiality**

Based on its recent Motion for Partial Summary Judgment, the SEC appears to believe that its burden of establishing materiality on a fraud claim may be met simply by offering a self-serving statement from an employee of the alleged victim saying that she would have considered the omitted information, had it been disclosed, to be important. *See* SEC's Memorandum Of Law In Support Of Its Motion For Partial Summary Judgment ("SEC SJ Mot.") at 12-14.

That, clearly, is not the law; and the Supreme Court has been clear that the question of materiality may not be reduced to the subjective, self-interested assertions of plaintiffs or alleged victims. *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, __ U.S. __ , No. 11-1085, 2013 WL 691001, at *8 (Feb. 27, 2013). To the contrary, materiality is an objective standard, and to meet its burden on this element at trial the SEC must prove that there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by [a] reasonable investor as having significantly altered the 'total mix' of information made available." *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt, LLC*, 595 F.3d 86, 92 (2d Cir. 2010) (quoting *Basic Inc. v. Levinson,* 485 U.S. 224, 231-32 (1988)). That is, the SEC must be able to show that from the perspective of a *reasonable* investor—not just ACA, after the fact—additional disclosure regarding Paulson's views and short strategy would have been regarded as "important," *id.* at 92-93, relative to all the other information available about the CDO investment, the underlying portfolio of RMBS securities, and economic forecasts on the state of the housing market, among other things, so as to have significantly altered that reasonable person's views on the investment.

2

This is a particularly crucial question in this case, because the SEC does not dispute that Paulson possessed no insider information on any of the RMBS securities that composed the ABACUS reference portfolio. Nor does the SEC assert that Paulson's views alone, or his short strategy, could have actually impacted the price or performance of those RMBS securities. As such, the fact that ACA now says it wished it had known Paulson's views and strategy does not prove that a reasonable investor, possessing all the same information that Paulson did about those securities, and possessing all the same tools that Paulson had to analyze those securities, would have considered information regarding Paulson's views and strategy as being so important that it would have "significantly altered the total mix of information" already available. The testimony offered by Dr. Cox directly pertains to this question, and the information and analysis he provides will allow the jury to reach a proper and informed decision on this core legal issue.

> **B.     Market Analysis Offered By Dr. Cox Will Equip The Jury To Understand What Constituted The "Total Mix Of Information" Available To Investors**

Dr. Cox's opinion addresses four principal factors that are relevant to a determination of materiality in this case: (1) the uncertainty in the U.S. economy and housing market in the period leading up to the ABACUS transaction, *see* Cox. Rep. ¶¶ 15-36; (2) contemporaneously available public market data regarding a prospective decline in the subprime mortgage market, *id.* ¶¶ 37-43; (3) the information disclosed in the ABACUS offering materials on the risks, capital structure, and reference portfolio, *id.* ¶¶ 62-79; and (4) Paulson's reputation as an inexperienced investor in the subprime real estate sector that devised its strategy based only upon publicly available information. *Id.* ¶¶ 44-61. For purposes of the materiality inquiry, the first three of these categories will educate the jury as to what constituted the "total mix" of information available to the reasonable investor, and the fourth will provide a basis for the jury to weigh, against that "total mix," the relative significance of additional disclosure regarding Paulson's views and strategy.

3

To begin, Dr. Cox provides a sophisticated and comprehensive market analysis of the U.S. housing sector in the period leading up to the ABACUS transaction. In this analysis, Dr. Cox relied upon publicly available macroeconomic and market sector data such as the unemployment rate, *id.* ¶ 15; homeowner equity values, *id.*, Ex. C; total worth of households, *id.*, Ex. D; home price appreciation rates, *id.* ¶ 18, Ex. E; the rate of U.S. housing starts, *id.* ¶ 19, Ex. F; levels of U.S. mortgage debt in the absolute, and as a percentage of gross domestic product, *id.* ¶ 20, Exs. G, H; expansion of the issuance of structured products, *id.* ¶ 21, Exs. I, J; the federal funds rate, *id.* ¶ 22, Ex. K; the 60+ day delinquency and foreclosure rates for subprime mortgages, *id.* ¶ 25, Ex. M; the performance of the ABX Index, *id.* ¶ 33, Ex. V; and contemporaneous analysis provided in numerous financial publications. Dr. Cox will testify, on the basis of this analysis, that at the time ABACUS issued there had been significant negative developments in the subprime sector that had been known publicly for a period of months. *Id.* ¶ 36.

