UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                              :
SECURITIES AND EXCHANGE COMMISSION,           :
                                              :
                              Plaintiff,      :
                                              :  10 Civ. 3229 (KBF)
                      v.                       :
                                              :  ECF Case
FABRICE TOURRE,                               :
                                              :
                              Defendant.      :
_____ :


SEC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO PRECLUDE THE SEC'S RELIANCE ON THE JANUARY 17
CALL AND TO STRIKE THE JANUARY 17 CALL AND RELATED EXHIBITS

Matthew T. Martens
Richard E. Simpson
Christian D. H. Schultz
Bridget Fitzpatrick
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4740 (Schultz)
(202) 772-9362 (facsimile)
schultzc@sec.gov

Dated:  April 5, 2013

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................4

    A.  ACA Produces an October 2008 Log Only to the SEC's New
        York Regional Office in an Unrelated Investigation ..............................................4

    B.  ACA Did Not Produce Its October 2008 Log in the
        AC1 Investigation ....................................................................................................5

    C.  Discovery in this Litigation ....................................................................................6

    D.  Tourre Twice Elected To Forego Discovery of ACA Phone Records..........................6

    E.  The SEC's NYRO Receives Recordings From ACA in Fall of 2012
        and They Were Timely Provided to Tourre, Who Never Challenged
        ACA's Non-Production of These Materials in Response to Tourre's Subpoena ..........7

    F.  GS&Co Produces the January 17 Recording to Both the SEC and
        Tourre in December 2012 ........................................................................................8

    G.  The SEC's Motion for Partial Summary Judgment ....................................................8

    H.  Tourre's Counsel Corrects Her Misrepresentation That AC1
        Investigation Attorneys  Were "Well Aware" of ACA's Recordings
        in October 2008........................................................................................................9

STANDARD OF REVIEW .......................................................................................................10

ARGUMENT ...........................................................................................................................11

I.     THE SEC DID NOT VIOLATE RULE 26(a) REGARDING THE
      JANUARY 17 RECORDING OR ACA'S OCTOBER 2008 LOG ..................................12

    A.  Rule 26(a) Required Initial Disclosure of Materials in the
        SEC's Possession, Custody, or Control that the SEC
        May Use to Support its Claims................................................................................12

    B.  It Was Impossible for SEC to Make Any Rule 26(a) Disclosure
        in August 2010 Regarding the January 17 Recording
        That it Only First Learned about in December 2012 ....................................................13

    C.  The SEC Did Not Violate Any Rule 26(a) Disclosure Obligation
        Regarding the October 2008 Log Produced to NYRO in 2008 ...................................13

II.    IF THE SEC FAILED TO DISCLOSE THE ACA OCTOBER 2008 LOG
      UNDER RULE 26(a), IT WAS SUBSTANTIALLY JUSTIFIED BECAUSE
      ACA DID NOT PRODUCE THE LOG IN THE AC1 INVESTIGATION....................14

III.    THE JANUARY 17 RECORDING IS SUBSTANTIAL EVIDENCE OF
        GS&CO'S AND TOURRE'S FRAUD AND ITS EXCLUSION WOULD
        PREJUDICE THE TRUTH SEEKING FUNCTION OF THE COURT..........................16

IV.     TOURRE HAS SUFFERED NO PREJUDICE THAT COULD NOT BE
        CURED BY A BRIEF DISCOVERY EXTENSION.........................................................17

V.      COURTS HAVE PERMITTED USE OF RECORDINGS PRODUCED
        AFTER DISCOVERY AND EVEN AT TRIAL................................................................19

VI.     THE JANUARY 17 RECORDING IS NOT HEARSAY ...............................................20

VII.    THE JANUARY 17 RECORDING IS UNQUESTIONABLY RELEVANT
        TO THIS LITIGATION EVEN THOUGH TOURRE IS NOT ON THE CALL ............21

CONCLUSION....................................................................................................................22

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*Am. Stock Exch., LLC v. Mopex, Inc.*,
    215 F.R.D. 87 (S.D.N.Y. 2002) ............................................................................10, 14

*Anderson v. United States*,
    417 U.S. 211 (1974)....................................................................................................20

*Baker v. Canadian Nat'l/Illinois Cent. R.R.*,
    536 F.3d 357 (5th Cir. 2008) ................................................................................19, 20

*Broadus v. CSX Transp., Inc.*,
    Civil Action No. 08-1201, 2009 WL 1402025 (E.D. La. May 14, 2009).........................20

*Heiko & Levy, P.C. v. Dun & Bradstreep Corp.*,
    No. 95 Civ. 5739 (WK) (HBP), 1997 WL 124077 (S.D.N.Y. Mar. 18, 1997)................19

*In re Fosamax Prods. Liab. Litig.*,
    647 F. Supp. 2d 265 (S.D.N.Y. 2009).....................................................................16, 19

*In re Initial Pub. Offering Sec. Litig.*,
    220 F.R.D. 30 (S.D.N.Y. 2003) ......................................................................3, 12, 13

*In re Teligent, Inc.*,
    Bankr. No. 01-12974 (SMB), 2006 WL 1030417 (S.D.N.Y. Apr. 13, 2006) ..................18

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*,
    77 F. Supp. 2d 446 (S.D.N.Y. 1999)...................................................................... *passim*

*Kunstler v. City of New York*,
    242 F.R.D. 261 (S.D.N.Y. 2007) ....................................................................3, 10, 14, 15

*Outley v. City of New York*,
    837 F.2d 587 (2d Cir. 1988).........................................................................11, 15, 17

*R.F.M.A.S., Inc. v. So*,
    271 F.R.D. 13 (S.D.N.Y. 2010) .............................................................................17, 18

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
    280 F.R.D. 147 (S.D.N.Y. 2012) .....................................................................................3

*Salas v. Brigham*,
    No. CIV 08–1184 JB/RLP, 2010 WL 4322622 (D.N.M. Oct. 6, 2010) ...........................20

*S.E.C. v. Apuzzo,*
    689 F.3d 204 (2d Cir. 2012)........................................................................21

*S.E.C. v. DiBella,*
    587 F.3d 553 (2d Cir. 2009)........................................................................21

*Softel, Inc. v. Dragon Med. & Scientific Comm'ns, Inc.,*
    118 F.3d 955 (2d Cir. 1997)..............................................................3, 10, 16

*Tischmann v. ITT/Sheraton Corp.,*
    145 F.3d 561 (2d Cir. 1998)..........................................................................2

*Titan Indus. Corp. v. Fed. Ins. Co.,*
    94 Civ. 726(KMW), 1995 WL 438843 (S.D.N.Y. July 25, 1995) ..........4, 18, 19

*United States v. Dunloy,*
    584 F.2d 6 (2d Cir. 1978)............................................................................21

*United States v. Feldman,*
    825 F.2d 124 (7th Cir. 1987) ......................................................................21

*United States v. Gibson,*
    690 F.2d 697 (9th Cir. 1982) ......................................................................21

*United States v. Hathaway,*
    798 F.2d 902 (6th Cir. 1986) ......................................................................21

*United States v. Lewis,*
    594 F.3d 1270 (10th Cir. 2010) ..................................................................21

*United States v. Puzzo,*
    928 F.2d 1356 (2d Cir. 1991)......................................................................21

