UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

                    v.

FABRICE TOURRE,

                Defendant.
_____

10 Civ. 3229 (KBF)

ECF Case

# SEC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE PORTIONS OF THE OPINION TESTIMONY OF DR. MUKESH BAJAJ

Matthew T. Martens
Richard E. Simpson
Christian D. H. Schultz
Bridget Fitzpatrick
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4481 (Martens)
(202) 772-9362 (facsimile)
martensm@sec.gov
*Attorneys for Plaintiff*

Dated:  April 12, 2013
       Washington, D.C.

**TABLE OF CONTENTS**

INTRODUCTION ..............................................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.      Dr. Bajaj's Opinion On Economic Materiality Is An Inadmissible Legal Conclusion ............................................................................................2

    II.     Dr. Bajaj Impermissibly Opines On Credibility ............................................5

    III.    Tourre Cannot Salvage Dr. Bajaj's Inadmissible Opinions On Statistical Significance With A Last-Minute Declaration .............................6

CONCLUSION ................................................................................................................................10

## TABLE OF AUTHORITIES

**CASES**

*A.G. v. Sony Music Entm't, Inc.*,
    No. 93–cv–4001(NRB), 2004 WL 345551 (S.D.N.Y. Feb. 23, 2004) ................................8

*Celebrity Cruises Inc. v. Essef Corp.*,
    434 F. Supp. 2d 169 (S.D.N.Y. 2006)..............................................................................10

*Design Strategy, Inc. v. Davis*,
    469 F.3d 284 (2d Cir. 2006).................................................................................................8

*Disability Advocates, Inc. v. Paterson*,
    No. 03–CV–3209 (NGG)(MDG), 2008 WL 5378365 (E.D.N.Y. Dec. 22, 2008) ..............9

*Ebewo v. Martinez*,
    309 F. Supp. 2d 600 (S.D.N.Y. 2004)................................................................................9

*Fleming v. City of New York*,
    No. 01 Civ. 8885(CM)(RLE), 2007 WL 4302501 (S.D.N.Y. Dec. 7, 2007).....................10

*Highland Capital Mgmt., L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005)................................................................................6

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)................................................................................6

*In re SLM Corp. Sec. Litig.*,
    No. 08 Civ. 1029(WHP), 2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ..............................3

*Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007)................................................................................5

*Mobileye, Inc. v. Picitup Corp.*,
    No. 12 Civ. 1994(JSR), 2013 WL 830837 (S.D.N.Y. Mar. 5, 2013) .................................9

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)..............................................................................................10

*Sandata Techs., Inc. v. Infocrossing, Inc.*,
    Nos. 05 Civ. 9546, 06 Civ. 1896, 2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007)...............8

*S.E.C. v. Badian*,
    822 F. Supp.2d 352 (S.D.N.Y. 2011).............................................................................4, 5

*United States v. Mavashev*,
    No. 08-cr-902(DLI)(MDG), 2010 WL 234773 (E.D.N.Y. Jan. 14, 2010) .........................4

*United States v. Vulcan Soc'y, Inc.*,
   637 F. Supp. 2d 77, 107 (E.D.N.Y. 2009) ...............................................................................9

**STATUTES AND REGULATIONS**

Federal Rule Civil Procedure 26(a) ........................................................................................2, 8

Federal Rule Civil Procedure Rule 37(c)(1) ...............................................................................8

Federal Rule of Evidence 403 ....................................................................................................3

Federal Rule of Evidence 702 ...........................................................................................2, 5, 10

**OTHER AUTHORITIES**

*Mukesh Bajaj, Faculty and Executive Leadership Directory*,
   University of California, Berkeley, Haas School of Business,
   http://facultybio.haas.berkeley.edu/faculty-list/bajaj-mukesh .............................................5

## INTRODUCTION

Defendant Fabrice Tourre and his employer, Goldman Sachs & Co. ("GS&Co"), committed fraud when they tricked ACA Management, LLC into serving as the portfolio selection agent for the ABACUS 2007-AC1 ("AC1") synthetic collateralized debt obligation ("CDO"). Tourre and GS&Co misrepresented to ACA that the Paulson & Co. hedge fund was purchasing the equity in the AC1 transaction. ACA not only worked with short investor Paulson to select the AC1 reference portfolio, it made an approximately $951 million long investment in the AC1 transaction, and its involvement encouraged other investors to buy $150 million of AC1 notes. Ultimately, Paulson profited immensely at the expense of AC1's long investors.

