UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

           v.

FABRICE TOURRE,

                Defendant.

10 Civ. 3229 (KBF)

ECF Case

---

### SEC'S REPLY MEMORANDUM IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE THE OPINION TESTIMONY OF DR. CHARLES COX

Fabrice Tourre and his employer, Goldman Sachs & Co. ("GS&Co"), committed fraud when they tricked ACA Management, LLC into serving as the portfolio selection agent for the ABACUS 2007-AC1 ("AC1") synthetic collateralized debt obligation ("CDO"). Tourre and GS&Co misrepresented to ACA that the Paulson & Co. hedge fund was taking an equity (*i.e.*, long) interest in the AC1 transaction. ACA not only worked with short investor Paulson to select the AC1 reference portfolio, it made an approximately $951 million long investment in the AC1 transaction, and its involvement compelled another long investor to buy $150 million of AC1 notes. The long investors ultimately lost their investment and Paulson profited immensely.

The SEC's Motion for Partial Summary Judgment shows that Tourre's fraud was material. Tourre proffers former SEC Commissioner Dr. Charles Cox to offer one opinion – that it was not. As described in the SEC's Opening Memorandum, this is an improper legal conclusion that is supported by no survey, study, or methodology, offered by a witness who is unqualified to give it. And Tourre's desires to have Dr. Cox otherwise summarize articles, news clippings, or record evidence is improper testimony that would not assist the jury. In short, Dr. Cox's proffered opinion inverts competent expert testimony – he presents nothing that Rule 702 requires, while proposing to do what Rule 702 forbids.

In Opposition to the SEC's *Daubert* Motion, Tourre fails to meet his burden of establishing the admissibility of Dr. Cox's sole expert opinion that Paulson's "identity, role, and

economic interest were not information that a reasonable investor would have considered important in determining whether to invest," (Cox Report at 5) – in other words, they were "not material," (Cox. Dep. at 131).  Tourre concedes that Dr. Cox knows nothing about CDO structure or CDO investing and made no effort to educate himself.  Instead, Tourre contends that, because Dr. Cox is an economist and former SEC Commissioner, he should be allowed free reign simply to review general information about market economic conditions, describe the content of inadmissible articles and news clippings, and then, based on nothing more than his so-called "experience" and subjective "economic logic," tell the jury that the role of the parties involved in the CDO selection process was not important or material to CDO investors.  Such testimony is quintessential *ipse dixit* with no indicia of reliability, particularly when Dr. Cox admitted that he does not know what a reasonable investor thought important at the time.

Given these limitations, Tourre attempts to re-cast Dr. Cox's opinion within a broader concept of materiality and relevance.  Tourre sets up a straw-man argument, erroneously contending that the SEC believes materiality is defined solely by the subjective views of a fraud's victims.  The SEC's Motion for Partial Summary Judgment argues no such thing, and merely cited ACA witness testimony as relevant, compelling, and uncontroverted evidence.  Should this case go to trial, the SEC will present additional evidence of what reasonable CDO investors considered important at the time.  That Tourre devotes so much of his Opposition to an argument about the concept of materiality, and not to the specifics of Dr. Cox's analysis, is telling.  Indeed, Tourre cites Dr. Cox's report minimally and his deposition hardly at all.  Nor does Tourre offer any legal authority beyond what the SEC cited.  Instead, he takes off on rhetorical flights – Dr. Cox's analysis is repeatedly described as "rigorous," "sophisticated," and "comprehensive."  But as Tourre makes clear, Dr. Cox's "analysis" is nothing more than a description of select pieces of essentially random information – in other words, a summary.  Dr. Cox applies neither method nor expertise.  His proposed testimony and opinion do not in any way help the jury, as Rule 702 requires.  Worse, by presuming to render a legal conclusion, it interferes with the jury's role.

Simply put, Tourre does not come close to carrying his burden to show that Dr. Cox's proffered testimony is admissible. For these reasons and those that follow, the Court should grant the SEC's Daubert Motion, disregard Dr. Cox's report in ruling on the parties' motions for summary judgment, and preclude Dr. Cox from testifying at trial.

