UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------x
                                       :
SECURITIES AND EXCHANGE                :
COMMISSION,                            :   Civil Action
                                       :   No.: 10-cv-3229 (KBF)
           Plaintiff,                  :
                                       :   ELECTRONICALLY FILED
      v.                               :
                                       :
FABRICE TOURRE,                        :
                                       :
           Defendant.                  :
---------------------------------------x


# REPLY MEMORANDUM OF LAW OF FABRICE TOURRE IN FURTHER SUPPORT OF HIS DAUBERT MOTION TO LIMIT THE <u>PROPOSED EXPERT TESTIMONY OF DWIGHT M. JAFFEE</u>

Pamela Rogers Chepiga
David C. Esseks
Andrew Rhys Davies
Brandon D. O'Neil

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

*Attorneys for Fabrice Tourre*

Dated:  April 12, 2013
        New York, New York

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.   JAFFEE'S PROPOSED TESTIMONY ON IRRELEVANT MATTERS FROM
     THE *STOKER* LITIGATION SHOULD BE EXCLUDED ............................................... 2

II.  JAFFEE SHOULD BE PROHIBITED FROM NARRATING THE
     COMPLAINT'S ALLEGATIONS AND FROM MAKING BALD
     ASSERTIONS AS TO THE ULTIMATE LEGAL ISSUE IN THIS CASE ..................... 5

CONCLUSION .......................................................................................................................... 8

# TABLE OF AUTHORITIES

## CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*,
 No. 08 Civ. 7508, 2013 WL 1155420 (S.D.N.Y. Mar. 20, 2013) .......................................... 4

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
 No. 04 Civ. 10014, 2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) ....................................... 4

*F.H. Krear & Co. v. Nineteen Named Trustees*,
 810 F.2d 1250 (2d Cir. 1987) ............................................................................................... 7

*Highland Capital Mgmt., L.P. v. Schneider*,
 379 F. Supp. 2d 461 (S.D.N.Y. 2005) .................................................................................. 6

*In re Rezulin Prods. Liability Litig.*,
 309 F. Supp. 2d 531 (S.D.N.Y. 2004) .................................................................................. 6

*Island Intellectual Property LLC v. Deutsche Bank AG*,
 No. 09 Civ. 2675, 2012 WL 526722 (S.D.N.Y. Feb. 14, 2012) ........................................... 4

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Securities, LLC*,
 691 F. Supp. 2d 448 (S.D.N.Y. 2010) .................................................................................. 5

*United States v. Bilzerian*,
 926 F.2d 1285 (2d Cir. 1991) ............................................................................................... 3

## STATUTES

Fed. R. Evid. 403 ......................................................................................................................... 1

Fed. R. Evid. 702 ......................................................................................................................... 1

Fed. R. Evid. 703 ......................................................................................................................... 1

Fabrice Tourre respectfully submits this reply memorandum of law in further support of his *Daubert* motion, pursuant to Federal Rules of Evidence 403, 702 and 703, to limit the proposed expert testimony of Dwight M. Jaffee as set forth herein.[1]

## PRELIMINARY STATEMENT

The SEC states that it intends to call Jaffee as the very first witness in its case-in-chief—before calling any fact witnesses or entering any exhibits into evidence. This will permit Jaffee to "set the stage for the jury with background and definitional information about the formation and structure of CDOs." SEC Opp. Mem. at 1. But according to its opposition brief, the SEC thinks "setting the stage for the jury" at the outset of trial should include Jaffee's (1) opinion that Mr. Tourre's work on ABACUS contributed to a "CDO Crisis," and (2) narration of the key allegations of the Amended Complaint, which Jaffee will apparently deliver to the jury, before any factual evidence is introduced, as his own expert opinions derived from his "undisputed expertise regarding asset-backed securities and CDOs." *Id.* at 6. This narration, the SEC argues, should include Jaffee's "opinions" that:

- "The importance of the portfolio manager was well understood by [Goldman] in organizing the [ABACUS] CDO"

- "Fabrice Tourre cooperated with the Paulson and Co. hedge fund to choose assets for the CDO"

- "Paulson, as the sole protection buyer in the CDO, had economic interests directly adverse to the investors in the [ABACUS] CDO"

- "A reasonable investor would have considered [Paulson's] identity, role and economic interest in ABACUS to be critical in making an investment decision regarding ABACUS"

- "[Goldman] has acknowledged that the role of Paulson in the portfolio selection process was not disclosed to CDO investors"

---

[1] This Reply Memorandum adopts defined terms from the opening memorandum of this motion, dated March 8, 2013. That opening memorandum is cited as "Tourre Mem." and the SEC's opposition memorandum, dated March 29, 2013, is cited as "SEC Opp. Mem." The exhibits to the Reply Declaration of Andrew Rhys Davies dated April 12, 2013 are cited in the format "Davies Ex. __."

