UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- x
                                         :
SECURITIES AND EXCHANGE                  :
COMMISSION,                              :   Civil Action
                                         :   No.: 10-cv-3229 (KBF)
              Plaintiff,                 :
                                         :   ELECTRONICALLY FILED
       v.                                :
                                         :
FABRICE TOURRE,                          :
                                         :
              Defendant.                 :
---------------------------------------- x


# REPLY MEMORANDUM OF LAW OF FABRICE TOURRE IN FURTHER SUPPORT OF HIS DAUBERT MOTION TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF IRA WAGNER


Pamela Rogers Chepiga
David C. Esseks
Andrew Rhys Davies
Brandon D. O'Neil

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

*Attorneys for Fabrice Tourre*

Dated:  April 12, 2013
        New York, New York

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT .............................................................................................................................. 1

I.    WAGNER'S OPINIONS SHOULD BE EXCLUDED BECAUSE, CONTRARY TO HIS REPRESENTATIONS, HE FORMED HIS OPINIONS BASED ON IRRELEVANT AND PREJUDICIAL EVIDENCE .......................................................... 1

II.    WAGNER'S OPINIONS ARE ALSO LARGELY INADMISSIBLE ............................. 5

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*Dallas & Mavis Forwarding Co. v. Stegall*,
  659 F.2d 721 (6th Cir. 1981) ............................................................................................. 3

*Gill v. Arab Bank, PLC*,
  No. 11 Civ. 3706, 2012 WL 5177592 (E.D.N.Y. Oct. 19, 2012) ...................................... 3, 4

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ........................................................................................................... 5

*Liriano v. Hobart Corp.*,
  949 F. Supp. 171 (S.D.N.Y. 1996) .................................................................................... 4

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  691 F. Supp. 2d 448 (S.D.N.Y. 2010) ............................................................................. 5, 7

*Snyder v. Wells Fargo Bank, N.A.*,
  No. Civ. 4496, 2012 WL 4876938 (S.D.N.Y. Oct. 15, 2012) ........................................... 5, 8

## RULES

Fed. R. Civ. P. 26 ..................................................................................................................... 1, 2

Fed. R. Civ. P. 37 ......................................................................................................................... 1

Fed R. Evid. 403 ........................................................................................................................... 1

Fed. R. Evid. 702 .......................................................................................................................... 1

Fed. R. Evid. 703 .......................................................................................................................... 3

Fabrice Tourre respectfully submits this reply memorandum of law in further support of his *Daubert* motion, pursuant to Federal Rules of Evidence 403, 702 and 703, and Federal Rules of Civil Procedure 26 and 37, for exclusion of the proposed expert testimony of Ira Wagner in its entirety.[1]

## ARGUMENT

### I. WAGNER'S OPINIONS SHOULD BE EXCLUDED BECAUSE, CONTRARY TO HIS REPRESENTATIONS, HE FORMED HIS OPINIONS BASED ON IRRELEVANT AND PREJUDICIAL EVIDENCE

As Mr. Tourre has shown, Wagner's opinions should be excluded because, contrary to the representations in his reports, he formed the negative opinions about the ABACUS transaction that he now proposes to offer to the jury in this case based on a transaction that the Paulson firm proposed to him while he was at Bear Stearns, a transaction he assumes was the same as ABACUS. Wagner expressed his strong negative opinions about the ABACUS transaction to the FCIC in April 2010, before he was retained and before he reviewed any of the evidence in this case. *See* Tourre Mem. at 3-5, 13-16.

The SEC's first-line response is utterly fatuous—that Wagner's pre-formed negative opinions were not "undisclosed" because Wagner testified about them under cross-examination at his deposition. SEC Opp. at 14. Wagner testified about his prior dealings with Paulson only because Mr. Tourre's counsel questioned him about them. We were able to do that because our independent research in preparation for the deposition included reading the FCIC Report, where Wagner's discussions with Paulson and his strong pre-formed negative opinions about ABACUS are officially memorialized.

