

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
100 F STREET NE
WASHINGTON, D.C. 20549-4010

CHRISTIAN D.H. SCHULTZ
ASSISTANT CHIEF LITIGATION COUNSEL

DIVISION OF
ENFORCEMENT

DIRECT DIAL: (202) 551-4740
FACSIMILE:   (202) 772-9282

May 1, 2013

**Via Electronic Mail**
Honorable Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAY 0 1 2013
```

RE:   **U.S. Securities & Exchange Commission v. Fabrice Tourre**
      **Civil Action No. 10 CV 3229 (KBF)**

Dear Judge Forrest:

    I write pursuant to the Court's instruction at the April 26, 2013 hearing on the defense motion to preclude the use of the January 17, 2007 recording of the telephone call between Gail Kreitman of Goldman Sachs & Co. ("GS&Co.") and Lucas Westreich of ACA Management, LLC ("ACA"), in which Kreitman falsely advised Westreich that Paulson & Co. ("Paulson") would be taking 100% of the equity in the AC1 transaction. At the Court's direction, we contacted ACA's attorneys about ACA's willingness to produce additional recordings to the parties in this litigation and its capability to do so on an expedited basis. ACA's counsel has provided the attached letter responding to our inquiry.

    As the Court knows from the parties' briefing on the motion to preclude, ACA provided to the SEC's NYRO approximately 6,900 recordings from the March 12, 2007 – July 31, 2007 timeframe for the recorded telephone lines of a number of ACA employees including but not limited to Laura Schwartz, Keith Gorman, and Lucas Westreich.[1] All of these recordings were produced to defense counsel by the SEC in November 2012 as well as by ACA in December 2012. As ACA's counsel indicates in the attached letter, in the private party state court lawsuit between ACA and GS&Co. relating to the AC1 transaction at issue in this lawsuit, ACA has produced to GS&Co. approximately 2,500 additional recordings from the January 1 – March 11, 2007 timeframe from the recorded telephone lines of Ms. Schwartz, Messrs. Gorman and Westreich, and Ava Regal. *These supplemental recordings encompass ACA's involvement with GS&Co., Paulson, and the AC1 transaction that began in January 2007.* ACA proposes to produce copies of these 2,500 recordings to the parties in this litigation by **May 6, 2013**, provided the parties agree to a protective order ensuring no waiver of the attorney-client privilege or work product protection regarding any of ACA's produced recordings, and that ACA's entire supplemental production of recordings, including the proposal set forth below, will satisfy ACA's production obligations in this matter. The SEC's agrees to both of these requests.

---

[1]    We understand from ACA's counsel that some ACA employees, including Laura Schwartz, had both trading desk lines that were recorded and office lines that were not recorded.

At the April 26th hearing, defense counsel indicated that she would like ACA to produce recordings going as far back as February 1, 2006. Counsel argued that recordings prior to December 1, 2006 would relate to ACA's discussions with banks other than GS&Co., investors other than Paulson, and deals other than AC1, and may reflect ACA's awareness that investors other than Paulson were taking a "core short" or "long/short" position (*i.e.*, purchasing the equity tranche and shorting more senior tranches). ACA's counsel raises concerns about the relevancy of such materials to this litigation, which the SEC shares, but indicates that ACA is prepared to undertake efforts to produce, on a rolling basis (May 10, May 17, and May 24), approximately 2,100 additional recordings from the recorded telephone lines of Ms. Schwartz and Mr. Gorman from March 1 through September 12, 2006. ACA's counsel indicates that this offer is consistent with defense counsel's prior agreement with ACA about the scope of its production obligations in response to defense subpoenas in this matter. This proposal is acceptable to the SEC, though we respectfully reserve all rights regarding the use at trial of any of these recordings.

We look forward to defense counsel's response to ACA's proposal and we will make ourselves available at the Court's convenience to address this matter further if necessary.

Respectfully,

*Christian D.H. Schultz*

Christian D. H. Schultz
Assistant Chief Litigation Counsel

cc: All Counsel of Record (via electronic mail)

---

**Ordered**

(1) The Court orders no waiver of attorney-client privilege or work product may be asserted based on the ACA recordings (to be produced). The parties should otherwise use the Court's standard protective order on the SDNY website if a model protective order is required (do not hold up the production for that reason).

(2) The SEC is to report to the Court on May 7 if the ACA calls have not been produced (and the Court will order ACA to produce them).

K. B. Forrest
USDJ
5/1/13

Fried, Frank, Harris, Shriver & Jacobson LLP

