UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

SECURITIES AND EXCHANGE COMMISSION,      :
      :
      :
      Plaintiff,      :
      : 10 Civ. 3229 (KBF)
      v.      :
      : ECF Case
FABRICE TOURRE,      :
      :
      Defendant.      :
_____      :

**SEC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
*IN LIMINE* TO PRECLUDE DEFENDANT FABRICE TOURRE FROM
OFFERING EVIDENCE OR ARGUMENT AT TRIAL THAT
<u>HE REASONABLY RELIED ON ADVICE OF COUNSEL</u>**

Matthew T. Martens
Richard E. Simpson
Christian D. H. Schultz
Bridget Fitzpatrick
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4481 (Martens)
(202) 772-9362 (facsimile)
martensm@sec.gov
*Attorneys for Plaintiff*

Dated:  May 24, 2013
    Washington, D.C.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ........................................................................................................................2

     A.  The Alleged Fraud .............................................................................................2

     B.  The Lack of Evidence That Tourre Reasonably Relied On The Advice
         of Counsel .........................................................................................................3

         1.  The SEC's Initial Investigation...................................................................3

         2.  Discovery During This Litigation.................................................................3

     C.  Tourre's Last-Minute Assertion Of An Advice of Counsel Defense ...........................4

LEGAL STANDARD....................................................................................................................5

ARGUMENT ..............................................................................................................................6

I.       Tourre Cannot Satisfy His Burden For Establishing The Advice Of Counsel
        Defense ..............................................................................................................6

II.      Tourre Cannot Base His Advice Of Counsel Defense On The Presence Of A
        Retired Lawyer Who Did Not Provide Him Any Legal Advice And Who Had
        The Same Financial Interest In AC1's Success ...................................................9

III.     Tourre Cited No Evidence That He Reasonably Relied On The Advice of
        Counsel In Support of His Summary Judgment Motion.....................................10

IV.     Tourre Should Not Be Permitted To Confuse The Jury And Unfairly Prejudice
        The SEC's Case By Presenting Evidence That Does Not Relate To A Viable
        Defense ............................................................................................................13

CONCLUSION............................................................................................................................15

## TABLE OF AUTHORITIES

### CASES

*Arthur Lipper Corp. v. S.E.C.*,
    547 F.2d 171 (2d Cir. 1977)........................................................................10

*C.E. Carlson, Inc. v. S.E.C.*,
    859 F.2d 1429 (10th Cir. 1988) ..................................................................10

*In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.*,
    09MD2058(PKC), 2011 WL 3211472 (S.D.N.Y. July 29, 2011) ............................ *passim*

*In re Residential Capital, LLC*,
    No. 12-12020(MG), 2013 WL 1497203 (Bankr. S.D.N.Y. Apr. 12, 2013) ......................10

*Luce v. United States*,
    469 U.S. 38 (1984)...................................................................................5

*Markowski v. S.E.C.*,
    34 F.3d 99 (2d Cir. 1994)................................................................1, 5, 6, 13

*Palmeri v. Defaria*,
    88 F.3d 136 (2d Cir. 1996)............................................................................5

*S.E.C. v. Enterprises Solutions, Inc.*,
    142 F. Supp. 2d 561 (S.D.N.Y. 2001)..................................................1, 5, 7, 8

*S.E.C. v. Meltzer*,
    440 F. Supp. 2d 179 (E.D.N.Y. 2006) ................................................6, 7, 8, 13

*S.E.C. v. O'Meally*,
    No. 06civ6483 (LTS)(RLE), 2010 WL 3911444 (S.D.N.Y. Sept. 29, 2010)................9, 10

*S.E.C. v. Stoker*,
    No. 11-CV-07388 (S.D.N.Y.).........................................................................13, 14

*Trouble v. Wet Seal, Inc.*,
    179 F. Supp. 2d 291 (S.D.N.Y. 2001)..............................................................10

### STATUTES AND REGULATIONS

Section 21 of the Securities Exchange Act of 1934, 15 U.S.C. § 78u............................................3

Federal Rule of Evidence 401................................................................................13, 14

Federal Rule of Evidence 403 ..............................................................................................................14

Plaintiff, the Securities and Exchange Commission ("SEC"), respectfully submits this Memorandum of Law in Support of its Motion *in Limine* to preclude defendant Fabrice Tourre from offering evidence or argument at trial that he reasonably relied on advice of counsel.

