UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x
                                                          :
SECURITIES AND EXCHANGE                 :
COMMISSION,                                         :          Civil Action
                                                          :          No.: 10-cv-3229 (KBF)
                      Plaintiff,                      :
                                                          :          ELECTRONICALLY FILED
           v.                                          :
                                                          :
FABRICE TOURRE,                               :
                                                          :
                      Defendant.                   :
                                                          :
————————————————————— x


**MEMORANDUM OF LAW OF FABRICE TOURRE IN SUPPORT OF HIS MOTION IN
LIMINE TO PRECLUDE REFERENCE TO GOLDMAN SACHS SETTLEMENT**

Pamela Rogers Chepiga
Andrew Rhys Davies
Brandon D. O'Neil
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

John P. Coffey
LAW OFFICE OF JOHN P. COFFEY
1350 Avenue of the Americas, 2nd Floor
New York, New York  10019
(646) 790-8988

*Attorneys for Fabrice Tourre*

Dated:   May 31, 2013
              New York, New York

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................ 2

ARGUMENT ................................................................................................................. 5

I.   THE GOLDMAN SETTLEMENT IS INADMISSIBLE UNDER FRE 802
     BECAUSE IT IS HEARSAY. .................................................................................. 5

II.  THE GOLDMAN SETTLEMENT IS ALSO INADMISSIBLE UNDER FRE 408.
     ............................................................................................................................ 6

III. THE GOLDMAN SETTLEMENT IS ALSO INADMISSIBLE UNDER FRE 403,
     BECAUSE IT WOULD CAUSE DELAY, CONFUSION AND UNFAIR
     PREJUDICE. ........................................................................................................ 6

IV.  THE GOLDMAN SETTLEMENT IS ALSO INADMISSIBLE UNDER FRE 401
     AND 402 BECAUSE IT IS IRRELEVANT. ........................................................... 11

CONCLUSION ............................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Aaron v. SEC*, 446 U.S. 680 (1980) ................................................................................ 12

*ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, --- N.Y.S.2d ----, 2013 WL 1953751 (App. Div. May 14, 2013) ................................................................................................................. 10

*Arlio v. Lively*, 474 F.3d 46 (2d Cir. 2007) ............................................................... 6, 10

*Belton v. Fibreboard Corp.*, 724 F.2d 500 (5th Cir.1984) ............................................... 6

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) ...................................................... 12

*Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067 (5th Cir. 1986) .................................... 6, 7

*Kinan v. City of Brockton*, 876 F.2d 1029 (1st Cir. 1989) .............................................. 6

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) ........................... 11

*McInnis v. A.M.F., Inc.*, 765 F.2d 240 (1st Cir. 1985) ................................................... 6

*SEC v. Bank of Am. Corp.*, 653 F. Supp. 2d 507 (S.D.N.Y. 2009) ................................. 7

*SEC v. Obus*, 693 F.3d 276 (2d Cir. 2012) ................................................................. 12

*SEC v. Vitesse Semiconductor Corp.*, 771 F. Supp. 2d 304 (S.D.N.Y. 2011) ................ 8

*United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181 (2d Cir. 1989) .................. 9

**Statutes**

15 U.S.C. § 7246(a) ...................................................................................................... 5

**Rules**

Fed. R. Evid. 401 .................................................................................................... 11, 12

Fed. R. Evid. 402 ........................................................................................................ 11

Fed. R. Evid. 403 ...................................................................................................... 6, 9

Fed. R. Evid. 403, Advisory Committee Notes ............................................................. 6

Fed. R. Evid. 408 .................................................................................................... 6, 11

Fed. R. Evid. 802 ......................................................................................................... 5

Fed. R. Evid. 806 ........................................................................................................................ 7

Defendant Fabrice Tourre respectfully submits this memorandum of law in support of his motion *in limine* to preclude the SEC from referencing, eliciting or introducing into evidence at trial arguments, documents or testimony relating to the settlement entered into between the SEC and Goldman, Sachs & Co. ("Goldman") on July 14, 2010, announced on July 15, 2010, and approved by this Court on July 20, 2010 (the "Goldman settlement").