Dr. Cox's report next demonstrates that this market data, in the form of market reports and analysis, was available to CDO investors by showing that market participants understood and reacted to it. In this section, Dr. Cox documents market reaction through publications describing trading during the period, and also through case evidence showing that ACA personnel received relevant market reports, circulated them internally, and commented on them. *See id.*, ¶¶ 37-40, 41-43.

Dr. Cox additionally offers an assessment of the information available to investors through the specific disclosures for the ABACUS transaction itself, analyzing details of the extensive risk disclosures, *id.* ¶¶ 64-65, Ex. AF, the disclosures regarding the composition and characteristics of the RMBS reference portfolio, *id.* ¶¶ 66-67, and the information provided by the ratings and coupon rates of the bonds, *id.* ¶¶ 72-73.

Finally, Dr. Cox assesses information that was available about Paulson itself. In this section of his report, Dr. Cox documents that to the extent Paulson had any reputation, it was not as a real estate investor, but rather as an event arbitrage hedge fund. *Id.* ¶¶ 44, 46-51. Dr.

4

Cox's market analysis additionally shows that information regarding Paulson's views on the housing market and short subprime investment strategy was available from public sources. *Id.* ¶¶ 53-57.

### C. Dr. Cox Does Not Purport To Offer An Opinion On The Views Of 2007 CDO Market Participants, And Is Eminently Qualified To Testify On The Opinions He Does Offer

The SEC argues that Dr. Cox is not qualified to assist the jury in reaching a materiality determination because he possesses no specific knowledge as to "what considerations were important to CDO investors in early 2007." SEC Cox Mem at 7. Specifically, the SEC complains that Dr. Cox failed to "interview or survey CDO market participants"; "is not aware of any surveys of CDO market participants concerning the factors they deem important in making investment decisions"; "has never structured a CDO, marketed a CDO, or selected reference obligations for a CDO"; "has never worked at or for a collateral manager or portfolio selection agent"; and "has never been involved in drafting a Rule 144A or Regulation S disclosure document"; among other things. *Id.* at 7-9. But to argue on this basis that Dr. Cox may not opine on economic and market factors that would contribute to the "total mix of information" available to ABACUS investors takes, again, a far too narrow view of the materiality inquiry. While it is certainly true that if the SEC had conducted a survey on the views of 2007 CDO market participants (it certainly has not disclosed any such study), this kind of information might have some probative value to the materiality inquiry (although it certainly wouldn't support the SEC's arguments), it is certainly not exclusive of factors the jury should consider under the objective standard set forth by the Supreme Court.

The SEC cites no case law for the proposition that the materiality inquiry here should be limited to the self-serving, *ex post facto* views of former ACA employees, and research does not reveal any. The case law the SEC does cite, moreover, is entirely off point. *Glowczenski v. Taser International, Inc.*, No. 04 Civ. 4052(WDW), 2012 WL 976050 (E.D.N.Y. March 22, 2012), involved the specific question whether a "drive stun," as opposed to a "probe

5

deployment," taser could cause muscle contractions leading to metabolic acidosis. The proposed expert, a forensic pathologist, opined that it could, but at his deposition revealed that the extent of his knowledge regarding tasers had been derived entirely from a twenty-minute Google search, that he had not had time to read the medical, scientific, electrical and engineering literature provided him by counsel, and, when presented with such information, essentially recanted his opinion. *See id.* at 7-8.