*United States v. Song,*
    436 F.3d 137 (2d Cir. 2006)........................................................................21

*United States v. Wellington,*
    754 F.2d 1457 (9th Cir. 1985) ....................................................................21

*Whittaker Corp. v. Execuair Corp.,*
    736 F.2d 1341 (9th Cir. 1984) ....................................................................19

## **STATUTES**

Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b) ............................20, 22

Fed. R. Civ. P. 26(a) ..................................................................................... *passim*

Fed. R. Civ. P. 26(a)(1) advisory committee's note (2000 Amendment)...............................12, 13

Fed. R. Civ. P. 26(e) .............................................................................................2

Fed. R. Civ. P. 30(b)(6)..............................................................................7, 8, 17

Fed. R. Civ. P. 34(a)(1)(A) ...............................................................................5, 12

Fed. R. Civ. P. 37(c) ..........................................................................................2, 10, 11

Fed. R. Evid. 801(c)...............................................................................................20

## OTHER AUTHORITIES

Local Civ. Rule 26.3 ...............................................................................................5

Plaintiff U.S. Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in opposition to defendant Fabrice Tourre's motion under Rule 37 of the Federal Rules of Civil Procedure to preclude the SEC from introducing into evidence at trial, and from relying on its motion for partial summary judgment, the audiotape of a January 17, 2007 telephone conversation between Gail Kreitman and Lucas Westreich.

## PRELIMINARY STATEMENT

This case concerns a fraud by Fabrice Tourre and his employer, Goldman Sachs & Co ("GS&Co"), in connection with the offer and sale of securities in the ABACUS 2007-AC1 ("AC1") synthetic collateralized debt obligation ("CDO") transaction. As part of that fraud, Tourre tricked ACA Management, LLC ("ACA") into serving as the portfolio selection agent for the AC1 transaction by misrepresenting to ACA that the Paulson & Co. hedge fund ("Paulson"), which participated in the selection of the CDO's reference portfolio, intended to make a long investment in the CDO's equity tranche once the portfolio was selected. Tourre knew that Paulson never intended to invest in the equity tranche of the AC1 transaction, but instead intended to take a purely short position on the AC1 CDO's reference portfolio.

In early January 2007, Tourre and Paulson were attempting to persuade ACA to serve as the portfolio selection agent for the AC1 transaction. As the SEC's Amended Complaint alleges, Tourre sent an e-mail to ACA on January 10, 2007, falsely stating that the equity tranche of the AC1 transaction was "pre-committed." (Apr. 5, 2013 Schultz Declaration ("Schultz Decl.") Ex. 1.) In addition, Tourre's "traditional protocol" was to communicate with ACA through GS&Co salesperson Gail Kreitman. (Schultz Decl. Ex. 2 at 193-94.) At 7:46 a.m. on the morning of January 17, Tourre sent an e-mail to Kreitman stating, "Let's try to close the loop with ACA this morning!" (Schultz Decl. Ex. 3.) That same day, Kreitman spoke with ACA – in a recorded telephone call – and falsely stated that GS&Co was "placing a hundred percent of the equity" with Paulson.[1] (Schultz Decl. Ex. 4.) Believing Paulson was an equity investor in AC1, ACA

---

[1]     The SEC does not contend Kreitman was aware the information she communicated to ACA was false.

agreed to serve as portfolio selection agent for that transaction.  (Schultz Decl. Ex. 5.)  ACA also made a nearly $1 billion long investment in the AC1 reference portfolio.  (Schultz Decl. Ex. 6.)

Tourre has moved under Rule 37(c)(1) to preclude the SEC from using the January 17 recording in support of its motion for partial summary judgment or at trial, on the ground that the SEC allegedly violated its Rule 26(a) initial disclosure obligations with regard to the recording and an ACA telephone log from October 2008.  Mem. at 8-10.  ***To be clear, the SEC has committed no Rule 26(a) violation in this matter regarding either the January 17 recording or ACA's October 2008 log***.  Tourre offers an incomplete and misleading rendition of the events concerning the recording and log at issue in his motion.  Based on the complete version of events, and for the following reasons, the Court should reject Tourre's request to impose the "extreme" and "rare" sanction of preclusion and his attempt thereby to subvert the truth-seeking function of this proceeding.

***First,*** to sanction a party under Rule 37(c)(1) there must be a disclosure failure under Rule 26(a).[2]  Rule 26(a) required the SEC to include in its August 2010 initial disclosures materials that the SEC both "has in its possession, custody, or control and may use to support its claims…."  Fed. R. Civ. P. 26(a)(1)(A)(ii).  Because it is undisputed that the SEC did not have the January 17 recording in its "possession, custody, or control" until December 2012, the SEC could not make a Rule 26(a) initial disclosure in August 2010 of the January 17 recording.  Thus, there can be no finding of a Rule 26(a) disclosure failure with respect to the recording.

***Second***, with respect to ACA's October 2008 telephone log – which Tourre failed to advise the Court was only ever produced to the SEC's New York Regional Office ("NYRO") in

---

[2]     Rule 37(c)(1) also allows for sanctioning a party that fails to comply with its Rule 26(e) obligations to supplement both its Rule 26(a) disclosures or its responses to interrogatories or requests for production.  Tourre's motion makes clear that he is seeking Rule 37(c)(1) preclusion as a sanction only for alleged Rule 26(a) initial disclosure violations and makes no reference to Rule 26(e) or any argument that the SEC violated Rule 26(e).  Thus, any Rule 26(e) argument would be waived if raised in reply.  *See Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 568 n.4 (2d Cir. 1998) (failure to raise argument until reply brief constitutes waiver).

an unrelated investigation,[3] and was not made available to SEC counsel involved in this matter until the fall of 2012 – the log does not list the January 17 call. Therefore, it is not a document that the SEC will "use to support its claims," and is not a document that the SEC had to disclose as part of its Rule 26(a) initial disclosures even if SEC counsel had known about the log at that time.[4] Accordingly, there can be no finding of a Rule 26(a) initial disclosure failure regarding the log. *In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30, 33 (S.D.N.Y. 2003).

**Third**, even assuming the SEC committed a Rule 26(a) initial disclosure violation, preclusion is an "extreme sanction" and "harsh remedy" that "should be imposed only in rare situations." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156-57 (S.D.N.Y. 2012) (citations omitted). This case is not one of those rare exceptions. "In determining whether preclusion or another sanction would be appropriate, courts should consider . . . 'the importance of . . . the precluded [evidence].'" *Id.* at 157 (quoting *Softel, Inc. v. Dragon Med. & Scientific Comm'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)). The January 17 recording is substantial evidence of the fraud that Tourre and GS&Co perpetrated on ACA. Given "[t]he high stakes nature of this case and the complexity of the issues to be tried," precluding such evidence "would [be] a particularly severe result," *id.* at 162, and would subvert the truth-seeking function of the court. *See, e.g., Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.,* 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999) (holding that preclusion "is a drastic remedy and will apply only in situations where the failure to disclose represents a flagrant bad faith and callous disregard of the rules").