The SEC's Motion for Partial Summary Judgment shows that Tourre's fraud was material. Tourre proffers a professional expert, Dr. Mukesh Bajaj, to testify that Paulson's purely short position was not "economically material," what ACA and investors "should have known," and that ACA witness "actions contradict [their] claims that [ACA] would have behaved differently" if it had known Paulson was a purely short investor. In his Opposition to the SEC's *Daubert* Motion ("Opp."), Tourre fails to meet his burden of showing the admissibility of these opinions. Rather, Tourre seeks to sidestep the problematic nature of Dr. Bajaj's proposed testimony, and his lack of relevant qualifications, by simply inserting the word "economic" into the opinions he seeks to offer. Such linguistic gymnastics cannot be enough to vault past the Court's gatekeeping function and offer expert testimony that invades the province of the jury with a series of legal conclusions and credibility determinations.

Tourre similarly fails in his efforts to salvage Dr. Bajaj's opinions about the statistical significance of any differences in the expected or actual performance of the collateral in AC1 and other RMBS. Although Dr. Bajaj attempts to bolster his initial reports with a Declaration

1

provided to the SEC for the first time in response to the SEC's *Daubert* motion, and in clear violation of Federal Rule of Civil Procedure 26(a), he still fails to provide the SEC and the Court with any numerical output with which to probe the reliability of the conclusions he draws from those analyses. And in explaining the "difference in means" method that he purportedly used to determine statistical significance, Dr. Bajaj provides a mathematical formula for which the standard deviation is a necessary input but fails to provide any numbers that were input into that formula for his analysis. Moreover, Dr. Bajaj's post hoc description of his methodology belies his deposition testimony that he did not calculate the standard deviation. Dr. Bajaj's late and contradictory assertions about the steps he took in determining statistical significance cannot satisfy the disclosure requirements of Rule 26 and, with the absence of any numerical detail, Tourre cannot establish the sufficiently rigorous analytical connection between Dr. Bajaj's methodology and conclusions required by Federal Rule of Evidence 702.

For these reasons and those that follow, the SEC's Motion should be granted and Dr. Bajaj should be precluded from offering the challenged opinions.

## ARGUMENT

**I.     Dr. Bajaj's Opinion On Economic Materiality Is An Inadmissible Legal Conclusion.**

Tourre intends for Dr. Bajaj to testify that the offering documents used to market AC1 provided all "economically material" information that sophisticated investors "needed" to analyze the securities in the AC1 reference portfolio. (Mem. Ex. A, Bajaj Report ¶13). As discussed at length in the SEC's opening Memorandum in support of this *Daubert* Motion ("Mem."), an assertion regarding materiality is not a proper subject for expert testimony because it contains an impermissible legal conclusion. Mem. at 8-12. Tourre attempts to sidestep this issue by arguing that Dr. Bajaj's opinion relates to "economic" as opposed to legal materiality.

2

Tourre relies on a single case, *In re SLM Corporation Securities Litigation*, No. 08 Civ. 1029(WHP), 2012 WL 209095 (S.D.N.Y. Jan. 24, 2012), for the proposition that opinions on economic materiality are permissible.  Opp. at 17.  However, *In re SLM* discusses the difference between "economic materiality" and "the meaning of materiality under the securities laws" within the context of a motion to certify a class in which defendants argued an expert report was necessary to demonstrate materiality.  *Id.*, 2012 WL 209095, at *5.  In determining that materiality had been established at the class certification stage, *the Court* considered an event study done by plaintiffs' expert showing a decline in stock price after a corrective disclosure.  *Id.*  The relevant expert did "not offer an opinion about the economic materiality of the alleged misrepresentations and omissions."  *Id*.  The Court did not address whether experts may simply assert what is and is not material to financial economists, or whether an expert may tell a jury that something is or is not material.  *Id*.