## ARGUMENT

### I. Dr. Cox's Proposed Testimony Cannot Be Reconstructed To Overcome His Impermissible Legal Conclusion.

An expert cannot opine on the "materiality" of a misrepresentation or omitted fact. *U.S. v. Mavashev*, No. 08-cr-902(DLI)(MDG), 2010 WL 234773, at *4 (E.D.N.Y. Jan. 14, 2010) (citing *U.S. v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1993)); Mem. at 6-7. In his report and deposition, Dr. Cox does precisely that. Cox Dep. at 131:13-133:4; Cox Report ¶ 52. Since Dr. Cox offers only one opinion, this defect alone warrants his complete exclusion.

Tourre offers three responses. *First*, he argues that Dr. Cox never intended to offer a legal conclusion on materiality. He contends that the cited testimony "distort[s]" the opinion Dr. Cox offers, and does not address the presence of the word "material" in Dr. Cox's report. Opp. at 8. Dr. Cox's testimony renders this argument meritless:

> Q: …[Y]ou state that counsel for Mr. Tourre asked you to investigate the market evidence pertaining to the SEC's claims that *PCI's identity, role and economic interest in AC1 was material information that should have been disclosed* . . . correct?
>
> A: Yes.
>
> Q: Was that your assignment?
>
> A: *Yes. I believe that is a statement of the assignment as I took it.*

Cox. Dep. at 114:5-16 (referring to Cox Report ¶ 13) (emphasis added). Dr. Cox further admitted that when he used the term "material" he meant "important to investors in determining whether to buy or sell a security" – in other words, "important in their investment decision." (Cox. Dep at 121:3-15). Having retained an expert for the express purpose of opining on materiality, Tourre cannot now argue that Dr. Cox did something else.

3

*Second*, Tourre argues that Dr. Cox simply offers "specialized knowledge and interpretation of the facts," as opposed to a legal conclusion. Opp. at 8. In doing so, Tourre refers to a "clear difference" between these types of testimony, but never explains what that difference is or how Dr. Cox falls on the right side of the line. *Id*. By his own admission and Tourre's concession, Dr. Cox has no specialized knowledge of CDOs to offer the jury. Mem. at 7-8; Opp. at 5, 6 (arguing that Dr. Cox's opinion "does not require him to have personal experience of [CDOs], or to have conducted a market survey concerning such products"). And Dr. Cox cannot simply "interpret[] the facts," particularly where he has done no independent survey or study of the relevant market or its participants to support his interpretations. *See, e.g., Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 529-30, (S.D.N.Y.), *amended on reconsideration on other grounds*, 137 F. Supp. 2d 438 (S.D.N.Y. 2001) (excluding "factual conclusions" because "those conclusions are offered without benefit of citation to research, studies, or other generally accepted support for expert testimony"); Mem. at 15-16. In short, strip away Dr. Cox's legal conclusion, and there is nothing admissible left.

*Finally*, Tourre promises that Dr. Cox will avoid legal conclusions or terminology when he is on the stand. Opp. at 9. Tourre does not, however, describe what that to-be-constructed opinion would sound like. Tourre's offer is thus consistent with the general thrust of his Opposition, which proceeds largely as if Dr. Cox has no opinion but is instead being proffered simply to tell the jury some selected facts an investor might have known or discerned from purportedly "available" information. *See* Opp. at 3 (Dr. Cox will "educate the jury" about available information); and 7 (Dr. Cox will "demonstrate what manner of information comprised the 'total mix' of information available to investors"). Tourre never explains how Dr. Cox's testimony would assist the jury and framing it in something other than legal terms cannot save it.

In sum, Tourre retained Dr. Cox solely to offer an impermissible legal conclusion on the materiality element of the SEC's claims. Tourre's cannot salvage Dr. Cox's testimony by saying he will avoid offering a legal opinion because nothing else he does is admissible either. Indeed, the rest of Dr. Cox's report is simply filler, presented so that Tourre has some purported basis to

present a witness burnished with an SEC background.  An expert cannot merely describe what, in his subjective view, were some interesting things going on in the non-CDO world.  *See, e.g., Nimely v. City of New York,* 414 F.3d 381, 399 (2d Cir. 2005) (excluding expert for his "unverifiable subjectivity").  In short, take away Dr. Cox's improper opinion on materiality, and the rest of his report crumbles.