- "The performance of the [ABACUS] CDO was highly disappointing," and
- "As a result, the investors [] in [ABACUS] lost over $1 billion, while the positions of Paulson and Co. [] profited by approximately $1 billion"

Jaffee Report ¶¶ 37, 38, 40; Jaffee Rebuttal ¶ 2.

In his opening brief, Mr. Tourre showed that this testimony should be excluded because (1) Jaffee's proposed testimony that synthetic CDOs precipitated a "CDO Crisis" is inflammatory and prejudicial in addition to being irrelevant, and (2) it is improper to use experts to marshal and narrate fact evidence that should be introduced through percipient fact witnesses—particularly here, where Jaffee admitted that when he drafted his proposed testimony he had "literally seen no evidence," and was thus simply regurgitating the allegations of the Amended Complaint. The fact that the SEC now announces its intention to offer Jaffee's testimony at the very outset of the case, and before the jury has heard from a single fact witness, makes exclusion of this testimony even more vital.

## ARGUMENT

### I. JAFFEE'S PROPOSED TESTIMONY ON IRRELEVANT MATTERS FROM THE *STOKER* LITIGATION SHOULD BE EXCLUDED

The SEC readily concedes Jaffee was hired at the last minute, and that his report, which is largely cut-and-pasted from his report in *Stoker*, includes material that has no relevance to this litigation. The SEC seeks to blame this on Mr. Tourre's refusal to consent to the SEC's plan to have another proposed expert, Ira Wagner, testify both at the open of the SEC's case-in-chief, on the "formation and structure of CDOs," and then again at its close, on the various other conclusions set forth in Wagner's report. If the SEC really believed it was appropriate to have a single expert testify multiple times at trial, no doubt it would have sought the Court's blessing, which, of course, it did not do. Regardless, none of this justifies the introduction of expert testimony that is wholly irrelevant to the facts and claims in this case.

As the opening brief describes, the material that was simply copied without thought from the *Stoker* report and should be excluded falls into two categories.

2

First, the proposed testimony on "interest coverage," "over collateralization" and "event of default" triggers should be excluded because it is irrelevant to the facts of this case. *See* Tourre Mem. at 3. The SEC seeks to moot this objection, stating that "[a]t this point, the SEC does not intend" to elicit that testimony, *see* SEC Opp. Mem. at 5, but the opinion should be excluded so that it is clear that Jaffee cannot testify to these irrelevant matters even if the SEC changes its mind and seeks to elicit this testimony.

Second, the proposed testimony that synthetic CDOs are markedly riskier that the cash variety and ultimately precipitated a "CDO Crisis" should be excluded because it is irrelevant and also because it is inflammatory and prejudicial. *See* Tourre Mem. at 4. This testimony is admissible, the SEC says, because "[p]articularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts." SEC Opp. Mem. at 5 (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)). But it does not follow that the jury needs an expert's help to understand complex matters that are irrelevant to the claims it will decide, such as the "differential risks attendant to" cash and synthetic CDOs, SEC Opp. Mem. at 5, and the SEC makes no effort to explain, at any point in its opposition brief, how these topics would be relevant.

The SEC complains that it "strains credulity to suggest that Dr. Jaffee cannot help the jury understand the 'CDO Crisis' that resulted from complex financial products like the [ABACUS] synthetic CDO that Tourre helped market," and "[t]hat [ABACUS] played such a role cannot be denied." SEC Opp. Mem. at 5. But this, again, wholly misses the point. Whether or not Jaffee is capable of helping the jury understand the "CDO Crisis," or of supporting the SEC's prejudicial claim that ABACUS and Mr. Tourre played a contributing role in that crisis, that would not help the jury properly decide the limited issue in this case—*i.e.*, whether Mr. Tourre is liable in respect of specific misrepresentations allegedly made in connection with ABACUS 2007-AC1.