Equally unavailing is the SEC's argument that Wagner's prejudice was not undisclosed because "the defense's questions were largely based on documents produced by the SEC." SEC Opp. Mem. at 14. Documents produced by the SEC showed Wagner's

---

[1] This Reply Memorandum adopts defined terms from the opening memorandum of this motion, dated March 8, 2013. That opening memorandum is cited as "Tourre Mem." and the SEC's opposition memorandum, dated March 29, 2013, is cited as "SEC Opp. Mem."

longstanding relationship with ACA and the former ACA personnel whose testimony he credits in his reports—that being a second example of his undisclosed biases.  None of the documents produced by the SEC disclosed Wagner's dealings with Paulson, and the strong negative views Wagner formed about the proposed transaction based on those discussions.  Moreover, Rule 26(a)(2)(B), which the SEC fails to even address in its opposition, requires that the bases for an expert's opinion be disclosed *in the expert's report*.  The rule does not say that it is sufficient that the opposing party might uncover those undisclosed bases by combing through millions of pages of documents produced in fact discovery or through independent research, and that, if counsel fails to locate that evidence, then the expert may testify at trial under false pretenses as to how he formed his opinions.

Further, the SEC's insinuation that it was the FCIC that "equated" the transaction that Paulson proposed to Wagner with ABACUS, *see id.* at 12, cannot be squared with Wagner's deposition testimony that the purpose of his FCIC interview was to discuss ABACUS with him.  *See* Wagner Dep. Tr. at 54 ("Q: That was the purpose of the call, to ask you about the Abacus 2007-AC1 transaction?  A: Yes.").  Similarly, when Wagner was asked at deposition whether he told the FCIC that "the Paulson & Co. hedge fund had approached your group at Bear Stearns to do the Abacus 2007-AC1 transaction," Wagner responded:  "I mean, I don't recall – I mean, if it's what's in the material, then I think I said it."  *Id*. at 55.

As Mr. Tourre has shown, the SEC and Wagner's violation of Rule 26(a)(2)(B) requires exclusion of the expert testimony unless the failure to comply was "substantially justified" or "harmless."  Tourre Mem. at 14.  The SEC does not argue that the violation was substantially justified, and its "no-harm" arguments are unsustainable.

The SEC seeks support in Federal Rules of Evidence 701 and 703, asserting that these rules permit "the same witness to provide both lay and expert testimony in a single case," and state "that an expert may base his opinion on facts or data that he 'personally observed.'" SEC Opp. Mem. at 16.  These principles are totally irrelevant here, because Wagner bears no

resemblance to a "treating physician" who "(1) likely interacted with witnesses, and (2) made contemporaneous medical decisions based on pre-formed views." *See* SEC Opp. Mem at 16-17.

Unlike a treating physician, Wagner was not a first-hand observer of the events at issue in this lawsuit, *i.e.*, the events of the ABACUS transaction. Wagner is not, therefore, a lay witness who is basing an expert opinion on his personal observation of the relevant facts. To the contrary, the facts that Wagner observed, *i.e.*, Paulson's request to have Wagner's group at Bear Stearns structure a CDO in which a short party would have involvement in portfolio selection, which Wagner equates with ABACUS, are not and should not be part of the evidentiary record in this case.

Moreover, Rule 703, on which the SEC relies, permits an expert to form opinions based on inadmissible evidence only if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. Wagner can hardly invoke that rule, because his recollections of the transaction Paulson asked him to do are very limited, with the exception of his strong conclusions, memorialized in the FCIC Report, that it would be "ridiculous" to argue that Paulson's role in portfolio selection was immaterial because he was not well known, that Paulson was incentivized to pick the worst assets, that having a short investor involved in portfolio selection was a "serious conflict" that would need to be disclosed, and that the proposed transaction would expose Bear Stearns to "reputational" issues. *See* Tourre Mem. at 4-5.

A "treating physician" or similar expert would clearly not "reasonably rely" upon such incomplete recollections of irrelevant past interactions—this would be somewhat like a treating physician being allowed to opine based on vague recollections of treating a different patient. As at least one court has held, Wagner's opinions based on this inadmissible evidence should be excluded for this reason. *See Dallas & Mavis Forwarding Co. v. Stegall*, 659 F.2d 721, 722 (6th Cir. 1981) (excluding expert testimony offered under Rule 703 where the inadmissible and hearsay bases of a police investigator's testimony were not "of a type reasonably relied upon by experts in the particular field").