801 17th Street, NW
Washington, DC 20006
Tel: +1.202.639.7000
Fax: +1.202.639.7003
www.friedfrank.com

FRIED FRANK

Direct Line: 202.639.7314
Karl.Groskaufmanis@friedfrank.com

May 1, 2013

**By E-mail and FedEx**

Christian D. H. Schultz, Esq.
Assistant Chief Litigation Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

      Re:     *SEC v. Fabrice Tourre, 10-CV-3229 (KBF)*

Dear Mr. Schultz:

      The SEC Staff has requested that we address the possible production of certain additional telephonic recordings covering the period February 2006 to March 11, 2007 by our non-party client, ACA Financial Guaranty Corporation ("ACA" or the "Company"), in connection with the litigation referenced above. This letter responds to that request.

**Background on ACA's Prior Productions**

      ACA has cooperated with the SEC Staff in connection with this litigation and the related investigation that led to this litigation since July of 2008. ACA's constant challenge in extending this cooperation has been its mandate, as a "run-off" insurance company, to preserve its assets. Specifically, under the terms of a 2008 state insurance regulatory order, ACA's principal purpose is to preserve assets to satisfy valid claims on approximately $4.2 billion par value municipal bond insurance policies that run as late as 2045.

      Despite its run-off status, ACA has repeatedly made substantial productions in this matter over the last five years, including: (a) from 2008-2010, the production of approximately 4.65 million pages of records to the SEC staff, all of which were subsequently provided to defendant Fabrice Tourre; (b) in 2011, the production of more than 6,800 pages of additional e-mail and hard copy records in response to a third-party subpoena from Tourre; and (c) in November 2012, the production of 6,900 audio recordings to Tourre from the recorded telephone lines for five former ACA employees dated from March 12, 2007 to July 31, 2007 in response to a request from Tourre.

Fried, Frank, Harris, Shriver & Jacobson LLP

Christian D. H. Schultz, Esq.
May 1, 2013
Page 2 of 4

In a joint call to confer with the SEC Staff and counsel for Tourre on December 20, 2012, we reiterated our client's prior written offers to entertain reasonable requests for the production of additional audio recordings from the 2007 time period. We received no further requests from counsel to Tourre or the SEC Staff for the production of additional recordings after that call.

You have advised us that during a hearing held last Friday, April 26, 2013, Tourre revisited his prior determination not to seek additional recordings and now seeks the production of recordings for telephone lines associated with former ACA employees Laura Schwartz, Keith Gorman, Lucas Westreich and Ava Regal from February 1, 2006 through March 11, 2007. We understand that you have been directed to advise the Court, by Wednesday, May 1, 2013, regarding what reasonable steps can be taken to accommodate this request.

**The Unique Burdens of Producing Telephone Recordings**

Any request requiring the review of additional audio recordings would place a significant financial burden on ACA. Unlike e-mail records, ACA is not able to run search terms through its audio recordings. In addition, ACA must conduct a privilege review of the recordings. ACA has previously identified a number of recorded calls with counsel during its prior audio recording review and production and is continuing to assert the privilege associated with such communications.

As framed last Friday, Tourre's request seeks an enormous volume of recordings. Viewing the February 1 – December 31, 2006 time period alone, ACA's internal inventory of recordings reflects the following volume of recordings for these custodians: Laura Schwartz (approximately 2,000 calls with total duration of more than 63 hours); Keith Gorman (approximately 2,000 calls with total duration of more than 41 hours); Lucas Westreich (approximately 3,150 calls with total duration of more than 93 hours); and Ava Regal (approximately 6,600 calls with total duration of more than 304 hours). It is our understanding that ACA has no recordings for the lines associated with Keith Gorman and Lucas Westreich prior to August 30, 2006.

As noted above, the production of all non-privileged calls for the four previously identified custodians for February 1 – December 31, 2006 would require the review of nearly 14,000 telephone calls totaling more than 500 hours of conversation among market participants operating in an esoteric market with considerable technical jargon. Based on past experience with the review and production of ACA recordings, ACA believes that a reasonable estimate for the cost of reviewing and producing the more than 500 hours of conversation reflected in these 14,000 recordings over this time period could exceed $700,000.