## PRELIMINARY STATEMENT

This case concerns a fraud by Tourre and his employer, Goldman Sachs & Co. ("GS&Co"), in the offer and sale of securities and security-based swap agreements in the ABACUS 2007-AC1 ("AC1") CDO transaction.[1]   At the close of summary judgment briefing, Tourre signaled his intent to present at trial evidence of reliance on advice of counsel.  This purported defense appears to be based largely on (a) the typical practice of involving GS&Co in-house counsel and McKee Nelson, a law firm that represented GS&Co, in transactions conducted by GS&Co's correlation desk (where Tourre worked), (b) the involvement in AC1 of David Gerst, a fellow trader on GS&Co's correlation desk who was a non-practicing attorney, and (c) the fact that other parties to the transaction were represented by counsel.  Because Tourre cannot meet his burden of establishing an advice of counsel defense, the SEC seeks to preclude this evidence and/or argument.

It is well-settled that the defense of reasonable reliance on the advice of counsel requires that a defendant make complete disclosure of his conduct to counsel, seek advice on the legality of his conduct, receive advice that his conduct is legal, and rely on that advice in good faith.  *See, e.g., Markowski v. S.E.C.*, 34 F.3d 99, 105 (2d Cir. 1994); *S.E.C. v. Enterprises Solutions, Inc.*, 142 F. Supp. 2d 561, 576 (S.D.N.Y. 2001).  During discovery, Tourre testified that he did not recall any conversations he had with GS&Co's legal department in connection with AC1, and he did not know whether anyone sought legal advice on the relevant disclosure issues.  Tourre's

---

[1]     A more complete recitation of facts about the creation of the AC1 CDO is set forth in the SEC's Memorandum of Law in Support of Its Motion for Partial Summary Judgment. (Dkt. 192).

summary judgment materials offer no evidence that Gerst, who was acting in a non-legal capacity and had an interest in the transaction's success, discussed the relevant disclosure issues with legal counsel or with Tourre.  Given that Tourre cannot satisfy the legal standard for an advice of counsel defense, he should not be allowed to confuse the jury and unfairly prejudice the SEC's case by presenting general evidence that lawyers were involved in other aspects of the transaction.

## BACKGROUND

### A.  The Alleged Fraud.

Tourre and GS&Co defrauded ACA Capital Holdings, Inc. and its subsidiaries (collectively, "ACA") when, in order to induce ACA to serve as portfolio selection agent for AC1, Tourre and GS&Co misrepresented to ACA that a Paulson & Co., Inc. hedge fund ("Paulson") was taking an equity (*i.e.*, long) interest in the transaction when, in realty, it was only ever contemplated that Paulson would take a purely short interest.  As a portfolio selection agent, ACA was to be acting in the interest of the CDO's long investors in selecting the CDO's reference portfolio.  Were Paulson a long investor, it would have had an economic interest in the successful performance of the CDO's portfolio.  But, as Tourre well knew, Paulson intended to and did take only a short position in the AC1 reference portfolio.  Having been misled by Tourre and GS&Co regarding Paulson's investment interest, ACA not only worked with Paulson to select the portfolio but also made an approximately $951 million long investment in AC1.

The SEC has also alleged that Tourre and GS&Co misled other investors and potential investors with the marketing documents for AC1, which were replete with the half-truth that ACA had "selected" the AC1 reference portfolio.  The AC1 marketing documents did not disclose that a purely short investor – Paulson – helped select the reference portfolio.