## PRELIMINARY STATEMENT

The Goldman settlement, and any arguments or testimony relating to it, must be excluded from trial.  Not only is the Goldman settlement hearsay, inadmissible to prove liability and irrelevant to the claims against Mr. Tourre, but if the SEC were permitted to introduce it at trial against Mr. Tourre, that would inevitably result in an unfairly prejudicial and wholly unnecessary trial-within-the-trial to explain to the jury why the SEC and Goldman agreed to settle the claims between them.

The SEC seems intent on embarking on this diversion.  In its Amended Complaint, the SEC trumpets that this Court has entered a "Final Judgment" against Goldman relating to ABACUS 2007-AC1 ("AC1").  *See* Am. Compl. ¶ 7.  Without disclosing that it is reciting the terms of a negotiated settlement between the SEC and Goldman, the Amended Complaint also proclaims that Goldman has "expressly acknowledged that the marketing materials for the [AC1] transaction contained incomplete information," that "it was a mistake for the GS&Co. marketing materials to state that the reference portfolio was selected by ACA" without disclosing the role and interest of Paulson in the portfolio selection process, and that Goldman had "expressed regret that the marketing materials did not contain that disclosure."  *Id*.  One would have hoped that the SEC's incorporation of this negotiated rhetoric into its pleading was merely irrelevant surplusage, but the SEC apparently intends to make the Goldman settlement a part of its proof at trial.

Dwight Jaffee, one of the SEC's proffered experts, relies in his report on the Amended Complaint's allegation that Goldman "has acknowledged that the role of Paulson in the portfolio selection process was not disclosed to the CDO investors," ECF No. 201-1 (Jaffee Report) ¶ 38.  The SEC has said it intends to call Jaffee at the outset of its case in chief, *see* ECF No. 218 (SEC's Response to Mr. Tourre's Daubert Motion as to Jaffee) at 1, so, unless the Court grants this motion, it appears that the SEC intends to begin the trial with a wasteful—and irrelevant—detour into why a non-party decided to make peace with the SEC.

## BACKGROUND

The SEC filed this lawsuit against Goldman and Mr. Tourre, without notice to either defendant, at 10:29 a.m. on Friday, April 16, 2010, announcing its filing in a press release issued four minutes later.  *See* United States Securities and Exchange Commission Office of Inspector General, Report of Investigation, Case No. OIG-534, "Allegations of Improper Coordination Between the SEC and Other Governmental Entities Concerning the SEC's Enforcement Action Against Goldman, Sachs & Co." at 17 ("Improper Coordination Report") (attached as Exhibit 1 to the Declaration of Pamela Rogers Chepiga dated May 31, 2013 ("Chepiga Decl.")).

The SEC's Inspector General found that, by filing this action without notice to the defendants, the SEC violated its own regulations, which require the SEC to make "[e]very effort" to provide advance notice of the filing of a lawsuit "to avoid the possibility that defendants in an SEC enforcement action first learn of the action when they read about it in the newspapers or when they are called by a reporter for comment about the SEC's complaint."  Improper Coordination Report at 19-20, 57-65.  Both Mr. Tourre and his counsel learned of the filing of this lawsuit from the news media.

The Inspector General also found that the SEC's decision to file and announce this action during the trading day, without notice to Goldman and without allowing the New York Stock Exchange to consider imposing a temporary trading halt to allow the market to process the news, resulted in volatility in the securities markets. *See* Improper Coordination Report at 20, 65-71. After the SEC's announcement of this lawsuit, Goldman's share price fell thirteen percent, its largest one-day decline in over a year, *id.* at 65, wiping billions of dollars off its market capitalization.