Similarly irrelevant is *Arista Records LLC v. Lime Group LLC*, No. 06 Civ. 5936(KMW), 2011 WL 1674796 (S.D.N.Y. May 2, 2011), in which the court excluded the statistical opinions of a witness who did not have a degree in statistics, had never published an article in statistics, and who had "never taken a class in a statistics department or one where statistics was the primary focus of the class." *Id.* at 5. In the same vein, *Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005), involved the exclusion of expert testimony from another forensic pathologist in a case where uncontroverted medical evidence showed that a suspect had been shot in the back by the police while fleeing a crime, but where the police had testified the suspect was facing them with a drawn weapon. *Id.* at 385-89. The expert attempted to offer an opinion he called the "misperception hypothesis," concluding that, because he found the officers' testimony credible, the officers must have experienced some manner of "optical illusion" at the time of the shooting. *Id.* at 399. His testimony was excluded because, among other things, he was not a "qualified expert in human perception or cognitive function." *Id.* at 399, n.13.

Dr. Cox and his opinion are wholly unlike the witnesses and opinions considered in the SEC's cases. Dr. Cox has served as a professor of economics as well as the Chief Economist, then Commissioner, then Acting Chairman of the SEC—the government agency responsible for overseeing the United States securities markets. As at least one case cited by the SEC makes clear, Dr. Cox's preeminent expertise in the field of economics and finance makes him qualified to testify on the issues on which he is offering opinions, which does not require him to have personal experience of the specific instruments at issue in this lawsuit, or to have conducted a market survey concerning such products. In *S.E.C. v. Badian*, 822 F. Supp. 2d 352

6

(S.D.N.Y. 2001), a case involving a specific type of "future-priced convertible debenture," the defendant moved for exclusion of the SEC's two experts because neither had specific experience with the type of security at issue.  The court denied the motion, finding that the SEC's two experts were qualified by virtue of being professors of economics and finance, and that their "extensive experience, although not specific to future-priced securities, [was] sufficient to provide them with the knowledge and skill necessary to evaluate the securities involved in this matter, especially their experience studying asset pricing, debt instruments and econometric modeling."  *Id.* at 363.

In this case, Dr. Cox is testifying as to the economic and market factors that inform the materiality inquiry as set forth in the standard established by the Supreme Court.  Specifically, he conducts an analysis of market information and the specific disclosures relating to the ABACUS transaction to demonstrate what manner of information comprised the "total mix" of information available to investors in 2007.  As a financial economist and former Chief Economist of the SEC, he is eminently qualified to perform this task.

The SEC additionally complains that Dr. Cox is not qualified because he lacks "regulatory experience [that would] qualify him with regard to CDOs."  On this argument, the SEC stresses that Dr. Cox left the SEC before CDOs became prevalent in the market, and before the SEC adopted Rule 144A, permitting private placement of securities issued by CDOs.

First, Dr. Cox offers his testimony in this case as a financial economist, not as a regulatory expert, and offers no opinion on how CDOs were or should be regulated.

Second, this case was brought not for violation of Rule 144A, but rather under Section 17 of the Securities Act of 1933 and Section 10 of the Securities Exchange Act of 1934, two provisions that were certainly in force when Dr. Cox was at the SEC.  Moreover, in complaining that Dr. Cox lacks regulatory experience in CDOs, the SEC omits to mention that the CDO market was, its own expert has testified, "basically an unregulated market" at the time of the events at issue in this case, Davies Ex. 2, and though the SEC proposed its first rule

addressing regulation of short positions in CDOs in September 2011, that rule remains in draft form.

### D. Dr. Cox Does Not Offer An Improper Legal Opinion On Materiality

As Dr. Cox states clearly in his report, he is not offering a legal opinion as to whether or not the alleged omission in this case is material—rather, his report sets forth his "analysis of the relevant economic factors," that will "assist the Court and jury in reaching a conclusion on the materiality of Paulson's identity, role, and economic interest in [ABACUS.]" In its motion to exclude Dr. Cox's testimony, the SEC states that "Dr. Cox testified at his deposition that the opinion he intends to offer at trial is that Paulson's role in the AC1 transaction was 'not material,'" citing to pages 131-133 of his deposition transcript. This statement is a distortion of the testimony the SEC cites. Dr. Cox used the word "material" in response to a direct question from the SEC as to whether a hypothetical non-disclosure would be "material." Cox Dep. Tr. at 131-133. Dr. Cox was not in that answer opining on the facts of this case, and he was not stating the opinion he intends to offer in this case.