**Fourth**, again assuming *arguendo* that any Rule 26(a) initial disclosure failure occurred regarding ACA's October 2008 log, the SEC was substantially justified in failing to disclose the log with its August 2010 initial disclosures. *Kunstler v. City of New York*, 242 F.R.D. 261, 264-

---

[3]     Tourre conceded as he must that ACA's October 2008 log was produced to the SEC's NYRO in another investigation. (Schultz Decl. Ex. 7) (indicating the "ACA Log of Voice Recordings was produced" in "the ACA investigation, (NY-7838)").

[4]     As explained in detail below, SEC counsel involved in the investigation and litigation of this matter did not learn about ACA's October 2008 log until the fall of 2012.

3

65 (S.D.N.Y. 2007).  Indeed, if there is any fault behind the SEC's failure to produce the log at the outset of discovery, it rests with ACA, which never produced the log to the SEC attorneys involved in the AC1 investigation.

*Fifth*, Tourre has not suffered unfair prejudice because the Court can grant a brief discovery extension (requiring no adjournment of the trial date) to allow for the two or three additional depositions that would be necessary.  *See, e.g.*, *Titan Indus. Corp. v. Fed. Ins. Co.*, 94 Civ. 726(KMW), 1995 WL 438843, at *1, *5 (S.D.N.Y. July 25, 1995) (re-opening of discovery for limited depositions relating to bank checks produced after the close of fact discovery but during expert-witness discovery).  Notably, Tourre failed to advise the Court that] as early as November 2012 and as recently as January 2013 – 6-8 months before trial – SEC counsel had discussions with both defense counsel and ACA counsel about ACA producing additional recordings and the potential for additional depositions, including of the individuals on the January 17 recording.  Tourre declined all proposals.  In light of this decision by Tourre, his claim of prejudice rings hollow.

For these reasons and those that follow, Tourre's motion to preclude and to strike should be denied in its entirety.

## BACKGROUND

### A. ACA Produces an October 2008 Log to the SEC's New York Regional Office in an Unrelated Investigation.

In 2008, the SEC's NYRO was conducting an unrelated investigation of a financial institution other than GS&Co and a CDO offering other than AC1.  (Schultz Decl. Ex. 8 at 2.)  In the course of that unrelated investigation, ACA produced to NYRO, in October 2008, a log of certain telephone recordings in its possession.  (*Id.*; Chepiga Decl. Ex. O (Dkt. 209-15).)  No audio recordings were produced to NYRO for another four years, until August-October 2012. (Schultz Decl. Ex. 9 at 1.)  ACA's October 2008 log indicates on its face that it was being produced in a separate investigation, and identifies the phone lines from which the recordings were made, the ACA employees assigned to those lines, and the length of the calls.  (Chepiga

Decl. Ex. O (Dkt. 209-15.)  The log did not identify the content or subject matter of the listed calls.  (*Id*.; Schultz Decl. Ex. 9 at 2 (stating log "cannot reasonably be viewed as a document 'concerning any [AC1] transaction'".))  Most important, the January 17 recording was ***not*** listed on ACA's October 2008 log.  (Schultz Decl. Ex. 10; *see* Chepiga Decl. Ex. O (Dkt. 209-15) (failing to attach Westreich pages).)[5]

### B.  ACA Did Not Produce Its October 2008 Log in the AC1 Investigation.

In 2008, the SEC's Washington, D.C. Office was conducting an investigation of the AC1 transaction.  (Declaration of Reid Muoio ("Muoio Decl.") ¶ 2; Declaration of N. Creola Kelly ("Kelly Decl.") ¶ 2; Declaration of Jeffrey Leasure ("Leasure Decl.") ¶ 2)  As part of that investigation, the SEC served informal letter requests on ACA in 2008 seeking "communications" and "documents" relating to the AC1 investigation.  (Kelly Decl. ¶ 4 & Exhs. A-C.)  The informal letter requests did not define the terms "communications" or "documents,"[6] (Kelly Decl. at Exhs. A-B), and the SEC investigative staff did not ask ACA about the existence of audio recordings.  (Muoio Decl. ¶ 10-11; Kelly Decl. ¶ 11-12; Leasure Decl. ¶ 9-10).)  ACA did not produce a copy of the October 2008 log or any recordings in response to the informal letter requests in the AC1 investigation, (Muoio Decl. ¶ 9; Kelly Decl. ¶ 10; Leasure Decl. ¶ 8), and the SEC attorneys investigating the AC1 transaction were not aware of the log or any recordings until the fall of 2012.  (Muoio Decl. ¶ 7; Kelly Decl. ¶ 8; Leasure Decl. ¶ 4).)

---

[5]     ACA also produced 4.3 million pages of documents to NYRO in the ACA Investigation, which SEC counsel in this matter learned about and advised Tourre's counsel of in January 2013.  (Schultz Decl. Ex. 11 (Jan 11, 2013 Email).)  The parties exchanged correspondence regarding these documents throughout January 2013, and the SEC made a supplemental production of materials in response to certain of Tourre's document requests on February 1, 2013.  (Schultz Decl. Ex. 12.)

[6]     While Tourre notes that the Federal Rules of Civil Procedure and the Local Civil Rules define "documents" to include "sound recordings," Fed. R. Civ. P. 34(a)(1)(A); Local Civ. Rule 26.3, the SEC's informal documents requests issued during its investigations are not governed by those rules and the definitions therein.  Accordingly, read technically, the SEC's informal requests to ACA did not encompass audio recordings.  And, notably, the "data delivery standards" attached to the requests address production of image and text files and advise that production in "any other proposed formats . . . should not be produced without discussions and approval from the legal and technical staff of the Division of Enforcement," and asks for a "summary of the number of records, images, emails, and attachments in the production."  (Dkt. 209-1 at 11 of 16.)  At the same time, the SEC recognizes that recordings are "documents" for purposes of  discovery in this litigation, and the SEC has never argued otherwise.

**C.  Discovery in this Litigation.**

On August 9, 2010, the parties exchanged their initial disclosures in the instant litigation. The SEC disclosed that GS&Co salesperson Gail Kreitman, among others, could have information upon which it would rely to support its claims.  (*See* Schultz Decl. Ex. 13 at 2.)  The defense disclosed that both Gail Kreitman and ACA employee Lucas Westreich, among others, could have discoverable information pertaining to the SEC's claims.  (*See* Schultz Decl. Ex. 14 at 3, 4.)  Although Kreitman and Westreich both testified in the AC1 investigation, neither the SEC nor Tourre deposed them during discovery.  During the course of the depositions in this matter, the defense did not ask a single ACA witness, including its president, whether the company recorded any telephone lines.

**D.  Tourre Twice Elected To Forego Discovery of ACA Phone Records.**

In the fall of 2010, Tourre sent ACA a broad discovery subpoena seeking "[a]ll documents concerning the ABACUS 2007-AC1 transaction, including, among other things, "communications with Goldman and or [Tourre] between January 1, 2004 and December 31, 2007 about any residential mortgage backed security, CDO, other mortgage-related financial instrument or transaction or CDS."  (Schultz Decl. Ex. 15 at 3, 7 & Req. 7.)  On May 13, 2011, Tourre communicated to ACA that his discovery requests encompassed "phone records," and proposed a draft letter to Magistrate Judge Dolinger indicating that he had previously "agreed to forego production of such records during the course of [his] negotiations" with ACA, but still contemplated seeking court intervention to force ACA to produce the materials.  (Schultz Decl. Ex. 16.)  On May 31, 2011, describing what sounds precisely like the October 2008 log that ACA produced to NYRO in October 2008, ACA's counsel advised that "ACA's internal records identify phone calls to or from certain ACA phone numbers . . . but do not identify (i) whether these calls were incoming or outgoing, or (ii) the incoming or outgoing phone numbers." (Schultz Decl. Ex. 17 at 3.)  Tourre's counsel proceeded to communicate with ACA's counsel

about ACA's phone records into June 2011, before again telling ACA that "we do not intend to seek the phone records at this time." (*Id*. at 1 (June 8, 2011, 3:10 p.m. email).)