Here, in contrast, Dr. Bajaj seeks to assert that the misstatements and omissions at issue were not material because the RMBS underlying AC1 were disclosed.  (Mem. Ex. A, Bajaj Report ¶¶10, 12, 25, 26, 29).  He brings no economic analysis to bear on the issue.[1]  Tourre cites to no case in which a jury was asked to determine whether certain statements and omissions were material and an expert was permitted to opine that they were not.  Opp. at 17-19.  Instead, Tourre undergoes a series of legal contortions to distinguish the wealth of authority cited by the SEC.  Opp. at 18-19.  The cases cited by the SEC demonstrate that an expert cannot offer an opinion on what was "material" in a case where the jury will be asked to decide that very same legal issue.  *See* Mem. at 8-10.  And the Court already cautioned the parties that expert opinions on

---

[1] The prejudice inherent in the use of the word "material," which mirrors the instructions the jury will receive from the Court, cannot be overcome with the phrase "to financial economists."  This is particularly true when the issue of what was material to financial economists – as opposed to investors – is of limited probative value.  *See* Fed. R. Evid. 403 (court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice or confusing the issues).

3

materiality "sound[] very legal." (Oct. 11, 2012 Hr'g Tr. 60-61).

Indeed, after dedicating three pages of the Opposition to the argument that it is "perfectly permissible" for Dr. Bajaj to opine on "economic materiality," Tourre essentially concedes the SEC's point in his summary of *United States v. Mavashev*, No. 08-cr-902(DLI)(MDG), 2010 WL 234773 (E.D.N.Y. Jan. 14, 2010), which held, "no witness, expert or otherwise, may testify as to legal conclusions, including whether a particular statement is material or not." Opp. at 19. In apparent recognition that *Mavashev* precludes the type of opinion that Dr. Bajaj seeks to give, Tourre agrees to the limitation imposed on the expert in *Mavashev*, who was barred from using the term "material." *Id*. However, the expert in *Mavashev* had 25 years of experience in the relevant industry. *Mavashev*, 2010 WL 234773, at *2. The Court therefore held that testimony from a "witness with specialized knowledge" regarding the significance of misrepresentations in mortgage documents would assist the jury. *Id*. at *4.

In the present case, Tourre concedes that Dr. Bajaj "has not personally worked in the CDO industry and has not surveyed market participants." Opp. at 16. Thus, it is unclear what relevant and reliable opinion Dr. Bajaj may offer on the significance of certain disclosures when his report is stripped of its inadmissible legal conclusions on materiality. Tourre relies on *S.E.C. v. Badian*, 822 F. Supp.2d 352, 363 (S.D.N.Y. 2011), for the proposition that Dr. Bajaj is qualified to offer his opinions because he is a professor of financial economics, regardless of whether he has extensive experience with the specific type of security at issue (which he does not).[2]  Opp. at 16-17. In *Badian*, however, the two finance professors were not qualified to offer

---

[2]   Dr. Bajaj is more of a professional expert witness than a professor, and his academic experience in the field of CDOs is severely limited.  Dr. Bajaj derives virtually none of his income from his work as a lecturer at the University of California, Berkley.  (Reply Ex. I ("Ex. I"), Bajaj Dep. at 40).  Dr. Bajaj historically taught approximately one course per year and did not teach a single class in 2012. (*Id*. at 20-21).  He has "discussed" CDOs in his financial engineering class, and, in a securities design course, he has asked students to prepare presentations on the credit crisis and various instruments in connection with the crisis that include CDOs. (*Id*. at 19-20).  His academic biography contains no reference to experience with CDOs or RMBS.  *See Mukesh Bajaj, Faculty*

4

opinions about what would be material to investors. *Badian*, 822 F. Supp.2d at 363. Rather, the Court referenced the professors' experience "studying asset pricing, debt instruments, and econometric models." *Id.* The SEC has not moved to exclude Dr. Bajaj's testimony in its entirety and does not challenge his qualifications to describe the types of financial instruments at issue or the structure of the transaction. But Dr. Bajaj has no background in what CDO investors expected, or disclosure obligations in general. "Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702." *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007). Thus, Dr. Bajaj is unqualified to testify about what disclosures would have been material, regardless of how his opinion is phrased.