## II. Dr. Cox Fails To Employ A Valid Methodology.

An expert must employ a valid or reliable methodology.  *Nimely*, 414 F.3d at 397; Mem. at 5-6.  Dr. Cox does not.  He collects what are largely random facts, and then launches a legal opinion.  That approach is especially improper where, as here, Dr. Cox has no relevant experience.  Mem. at 11-12.  His proffered testimony lacks objectivity and rigor, and is the type of *ipse dixit* that trial courts in this Circuit have consistently excluded.  *Id*.

Tourre barely defends Dr. Cox's "methods."  Instead, Tourre labors to distinguish the overwhelming legal authority that forbids exactly what Dr. Cox has tried to do here.[1]  Opp. at 10-12.  To the extent he does comment on Dr. Cox's actual "methods," Tourre strains the meaning of "analysis" beyond the breaking point.  The "thorough and detailed market analysis" Tourre heralds turns out to be a "demonstrat[ion] [about] the kind and quality of information available to investors."  Opp. at 9.  That is a fancy way of saying that Dr. Cox just summarizes bits of selected information, nearly all of it totally unrelated to the CDO at issue here.

The "rigor" Tourre refers to, Opp. at 10, is much the same.  While Tourre claims Dr. Cox "analyzed" various data points, the actual report simply collects them to reinforce the unexceptional idea that the housing market had begun to slow by 2007.  In other words, Dr. Cox simply cuts and pastes together selected facts to re-state the obvious.  In contrast to legitimate expert testimony, Dr. Cox's approach thus lacks rigor and reliability.  Dr. Cox does not conduct a

---

[1] Tourre's attempt to distinguish *S.E.C. v. Badian*, 822 F.Supp.2d 352, 358-60 (S.D.N.Y. 2011), is particularly dubious.  Opp. at 10.  In *Badian*, the excluded expert gave an opinion that went to a key issue in the case, but supported it with only generalities and economic data that was not specific to that issue.  That is precisely what Dr. Cox has done here.  And, as here, the problem in *Badian* was not relevance; it was the failure to connect the discussion of economic facts to the conduct at issue.  Tourre's argument about "relevance" presents an immaterial distinction, grounded on a misreading of the opinion.

meaningful quantitative analysis, such as an event study.  Nor does he analyze the conduct at issue here by comparing it to industry customs or norms and his own first-hand experience.  In short, he does not employ an expert's methods to reach his proffered conclusions.

Tourre also describes Dr. Cox's analysis as "meticulous[]" and "thorough[]."  Opp. at 12.  But that is just hyperbole, not argument.  Even Tourre concedes that Dr. Cox avoids discussing the practices specific to this case.  Opp. at 11-12 ("Dr. Cox has offered no opinion on the views of CDO market participants, on surveys regarding the same, or even on the technical or structural aspects of CDOs themselves").  Tourre nonetheless still tries to argue that Dr. Cox's methods will help the jury understand what a reasonable investor would have thought or known.  Opp. at 3, 4, 9.  In light of Dr. Cox's report and testimony, that argument strains credulity.  *See, e.g.,* Cox Dep. at 115:11-12 ("I just told you I didn't study what investors in 2007 would look at."); 216:24-25 ("I haven't studied typical investors at the time and the information they used."); Mem. at 3, 9, 11-12.  Dr. Cox has no idea what reasonable investors looked at and he should not be allowed to convey to the jury scraps of information a market participant *may* have considered, much less an opinion – based on no experience or study – that additional information about Paulson's role would not have been important or material.

### III.   Dr. Cox Cannot Testify On the Basis Of His So-Called "Experience."

Tourre suggests that the SEC objects to Dr. Cox's testimony merely because it is "experience-based."  Opp. at 12.  That argument misreads the SEC's position.[2]  An expert may testify based on his experience.  Fed. R. Evid. 702; *see also* Advisory Committee Notes ("[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.").  But the expert must have experience with the subject about which he is testifying.  And, more specifically, the expert must explain how his experience actually shaped his opinion.  He is both unqualified, Mem. at 7-10, and unable to specify how his experience led to the

---

[2]   The SEC agrees that an expert may testify based on experience, having proffered Ira Wagner, whose vast first-hand experience in the CDO industry will genuinely help educate the jury about the contrast between industry customs and norms and the disclosures and conduct in this case.

opinion he gives.  Mem. at 11-12.  Tourre fails to carry his burden to show that Dr. Cox is qualified by his experience.