To the contrary, the introduction of such testimony would plainly prejudice the jury's ability to properly and impartially decide those claims, which is, no doubt, why the SEC

3

would like to elicit it. The testimony that Mr. Tourre helped design a transaction that contributed to a "CDO Crisis"—which Jaffee will then testify was the same thing as the larger "subprime mortgage crisis," Jaffee Report ¶ 22.iv—will apparently be coupled with the introduction of an email from Mr. Tourre discussing "more and more leverage in the system," to engender ill will toward Mr. Tourre and associate him, in the jurors' minds, with the larger financial crisis. *See* SEC Opp. Mem. at 5-6. Since the 2008 financial crisis, numerous courts have held that expert and other testimony that seeks to associate parties with that crisis is inadmissible because the association would unduly prejudice the jury's decision. *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, No. 08 Civ. 7508, 2013 WL 1155420, *3 (S.D.N.Y. Mar. 20, 2013); *Island Intellectual Property LLC v. Deutsche Bank AG*, No. 09 Civ. 2675, 2012 WL 526722, *3 (S.D.N.Y. Feb. 14, 2012) ("Any relevance of such a discussion is also far outweighed by the danger of unfair prejudice or of misleading or confusing the jury. The financial crisis has deeply affected this country, and efforts to connect plaintiffs to that crisis may cause the jury to view them unfavorably."); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, No. 04 Civ. 10014, 2009 WL 3111766, *7 (S.D.N.Y. Sept. 28, 2009) ("the Court cautions the parties against using inflammatory terms and making derogatory statements that do not bear on the issues being tried, including, but not limited to, 'tax haven' and statements linking the Bondholders, or hedge funds in general, to the financial crisis").

The SEC also urges that Jaffee should be able to testify on these matters because Judge Rakoff, at the *Stoker* trial, said "that he regretted Dr. Jaffee did not testify at the outset of the trial and before any fact witnesses because 'the jury very much needs a basic grounding in the basics of these instruments.'" SEC Opp. Mem. at 5. The transcript tells a different story, however. Before trial in that case, the defendant moved to exclude Jaffee's testimony and in response, the SEC offered that it would not seek to elicit any of Jaffee's proposed testimony on "the historical background of CDOs." Davies Ex. 18 (July 12, 2012 hearing transcript at 67). Not satisfied with this limitation, Judge Rakoff ordered that Jaffee's testimony would be limited to merely "explain[ing] to the jury, in a simple and basic kind of way, what CDOs are, what a

4

CDO squared is, basics of that sort," and would be admitted "for that purpose only, limited to one hour direct testimony." *Id.* at 71. Though Jaffee's report in that case contained the same proposed testimony on the "CDO Crisis" he offers in this case, the SEC did not attempt to elicit that testimony at trial. Davies Exs.19-20 (trial transcripts). The SEC, which has not even attempted to demonstrate the relevance of this proposed testimony, has shown no reason why Jaffee's testimony in this case should not be subject to the same limitations imposed by Judge Rakoff in *Stoker*.

## II. JAFFEE SHOULD BE PROHIBITED FROM NARRATING THE COMPLAINT'S ALLEGATIONS AND FROM MAKING BALD ASSERTIONS AS TO THE ULTIMATE LEGAL ISSUE IN THIS CASE

Jaffee proposes also to narrate at length key allegations of the Amended Complaint, *see* Jaffee Report ¶¶ 32-40, Jaffee Rebuttal ¶¶ 6, 12, which, according to the SEC, he will repackage as expert opinions drawn from his "undisputed expertise regarding asset-backed securities and CDOs." SEC Opp. Mem. at 6. Quite apart from all the other objections to the proposed testimony, Jaffee cannot be permitted to opine on any such issues, given that the SEC intends to have him testify as the first witness, before any factual evidence is introduced.

In paragraph 37 of his report Jaffee opines that "[t]he importance of the portfolio manager was well understood by [Goldman]," basing this conclusion on a purported review of the ABACUS offering materials. The SEC argues that this testimony would be proper, invoking authority for the proposition that experts are permitted to analyze documents that "are studded with complex terminology, [such that] a lay juror may well have difficulty understanding their meaning without the aid of expert testimony." SEC Opp. Mem. at 6 (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Securities, LLC*, 691 F. Supp. 2d 448, 462 (S.D.N.Y. 2010). But Jaffee does not refer to or explicate any "complex terminology" in these materials, nor does he offer any other "expert" analysis that would help the jury understand them. And apart from this first one, Jaffee does not even purport to base the remainder of his factual "opinions" on his review of any documents, complex or otherwise. Indeed, his report

5

simply cites directly to the Amended Complaint, which his proposed testimony regurgitates almost verbatim. *See* Jaffee Report ¶¶ 38-40.