3

Further, as the court held in *Gill v. Arab Bank, PLC*, No. 11 Civ. 3706, 2012 WL 5177592 (E.D.N.Y. Oct. 19, 2012) (Weinstein, J.), expert testimony based upon hearsay or other inadmissible material that is offered under Rule 703 may be excluded if those bases do not provide adequate opportunity for effective cross examination. *Id.* at *2. As that opinion explains, discussing Federal Rule of Evidence 705, "[e]ffective cross-examination was strongly relied upon by the Advisory Committee on the Federal Rules of Evidence to validate the use of evidence not otherwise admissible." *Id.*

According to the SEC, if Mr. Tourre elects to cross-examine Wagner as to how he reached his pre-formed opinions, which would place before the jury the inadmissible and prejudicial evidence concerning the transaction that Paulson presented to Bear Stearns, then that harm would be "self-inflicted." SEC Opp. Mem. at 19, and 14 n.6 ("The SEC does not intend to elicit testimony about Wagner's reputational concerns unless the defense opens the door and makes the transaction Paulson proposed to Bear Stearns relevant redirect or rebuttal evidence."). But the SEC offers no support for the idea that a party can proffer an expert as a set trap for its opponent, such that any cross-examination on the inadmissible and extraneous bases of the expert's opinions would permit introduction of irrelevant and prejudicial material on redirect. As the inadmissible bases for Wagner's opinions do not meet the criteria set forth in Rule 703, and because cross-examination of Wagner on those bases would needlessly and unduly prejudice Mr. Tourre, his opinions should be excluded.

Finally, the SEC seeks to distinguish the cases cited in Mr. Tourre's opening brief, which hold that an expert cannot form an opinion and back-fill by reviewing the evidence later. *See* Tourre Mem. at 13-14. The SEC argues that those cases only apply when "the bias infected the methodology that the expert employed," and that "[i]t is not appropriate to invoke the *Daubert* test in cases where expert testimony is based solely on experience or training, as opposed to a methodology or technique." SEC Opp. Mem. at 17-18.

These arguments are wholly unsustainable. To the extent Wagner employed any methodology at all, it clearly was "infected" by his undisclosed prejudice and bias. In addition,

4

the case on which the SEC relies for the proposition that *Daubert* does not apply to industry experts, *Liriano v. Hobart Corp.,* 949 F. Supp. 171 (S.D.N.Y. 1996) (Scheindlin, J.), pre-dated *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999), which established that *all* experts are subject to *Daubert*.  Post-*Kumho Tire* opinions issued by the judge who decided *Liriano* make clear that *Daubert* applies fully to industry experts.  *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 691 F. Supp. 2d 448 (S.D.N.Y. 2010); *Snyder v. Wells Fargo Bank, N.A.,* No. 11 Civ. 4496, 2012 WL 4876938 (S.D.N.Y. Oct. 15, 2012).

## II.     WAGNER'S OPINIONS ARE ALSO LARGELY INADMISSIBLE

Mr. Tourre has shown that most of what Wagner has to say is also inadmissible. *See* Tourre Mem. at 16-19.  In a footnote, the SEC acknowledges that Wagner cannot opine that it is "unlikely" that ABACUS would have been completed if Paulson's role had been disclosed, that ACA would not have served as portfolio selection agent if it had been aware of Paulson's role, that it is unlikely that IKB would have invested if Paulson's role had been disclosed, and that Mr. Tourre was "primarily responsible" for ABACUS 2007-AC1.  SEC Opp. Mem. at 21, n.13.

In the sections that remain, however, Wagner continues to opine on ultimate legal issues, speculates as to the state of mind and motivations of the parties, and engages in wholesale narration of entire swaths of the evidentiary record that require no expert interpretation.  The SEC still proposes Wagner should testify to the following legal conclusions:

- "[T]he ABACUS marketing documents would have misled a reasonable CDO market participant." (Wagner Report at 8, ¶ h.)
- "[T]he representation that the portfolio had been 'selected by ACA' . . . omits an important fact and is a misleading and incomplete description." (*Id.* at 8, ¶ h, ¶ 76.)
- "[T]here was inaccurate and misleading disclosure to ACA about Paulson's intended investment position with respect to ABACUS, and no disclosure to ABACUS investors of Paulson's role in the portfolio selection process, which was required in order to give investors a full and complete description of the process." (Wagner Rebuttal at 3, ¶ b.)
- "The failure to make such disclosure was an important omission of information necessary for investors to meaningfully evaluate an investment in ABACUS (*Id.* at 3, ¶ b.)

5

- "[T]he Offering Materials were incomplete and omitted information a reasonable CDO market participant would consider important regarding the portfolio selection process." (*Id.* ¶ 7.)