This extraordinary burden on ACA is not supported by any justifiable discovery need. Based on our review and understanding of the record, we are aware of no 2006 record involving ACA relating to the Abacus 2007-AC1 transaction that is central to this

Fried, Frank, Harris, Shriver & Jacobson LLP

Christian D. H. Schultz, Esq.    May 1, 2013
Page 3 of 4

litigation; all the information available to us demonstrates that ACA's involvement in the Abacus transaction started in early January 2007 and we have not learned of any information to the contrary from any other source. As a result, any 2006 record is, in our view, irrelevant to the core issues in this litigation.

**Proposed Supplemental ACA Production**

While there are compelling arguments that ACA could advance to oppose any incremental production, ACA makes a proposal tailored to the substance of this litigation and Tourre's previous requests. This proposal would involve two significant productions.

First, for the period dated January 1 – March 11, 2007, ACA proposes producing all non-privileged audio recordings from the recorded telephone lines associated with Laura Schwartz, Keith Gorman and Lucas Westreich, without limitation by subject matter. For the same time period, ACA also is prepared to produce, from the recorded telephone line associated with Ava Regal, all non-privileged audio recordings relating to (i) Abacus 2007-AC1, (ii) Goldman Sachs & Co. and/or (iii) Paulson & Co., Inc. This production, which tracks a production made by ACA in state court litigation relating to the Abacus transaction, consists of approximately 2,500 additional recordings. If the proposal in this letter is accepted by the end of this week, ACA will endeavor to produce these recordings to Tourre and the SEC Staff on Monday, May 6, 2013.

Second, ACA proposes producing all non-privileged recordings for Laura Schwartz and Keith Gorman from March 1, 2006 through September 12, 2006. These custodians and dates are tailored to parallel record requests to which Tourre has previously agreed. Specifically, in e-mails dated February 9 – 10, 2011, Tourre's counsel agreed that ACA would produce "all non-duplicative, non-privileged e-mail messages sent to or from Keith Gorman, Joseph Pimbley, Alan Roseman, Nathalie Rushe or Laura Schwartz that were sent on or between January 1, 2006 to May 31, 2007" that also contained certain defined search terms related to a CDO titled Aquarius 2006-1 ("Aquarius') and Magnetar Capital, the equity investor in Aquarius. No 2006 records have ever been sought by Tourre from former ACA employees Lucas Westreich or Ava Regal.

Records available to ACA reflect that the engagement letter for the Aquarius CDO, which was issued on September 12, 2006, was not signed until May 9, 2006 and the first trade for the transaction's warehouse did not occur until April 20, 2006. The records introduced by Tourre in Laura Schwartz's 2011 deposition from ACA's supplemental production of Magnetar and Aquarius-related records all fall within the date range of May 19, 2007 – August 15, 2006. Further, of the custodians identified in Tourre's prior requests, we understand that telephone recordings exist only for the trading floor lines associated with Keith Gorman and Laura Schwartz.

Fried, Frank, Harris, Shriver & Jacobson LLP

Christian D. H. Schultz, Esq.  
May 1, 2013  
Page 4 of 4

    This proposal would require the review and production of approximately 2,100 additional recordings. If the proposal made in this letter is accepted by the end of this week, ACA will make a good faith effort to complete the production of these recordings to Tourre and the SEC Staff on an expedited basis in submissions on May 10, May 17 and May 24, 2013.

    ACA's proposal is contingent on: (a) an agreement that such a production will satisfy ACA's discovery obligations in the above-captioned litigation (similar to the mutual agreement previously struck by ACA and Tourre in February 2011); and (b) the joint request by the parties that the Court issue a protective order pursuant to Rule 502(d) of the Federal Rules of Evidence providing that no disclosure in connection with such production shall operate as a waiver of ACA's attorney-client privilege or work-product protection in connection with the litigation pending before the Court, or in any other federal or state proceeding of any kind.

    ACA submits that this proposal is reasonably designed to address the merits in this litigation and the defenses that Tourre has sought to develop through discovery. It is a measured response given the limited time left before trial in this matter. Since any demand for further production could result solely in futile expense for a run-off insurance company, ACA reserves all objections and remedies available to it as a third-party witness.

Sincerely,

Karl A. Groskaufmanis

8969184