### B. The Lack of Evidence That Tourre Reasonably Relied On The Advice of Counsel.

#### 1. The SEC's Initial Investigation.

Prior to filing the complaint in this action, the SEC conducted an investigation of the AC1 transaction pursuant to Section 21 of the Securities Exchange Act of 1934.  The SEC took the investigative testimony of Tourre, Gerst, and other GS&Co employees who worked on the AC1 transaction.  Tourre testified that he "did not consider disclosing Paulson in the marketing material."  (Fitzpatrick Decl., Ex. A, Tourre Inv. Tr. Day I at 95).  Indeed, he did not remember discussing the issue with *anyone.*  (Fitzpatrick Decl., Ex. B, Tourre Inv. Tr. Day II at 83-84).  Tourre did not know whether GS&Co's employees in the compliance or legal departments knew of Paulson's role in selecting AC1's portfolio when they reviewed the relevant marketing materials.  (Ex. A at 63).  He did not recall whether outside counsel reviewed the term sheet or flip book used to market the transaction.   (*Id*. at 60, 75).

Gerst testified that he "was not" acting as a lawyer when he worked on GS&Co's correlation desk.  (Fitzpatrick Decl., Ex. C, Gerst. Inv. Tr. at 10-11).  As of January 2006, Gerst had been on retired status with the New York Bar.  (*Id.* at 11).  He did not recall any discussions with the GS&Co legal department, outside counsel or anyone about the disclosures in the AC1 term sheet or flipbook.  (*Id.* at 42, 44).  Nor did he recall ever seeking the advice of counsel as to whether Paulson's role in the collateral selection process should be disclosed in the marketing materials.  (*Id.* at 65).

#### 2. Discovery During This Litigation.

Following the SEC's investigation, the SEC filed a Complaint and the parties took discovery.  In his Answer to the SEC's Amended Complaint, Tourre claimed to have relied on GS&Co's "institutional process to ensure adequate legal review and disclosure of material information, and cannot be held liable for any alleged failings of that process."  (Dkt. 94 at 14).

However, Tourre has never offered evidence that GS&Co's so-called "institutional processes" possessed the information necessary to ensure adequate disclosure of the conduct at issue in this litigation.  Nor has Tourre offered any evidence that he took any steps to ensure that the relevant personnel in the legal and compliance departments were aware of Paulson's role in the collateral selection process and economic interest in the transaction.

At his deposition, Tourre testified that he did not recall any conversations he had with the legal department in connection with AC1.  (Fitzpatrick Decl., Ex. D, Tourre Dep. 367).  Tourre testified that Gerst typically interfaced with GS&Co's in-house lawyers, but he did not know whether Gerst described AC1's collateral selection process for those lawyers.  (*Id.* at 387).  Indeed, Tourre did not know whether anyone from the correlation desk told the legal and compliance departments, or GS&Co's outside counsel at McKee Nelson, anything about Paulson's role in the transaction.  (*Id*. at 368, 388-89).  Tourre had no recollection of personally participating in any such conversation.  (*Id.* at 386).  Gerst did not recall having any conversations with counsel *or Tourre* about disclosing Paulson's role in AC1.  (Fitzpatrick Decl., Ex. E, Gerst Dep. 212-13).

### C.  Tourre's Last-Minute Assertion Of An Advice Of Counsel Defense.

Notwithstanding the lack of any evidence that he received or relied on legal advice, Tourre raised an advice of counsel defense in his Reply Memorandum in Support of his Motion for Partial Summary Judgment (Dkt. 244 at 17-18), and in his Response to the SEC's Separate Statement of Undisputed Material Facts Submitted in Opposition to Mr. Tourre's Motion for Partial Summary Judgment ("Rule 56.1 Response") (Dkt. 255).  Specifically, Tourre averred that AC1 "offering documents were reviewed by other Correlation Desk employees, and by a host of lawyers from Goldman, Goldman's external counsel, ACA and its external counsel, as well as

Paulson's external counsel, which functioned as an 'adjunct' to Paulson's in-house counsel and the lead lawyer of which is currently a senior lawyer at the SEC itself. [] None of these lawyers suggested any additional disclosure was required." (Dkt. 255 ¶¶ 187, 188, 198, 225). Tourre also noted that he "helped to recruit Mr. Gerst, a trained lawyer, to work on the Correlation Desk, [and that] Mr. Gerst thought about whether Paulson's role in the portfolio selection needed to be disclosed and decided it did not, and did not recall ever discussing this issue with Tourre." (*Id.* ¶ 188).