Not surprisingly under these circumstances, the Inspector General found that Goldman began settlement discussions with the SEC "almost immediately" after this case was filed. *See* Improper Coordination Report at 71. He found, in particular, that both Goldman and the SEC were under pressure to finalize a settlement before July 19 and 20, 2010, when Goldman's answer to the SEC's complaint and quarterly earnings report, respectively, were due. *See id.* at 21, 71-76.

On July 15, 2010, the SEC filed and announced a proposed settlement with Goldman. *See* Improper Coordination Report at 21, 71-76. On July 20, 2010, the day this Court approved the settlement, *see* ECF No. 25 (Judgment dated July 20, 2010), Goldman's share price closed seven percent higher than its closing price on July 14, 2010, the day before the settlement was announced. *See* Chepiga Ex. 2 (Chart of Historical Stock Prices for The Goldman Sachs Group, Inc. over the period July 14–20, 2010).

The SEC permitted Goldman to settle this case without admitting or denying any of the allegations of the Complaint and without submitting to any finding of liability. *See* ECF No. 25 (attaching Consent of Defendant Goldman, Sachs & Co. dated July 14, 2010) ¶ 2. Goldman agreed to pay disgorgement of $15,000,000 and a civil penalty of $535,000,000, and

agreed to be "permanently restrained and enjoined . . . from violating section 17(a) of the Securities Act of 1933."  *Id*.

Goldman also committed to implement certain structural reforms to ensure the adequacy of the legal disclosures in its marketing materials.  *See id.* ¶ 7(a).  Those reforms required Goldman to train its employees on legal disclosure rules, *see id.* at 7(d), focusing heavily on processes to bolster and memorialize the involvement of internal and external counsel and Goldman's compliance personnel in ensuring the adequacy of legal disclosures, *see id.* at 7(b)-(c).

In addition, the Consent included a statement in which, to buy peace with the SEC, Goldman "acknowledge[d] that the marketing materials for the [AC1] transaction contained incomplete information," and that "it was a mistake for the Goldman marketing materials to state that the reference portfolio was 'selected by' ACA Management LLC without disclosing the role of Paulson & Co. Inc. in the portfolio selection process and that Paulson's economic interests were adverse to CDO investors."  Goldman went on to state that it "regrets that the marketing materials did not contain that disclosure."  *Id.* ¶ 3.

Goldman's July 15, 2010 press release concerning the settlement reported that, in addition to settling this litigation over the AC1 transaction, SEC staff had indicated to Goldman that they "also ha[d] completed a review of a number of other Goldman Sachs mortgage-related CDO transactions and [did] not anticipate recommending any claims against Goldman Sachs or any of its employees with respect to those transactions based on the materials it has reviewed." Chepiga Ex. 3 (Goldman, Sachs & Co. press release dated July 15, 2010, "Goldman, Sachs & Co. Agrees to Settlement with SEC") ("Press Release").

In this Court's Final Judgment with respect to Goldman, ECF No. 25, which incorporated the Consent (Final Judgment § 5), the SEC included a provision directing Goldman to distribute the civil penalty in accordance with the Fair Funds provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002 to the "victims" identified by the SEC:  $150,000,000 to or as directed by IKB Deutsche Industriebank AG, and $100,000,000 to Royal Bank of Scotland, N.V. (formerly known as ABN AMRO Bank N.V.).  *Id.* § 2.[1]  The remaining $300,000,000 escheated to the United States Treasury, *id.* § 2, reflecting the SEC's view that there were no other victims. Significantly, no Fair Funds were paid to ACA.

## ARGUMENT

**I.    THE GOLDMAN SETTLEMENT IS INADMISSIBLE UNDER FRE 802 BECAUSE IT IS HEARSAY.**

The Goldman settlement, and in particular the statements that Goldman was induced to make in Paragraph 3 of the Consent, to the effect that Goldman "regrets" that the AC1 marketing materials did not disclose Paulson's involvement in portfolio selection, that those materials were "incomplete," and that it was a "mistake" for Goldman not to have made that disclosure, are inadmissible hearsay.  They are statements made prior to the trial that the SEC apparently seeks to introduce for their truth—that the offering materials for the AC1 transaction were in fact "incomplete" and that the nondisclosure of Paulson was a "mistake" that Goldman "regrets."  As these statements do not qualify for any hearsay exception, they must be excluded pursuant to FRE 802.