As the case law cited by the SEC makes plain, there is a clear difference between expert testimony offering specialized knowledge and interpretation of the facts to assist the jury in reaching a legal determination, which is permitted, and expert testimony on "how the law ought to be applied to the facts of the case," which is prohibited. *See Ebbert v. Nassau County*, No. 05 Civ. 5445(FB)(AKT), 2008 WL 4443238 at *7 (E.D.N.Y. Sept. 26, 2008) (citing *Highland Capital Management, L.P. v. Schneider*, 379 F. Supp. 2d 461, 466-67 (S.D.N.Y. 2005)); *Sawant v. Ramsey*, No. 07 Civ. 0980, 2012 WL 2046812 at *1 (D. Conn. Jun. 6, 2012) ("in some instances, in the context of a much more complicated segment of the stock market, expert testimony may be admissible as helpful to suggest 'the inference which should be drawn from applying the specialized knowledge to the facts'") (quoting Notes of Advisory Committee on Proposed Rule 702, Fed. R. Evid.); *see also In re SLM Corp. Sec. Litig.*, No 08 Civ.

8

1029(WHP), 2012 WL 209095 *5 (S.D.N.Y. Jan. 24, 2012) ("'materiality' has a specific meaning for economists," "legal assessment of materiality is different").

As explained above, Dr. Cox's testimony will detail the relevant economic and market factors that constituted the "total mix of information" available to investors making a decision on whether to participate in a transaction like ABACUS, so that the jury may reach its own decision on whether the alleged omission regarding Paulson would have "significantly altered" that total mix from the perspective of a "reasonable investor." This manner of testimony will be particularly helpful to the jury in light of the SEC's apparent plan to limit its presentation of evidence on the issue to after-the-fact statements by the deal participants themselves. To the extent the Court sees fit to instruct counsel to avoid eliciting of the word "materiality" or other legal terminology by the expert witnesses, Mr. Tourre would have no objection, as this would not alter the substance of Dr. Cox's testimony or his conclusions. *See, e.g., United States v. Mavashev,* 08 Cr. 902(DLI)(MDG), 2010 WL 234773, at *4 (E.D.N.Y. Jan. 14, 2010).

## II. THE SEC'S OBJECTIONS TO DR. COX'S METHODOLOGY AND EMPIRICAL STUDIES ARE MISLEADING AND BASELESS

### A. The Argument That Dr. Cox Applied No Methodology Is Specious And Belied By Dr. Cox's Report

The SEC additionally argues that Dr. Cox failed to "employ a valid or reliable methodology," complaining that his opinions should be excluded because their sources "consist largely of press articles and book excerpts," and because they are founded upon "economic logic." *See* SEC Cox Mem at 10-12.

The SEC has entirely misunderstood the import of the analysis Dr. Cox offers. As explained above, Dr. Cox has conducted thorough and detailed market analysis to demonstrate the kind and quality of information available to investors at the time of the ABACUS transaction—a mode of analysis Dr. Cox, as former Chief Economist to the SEC, is uniquely qualified to conduct. His opinions refer to "press articles and book excerpts" because, in Dr. Cox's opinion as a financial economist, those were data points that were available to market

9

participants and which, as he shows, those participants reviewed and discussed. The SEC's implication that Dr. Cox has attempted to derive an analytical methodology from something he read in a newspaper article, SEC Cox Mem at 11, is disingenuous.