### E. The SEC's NYRO Receives Recordings From ACA in Fall of 2012 and They Were Timely Provided to Tourre, Who Never Challenged ACA's Non-Production of these Materials in Response to Tourre's Subpoena.

Between August and October 2012, ACA produced to NYRO, for the first time, approximately 6,900 audio recordings as part of the above-referenced unrelated investigation of another financial institution. (Schultz Decl. Ex. 9 at 1.)  The recordings dated from March 12, 2007 through July 31, 2007. (Schultz Decl. Ex. 18.)  The Washington, D.C. staff involved in this matter first learned about these recordings in the fall of 2012. (Muoio Decl. ¶ 7; Kelly Decl. ¶ 8; Leasure Decl. ¶ 4.)  On the day that SEC counsel in Washington, D.C. learned from ACA that there may be a subset of the 6,900 recordings that ACA had determined may relate to AC1 and/or Tourre, SEC counsel advised Tourre's counsel that the SEC had received the recordings and offered to provide copies to Tourre's counsel. (Schultz Decl. Ex. 18.)  Defense counsel demanded production of all 6,900 recordings, and the recordings and the logs from ACA were provided to the defense on November 28, 2012, along with a list of 48 calls that ACA had identified as being potentially related to this matter. (Chepiga Decl. Ex. N (Dkt. No. 209-14) (Nov. 28, 2012 SEC Letter to Tourre's Counsel).)

Upon learning of the existence of the logs and recordings that ACA produced to NYRO, Tourre's counsel immediately contacted ACA directly, demanding production of these materials and expressing incredulity that ACA had not produced them to Tourre in response to his subpoena. (Schultz Decl. Ex. 19.)  Tourre's counsel "[f]ully reserve[ed] all of [his] rights" and demanded that ACA provide a Rule 30(b)(6) witness to testify concerning ACA's record retention and the circumstances of "this deeply concerning development." (*Id*.)  Throughout November and December 2012, Tourre proceeded to communicate with ACA's counsel about the October 2008 log and recordings.  On November 30, 2012, ACA proposed a joint call with the SEC and Tourre about additional discovery requests from Tourre. (Schultz Decl. Ex. 20.)

On December 10, 2012, Tourre's counsel acknowledged to ACA's counsel that its October 2008 log and the 6,900 recordings were produced to the SEC in "another investigation," asserted that the materials should have been produced in response to Tourre's subpoena to ACA, and reserved all rights to seek court intervention "with respect to ACA's response to the Subpoena." (Schultz Decl. Ex. 21.)  To date, Tourre has never sought to conduct the Rule 30(b)(6) deposition of ACA that he demanded in November 2012, and has never moved to compel ACA to produce recordings or otherwise sought any relief from the Court concerning ACA's production.

**F.  GS&Co Produces the January 17 Recording to Both the SEC and Tourre in December 2012.**

On December 14, 2012, the SEC and Tourre's counsel simultaneously received an e-mail from GS&Co's counsel attaching correspondence recently received from ACA's counsel in its private litigation with GS&Co.  (Chepiga Decl. Ex. R (Dkt. No. 209-18).)  The letter from ACA's counsel quoted extensively from an audio recording of a telephone conversation that took place on January 17, 2007 between GS&Co salesperson Gail Kreitman and Lucas Westreich of ACA.  (*Id.*)  GS&Co subsequently provided a recording of the conversation to both the SEC and Tourre's counsel.  (Schultz Decl. Ex. 22.)  On December 20, 2013, the SEC and Tourre's counsel spoke by telephone with ACA's counsel, during which call ACA's counsel offered to entertain reasonable requests for additional recordings Tourre's counsel declined.  (Schultz Decl. Ex. 23.)  In addition, the SEC offered in writing to consent to additional depositions necessitated by the recordings.  (*Id.*)  The SEC envisioned that perhaps the defense would want to depose the two parties to the January 17 recording, Gail Kreitman of GS&Co and Lucas Westreich of ACA.  Tourre's counsel again declined to pursue any additional depositions or to request any additional recordings from ACA.  (*Id.*)

**G.  The SEC's Motion for Partial Summary Judgment.**

On March 1, 2013, the SEC filed a motion for partial summary judgment against Tourre for his fraudulent representations to ACA about Paulson's intention to invest in the equity tranche of AC1.  (Dkt. Nos. 191-94.)  In support of that motion, the SEC attached a copy of

Tourre's fraudulent January 10 e-mail to ACA in which he falsely represented that the equity tranche of the AC1 CDO was "pre-committed" and that the incentives of Paulson and ACA in that transaction were "align[ed]."   (*Id*. at Ex. 9 (Dkt. No. 194-9).)   Tourre testified at his deposition that his "traditional protocol" was to communicate with ACA through Kreitman. (Schultz Decl. Ex. 2 at 193-94.)   In addition, the SEC attached a declaration from Kreitman authenticating her voice in and attaching a transcript of the recording in which Kreitman – who on the morning of the call had received an e-mail from Tourre emphatically urging her to "close the loop" with ACA – falsely represents to ACA that GS&Co was "placing a hundred percent of the equity" with Paulson.  (SEC Mot. for Partial Summ. J. at Ex. 13 (Dkt. No. 194-13).)

### H. Tourre's Counsel Corrects Her Misrepresentation That AC1 Investigation Attorneys Were "Well Aware" of ACA's Recordings in October 2008.

Tourre filed the pending preclusion motion on March 15, 2013.  (Dkt. No. 208.)  At the SEC's request, the Court held a teleconference on Tourre's motion on March 21, 2013.  (Dkt. No. 211)  During the teleconference, Tourre's counsel alleged that "several people . . . listed as attorneys for the SEC in this very case . . . were well aware in October 2008 that the SEC had recordings of Mr. Westreich."  (Schultz Decl. Ex. 24 at 14.)  Tourre's counsel further asserted that "the lawyers of record in our case knew of the existence of these tapes," "knew that ACA had taped lines," "and knew one of those taped lines was Mr. Westreich and that another taped line was Laura Schwartz."  (*Id*. at 14:17-19.)  When pressed by the Court, Tourre's counsel identified "Creola Kelly" – one of the SEC attorneys on the AC1 investigation – and "SEC lawyers who were her supervisors."  (*Id*. at 14:24-15:1.)