## II.     Dr. Bajaj Impermissibly Opines On Credibility.

In paragraphs 48-56 of his Report, Dr. Bajaj impermissibly opines as to what ACA and investors should have known based on his review of "economic evidence," and that ACA's past actions contradict its claim that it would have behaved differently if it had known Paulson's short position. *See* Mem. at 12-16. Tourre does not dispute that an expert witness may not simply weigh the evidence and evaluate the credibility of witnesses. *See id*. at 13 (collecting cases). Nor does he dispute that it is improper for an expert to summarize testimony of other witnesses and characterize it as false. *See id*. at 15. Rather, Tourre asserts that Dr. Bajaj "is neither weighing evidence nor opining on Ms. Schwartz's credibility," and is "merely providing the jury assistance in understanding economic information." Opp. at 20.

Tourre can call the challenged opinions "economic information," but the reality is that they are a combination of improper credibility determinations and argument. Indeed, paragraphs 48 through 50 of Dr. Bajaj's Report consist of nothing more than a summary of Laura

---

*and Executive Leadership Directory*, University of California, Berkeley, Haas School of Business, http://facultybio.haas.berkeley.edu/faculty-list/bajaj-mukesh.

5

Schwartz's testimony and the conclusion that it is "inconsistent" with the testimony of Tourre and another witness. Similarly, paragraphs 54-56 consist almost entirely of Dr. Bajaj citing different portions of Schwartz's deposition and arguing that they are internally inconsistent. Tourre counters that "[t]he fact that jury may, and should, conclude that the information reflects poorly on Ms. Schwartz's veracity . . . is no reason to deny the jury the benefit of Dr. Bajaj's assistance." Opp. at 20. But what Tourre characterizes as a side effect – a negative credibility conclusion – is the only subject of the proffered opinion.

The only arguable economic analysis occurs in paragraphs 52-53, where Dr. Bajaj summarizes a hedge fund strategy and then argues that the strategy "should have been known to a sophisticated participant such as ACA." (Mem. Ex. A, Bajaj Report ¶53). This perfunctory information is in the report only as a lead-in to an impermissible opinion about what ACA "should have known," but it is well-recognized that experts cannot testify about a witness' state of mind. *See Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) (expert opinion on facts as to which transaction participant was "likely aware" precluded as speculation). Defense counsel may cross examine Ms. Schwartz on her prior testimony, and argue the inferences contained in Dr. Bajaj's Report, but Dr. Bajaj "should not be permitted to supplant the role of counsel in making argument at trial." *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004).

### III. Tourre Cannot Salvage Dr. Bajaj's Inadmissible Opinions On Statistical Significance With A Last-Minute Declaration.

Tourre claims the SEC's argument that Dr. Bajaj failed to use statistically reliable methods stems from "the SEC's failure to read the documents." Opp. at 10. To be clear, in discussing Sur-rebuttal exhibit 4, which compares AC1's cumulative loss rate to that of a comparison set of subprime deals, Dr. Bajaj provided the following sworn testimony:

6

> Q. Do you know what the standard deviation is on the set number 5?
>
> A. No.
>
> Q. Did you calculate that?
>
> A. No.
>
> Q. Do you know how many standard deviations 28.49 is from 27.05?
>
> A. No. I do not know because I did not calculate the standard deviation, and that would be a meaningless calculation in any way.

(Ex. I, Bajaj Dep. at 305). It is understandable that the SEC did not infer from Dr. Bajaj's answers of "No" and "that would be a meaningless calculation," (*id*.), that Dr. Bajaj actually performed any test for which calculating the standard deviation is a necessary intermediate step.