Tourre concedes that Dr. Cox knows nothing about CDOs and CDO investing and never tried to learn.  Opp. at 6, 11, 12.  Tourre instead argues that no such experience is required, *id*. at 6-7, 11-12.  The reasoning in *Primavera*, 130 F. Supp. 2d at 530, applies here.  In that case, Judge Sweet excluded an expert despite a "broad contention" by the proponent that the expert's conclusions were "'fully supported by economic analysis and insights from his experience in the securities industry."  *Id*.  The court reasoned that "[w]hile it is permissible for [the expert] to base his opinion on his own experience, he must do more than aver conclusorily that his experience led to his opinion." *Id*. (citing authority where an expert explained the specifics of his experience and how that experience was relevant to the opinion).  In other words, Tourre cannot call his expert "preeminent," Opp. at 12, tout his expert's outdated SEC experience, and leave it at that with nothing more.

Tourre reliance on *SEC v. Badian* is unavailing.  In *Badian*, the proffered experts opined on a subject matter – futures pricing – similar to other topics they had studied, including asset pricing and econometrics.  822 F.Supp.2d at 363.  Dr. Cox, in contrast, has never studied anything like a CDO, a new and complex "subspecies of financial instrument."  *Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 630-31 (S.D.N.Y. 2012).  There is an unbridgeable vacuum where his experience should be.  Mem. at 7-10.  Further, plaintiff's experts in *Badian* actually *did* something – they scrutinized raw data and performed "price impact" analyses.  *Badian*, 822 F. Supp. 2d at 363-64.  Dr. Cox, in contrast, performed no quantitative analyses or studies of the relevant industry practices, and instead relied entirely on his "experience."  Absent other indicia of reliability, his experience is not enough to qualify him as an expert in this matter.

### IV. Dr. Cox's Statistical Analyses Are Invalid.

In its Opening Memorandum, the SEC detailed the substantive and methodological flaws in two statistical analyses about which Dr. Cox intends to testify, both of which rest on invalid methodological comparisons. Mem. at 13-15. Tourre argues that these defects go to weight, not admissibility, but cites no authority for this proposition. Opp. at 12-13. As the SEC has shown, courts routinely exclude analyses with such flaws, finding them useless for evaluating the actual issues in dispute. Mem. at 15; *Dev. Specialists, Inc. v. Weiser Realty Advisors LLC*, No. 09-cv-4084(KBF), 2012 WL 242835 (S.D.N.Y. Jan. 24, 2012). Accordingly, Dr. Cox should be precluded from offering any testimony about the two analyses should be excluded.[3]

### CONCLUSION

For the reasons set forth above and in its Opening Memorandum, the SEC respectfully requests that Court grant its *Daubert* Motion to Exclude the Testimony of Dr. Charles Cox, disregard Dr. Cox's report in ruling on the parties' motions for summary judgment, and preclude Dr. Cox from testifying at trial.

Dated: April 12, 2013

Respectfully submitted,

/s/ *Christian D. H. Schultz*
Matthew T. Martens
Richard E. Simpson
Christian D. H. Schultz
Bridget Fitzpatrick
Attorneys for Plaintiff
Securities and Exchange
Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4740 (Schultz)
(202) 772-9292 (fax)
schultzc@sec.gov

---

[3] Tourre states that the first of these analyses, concerning the relative performance of the assets in the ABACUS portfolio using Standard & Poors lifetime loss projections, was not even the basis for Dr. Cox's opinion, Opp. at 12,, making testimony about such material all the more irrelevant, unnecessary, and confusing to the jury.

**CERTIFICATE OF SERVICE**

I certify that on April 12, 2013, I directed the foregoing SEC'S REPLY MEMORANDUM IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE THE OPINION TESTIMONY OF DR. CHARLES COX to be electronically filed using the CM/ECF system, which will send notification of such filing to the following email address:

>Pamelachepiga@allenovery.com
>Pamela Rogers Chepiga
>Allen & Overy LLP
>1221 Avenue of the Americas
>New York, New York 10020
>Attorney for defendant Fabrice Tourre

/s/ *Christian D. H. Schultz*

Christian D. H. Schultz

9