Simply marshaling and narrating fact evidence in this manner is not proper conduct for an expert witness, as is clear from the case law discussed in the opening brief, which the SEC's opposition fails to acknowledge. *See, e.g., Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005); *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004). This prohibition should apply with even more force here, where the SEC is proposing that Jaffee should deliver this packaged narrative to the jury before it hears from any fact witnesses.

As its last point, the SEC argues that Jaffee should at least be able to "testify about information that generally was considered important to CDO portfolio selection agents and investors," and that Mr. Tourre "cannot" dispute that Jaffee is "eminently qualified to offer" such opinions. But Jaffee, a university professor whose exposure to CDOs has been entirely academic in nature, *see* Tourre Mem. at 1-2, was proffered as an expert on how CDOs are structured and function, not as an expert in industry practices and customs.

The SEC has moved to exclude the testimony of both Mr. Tourre's experts on the ground that they did not work in the CDO industry and are, therefore, unqualified to opine as to what participants in the CDO industry actually considered important in 2007.[2] Those objections are wholly ill-founded as to Dr. Bajaj and Dr. Cox, because neither of them is offering any such opinion.[3] Jaffee, on the other hand, is offering an opinion as to what CDO market participants considered important in 2007, but without any experience that would qualify him to do so. As Jaffee testified, his experience of CDOs is limited to academic and policy work, he has never

---

[2] *See* ECF No. 207 (Mem. of Law in Support of Daubert Motion to Exclude Portions of the Opinion Testimony of Dr. Mukesh Bajaj, at 10-11); ECF No. 196 (Mem. of Law in Support of Daubert Motion to Exclude the Opinion Testimony of Dr. Charles Cox, at 7-10).

[3] *See* ECF No. 224 (Mem. of Law in Opposition to Motion to Exclude Portions of the Opinion Testimony of Dr. Mukesh Bajaj, at 16); ECF No. 222 (Mem. of Law in Opposition to Motion to Exclude the Opinion Testimony of Dr. Charles Cox, at 5).

6

worked for an investment bank, hedge fund, asset manger, portfolio selection agent, or collateral manager, and he has never personally invested in a CDO, never managed a CDO, and never selected a CDO reference portfolio.  *See* Jaffee Dep. Tr. at 11-13.  As the SEC itself argues, a person with such experience has no "proper basis" "to opine on what was material to CDO investors in 2007."  Mem. of Law in Support of Daubert Motion to Exclude Portions of the Opinion Testimony of Dr. Mukesh Bajaj, at 10.

Moreover, the SEC's proposed expert, Davidson, intends to opine as to what CDO investors considered important, and also as to what ACA and IKB specifically considered important.  *See* Davidson Rebuttal ¶¶ 38-39.  That testimony should not be permitted either, but to the extent it were, Jaffee's testimony on these issues should be excluded as unnecessarily cumulative.  *See F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1258 (2d Cir. 1987) (upholding exclusion of expert's testimony that was cumulative of other testimony).

For all these reasons, Jaffee's testimony should be subject to the same limitations imposed by Judge Rakoff in the *Stoker* litigation, as referenced above.

## **CONCLUSION**

For all the foregoing reasons, Fabrice Tourre respectfully requests that the Court grant his *Daubert* motion and exclude those parts of the proposed testimony of SEC expert Dwight M. Jaffee described herein.

Dated: April 12, 2013
         New York, New York

                              Respectfully submitted,

                              /s/ Pamela Rogers Chepiga
                              Pamela Rogers Chepiga
                              (pamela.chepiga@allenovery.com)
                              David C. Esseks
                              (david.esseks@allenovery.com)
                              Andrew Rhys Davies
                              (andrew.rhys.davies@allenovery.com)
                              Brandon D. O'Neil
                              (brandon.o'neil@allenovery.com)

                              ALLEN & OVERY LLP
                              1221 Avenue of the Americas
                              New York, New York  10020
                              (212) 610-6300

                              *Attorneys for Fabrice Tourre*