As to speculation on intent, state of mind, and motivation, the SEC still proposes Wagner should testify that:

- "The motivation for the [ABACUS] transaction was to enable Paulson to short the RMBS market." (Wagner Report at 6, ¶ d; ¶¶ 36, 37.)
- "Paulson's objective in choosing reference assets was to identify names that would be more likely to underperform (*Id.* at 6, ¶ e, ¶ 44.)
- "ACA believed Paulson's role in the transaction was fundamentally different – to purchase the equity tranche of ABACUS." (*Id.* ¶ 53.)
- "ACA reached the conclusion that it was Paulson that had pre-committed to [equity] tranche." (*Id.* ¶ 56.)
- "ACA's belief that Paulson was intending to be a long investor . . . was reasonable." (*Id.* at 6, ¶ j.)
- "[ACA's] conclusion was based on the communication and meetings that took place among ACA, Goldman and Paulson." (*Id.* ¶ 54.)
- "ACA was expected to enhance the ability to place the CDO with investors." (*Id.* ¶ 43.)

The SEC also still argues that Wagner should be able to marshal and recite the following material for the jury:

- Goldman's "Mortgage Capital Committee Memo," on the basis of which Wagner opines upon the underlying motive for the ABACUS transaction and Goldman's "expectations" regarding ACA's role. (*Id.* ¶¶ 37, 42.)
- Fabrice Tourre's "coordinat[ion] [of] the preparation and distribution of the various marketing materials for ABACUS." (*Id.* ¶ 38.)
- The deposition testimony of Paolo Pellegrini and Sihan Shu of Paulson, regarding their objectives in portfolio selection (*Id.* ¶¶ 46-47.)
- A "series of emails" showing "the close interaction between ACA and Paulson in the development of the ABACUS reference portfolio." (*Id.* ¶ 49.)
- A January 10, 2007 email from Mr. Tourre to Laura Schwartz at ACA. (*Id.* ¶¶ 54, 56-57.)
- The deposition testimony of Laura Schwartz and Alan Roseman from ACA, stating their beliefs that knowledge of Paulson's role would have precluded ACA's involvement in the ABACUS transaction. (*Id.* ¶¶ 77-78.)
- An "email chain" not involving Mr. Tourre, which shows that "Goldman knew that IKB's interest was contingent on finding an acceptable Collateral Manager." (*Id.* ¶78.)

6

As these lists show, the scant limitations the SEC proposes are not sufficient to save Wagner's reports, which are simply pervaded with impermissible narrative and speculation.

The SEC insists that Wagner is not simply interpreting lay evidence and marshalling facts for the jury, but rather opining on "factual issues within the context of explaining how the events surrounding [ABACUS] compare to industry standards." SEC Opp. Mem. at 22. But although Wagner occasionally opines that the ABACUS transaction breached industry standards—for example by asserting that the offering materials were "misleading"—Wagner does not in fact do any "explaining" of industry standards or how they apply to this case's facts. He simply narrates and recites record evidence. To get a sense of this, one need only read the SEC's own description of Wagner's opinions. *See* SEC Opp. Mem. at 5-10 ("He accurately summarizes the content of this memo. . ."; "Wagner accurately summarizes the MCC Memo's statements that . . ."; "Wagner cites the deposition testimony of Paulo Pellegrini and Sihan Shu . . ."; "Wagner accurately quotes Pellegrini's response of 'correct' to the question . . ."; "Wagner accurately summarizes Shu's description of . . .", "Wagner then quotes Shu's answer of 'yes' to the question. . .").

The SEC relies heavily on *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448 (S.D.N.Y. 2010), in support of its claim that Wagner successfully walks the "fine line" referenced in that case "between opining on what investors would customarily assume and what Plaintiffs actually did assume." SEC Opp. Mem. at 21 (quoting *Pension Committee*, 691 F. Supp. 2d at 467). The SEC fails, however, to highlight that the *Pension Committee* court precluded the experts from, *inter alia*, "spend[ing] an inordinate amount of time detailing the facts of the case," *id.* at 467 n.102, offering legal interpretations of disclosure materials, *see id.* at 471, and "bolster[ing]" evidence that should be offered by "a lay witness with first-hand knowledge." *Id.* at 472. Wagner violates all these principles, with reports that are shot through with conclusions as to what ACA actually "believed," what ACA and IKB would have done differently had other disclosures been made, what Goldman "knew" and what its "expectations" were, what Paulson's "objectives" were, and

7

what the "motivation" for the ABACUS transaction was.  See Wagner Report at 6, ¶¶ d-e, ¶¶ 36-37, 43-44, 53-54, 56.