## **LEGAL STANDARD**

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmeri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted); *see also Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (noting that, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials").

"[I]n the context of a civil securities action, reliance on advice of counsel 'is not a complete defense, but only one factor for consideration.'" *Enterprises Solutions*, 142 F. Supp. 2d at 576 (quoting *Markowski*, 34 F.3d at 105). The party asserting the advice of counsel defense bears the burden of establishing its essential elements. *Markowski*, 34 F.3d at 105. Thus, a defendant "must show that he (1) made complete disclosure to counsel, (2) sought advice as to the legality of his conduct, (3) received advice that his conduct was legal, and (4) relied on that advice in good faith." *Enterprises Solutions*, 142 F. Supp. 2d at 576; *see also Markowski,* 34 F.3d at 104-05 (articulating four-part test for reliance on advice of counsel defense); *In re Bank*

*of Am. Corp. Sec., Derivative, and ERISA Litig.*, 09MD2058(PKC), 2011 WL 3211472, at *8 (S.D.N.Y. July 29, 2011) (same); *S.E.C. v. Meltzer*, 440 F. Supp. 2d 179, 189 (E.D.N.Y. 2006) (same).

<b><u>ARGUMENT</u></b>

**I.      Tourre Cannot Satisfy His Burden For Establishing The Advice Of Counsel Defense.**

The Court should preclude Tourre from referencing the involvement of GS&Co lawyers in the transaction at trial because he cannot satisfy the relevant legal standard for an advice of counsel defense.  As noted above, this Circuit employs a four-part test for the defense of good faith reliance on the advice of counsel.  "[A] defendant has to show that he made a complete disclosure to counsel, sought advice as to the legality of his conduct, received advice that his conduct was legal, and relied on that advice in good faith."  *In re Bank of Am.*, 2011 WL 3211472, at *8 (citations omitted).

In the present case, Tourre has never presented any evidence that he or anyone at GS&Co informed the legal and compliance personnel reviewing AC1 offering materials, or GS&Co's outside counsel at McKee Nelson, that a hedge fund taking a purely short position had participated in the selection of the CDO's reference portfolio.  Tourre has similarly failed to offer any evidence that he or anyone at GS&Co sought a legal opinion about whether GS&Co was required to disclose Paulson's role to investors.  To the contrary, Tourre testified that he did not recall discussing the relevant disclosure issues with the lawyers on the deal.  (Ex. D at 367).  Moreover, Tourre did not know whether anyone on the correlation desk told GS&Co's legal and compliance departments, or McKee Nelson, anything about Paulson's role in the transaction. (*Id.* at 368, 388-89).  Under these circumstances, Tourre cannot meet *his* burden of establishing the four elements of an advice of counsel defense.  *See Markowski*, 34 F.3d at 104-05 (requiring

6

"complete disclosure to counsel" to establish defense); *Enterprises Solutions*, 142 F. Supp. 2d at 576 (same); *Meltzer,* 440 F. Supp. 2d at 189 (same);  *In re Bank of Am.*, 2011 WL 3211472, at *8 (same).

In *Enterprises Solutions,* for example, the company failed to disclose in its registration statement that defendant-Solomon's former company went into bankruptcy while he was its CEO.  142 F. Supp. 2d at 575-76.  Solomon claimed that he included information about the bankruptcy in the questionnaire responses he provided to corporate counsel.  *Id.* at 576.  The court held that simply providing the information to counsel was insufficient because Solomon "never sought specific advice from counsel with respect to disclosure of the bankruptcy, nor did he receive specific advice that [the company] was not required to disclose the bankruptcy."  *Id*. The Court therefore entered judgment against Solomon after a bench trial.  *Id.* at 579.  Unlike Solomon, Tourre has offered no evidence that he ever provided the relevant information to GS&Co's lawyers.  It is not enough for Tourre simply to claim that lawyers were involved in drafting the relevant marketing materials.  "Compliance with federal securities laws cannot be avoided by simply retaining outside counsel to prepare required documents."  *Id*. at 576 (citation omitted); *see also In re Bank of Am.* 2011 WL 3211472, at *8 ("Good faith reliance on the advice of counsel means more than simply supplying counsel with information").