---

[1]    Section 308(a) of the Sarbanes-Oxley Act of 2002, Pub.L. No. 107-204, § 308(a), 116 Stat. 745, 784 (2002) (codified at 15 U.S.C. § 7246(a)), provides that civil penalties secured by the SEC "shall, on the motion or at the direction of the Commission, be added to and become part of a disgorgement fund or other fund established for the benefit of the victims of such violation."

## II.     THE GOLDMAN SETTLEMENT IS ALSO INADMISSIBLE UNDER FRE 408.

Evidence of a settlement "is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim."  FRE 408.  The SEC apparently seeks to use the Goldman settlement, and in particular the paragraph of the Consent stating that it was a "mistake" for the AC1 offering materials not to mention Paulson, to prove the validity of its claims against Mr. Tourre.  Under FRE 408, evidence or arguments relating to the Goldman settlement cannot be offered to attempt to establish Mr. Tourre's liability.[2]

## III.    THE GOLDMAN SETTLEMENT IS ALSO INADMISSIBLE UNDER FRE 403, BECAUSE IT WOULD CAUSE DELAY, CONFUSION AND UNFAIR PREJUDICE.

FRE 403 requires the exclusion of relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice" or if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  FRE 403, Advisory Committee Notes.  Evidence relating to the Goldman settlement is highly prejudicial to Mr. Tourre for a number of reasons.

*First*, admitting the Goldman settlement into evidence at Mr. Tourre's trial inevitably would necessitate a trial-within-the-trial to explore why the SEC and Goldman entered into it.  As the Second Circuit has recognized, "[a]dmitting evidence about previous cases 'inevitably result[s] in trying those cases . . . before the jury,' and '[t]he merits of the . . . other cases would become inextricably intertwined with the case at bar.'"  *Arlio v. Lively*, 474 F.3d 46 (2d Cir. 2007)) (quoting *Kinan v. City of Brockton*, 876 F.2d 1029, 1034 (1st Cir. 1989)).

---

[2]     Mr. Tourre has standing to object to the admission of the Goldman settlement.  *See Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1069 (5th Cir. 1986) (FRE 408 applies where evidence of settlement "is objected to by a party not involved in the settlement.") (citing *Belton v. Fibreboard Corp.*, 724 F.2d 500, 505 (5th Cir.1984)); *see also McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247 (1st Cir. 1985) (collecting cases "holding that Rule 408 bars evidence of settlements between plaintiffs and third party joint tortfeasors or former co-defendants").

Exploration of the reasons (business, regulatory and otherwise) for the Goldman settlement would be necessary to counter the jury's likely misimpression that the Goldman settlement, including the amount of money paid by Goldman,[3] reflects an admission by Goldman of the validity and strength of the claims against it and, by implication, against Mr. Tourre.

Mr. Tourre would have to put into evidence Goldman's non-merits based reasons for settling the case, including the impossible position of any corporate defendant faced with the prospect of litigating against its primary market regulator, the financial cost and management and employee time and distraction required to defend the claims, and its wish, shared by most corporate defendants, to resolve past disputes and move forward for the benefit of its employees and investors.  Mr. Tourre also would have to inquire into the SEC's motives for settlement to show the jury that the settlement in fact reflects the weakness of its claims.