Moreover, the SEC's argument that an expert may not base an opinion upon "economic logic" is pure sophistry, SEC Cox Mem at 11-12, and willfully ignores the rigor of the analysis Dr. Cox actually conducted. Whether or not "economic logic" is a recognized field of study, economics clearly is. Beyond "press articles and book excerpts," SEC Cox Mem at 10, Dr. Cox additionally analyzed economic and financial data such as the housing price appreciation rate, the unemployment rate, homeowner equity values, total household worth, the rate of housing starts, U.S. mortgage debt levels, mortgage debt expressed as a percentage of gross domestic product, the rate of expansion of structured products issuance, the federal funds rate, the 60+ day delinquency and foreclosure rates for subprime mortgages, and the performance of the ABX Index, among other things. Cox Rep. ¶¶ 18-23, 32-33.

Once again, the SEC's case law does not support its arguments. To begin, the SEC again misinterprets the opinion in *Badian*. That case involved a debenture with a "price risk protection" feature that permitted the defendant to convert his debt into equity at a rate tied to the equity stock's price. The defendant was accused by the SEC of manipulating the price of the stock to take advantage of this feature in the debenture. *Badian,* 822 F. Supp. 2d at 356. The Court excluded the report of defendant's experts because, in opining that the defendant had no incentive to manipulate the stock price, the expert entirely failed to address the "price risk protection" feature while at the same time asserting that the defendant was exposed to price risk, offering only generalized economic statements in support. *Id.* at 359. It was in that context that the court made the statement quoted by the SEC: "Generalized statements, such as these, about economic conditions or company attributes are insufficient to assist the jury in its evaluation of *the particular circumstances of this case and the SEC's claims*." *Id*. (emphasis added). Entirely shorn of context, the quote might appear to support the SEC's argument, but actually reading the opinion reveals this it does no such thing. Despite leveling almost every other conceivable

10

objection to Dr. Cox's testimony, the SEC nowhere claims that Dr. Cox has failed to address any key feature of the SEC's allegations, and, though it objects on supposed "methodological" grounds, nowhere claims that Dr. Cox's opinions are not relevant to the case's issues. *Badian*, accordingly, does not apply here.

Nor does *Weiner v. Snapple Beverage Co.*, No. 07 Civ. 8742(DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010), a case where testimony of an economist was offered, at class certification, to establish that a putative class of aggrieved Snapple consumers could rely upon generalized proof of causation and injury. *Id.* at *7. As the *Weiner* opinion explains, the proposed expert's report was not actually an explanation of a methodology that would permit such generalized proof, but rather a statement of intent to develop such a methodology in the future using "studies and market research," which studies and research the report did not then identify. *Id.* at *8. The implication seems to be, from the SEC's parenthetical quote, that Dr. Cox "cited no 'specific studies or market research,' [and] referred 'primarily to newspaper articles and websites… .'" SEC Cox Mem at 11. That implication is unfounded. Against the possibility that there is any real doubt on this point, the Court is respectfully referred to Exhibit B of Dr. Cox's report which lists, over the course of five pages, the technical data sources, SEC filings and documents, articles, analyst reports, books, and academic literature that Dr. Cox relied upon in developing his opinions, and which are cited throughout every paragraph of his report.

The SEC proceeds to cite *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007), and *Zaremba v. General Motors Corp.*, 360 F.3d 355 (2d Cir. 2004), cases that suggest that an expert's methodologies should be subject to heightened scrutiny where the expert lacks basic qualifications to render the opinion he or she offers. The SEC's argument, in connection with this authority, is that "Dr. Cox's dearth of relevant experience with CDOs and CDO market participants, [sic] makes his experienced-based approach unreliable." SEC Cox Mem at 11. Once again, as explained above, Dr. Cox has offered no opinion on the views of

CDO market participants, on surveys regarding the same, or even on the technical or structural aspects of CDOs themselves.