Later that same day, the SEC sent Tourre's counsel an e-mail demanding identification and production of the evidence that provided her with the good faith basis to identify Ms. Kelly to the Court as one of the SEC attorneys who allegedly "knew" about ACA's recordings in October 2008.  (Schultz Decl. Ex. 25.)  Rather than respond to the SEC, Tourre's counsel sent a letter to the Court admitting that she had "mistakenly referenced Ms. Creola Kelly."  (Schultz Decl. Ex. 7.)  Tourre's counsel abandoned her "well aware" allegations from the day before and

instead asserted that Kenneth R. Lench and Reid A. Muoio, the co-heads of the SEC's Structured and New Products Unit, had "actual or constructive knowledge" of ACA's October 2008 log. (*Id.*)   Tourre's counsel erroneously claimed that Lench and Muoio supervise the NYRO investigations in which the log was produced.[7]   (*Id.*)   Tourre counsel ascribed similar "knowledge" to Andrew Calamari, currently the Regional Director of NYRO, (*id.*), who has done nothing in this case other than sign and file the Complaint and Amended Complaint.[8]

## STANDARD OF REVIEW

Under Rule 37(c)(1), sanctions such as the exclusion of evidence may not be imposed unless the party seeking to offer the evidence failed to comply with a disclosure obligation under Rule 26(a).  *Coventry First*, 280 F.R.D. at 156, 158-63.   Once a court determines that a Rule 26(a) violation occurred, the court should consider (1) whether the party was substantially justified in failing to make the disclosure, (2) the importance of the precluded evidence, (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence, and (4) the possibility of a continuance.  *Id.* at 157 (citing *Softel, Inc.*, 118 F.3d at 961). Courts in this district have explained that "substantial justification" means "'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'"  *Kunstler*, 242 F.R.D. at 264-65 (quoting *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002).   Further, "the test of substantial justification is satisfied if there exists a genuine dispute concerning compliance."  *Id.* at 265 (citations and internal quotations omitted).

---

[7]      Messrs. Lench and Muoio work out of the SEC's Washington, D. C. office.  They supervised the AC1 investigation, whereas the ACA investigation (NY-7838) is supervised only by attorneys on the NYRO staff and is not a Structured and New Products Unit investigation.  (Declaration of Kenneth Lench ¶ 4; Muoio Decl. ¶ 5.)

[8]      Andrew Calamari was the Associate Director and co-head of Enforcement at NYRO from 2004 to 2012 and, since October 2012, has been the Regional Director of NYRO.  (Declaration of Andrew Calamari ¶ 1.)  Mr. Calamari's only involvement in this case was to sign the Complaint and Amended Complaint, which he did because he is an attorney admitted in S.D.N.Y. and the trial counsel of record could not sign them in person and deliver them to the Court in New York in time for filing.  (*Id.* ¶ 3.)  Mr. Calamari has not signed any other pleadings, has not made any appearances in court, has not participated in any depositions, has not communicated with opposing counsel, or otherwise participated in this matter.  (*Id.* ¶¶ 3-4.)  Moreover, while the NYRO organizational chart places staff conducting the NYRO investigation (NY-7838) fell below Mr. Calamari by several levels, Mr. Calamari did not have knowledge of ACA's telephone log until July or August 2012.  (*Id.* ¶¶ 5.)

Preclusion is an "extreme sanction" and "harsh remedy" that "should be imposed only in rare situations." *Coventry First*, 280 F.R.D. at 156-57 (citations omitted); *Johnson Elec.*, 77 F. Supp. 2d at 458 (same). "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988). "[R]efusing to admit evidence that was not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents a flagrant bad faith and callous disregard of the rules," because preclusion undermines the truth-seeking function of the court. *Johnson Elec.*, 77 F. Supp. 2d at 458.

## ARGUMENT

The defense asks this Court to "sanction" the SEC under Rule 37(c)(1), for alleged Rule 26(a) discovery violations, and preclude the SEC from using the January 17 recording either in support of its motion for partial summary judgment or at trial. Mem. at 9-10. However, Tourre fails to identify any Rule 26(a) discovery violation by the SEC with regard to the January 17 recording, nor could he when the SEC only received a copy of it from GS&Co in December 2012 at the same time it was provided to Tourre. ACA's October 2008 log – which ACA produced only to NYRO in an unrelated investigation – makes no mention of the January 17 recording. Thus, the log is not a document that the SEC "may use to support its claims" and, accordingly, the SEC was not under an obligation to disclose it pursuant to Rule 26(a) even if counsel involved in this action had known about it. Because there was no Rule 26(a) violation regarding either the January 17 recording or ACA's October 2008 log, there is no basis under Rule 37(c) to preclude the SEC from using the January 17 recording both in support of its motion for summary judgment or at trial.

Even if the Court were to find the SEC failed in its initial disclosure obligations under Rule 26(a) regarding ACA's October 2008 log, that failure is substantially justified by ACA's failure to produce the log in the AC1 investigation. Further, the January 17 recording is such

compelling evidence of GS&Co's and Tourre's fraud that to preclude its use would undermine the truth-seeking function of the Court. Tourre is not unfairly prejudiced because GS&Co produced the January 17 recording in December 2012 – seven months in advance of trial. The SEC offered to consent to any additional depositions that Tourre needed, and ACA expressed its willingness to entertain reasonable requests for the production of additional recordings. Finally, lack of unfair prejudice is shown by Tourre's conscious decisions not to seek telephone records or audiotapes pursuant to his 2011 discovery subpoena to ACA or to seek relief from the Court when he was informed, in late 2012, of ACA's failure to produce the October 2008 log or any audiotapes. Accordingly, the defense motion to preclude should be denied.

I.   THE SEC DID NOT VIOLATE RULE 26(a) REGARDING EITHER THE JANUARY 17 RECORDING OR ACA'S OCTOBER 2008 LOG.

A.   Rule 26(a) Required Initial Disclosure of Materials in the SEC's Possession, Custody, or Control That the SEC May Use to Support its Claims.

Tourre argues that the SEC violated its Rule 26(a) initial disclosure obligations regarding the January 17 recording and ACA's October 2008 log that was produced to NYRO in October 2008. Mem. at 9-10. Rule 26(a)(1)(A)(ii) is clear that the parties must disclose, without waiting for discovery requests from an opposing party, copies of "all documents . . . that the disclosing party *has in its possession*, *custody*, *or control* **and** *may use to support its claims* or defenses." (Emphasis added.) "A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use." Advisory Committee Note to Rule 26(a)(1), 2000 Amendment; *see, e.g.*, *In re IPO Sec. Litig.*, 220 F.R.D. at 33 (holding that Rule 26(a) does not require disclosure of materials that party does not intend to use) (citing Advisory Committee Note to Rule 26(a)(1), 2000 Amendment). "Documents" are defined for purposes of the federal discovery rules as including "sound recordings." *Id.* 34(a)(1)(A).

B.   **It Was Impossible for SEC to Make Any Rule 26(a) Disclosure in August 2010 Regarding the January 17 Recording That it Only First Learned About in December 2012.**

The only document that Tourre challenges in this motion and that the SEC actually "may use to support its claims" is the January 17 recording.  It is undisputed that the SEC did not know about that recording, much less have the recording in its "possession, custody, or control," at any time prior to December 2012, when GS&Co simultaneously produced the January 17 recording to both the SEC and Tourre's counsel.  Because the SEC could not have made any disclosure of the January 17 recording in its October 2010 Rule 26(a) initial disclosures, it cannot be found to have violated its discovery obligations under that rule regarding the January 17 recording.