Tourre's accusation about the SEC's lack of attention to detail is based entirely on a footnote in Sur-rebuttal exhibit 4, which states that a "difference in means test" was performed. (Mem. Ex. C at exh. 4). A virtually identical footnote appears in exhibits 11a, 11b, 14a, 14b, 15, and 16 of Dr. Bajaj's Report.[3] None of these exhibits explain the manner in which the difference in means test was conducted, the data that was input, or any of the numerical outputs from such tests. The Appendix to Dr. Bajaj's Report is similarly silent on the issue.[4]

Tourre tries to salvage this fundamental flaw in Dr. Bajaj's "analysis" with a Declaration from Dr. Bajaj – provided to the SEC for the first time on March 29, 2013 with Tourre's response to the SEC's *Daubert* motion – that purports to explain the "difference in means" test

---

[3] The SEC also moved to preclude use of Exhibits 10a, 10b, 10c, 12a, and 12b to Dr. Bajaj's Opening Report. (Mem. Ex. A). Tourre now clarifies that these are "demonstratives," and that Dr. Bajaj does not intend to offer any opinions on whether differences were *statistically* significant at trial. Opp. at 15, n.8 (emphasis added). Dr. Bajaj did opine at his deposition that there were no significant differences among the metrics reflected in these exhibits. (Ex. I, Bajaj Dep. 276-277). However, if Tourre agrees that Dr. Bajaj will offer **no opinion whatsoever** regarding the significance of any differences demonstrated by these exhibits, the SEC's arguments regarding the reliability of such opinions will be moot.

[4] Exhibits 11c and 13 contain no reference to a difference in means test. Dr. Bajaj's Declaration claims to have performed this test on "Exhibit 11," but it is unclear whether that claim relates to exhibit 11a (60+ Day Delinquency Rates), Exhibit 11b (Foreclosure Rates), or Exhibit 11c (Bankruptcy Rates). Thus, the SEC cannot determine whether Dr. Bajaj intends to opine on statistical significance with respect to any differences demonstrated in Exhibits 11c and 13 and, if so, whether there is a reliable foundation for that opinion.

Dr. Bajaj employed in determining statistical significance.[5]  The deadline for rebuttal expert reports was January 18, 2013, Dr. Bajaj was deposed on February 7, 2013, and expert discovery closed on February 15, 2013.  Rule 26(a) required Dr. Bajaj's expert reports to contain "a complete statement of all opinions [he] will express and the basis and reasons for them" and "the facts or data considered by [Dr. Bajaj] in forming them."  Fed. R. C. P. 26(a)(2)(B)(i)-(ii).  "[E]xperts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions."  *Sandata Techs., Inc. v. Infocrossing, Inc.*, Nos. 05 Civ. 9546, 06 Civ. 1896, 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007).  Because Dr. Bajaj's untimely attempt to fill "significant and logical gaps" in his report after the close of expert discovery violates Rule 26(a) without substantial justification, it warrants preclusion under Rule 37(c)(1).  *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297-98 (2d Cir. 2006) (Rule 37(c)(1) provides discretion to preclude evidence if "there is no substantial justification and the failure to disclose is not harmless"); *A.G. v. Sony Music Entm't, Inc.*, No. 93–cv–4001(NRB), 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004) (if expert could "expound a wholly new and complex approach designed to fill a significant and logical gap in the first report [it] would eviscerate the purpose of the expert disclosure rules").

Preclusion is also warranted under Rule 37(c)(1) because Dr. Bajaj's untimely declaration is not harmless.  *See Design Strategy*, 469 F.3d at 297-98.  The SEC already prepared rebuttal reports exposing methodological errors in Dr. Bajaj's disclosed opinions and probed those opinions at his deposition.  With the cutoff for expert discovery long past, the SEC should not be saddled with a new basis for opinions that it can neither probe nor submit a response to.  "The

---

[5]  Apparently, Dr. Bajaj performed a difference in means test using the Stata statistical software program. (Opp. Ex. 5, Bajaj Dec. ¶4).  The equation Stata employs to calculate the difference in means requires, among other things, the sample means, standard deviations and the number of observations in the corresponding samples.  (*Id.*).