*Snyder v. Wells Fargo Bank, N.A.,* No. 11 Civ. 4496, 2012 WL 4876938 (S.D.N.Y. Oct. 15, 2012), is directly on point.  Like Wagner, the expert in *Snyder* purported to offer opinions on "securities industry custom and practices," but, also like Wagner, "shed[] light on industry practices *only* by referencing the facts of th[e] case."  *Id.* at *4.  The court in that case found that a significant part of the expert's report "consist[ed] largely of rehashing and characterizing testimony," "summariz[ing] what was said at meetings," and "stat[ing] conclusions without any reference to his purported expertise."  *Id.*

In the same way, as the SEC itself says, substantial chunks of Wagner's reports are simply dedicated to "accurately summarizing" memos and "accurately quoting" deposition testimony—factual material that, notwithstanding the complexity of the instruments themselves—does not require interpretation from an expert.  See Wagner Report ¶¶ 37-38, 42, 46-49, 54, 56-57, 77-78.  The *Snyder* court additionally found that the expert in that case "impermissibly addresse[d] [the] credibility and motivations of the witnesses."  2012 WL 4876938 at *4.  Wagner does the same here, reaching a conclusion as to what ACA "believed" on the basis of deposition testimony from ACA employee Schwartz—whom Wagner knew and viewed and "professional" and "credible"—while simultaneously dismissing the countervailing evidence, opining that it "would not be sufficient" to alter ACA's reasonable belief that Paulson was a long investor.  See Wagner Report ¶¶ 59-61.  Last, the *Snyder* court found that the expert there drew "numerous legal conclusions with regard to the specific facts of the case at hand." *Snyder*, 2012 WL 4876938 at *5.  Likewise here, Wagner repeatedly opines on the ultimate issue in this case—whether or not the ABACUS disclosures were misleading, a conclusion that Wagner states no fewer than four times.  See Wagner Report at 8, ¶ h; ¶ 76; Wagner Rebuttal at 3 ¶ b; ¶ 7.

Ultimately, on the basis of all those infirmities, the *Snyder* court excluded the entirety of that expert's testimony, stating: "Because [the expert's] report is so ridden with

8

improper statements and opinions, I decline to identify the limited portions that might qualify as expert testimony." *Id.* at *5. The same remedy is warranted here, particularly in light of the fact that the SEC has two other experts in this case, one of whom, Jaffee, will testify as to CDO structure and formation processes, and another, Davidson, whom the SEC also bills as an industry expert.

Finally, Mr. Tourre showed that Exhibit 2 to Wagner's Rebuttal Report should be stricken because all Wagner did was to copy certain items from a report provided to him by the SEC, in order to create a list of CDOs that would make ABACUS look worse than the others. *See* Tourre Mem. at 11-12, 19. Despite the SEC's claim that it will be helpful for the jury to see this "example" of a kind of analysis that would be "significantly more relevant" that those conducted by Mr. Tourre's experts, clearly, the purpose of this exhibit is to place before the jury a list that makes ABACUS look bad. Wagner should not be permitted to present this exhibit to the jury because he did no work to determine whether the other CDOs were comparable with ABACUS, and Dr. Bajaj demonstrated that they are not. *See id.*

The SEC now attempt to defend Wagner's Exhibit 2 by setting up a number of non-responsive straw-man arguments. *See* SEC Opp. Mem. at 22-25. Mr. Tourre is not arguing that Wagner failed accurately to copy the information from the Wachovia report that the SEC gave him, or that an expert cannot rely on data that he did not himself create, or even that the information in the original Wachovia report was inaccurate. *See* SEC Opp. Mem. at 23-24. The problem is that Wagner's Exhibit 2 has been created without the application of any proper methodology—a core *Daubert* violation.

Moreover, there is no need for Wagner to offer this exhibit, given that the SEC has proffered another of its three experts, Davidson, specifically for the purpose of rebutting the comparison analyses conducted by Mr. Tourre's experts, rendering Wagner's Exhibit 2 cumulative.

For all these reasons, Wagner's opinions are inadmissible, providing an additional reason to exclude them.

9

## CONCLUSION

For all the foregoing reasons, Fabrice Tourre respectfully requests that the Court grant his *Daubert* motion and exclude the proposed testimony of SEC expert Ira Wagner in its entirety.

Dated:  April 12, 2013
        New York, New York

                                        Respectfully submitted,

                                        /s/ Pamela Rogers Chepiga
                                        Pamela Rogers Chepiga
                                        (pamela.chepiga@allenovery.com)
                                        David C. Esseks
                                        (david.esseks@allenovery.com)
                                        Andrew Rhys Davies
                                        (andrew.rhys.davies@allenovery.com)
                                        Brandon D. O'Neil
                                        (brandon.o'neil@allenovery.com)

                                        ALLEN & OVERY LLP
                                        1221 Avenue of the Americas
                                        New York, New York  10020
                                        (212) 610-6300

                                        *Attorneys for Fabrice Tourre*