Similarly, in *Meltzer*, the defendant sent "spam" emails that touted or recommended certain stocks based on false information.  440 F. Supp. 2d at 182.  At summary judgment, the defendant challenged the SEC's proof of scienter, arguing that he relied on the advice of counsel and attached to the email distributions disclosure language that was drafted by counsel.  *Id*. at 189.  The Court noted that Meltzer did seek the advice of counsel but nevertheless rejected this argument on two bases.  *Id*.  First, nothing in the record demonstrated that Meltzer "made a

complete disclosure, nor is there any indication that counsel advised Meltzer that the conduct was appropriate." *Id*.  Second, Meltzer knew that the relevant materials were misleading.  "The mere fact that his attorney willingly approved the disclaimers cannot establish a defense of good faith reliance when the knowing misrepresentations clearly establish bad faith." *Id*. at 190.

In this case, Tourre has offered no evidence that he ever consulted with legal or compliance counsel, much less that he made the required full disclosure to such individuals. Indeed, Tourre's own testimony establishes that he has a significantly weaker claim to the advice of counsel defense than the defendants in *Enterprises Solutions* and *Meltzer*, who at least consulted attorneys.  *Enterprises Solutions*, 142 F. Supp. 2d at 575-76; *Meltzer*, 440 F. Supp. 2d at 189.  When asked if he personally consulted with counsel, Tourre engaged in the following exchange:

> Q:     Did you personally tell anyone within the Goldman Sachs legal or compliance departments about Paulson's role in the Abacus 2007-AC1 portfolio selection process?
>
> A (Tourre):  [T]here is a lot of assumptions embedded in your question.  But the answer is: I don't remember what I communicated to the legal department at Goldman Sachs.
>
> Q:     You don't remember telling anyone within the Goldman Sachs legal or compliance department about any role played by Paulson in connection with this transaction, correct?
>
> A (Tourre):     As I said before, I don't recall conversations I had with the legal department in connection with Abacus '07-AC1 or in connection with swap transactions we were entering into with Paulson.
>
> Q:     To your knowledge, did anyone in the structured products correlation desk tell the legal or compliance departments at Goldman Sachs anything about Paulson's role in the Abacus 2007-AC1 transaction?
>
> A (Tourre):     I don't know.

(Ex. D at 367-368).  Given this testimony, Tourre cannot establish a single element of the four-part advice of counsel defense.

8

**II.     Tourre Cannot Base His Advice Of Counsel Defense On The Presence Of A Retired Lawyer Who Did Not Provide Him Any Legal Advice And Who Had The Same Financial Interest In AC1's Success.**

Tourre's reference to the review of disclosure documents by Gerst is equally unavailing. First, Tourre did not know whether Gerst had any conversations with in-house counsel or McKee Nelson about the process by which the portfolio for AC1 was selected.  (Ex. D at 388-89).  And Gerst did not recall discussing disclosure issues with Tourre.  (Ex. E at 212-13).  Gerst's review of the documents cannot be relevant to Tourre's scienter if they never discussed disclosing Paulson's role.  According to both men, there was no relevant legal advice upon which Tourre could reasonably rely.

Second, Gerst was not acting as a lawyer during his employ at GS&Co.  David Lehman, the co-head of GS&Co's mortgage trading desk, described Gerst as "one of the traders on the mortgage correlation desk."  (Fitzpatrick Decl., Ex. F, Lehman Dep. at 39).  Lehman emphasized that Gerst "did not perform a legal role."  (*Id*. at 40).  Gerst concurred, noting that he was on "retired" status with the New York Bar, and not acting in a legal capacity at GS&Co.  (Ex. C at 10-11).