Mr. Tourre would be free to use hearsay evidence because the Goldman settlement is hearsay and therefore may be impeached with hearsay evidence of the SEC's and Goldman's prior statements and conduct.  *See* FRE 806.  Mr. Tourre could use such evidence to demonstrate that any or all of the following factors explain why the SEC brought this lawsuit, why Goldman and the SEC entered into the Goldman settlement, and why the Goldman settlement is not probative of Mr. Tourre's liability:

- Two SEC Commissioners voted against instituting suit against Goldman because "the agency didn't have the strongest case and risked losing it in court."  Chepiga Ex. 4 (Kara Scannell & Susanne Craig, "SEC Split Over Goldman Deal," *Wall Street Journal* (July 17, 2010, 8:30 AM)) ("Scannell & Craig").

- "Neither admit nor deny" settlements, which are used to resolve ninety percent of the cases brought by the SEC (Chepiga Ex. 5 (SEC Br. at 49, *SEC v. Citigroup Global Markets Inc.*, No. 11-5227 (2d Cir. May 14, 2012)) ("SEC Citigroup Br.")), have

---

[3]     *See Kennon*, 794 F.2d at 1071 ("[N]o party, or the court, should disclose to the jury the amount of a settlement with other defendants in the absence of compelling circumstances demanding disclosure . . . .").

been characterized as "provid[ing] the S.E.C. with the facade of enforcement and [defendants] with a quick resolution of an embarrassing inquiry." *SEC v. Bank of Am. Corp.*, 653 F. Supp. 2d 507, 510 (S.D.N.Y. 2009). The SEC enters into "neither admit nor deny" settlements because they are easier to obtain from defendants concerned about "collateral estoppel consequences for parallel private civil actions, in which the defendants frequently face[] potential monetary judgments far greater than anything the S.E.C. was likely to impose." *SEC v. Vitesse Semiconductor Corp.*, 771 F. Supp. 2d 304, 308 (S.D.N.Y. 2011).

- When deciding whether to settle a case, the SEC considers "the scope of relief likely to be obtained by the Commission if successful at trial . . . litigation risk; the benefits of avoiding that risk; [a defendant's] unwillingness to settle while admitting the factual predicates of the Commission's claims; the opportunity to detail publicly the Commission's factual conclusions; and the allocation of resources among the Commission's many enforcement actions." SEC Citigroup Br. at 14-15.

- In its CDO-related case against Citigroup, the SEC acknowledged that "there is at least some chance—as there always is—that the Commission would lose at trial and obtain nothing for investors, or win at trial and obtain lesser remedies than those ordered in the consent judgment. The consent judgment allowed the Commission to obtain substantial relief for investors without risk and without delay." *Id.* at 51-52.

- "[M]ajor financial institutions almost always settle with the SEC at an early point (as even Goldman Sachs did) to avoid reputational damage." Chepiga Ex. 6 (John C. Coffee, Jr., "SEC enforcement: What has gone wrong?" The National Law Journal (December 3, 2012)).

- The Goldman complaint was filed shortly before hearings of the Senate Permanent Subcommittee on Investigation at which Goldman employees were to testify so that the SEC could "show the world that they were on top of this" and avoid "a lot of questions about where's the SEC on this." Improper Coordination Report at 37-38 (quoting testimony of Cheryl Scarboro, Chief of the Foreign Corrupt Practices Act Unit in the SEC's Division of Enforcement, and Stephen Cohen, Senior Advisor to the Chairman of the SEC); *see also id.* at 49 (Robert Khuzami, then Director of the SEC Division of Enforcement, "testified that there was a particular interest on the part of the Enforcement Division to show that the SEC is working on and bringing matters related to the financial crisis.").

- Goldman's stock price had been badly hit by the filing of this lawsuit without notice to Goldman during the trading day. *Id.*, at 20, 65.

- Goldman and the SEC were under pressure to finalize a settlement before July 19-20, 2010, when Goldman's answer to the SEC's complaint and quarterly earnings report, respectively, were due. *Id.* at 71-72.