Nor is Dr. Cox's opinion based solely on "experience" of CDOs specifically, which is how that term is employed in *Highland Capital*, 379 F. Supp. 2d at 473, n.2. Dr. Cox's opinions are based on his experience only in the sense that his educational and professional experience has trained him to become a preeminent expert in financial economics and market analysis. The portion of *Highland Capital* the SEC cites addressed testimony from a former U.S. attorney that, based on his experience, he though the government would investigate the opposing party for securities violations. *Id.* The court excluded that testimony for multiple reasons, but additionally observed, in a footnote, that the expert had not described how his experience had led him to that conclusion. Dr. Cox's analysis in this case, by contrast, is meticulously explained and thoroughly documented. The argument that the SEC has attempted to gin up here—that it is somehow unreliable for being "experience-based"—is baseless in this context and should be rejected accordingly.

### B. The SEC's Objections To The Empirical Studies Offered In Dr. Cox's Report Are Baseless

The SEC additionally argues that two empirical analyses offered by Dr. Cox are "fatally flawed" and must be excluded. SEC Cox Mem at 13-15.

The first of these is based on a report from Standard & Poors estimating deal-level lifetime loss projections for a set of RMBS deals with reference obligations contained in the ABACUS portfolio, and another, larger set of deals with reference obligations that were not. As Dr. Cox explains in his report, these RMBS transactions were of both 2006 and 2007 vintage. By comparing the two sets, Dr. Cox showed that the difference in loss figures was not statistically significant as between the two sets. As Dr. Cox makes clear, this study was conducted to confirm the opinions he reached on the basis of market analysis, and was not the basis of his opinions. Cox. Rep. at 52; Cox Dep. Tr. at 166.

The SEC objects to this study, first, because the comparison sets contained RMBS deals from all of 2007, including those that post-dated ABACUS's closing in April of that year. SEC Cox Mem at 13-15. The SEC's objection is somewhat surprising in light of the fact that its own expert, Andrew Davidson, proffered a similar study in which he chose to compare the ABACUS portfolio, which contained bonds issued in 2006 and the first quarter of 2007, with ABX 2006-H2, an index containing deals from the first and second quarters of 2006, but excluding deals from the third and fourth quarters of 2006 and the first quarter of 2007. Davies Ex. 3 (Davidson Dep. Tr. at 171-72). The SEC will be able to cross examine Dr. Cox at trial as to how his choice of comparison set may have impacted the result, just as Mr. Tourre will be able to question Mr. Davidson. Alternatively, to the extent the SEC argues these factors render Dr. Cox's study inadmissible, this would require exclusion of Davidson's as well.

The SEC further objects to Dr. Cox's use of the S&P study because he was unable, at his deposition, to reproduce verbally the calculation that had been run to establish the lack of statistical significance, which the SEC complains had been performed by an assistant. The SEC was provided by letter with the calculation methodology. *See* Davies Ex. 4. As the several page "log of steps" shows, this was not the type of calculation one could expect a deponent to keep in his head and reproduce on demand.

The second empirical study the SEC objects to is a survey of the disclosure materials for 24 CDO transactions, which Dr. Cox compiled to demonstrate that such disclosure materials did not typically disclose the identity and economic interest of any party apart from the initial short, which was typically the underwriter, and, in some cases, the equity investor. *See* Cox. Rep. ¶¶ 69-70; Cox Dep. Tr. at 224-229. The SEC complains that this study should be excluded because Dr. Cox does not know whether undisclosed short counterparties in those transactions played any role in portfolio selection. Once again, this objection goes to weight, and the SEC is free to explore this issue on cross examination. It is not, however, proper basis for exclusion under *Daubert*.

13

**CONCLUSION**

For all the foregoing reasons, Fabrice Tourre respectfully requests that the Court deny the SEC's *Daubert* Motion To Exclude The Opinion Testimony Of Dr. Charles C Cox.

Dated: March 29, 2013
New York, New York

Respectfully submitted,

/s/ Pamela Rogers Chepiga
Pamela Rogers Chepiga
(pamela.chepiga@allenovery.com)
David C. Esseks
(david.esseks@allenovery.com)
Andrew Rhys Davies
(andrew.rhys.davies@allenovery.com)
Brandon D. O'Neil
(brandon.o'neil@allenovery.com)

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

*Attorneys for Fabrice Tourre*