C.   **The SEC Did Not Violate Any Rule 26(a) Disclosure Obligation Regarding the October 2008 Log Produced to NYRO in 2008.**

Tourre asserts that the SEC violated its Rule 26(a) initial disclosure obligation by failing to produce in this litigation a copy of the telephone log that ACA only produced to NYRO in an unrelated investigation.  Mem. at 3, 4.  Neither the portion of ACA's October 2008 log attached to Tourre's motion, nor the portion of the log reflecting Westreich's calls, make any mention whatsoever of the January 17 recording – indeed, the log does not list any of Westreich's calls prior to January 29, 2007.  (Schultz Decl. Ex. 10; *cf*. Chepiga Decl. Ex. O (Dkt. 209-15).) Because ACA's October 2008 log makes no mention of the January 17 recording – which is the only recording the SEC anticipates it "may use to support its claims" – the October 2008 log is not (and could not have been) a document that the SEC "may [or will] use to support its claims." Fed. R. Civ. P. 26(a)(1)(A)(ii); Advisory Committee Note to Rule 26(a)(1), 2000 Amendment; *In re IPO Sec. Litig.*, 220 F.R.D. at 33 (citing Advisory Committee Note to Rule 26(a)(1), 2000 Amendment).  Thus, the October 2008 log would not have been required to be disclosed as part of the SEC's Rule 26(a) initial disclosures even if SEC counsel in this matter had known about the existence of the log at the time the disclosures were made in October 2010.

Tourre makes reference to the SEC's "repeated assurances that it would produce all documents that it 'intend[ed] to rely on or use in this litigation, regardless of whether those documents were formally part of the ABACUS 2007-AC1 Investigation.'"  Mem. at 10; *id.* at 3-4 (citing correspondence indicating Tourre sought production of materials relating to the ABACUS 2007-AC1 investigation).  This is beside the point because the log is not a document that the SEC "'intend[s] to rely on or use in this litigation.'"  *Id.* at 10.  Non-production of ACA's October 2008 log is consistent with the SEC's "repeated assurances," even if SEC counsel had known of the log prior to the fall of 2012, and the SEC informed Tourre that it intended to rely on the January 17 recording immediately after both parties received it from GS&Co.

## II.   IF THE SEC FAILED TO DISCLOSE THE ACA OCTOBER 2008 LOG UNDER RULE 26(a), IT WAS SUBSTANTIALLY JUSTIFIED BECAUSE ACA DID NOT PRODUCE THE LOG IN THE AC1 INVESTIGATION.

Even if the SEC's non-production of the telephone log in the fall of 2010 were a discovery violation under Rule 26(a)(1)(A)(ii), this "violation" was substantially justified. Courts in this district have explained that "substantial justification" is "'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'"  *Kunstler*, 242 F.R.D. at 265 (quoting *Am. Stock Exch.*, 215 F.R.D. at 93).  Further, "the test of substantial justification is satisfied if there exists a genuine dispute concerning compliance."  *Id.*  Indeed, the preclusion of evidence not disclosed in discovery is "'a drastic remedy and will apply only in situations where the failure to disclose represents . . . flagrant bad faith and callous disregard of the rules.'"  *Id.* (quoting *Johnson Elec.*, 77 F. Supp. 2d at 458).

If there is any party responsible for the SEC's failure to identify or produce the October 2008 log in its initial disclosures, it is ACA.  Though ACA produced 4.65 million pages of documents to the SEC's Washington, D.C. Office in the AC1 investigation (all of which were provided to Tourre), ACA did not produce the log in response to the SEC's 2008 investigative

requests in the AC1 investigation.  (Muoio Decl. ¶ 9; Kelly Decl. ¶ 10; Leasure Decl. ¶ 8.)  As Tourre notes, Mem. at 2, there can be no dispute that the October 2008 log – minus the heading that indicates it relates to another investigation – contains information that is responsive to the SEC's investigative requests to ACA and thus should have been produced by ACA in the AC1 investigation at the same time it was produced to NYRO in its unrelated investigation.[9]

If the SEC's attorneys in Washington, D.C. Office attorneys were at fault for not inquiring of NYRO attorneys engaged in unrelated investigations whether there were documents potentially-responsive to Tourre's discovery requests,[10] such "fault" was substantially justified. Preclusion is not warranted for a "mere oversight of counsel amounting to no more than simple negligence," *Outley*, 837 F.2d at 591, but is reserved for cases of "'flagrant bad faith and callous disregard of the rules.'"  *Kunstler*, 242 F.R.D. at 265 (quoting *Johnson Elec.*, 77 F. Supp. 2d at 458).  Under the circumstances, the SEC's failure to produce in this matter an ACA October 2008 log that was only ever produced by ACA to a NYRO team involved in an unrelated investigation, should "satisfy a reasonable person that parties could differ" as to whether the SEC was required to disclose the log with its August 2010 initial disclosures, and, indeed, that there is a "genuine dispute" concerning the SEC's alleged non-compliance with its Rule 26(a) disclosure obligations.  *Id.* (quoting *Johnson Elec.*, 77 F. Supp. 2d at 458) (internal quotations omitted). Accordingly, if the Court finds that the SEC failed to disclose ACA's October 2008 log with its

---

[9]   While the SEC attorneys involved in the investigation or litigation of this matter did not ask ACA to produce "recordings" during the investigation, Tourre rightly notes that the SEC's 2008 investigative request to ACA in the AC1 investigation that led to this lawsuit sought "all documents concerning an communications with any party acquiring any position in [AC1]" and "all documents concerning ACA's decisions to acquire a position in [AC1], including but not limited to memorandums, emails, and notes."  Mem. at 2 (quoting SEC's July 1, 2008 and October 28, 2008 investigative requests to ACA).  ACA's log related to recorded calls in ACA's possession.  To the extent any of these recordings related to the AC1 transaction, the log of those calls likewise related to that transaction.  Because only ACA was in possession of the recordings, only ACA was in a position to make the determination that the log reflected relevant recordings.

[10]   It bears noting that, even were SEC's Washington, D.C. Office counsel to have made such request of regional counsel in this instance, it is unclear that NYRO counsel would have identified or mentioned ACA's October 2008 log, which on its face indicates that it is relates to an investigation of a different financial entity.  (*See* Chepiga Decl. Ex. O (Dkt. 209-15).)

Rule 26(a) initial disclosures in this matter – which it should not do – the Court should find that the SEC's failure was substantially justified and does not merit preclusion.

## III.   THE JANUARY 17 RECORDING IS SUBSTANTIAL EVIDENCE OF GS&CO'S AND TOURRE'S FRAUD AND ITS EXCLUSION WOULD PREJUDICE THE TRUTH SEEKING FUNCTION OF THE COURT.