8

purpose of [the disclosure rules] is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Disability Advocates, Inc. v. Paterson*, No. 03–CV–3209 (NGG)(MDG), 2008 WL 5378365, at *11 (E.D.N.Y. Dec. 22, 2008) (quoting *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004). "To allow such new evidence to be presented would undermine the purpose of the discovery rules, circumvent the discovery schedule that was ordered by the court, and prejudice Plaintiffs." *United States v. Vulcan Soc'y, Inc.*, 637 F. Supp. 2d 77, 107 (E.D.N.Y. 2009) (striking expert reports that were submitted with summary judgment motions); *see also Mobileye, Inc. v. Picitup Corp.*, No. 12 Civ. 1994(JSR), 2013 WL 830837 (S.D.N.Y. Mar. 5, 2013) (striking expert declaration submitted with Opposition papers because it was neither "substantially justified [n]or harmless").

In the present case, concerns about the circumvention of discovery rules are particularly acute because the March 29 Declaration is contrary to Dr. Bajaj's sworn testimony that he did not calculate the standard deviation for Sur-rebuttal Exhibit 4.  In his declaration, Dr. Bajaj argues that the SEC has moved to exclude Sur-rebuttal exhibit 4 "on the basis of its incorrect understanding, apparently derived from its misunderstanding of a portion of my deposition testimony." (Opp. Ex. 5, Bajaj Dec. ¶3).  He then "explains" his testimony by averring that he "had not *separately* calculated the standard deviation." (*Id.* at ¶4 (emphasis added)).  However, Dr. Bajaj answered with an unequivocal "no" when asked if he calculated the standard deviation. (Ex. I, Bajaj Dep. at 305).  He did not modify his answer with the word "separately."  He did not explain the difference in means test for which the standard deviation is a necessary input.  He simply referred to the standard deviation as a "meaningless calculation."

Even with his untimely declaration, Dr. Bajaj fails to provide the SEC and the Court with sufficient detail to probe the reliability of his determinations of statistical significance.  He does

9

not provide the numerical results of the difference in means tests that he performed on exhibits 11a, 11b, 14a, 14b, 15, and 16 (and possibly exhibits 11c and 13).  He does not explain how it was possible to perform a difference in means test without calculating the standard deviation, which is a necessary input.  He simply states in conclusory fashion that he performed the test and the results were not "statistically significant."  The text of Rule 26 demands disclosure of the facts and data considered by the witness in forming his opinions, and Federal Rule of Evidence 702 requires a "sufficiently rigorous analytical connection between [a] methodology and the expert's conclusions."  *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005).  "[A]ny step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible."  *Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 176 (S.D.N.Y. 2006) (citation omitted).  Without the numerical results of Dr. Bajaj's calculations, neither the Court nor the SEC can assess whether there is a sufficient connection between the difference in means test that Dr. Bajaj purportedly performed and his conclusions about statistical significance.  Accordingly, Dr. Bajaj should be precluded from offering any opinions on statistical significance in connection with exhibits 10-16, and Sur-rebuttal exhibit 4.  *See Fleming v. City of New York*, No. 01 Civ. 8885(CM)(RLE), 2007 WL 4302501, at *3 (S.D.N.Y. Dec. 7, 2007) (excluding expert evidence based on undisclosed data).

## CONCLUSION

For the reasons set forth above, the SEC respectfully requests that its motion be granted.

Dated:  Washington, D.C.  
April 12, 2013

Respectfully submitted,

/s/ *Bridget Fitzpatrick*  
Matthew T. Martens  
Richard E. Simpson  
Christian D. H. Schultz  
Bridget Fitzpatrick  
Attorneys for Plaintiff

10

>Securities and Exchange
>Commission
>100 F Street, N.E.
>Washington, D.C. 20549
>(202) 551-4481 (Martens)
>(202) 772-9292 (fax)
>fitzpatrickbr@sec.gov

**CERTIFICATE OF SERVICE**

I certify that on April 12, 2013, I directed the foregoing SEC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS DAUBERT MOTION TO EXCLUDE PORTIONS OF THE OPINION TESTIMONY OF DR. MUKESH BAJAJ to be electronically filed using the CM/ECF system, which will send notification of such filing to the following email address:

> Pamelachepiga@allenovery.com
> Pamela Rogers Chepiga
> Allen & Overy LLP
> 1221 Avenue of the Americas
> New York, New York 10020
> Attorney for defendant Fabrice Tourre

>> /s/ *Bridget Fitzpatrick*
>> Bridget Fitzpatrick