Finally, as a member of the correlation desk, Gerst had the same interest in the transaction's success as Tourre.  Gerst was working on the AC1 transaction with Tourre as a member of the correlation desk.  GS&Co planned to earn $15 million from this transaction. (Fitzpatrick Decl., Ex. G, June 4, 2007 Email from Fabrice Tourre to Michael Swenson).  Even if he had been a practicing lawyer, Gerst was not in a position to provide Tourre with disinterested legal advice.  In order to establish the advice of counsel defense, the "counsel consulted must be disinterested and independent."  *S.E.C. v. O'Meally*, No. 06civ6483 (LTS)(RLE), 2010 WL 3911444, at *4 (S.D.N.Y. Sept. 29, 2010).  If a lawyer's primary concern is promoting a company's interests, "he [is] not in a position to give [the defendant] wholly disinterested advice

and [the defendant] could not have reasonably [] thought that he was."  *Arthur Lipper Corp. v. S.E.C.*, 547 F.2d 171, 182 (2d Cir. 1977); *see also C.E. Carlson, Inc. v. S.E.C.*, 859 F.2d 1429, 1436 (10th Cir. 1988) (citing *Lipper*).  Thus, if Tourre had consulted Gerst on disclosure issues – a proposition for which there is no evidence – Gerst would be incapable of giving Tourre disinterested legal advice because GS&Co planned to "reap[] significant revenues from Defendant's activity."  *O'Meally*, 2010 WL 3911444, at *4.

**III.   Tourre Cited No Evidence That He Reasonably Relied On The Advice of Counsel In Support of His Summary Judgment Motion.**

In spite of these evidentiary failings, Tourre signaled in his Reply brief and Rule 56.1 Response that he intends to raise an advice of counsel defense at trial.  Tourre referenced the purported review of AC1 offering documents by "a host of lawyers from Goldman, Goldman's external counsel, ACA and it external counsel, as well as Paulson's external counsel."  (Dkt. 255 ¶¶ 187, 188, 198, 225).  He claimed that "[n]one of these lawyers suggested any additional disclosure was required."  (*Id*.).  Tourre also invoked the presence of Gerst on the correlation desk as a purported defense to his misconduct.  (*Id.* ¶ 188; *see also* Dkt. 244 at 17-18).  As a threshold issue, a summary judgment reply is a rather late point in the litigation and briefing of dispositive motions to raise an affirmative defense.[2]

---

[2]   It is unclear whether Tourre intended to raise reasonable reliance on the advice of counsel in his ninth affirmative defense to the Amended Complaint, in which he claimed to have relied on GS&Co's "institutional process to ensure adequate legal review and disclosure of material information," and that he could not be held liable "for any alleged failings of that process." (Dkt. 94 at 14).  At that time, Tourre did not assert that he was aware of any legal advice or reasonably relied on it.  Tourre arguably waived any such defense by asserting the attorney-client, joint defense and common interest privileges in response to the SEC's First and Second Requests for the production of documents. *See In re Residential Capital, LLC*, No. 12-12020(MG), 2013 WL 1497203, at *5 (Bankr. S.D.N.Y. Apr. 12, 2013) ("where a party invokes attorney-client privilege throughout discovery, [it] automatically constitutes a waiver of the advice of counsel defense" (internal quotation marks omitted)); *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) (the defendant waived its advice of counsel defense "by objecting, based on the attorney-client privilege, to [plaintiff's] discovery requests").  Regardless, Tourre's ninth affirmative defense is legally incorrect.  Tourre avers that he cannot be held liable for any alleged failings in GS&Co's processes. Tourre had an independent disclosure obligation and knew that the claim ACA had "selected" the reference portfolio – without more – was misleading. *See In re Bank of Am.*, 2011 WL 3211472, at *8 (in the securities context, a corporate executive has "an independent duty to ensure compliance with disclosure obligations").

More troubling, however, is that the record material Tourre cited in support of these assertions does not establish that lawyers were ever advised of the relevant facts about Paulson's role in the portfolio selection process and Paulson's economic interest in the CDO performing poorly, and provided an opinion that no disclosure was necessary.  Tourre's Reply brief and Rule 56.1 Response do not cite to a single document that shows lawyers were even informed of this information, much less that counsel advised it was not necessary to make any disclosure of it in the AC1 offering documents.