- Goldman was influenced in its decision to settle by its trials in "the court of public opinion" during the course of the SEC investigation and litigation and, in settlement

8

discussions, focused on negotiating the fraud charge out of the settlement without concern about the amount of penalties sought.  Chepiga Ex. 7 (Louise Story, "The Generals Who Ended Goldman's War," *The New York Times* (July 16, 2010)); Chepiga Ex. 8 (Francesco Guerrera, Henny Sender & Justin Baer, "Goldman Sachs settles with SEC," *Financial Times* (July 16, 2010) at p. 1) ("Guerrera"); Scannell & Craig, *supra*.

- The penalties paid by Goldman were roughly equal to "about a week's worth of trading revenues" or "15 days of [its] profits," "a price Goldman could easily afford." Guerrera, *supra*; Chepiga Ex. 9 (Julie Cresswell, "After Goldman's Concession, Regulators May Be Satisfied," *The New York Times*, July 16, 2010).

- Goldman's share price rose when the settlement was announced, and the fine was far lower than the $1 billion the market expected.  *See id.*

- In connection with the Goldman settlement of the pending litigation, the SEC terminated not only the litigation over the AC1 transaction, but also its investigations into "a number of other Goldman Sachs mortgage-related CDO transactions" without bringing suit on "any claims against Goldman Sachs or any of its employees."  Press Release, *supra*.

   The SEC presumably would attempt to introduce evidence of its own to attempt to bolster the impression that the Goldman settlement occurred because Goldman faced a significant risk of liability.  Thus, admitting the Goldman settlement would result in a trial-within-the-trial to explore why a non-party settled the claims against it, and the inferences that should be drawn from that.  Even if the Goldman settlement were relevant to any matter in dispute (and it is not), the Court has "broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of confusion of the issues or if it would be needlessly cumulative."  *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989) (citing FRE 403).  Here, the danger of jury confusion and prejudice, as well as delay and distraction, is overwhelming and requires the exclusion of the Goldman settlement.

   Admitting the Goldman settlement could also open the door to permit Mr. Tourre to show the jury that Goldman has successfully defended ACA's civil case, which alleged that Goldman defrauded it into issuing a financial guaranty on the super-senior tranche of the AC1

portfolio by representing that Paulson was buying the equity tranche.  On May 14, 2013, the Appellate Division of the New York State Supreme Court dismissed ACA's amended complaint, holding that ACA could not establish that it justifiably relied on the alleged misrepresentations because they were "specifically contradicted by the offering circular's disclosure that no such equity position was being taken."  *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, --- N.Y.S.2d ----, 2013 WL 1953751, at *3 (App. Div. May 14, 2013).

       *Second*, the introduction of the Goldman settlement is likely to confuse the jury into believing, incorrectly, that the AC1 marketing materials have been found by a court of law to be materially misleading.  To the contrary, this Court has made no such finding, and, indeed, the SEC agreed that Goldman could resolve the SEC's case without admitting the allegations of the complaint and without submitting to any finding of liability whatsoever, not even negligence.  Moreover, Goldman's expression of regret over a "mistake" is not and should not be dispositive of whether the marketing materials were materially misleading, and any suggestion, based on Goldman's statement, that they were would infringe on the Court's exclusive jurisdiction to instruct the jury about the law and the jury's exclusive role in applying the facts to the law.  *Cf. Arlio*, 474 F.3d at 53 (holding, in connection with disclosure of the outcome of a related arbitration, that "[d]istrict courts must assiduously guard juries against the siren song of irrelevant and prejudicial prior determinations").

       *Third*, evidence about the Goldman settlement, and the concomitant jury belief that Goldman engaged in wrongdoing, may unfairly taint the jury's perception of all Goldman employees, including Mr. Tourre, who will testify at trial.

**IV.    THE GOLDMAN SETTLEMENT IS ALSO INADMISSIBLE UNDER FRE 401 AND 402 BECAUSE IT IS IRRELEVANT.**

Even if the Goldman settlement were not inadmissible as hearsay, subject to preclusion under FRE 408 and likely to cause confusion and engender jury prejudice, evidence of and reference to the Goldman settlement still would have to be precluded because it simply is not relevant to establish any material fact.  Under FRE 401 and 402, evidence may be admitted only if it is relevant, meaning that it has the tendency to make a material fact more or less probable, and admission is not barred by, *inter alia*, other Rules of Evidence.  FRE 401; FRE 402.