"In determining whether preclusion or another sanction would be appropriate, courts should consider . . . 'the importance of . . . the precluded [evidence].'" *Coventry First*, 280 F.R.D. at 157 (quoting *Softel, Inc.*, 118 F.3d at 961). The January 17 recording is critical evidence in this case. Tourre and GS&Co are alleged to have tricked ACA into serving as the portfolio selection agent for the AC1 transaction by misrepresenting to ACA that Paulson intended to make a long investment in AC1's equity tranche once the portfolio was selected. Substantial documentary evidence reveals that ACA believed Paulson was taking a long position in AC1. (Schultz Decl. Exs. 26, 27, 5, 28, 29, 30, 31.) The defense argues in opposing summary judgment – and presumably will argue at trial  that ACA simply "assumed" that Paulson was investing in the equity tranche of AC1.   In light of the January 17 recording, this defense argument is plainly wrong. Tourre has testified that his "traditional protocol" was to communicate with ACA through GS&Co salesperson Gail Kreitman, (Schultz Decl. Ex. 2 at 193-94), and the January 17 recording reveals Kreitman falsely telling ACA's Westreich that GS&Co was "placing a hundred percent of the equity" with Paulson. (Schultz Decl. Ex. 4.) Given "[t]he high-stakes nature of this case and the complexity of the issues to be tried," precluding such substantial evidence of GS&Co and Tourre's alleged fraud "would [be] a particularly severe result," *Coventry First*, 280 F.R.D. at 162, and would subvert the truth-seeking function of the Court. *Johnson Elec.*, 77 F. Supp. 2d at 459 (rejecting preclusion of information not disclosed at deposition due to privilege assertion); *see also, e.g.*, *In re Fosamax Prods. Liab. Litig.*, 647 F. Supp. 2d 265, 273, 280-81 (S.D.N.Y. 2009) (ordering deposition regarding expert declaration first submitted in summary judgment response).

## IV.   TOURRE HAS SUFFERED NO PREJUDICE THAT COULD NOT BE CURED BY A BRIEF DISCOVERY EXTENSION.

The substance of Tourre's prejudice argument appears to be that "none of the witnesses deposed in this litigation, including three ACA employees and five employees of [GS&Co], were ever questioned by either the SEC or counsel for Mr. Tourre about the ACA audio files," Mem. at 6, and "neither counsel for Mr. Tourre nor the SEC took the depositions of either Kreitman or Westreich, the only two individuals appearing on the January 17 Call," (*id*.).  This supposed prejudice is easily remedied.

*First*, the defense has generally claimed that a recording of a single conversation with two participants makes it impossible to "unscramble the egg" of discovery, but it fails to identify any related new avenues of discovery that it was precluded from pursuing.  The defense failed to advise the Court that Ms. Kreitman and Mr. Westreich both gave investigative testimony, which the defense has received, and Tourre never sought their depositions even though both were identified in the parties' initial disclosures.  Tourre similarly failed to advise the Court that no later than January 2, 2013 – ***more than six months before trial*** – the SEC made un unqualified offer for Tourre to take additional depositions after Tourre received ACA's October 2008 log, 6,900 recordings produced to NYRO, and the January 17 recording.  Tourre declined to pursue any depositions.[11]  (Schultz Decl. Ex. 23.)  Tourre also declined ACA's offer to entertain reasonable requests for additional recordings and never followed through on his demand for a Rule 30(b)(6) deposition of ACA and did not seek relief from the Court for ACA's discovery failures.  *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 52 (S.D.N.Y. 2012); *cf. Outley*, 837 F.2d at 590

---

[11]      Tourre's counsel asserted on a March 21, 2013 call with the Court that there may be tens of thousands of recordings that will need to be reviewed.  (Schultz Decl. Ex. 24 at 15:21-22.)  That figure is grossly overstated, as ACA's 2012 updated log reveals roughly 5,500 calls involving the relevant ACA employees (some lasting no more than a few seconds) between January 2007, when ACA was first approached by Tourre in connection with the AC1 transaction, and the March 2007 date at which ACA's production of the 6,900 recordings already produced to Tourre began.  Notably, Tourre has not identified a single recording from those already produced that might be material to this lawsuit, nor has his counsel represented that their large international law firm has been unable to review them in the past four months.

("Courts have looked with disfavor upon parties who claim surprise and prejudice but who do not ask for a recess.") (citation and internal quotations omitted)).

*Second*, it is unclear that any additional discovery is needed as a result of the January 17 call (which the SEC advised Tourre it intended to rely on approximately 7 months before trial. The call contains a core misrepresentation – that Paulson was taking an equity position in AC1 – that has been alleged in the litigation from the onset. Both the SEC and Tourre have had ample opportunity to question witnesses about their recollection of whether and when this type of misrepresentation was made.

*Finally*, Tourre's concerns that witnesses were not questioned about ACA's audio files generally, and the January 17 call in particular, rings hollow when Tourre specifically sought discovery of "recordings" from ACA, was advised by ACA in early 2011 about a log of calls received by ACA employees, yet in both instances voluntarily elected not to pursue such discovery. *See R.F.M.A.S.*, 271 F.R.D. at 52 (finding "the most significant prejudice . . . is partly due to plaintiff's decisions not to pursue the relevant discovery from [the third party] and not to seek relief from [the Court] . . . until after expert discovery had closed"); *see also id*. at 25 ("Where the discovery violation involves spoliation or withholding of evidence, the absence of prejudice can be shown by demonstrating, for example, that . . . during discovery they never asked for the evidence later shown to have been spoliated."). Any prejudice that Tourre has incurred can be rectified by a modest discovery extension requiring no adjournment of the trial date to allow for the depositions of Kreitman and Westreich regarding the January 17 recording.[12] *See, e.g., In re Teligent, Inc.*, Bankr. No. 01-12974 (SMB), 2006 WL 1030417 (S.D.N.Y. Apr. 13, 2006) (ordering deposition in response to preclusion motion regarding witness not identified until affidavit attached to summary judgment motion filed ten months before trial); *Titan Indus. Corp.*, 1995 WL 438843 at *1, *5 (limited re-opening of discovery for

---

[12]     Tourre has not explained why depositions of individuals who were not on the January 17 call are required by the introduction of that call into evidence, but the SEC would not oppose re-opening depositions of other previously-deposed fact witnesses for limited questioning about the January 17 recording.

depositions relating to bank checks produced after the close of fact discovery); *In re Fosamax*, 647 F. Supp. 2d at 280-81 (rejecting preclusion argument because deposition was allowed regarding expert declaration submitted for the first time in summary judgment response); *see also, e.g.*, *Heiko & Levy, P.C. v. Dun & Bradstreep Corp.*, No. 95 Civ. 5739 (WK) (HBP), 1997 WL 124077 (S.D.N.Y. Mar. 18, 1997) (re-opening discovery to address discovery responses served three months after close of discovery).