Nor does Tourre cite a single document showing that such advice was communicated to Tourre.  Rather, Tourre cited the testimony of four witnesses: Tourre, Gerst, Paolo Pellegrini, and Adam Glass. (Dkt. 244 at 17-18; Dkt. 255 ¶¶ 187, 188, 198, 225) (collectively citing Gerst Inv. Tr. at 65:15-66:21, Gerst Dep. at 19:4-17, 169:22-170:11, Tourre Dep. at 371:15-373:17, 380:12-384:6, Pellegrini Dep. at 262:14-263:11, Glass Dep. at 14:8-15:4, 18:3-22, 55:18-57:11, 66:24-68:18).  None of the witness testimony cited by Tourre establishes an advice of counsel defense.  First, Tourre cited to his own testimony that the correlation desk had coverage from GS&Co's legal and compliance departments, that the desk used McKee Nelson as outside counsel, and that Tourre helped recruit Gerst to work on the correlation desk because he thought it was a good idea to have someone with a legal background on the desk.  (Ex. D at 371:15-373:17).  Tourre also testified that it was "customary practice" for marketing materials and term sheets to be reviewed by GS&Co's in-house counsel and the compliance department, (*id*. at 380-82), Gerst "typically" interacted with in-house counsel on this topic, (*id*.), and the AC1 offering circular was prepared by McKee Nelson.  (*Id*. at 382-83).  Finally, Tourre testified that he did not recall anyone suggesting that additional disclosures were necessary in 2007.  (*Id*. at 383-84).  This testimony is entirely irrelevant given that Tourre also did not recall having any

conversations about disclosure issues generally much less about the undisclosed information at issue in this lawsuit.

Second, Tourre cited Gerst's investigative and deposition testimony.  (Dkt. 255 ¶¶ 187, 188, 198, 225) (citing Gerst Inv. Tr. at 65:15-66:21, Gerst Dep. at 19:4-17, 169:22-170:11). During the investigation, Gerst testified that he did not recall whether he or anyone in the group sought advice regarding the disclosure of Paulson's role. (Ex. C at 65:15-66:21).  Gerst did not believe that Paulson's role needed to be disclosed because ACA "signed off" on the portfolio. (*Id*.).  Gerst did not recall discussing the issue with Tourre.  (*Id*.).  At his deposition, Gerst described his job on the correlation desk as "an execution type role."  (Ex. E at 19).  Gerst would negotiate documentation with counterparties and consult with GS&Co's other departments including legal.  (*Id.*).  Gerst did not recall speaking with legal regarding AC1 but testified that GS&Co's typical practice was to review the transaction with legal and compliance.  (*Id*. at 169-70).

Third, Tourre cited the deposition of Paolo Pellegrini for the proposition that the Paulson hedge fund used the Linklaters law firm to review the engagement letter for the AC1 transaction. (Fitzpatrick Decl., Ex. H, Pellegrini Dep. at 262:14-263:11).  Finally, Tourre cited the deposition of Adam Glass to establish that he now works for the SEC but previously worked at the Linklaters law firm where he represented the Paulson hedge fund.  (Fitzpatrick Decl., Ex. I, Glass Dep. at 14:8-15:4, 18:3-22).  In February 2007, Glass was copied on a version of the preliminary term sheet that said ACA selected the portfolio.  (*Id*. at 55:18-57:11).  Mr. Glass did not recall conversations with anyone at GS&Co about disclosure issues.   (*Id*. at 55:18-57:11, 66:24-68:18).

Thus, not one of the four witnesses relied upon by Tourre recalled a conversation where an attorney offered any legal advice on whether the participation of a short investor in the selection of assets needed to be disclosed.  Vague references to the "typical" involvement of in-house counsel in a transaction are not sufficient to establish that (1) Tourre made a complete disclosure to counsel, (2) sought advice as to the legality of his conduct, (3) received advice that his conduct was legal, and (4) relied on that advice in good faith.  *See Markowski*, 34 F.3d at 104-05 (articulating four-part test for reliance on advice of counsel defense); *In re Bank of Am.*, 2011 WL 3211472, at *8 (same); *Meltzer*, 440 F. Supp. 2d at 189 (same).  Nor is the fact that a separate entity employed a law firm that never discussed the relevant disclosure issue with GS&Co or Tourre.