An unadjudicated private settlement regarding the SEC's accusations against Goldman—a non-party to this lawsuit—can have no bearing on the claims the SEC has brought against Mr. Tourre.  *See, e.g., Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893-894 (2d Cir. 1976) ('[A] consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues . . . . can not be used as evidence in subsequent litigation.").  Although in *Lipsky* the consent judgment stricken was against the defendant, the fact that the judgment in this case is against Goldman—not Mr. Tourre—makes it even less material to the case pending against Mr. Tourre.

Moreover, even if Goldman's statements could be divorced from the clear provision that it was neither admitting nor denying liability (and they clearly cannot), they do not establish any element of any claim against Mr. Tourre.  Indeed, it would be fair game for Mr. Tourre to argue that the SEC's agreement to drop the case against Goldman with no admission of liability is evidence that no violation occurred.

Goldman's statements do not establish that the marketing materials were in fact deficient as a matter of law, nor that any deficiency was material, nor that anyone acted with

scienter, nor that Mr. Tourre, as opposed to someone else, bears responsibility for any alleged deficiencies.  They are, therefore, irrelevant.

       In particular, Goldman's statement that it was a "mistake" not to disclose Paulson's involvement in portfolio selection is irrelevant to establish that Goldman committed a primary violation of Section 10(b) and Rule 10b-5, which is an essential element of the SEC's claim against Mr. Tourre for aiding and abetting Goldman's alleged Section 10(b)/Rule 10b-5 violation.  *See* Am. Compl. ¶¶ 82-83 (Third Claim).  Scienter is an essential element of a Section 10(b)/Rule 10b-5 claim, and requires "'a mental state embracing intent to deceive, manipulate, or defraud.'"  *SEC v. Obus*, 693 F.3d 276, 285 (2d Cir. 2012) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n.12 (1976)).  "Negligence is not a sufficiently culpable state of mind to support a section 10(b) civil violation."  *Id.*  Thus, any "mistake" by Goldman in connection with the AC1 marketing materials does not constitute a primary Section 10(b)/Rule 10b-5 violation.

       This irrelevance of the Goldman settlement as evidence of any primary Section 10(b)/Rule 10b-5 securities fraud violation by Goldman is buttressed by the fact that the injunction imposed pursuant to the Goldman settlement enjoins, not violations of Section 10(b)/Rule 10b-5, but rather violations of Section 17(a) of the Securities Act of 1933.  As the Supreme Court has held, Section 17(a) encompasses negligence-based liability.  *See Aaron v. SEC*, 446 U.S. 680, 701-02 (1980) (holding that scienter is an element of a claim under Section 17(a)(1), but not under Sections 17(a)(2) and (3)).

       Thus, in addition to all the other reasons that evidence about the Goldman settlement should be excluded from this case, it is simply irrelevant to the resolution of the claims against Mr. Tourre and, therefore, it must be excluded under FRE 401.

## CONCLUSION

For all the foregoing reasons, Fabrice Tourre respectfully requests that this Court preclude the SEC from referring to, introducing into evidence or otherwise relying on the Goldman settlement.

Dated: May 31, 2013
      New York, New York

Respectfully submitted,

/s/ Pamela Rogers Chepiga
Pamela Rogers Chepiga
(pamela.chepiga@allenovery.com)
Andrew Rhys Davies
(andrew.rhys.davies@allenovery.com)
Brandon D. O'Neil
(brandon.o'neil@allenovery.com)

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

/s/ John P. Coffey
John P. Coffey
(seancoffey78@gmail.com)

LAW OFFICE OF JOHN P. COFFEY
1350 Avenue of the Americas, 2nd Floor
New York, New York  10019
(646) 790-8988

*Attorneys for Fabrice Tourre*

13