## V.   COURTS HAVE PERMITTED USE OF RECORDINGS PRODUCED AFTER DISCOVERY AND EVEN AT TRIAL.

The fact that the SEC did not move to reopen discovery in December 2012, when the parties obtained the January 17 recording, does not warrant the preclusion of the recording from evidence.  "A discovery cut off date does not . . . affect admissibility of evidence obtained outside of the discovery process of the case in which the cut off date is ordered."  *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984); *Baker v. Canadian Nat./Illinois Central R.R.*, 536 F.3d 357, 369 n.38 (5th Cir. 2008) (same).  District courts in the Second Circuit have applied this rule in practice.  *Titan Indus. Corp.*, 1995 WL 438843 at *1, *5 (re-opening discovery relating to bank checks produced after the close of fact discovery); *Heiko & Levy*, 1997 WL 124077 (re-opening discovery to address discovery responses served three months after close of discovery); *In re Fosamax* 647 F. Supp. 2d at 273, 280-81 (rejecting preclusion argument because deposition was allowed regarding expert declaration submitted for the first time in summary judgment response).[13]

Courts have permitted the use of *recordings* that were produced by parties to the litigation after the close of discovery but months before trial, and even materials produced for the

---

[13]   During the March 21, 2013 teleconference, the Court posited that it may have been more prudent for Tourre to move for a protective order and for the SEC to move to reopen discovery when the January 17 recording first surfaced in December 2012.  (Schultz Decl. Ex. 24 at 19).  The SEC did not believe that it needed any additional discovery and consented in writing to any reasonable additional discovery that Tourre may seek.  (*Id* .).  However, to the extent this Court finds that it would have been preferable for the SEC to move to reopen discovery in order to acknowledge the recording that was produced voluntarily by GS&Co, and for the purpose of providing Tourre an opportunity to take whatever limited discovery he previously declined to pursue, the SEC respectfully requests that this Opposition be construed as a motion to reopen discovery for those limited purposes.

first time *at trial*.  In *Baker*, Baker sued the railroad for personal injuries allegedly suffered in connection with a collision at a railroad crossing.  536 F.3d at 368-69.  After the discovery period, the defendant railroad produced surveillance videos of Baker performing routine tasks and sought to use both substantive evidence of Baker's post-accident condition and impeachment evidence challenging Baker's witnesses who described his mental and physical condition.  *Id*.  Acknowledging that the surveillance videos were produced by the defendant railroad "approximately nine to ten months before trial" – similar to third-party GS&Co's provision of the January 17 recording to both Tourre and the SEC seven months before trial – the Fifth Circuit concluded they "were properly admitted as substantive evidence" against Baker.  *Id*. at 369; *Broadus v. CSX Transp., Inc.*, Civil Action No. 08-1201, 2009 WL 1402025, at *4 (E.D. La. May 14, 2009) ("surveillance videos may be admissible even if disclosed after a discovery cutoff").  Similarly, in *Salas v. Brigham*, No. CIV 08–1184 JB/RLP, 2010 WL 4322622, at *6-8 (D.N.M. Oct. 6, 2010), the district court denied plaintiff's requests for default judgment, adverse inference instruction, and preclusion at trial relating to telephone calls that defendant apparently produced *at trial*, finding that defendant's late production "was caused by failure to know about the telephone recordings and placement of the 2006 Incident Report in a file unrelated to [the plaintiff]."  *Id*. at *6-8.

## VI.    THE JANUARY 17 RECORDING IS NOT HEARSAY.

At the end of his brief, Tourre suggests that the January 17 recording should be stricken as inadmissible hearsay.  Mem. at 11.  This assertion is not correct.  Hearsay is defined as an out-of-court statement offered "to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  That statements of Kreitman to ACA are not being offered for their truth – *i.e.*, to prove that Paulson was in fact taking the equity tranche in the AC1 transaction – but rather for their falsity and proof that Kreitman made them to ACA.  Such statements are not, by definition, hearsay because they are not offered for their truth.  *See Anderson v. United States*, 417 U.S. 211, 219-20 (1974) ("[T]he point of . . . introducing [the] statements was simply to

prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false[.]"); *United States v. Lewis*, 594 F.3d 1270, 1284 (10th Cir. 2010) (statements to investors were not hearsay because offered for falsity rather than truth); *United States v. Feldman*, 825 F.2d 124, 127 (7th Cir. 1987) (false statements made to investors are not hearsay because they are offered for their falsity, not their truth); *United States v. Wellington*, 754 F.2d 1457, 1464 (9th Cir. 1985) (same).[14]

## VII.   THE JANUARY 17 RECORDING IS UNQUESTIONABLY RELEVANT TO THIS LITIGATION EVEN THOUGH TOURRE IS NOT ON THE CALL.

At the end of his brief, Tourre also asserts in passing that the January 17 recording is irrelevant because Tourre does not appear on it.  Mem. at 11.  This too is incorrect.  *First*, the SEC intends to present evidence at trial establishing that Tourre was the source of the misinformation that Ms. Kreitman communicated to ACA.  As noted above, Tourre has testified that his "traditional protocol" was to communicate with ACA through Kreitman.  (Schultz Decl. Ex. 2 at 193-94.)  On the morning of the call, Tourre sent an email to Kreitman urging her to "close the loop with ACA this morning!!!"  (Schultz Decl. Ex. 3.)  The SEC has subpoenaed Kreitman to testify at trial regarding both the substance and source of information that she provided to ACA regarding the AC1 transaction.  Thus, the call, when combined with this other evidence, will support the inference (at a minimum) that Tourre was the source of the misinformation that Kreitman provided to ACA.  *Second*, the SEC's third claim against Tourre is that he aided and abetted GS&Co's fraud against ACA in violation of Section 10(b).  In order to prove that aiding and abetting claim, the SEC is required to prove that GS&Co committed a primary violation of Section 10(b).  *See S.E.C. v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012); *S.E.C. v. DiBella*, 587 F.3d 553, 566 (2d Cir. 2009).  The recorded call in which Kreitman, a

---

[14]      *United States v. Gibson*, 690 F.2d 697, 700 (9th Cir. 1982) (false statements to investors are not hearsay because offered for their falsity, not their truth); *see also United States v. Song*, 436 F.3d 137, 139 (2d Cir. 2006) (out of court statement offered to prove action taken in response to false statements are not hearsay); *United States v. Puzzo*, 928 F.2d 1356, 1365 (2d Cir. 1991) (same); *United States v. Dunloy*, 584 F.2d 6, 11 (2d Cir. 1978) (same); *cf. United States v. Hathaway*, 798 F.2d 902, 905 (6th Cir. 1986) (holding that "statements offered to prove the falsity of the matter asserted are not hearsay").

GS&Co salesperson, made a misrepresentation to ACA regarding Paulson's supposed "equity" role in the AC1 transaction tends to prove that GS&Co committed a primary violation of Section 10(b), which is a necessary element of the SEC's aiding and abetting claim against Tourre.  In short, there is no doubt that the recording is highly relevant.

## <u>CONCLUSION</u>

For the reasons set forth above, the SEC respectfully submits that the defense motion to preclude the SEC's use of the January 17 recording should be denied in its entirety.

Dated:  April 5, 2013

Respectfully submitted,

/s/ *Christian D. H. Schultz*

Matthew T. Martens
Richard E. Simpson
Christian D. H. Schultz
Bridget Fitzpatrick
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4740 (Schultz)
(202) 772-9292 (fax)
schultzc@sec.gov

## CERTIFICATE OF SERVICE

I certify that on April 5, 2013, I directed the foregoing SEC'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S MOTION TO PRECLUDE THE SEC'S RELIANCE ON THE JANUARY 17 CALL AND TO STRIKE THE JANUARY 17 CALL AND RELATED EXHIBITS to be electronically filed using the CM/ECF system, which will send notification of such filing to the following email address:

> Pamelachepiga@allenovery.com
> Pamela Rogers Chepiga
> Allen & Overy LLP
> 1221 Avenue of the Americas
> New York, New York 10020
> Attorney for defendant Fabrice Tourre

/s/ *Christian D. H. Schultz*

Christian D. H. Schultz