**IV.    Tourre Should Not Be Permitted To Confuse The Jury And Unfairly Prejudice The SEC's Case By Presenting Evidence That Does Not Relate To A Viable Defense.**

Evidence of the involvement of lawyers – either at GS&Co or representing other firms – is only relevant to the extent that it bears on Tourre's scienter.  There is a test in this circuit to determine whether such evidence bears on a defendant's scienter, and Tourre cannot satisfy it. *See supra* p. 5-13.   Thus, evidence or argument regarding the review of AC1 offering materials by Gerst, McKee Nelson, GS&Co's legal department, and lawyers for other participants in the transaction does not support a viable defense.  Fed. R. Evid. 401 (evidence is only relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action").

In these circumstances, evidence of the presence of attorneys, typical practices, or "institutional processes" is likely to mislead and confuse the jury, waste time, and would be far more prejudicial to the SEC's case than probative of a pertinent defense.  Indeed, Judge Rakoff faced a similar situation in the recent trial of *S.E.C. v. Stoker*, No. 11-CV-07388 (S.D.N.Y.).  In

that case, the defense stated that it did not intend to present an advice of counsel defense, but then sought to elicit testimony about whether the flip book for the relevant transaction was sent to lawyers for review.  (Fitzpatrick Decl., Ex. J, Jul. 23, 2012 Stoker Tr. at 971-73).   Judge Rakoff held that evidence Stoker "believed that counsel had attested to the legal appropriateness of [] documents [was] just another way of saying reliance on counsel." (*Id*. at 978-79).   Judge Rakoff was "troubled" by defense questions pointing out in-house and outside counsel on documents, because of the "dangers of the jury misunderstanding the alleged purpose" of the questions.  (*Id*. at 980-81).   Judge Rakoff then instructed defense counsel to no longer focus on counsel with their questions and to not even mention the words "counsel" or "lawyer." (*Id*. at 985-87).

References to the review of AC1's marketing documents by Gerst or legal personnel would be equally confusing in this case, and it is not probative of a defense Tourre can establish. Moreover, it would be unduly prejudicial to the SEC's case to permit Tourre to introduce evidence that is only relevant to a defense for which Tourre has the burden of proof when Tourre's own testimony concedes he could never meet that burden.  (Ex. D at 367-68).  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.   Evidence or argument about GS&Co lawyers, Gerst and counsel for other participants reviewing deal documents, or otherwise involved in the AC1 transaction, should therefore be precluded pursuant to Federal Rules of Evidence 401 and 403.

**CONCLUSION**

For the reasons set forth above, the Court should grant the SEC's motion *in limine* and preclude Defendant Fabrice Tourre from referencing reliance on the advice of counsel, Gerst's legal background, or the institutional processes in place at GS&Co.

Dated:  Washington, D.C.
        May 24, 2013

Respectfully submitted,

/s/ *Bridget Fitzpatrick*
Matthew T. Martens
Richard E. Simpson
Christian D. H. Schultz
Bridget Fitzpatrick
Attorneys for Plaintiff
Securities and Exchange
Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4481 (Martens)
(202) 772-9292 (fax)
martensm@sec.gov

15

## CERTIFICATE OF SERVICE

I certify that on May 24, 2013, I electronically filed the foregoing SEC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE DEFENDANT FABRICE TOURRE FROM OFFERING EVIDENCE OR ARGUMENT THAT HE REASONABLY RELIED ON ADVICE OF COUNSEL using the CM/ECF system, which will send notification of such filing to the following email address:

Pamelachepiga@allenovery.com
Pamela Rogers Chepiga
Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020
Attorney for defendant Fabrice Tourre

seancoffey78@gmail.com
John Patrick Coffey
Law Office of John P. Coffey
1350 Avenue of the Americas, 2d Floor
New York, New York 10019

Attorneys for defendant Fabrice Tourre

/s/ *Bridget Fitzpatrick*
Bridget Fitzpatrick

16