UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
: 
SECURITIES AND EXCHANGE :
COMMISSION, :
           :
                Plaintiff, :
           :
                v. :
           :
FABRICE TOURRE, :
           :
                Defendant. :
           :
———————————————————————— x

Civil Action
No.: 10-cv-3229 (KBF)

ELECTRONICALLY FILED

## MEMORANDUM OF LAW OF FABRICE TOURRE IN OPPOSITION TO THE SEC'S MOTION *IN LIMINE* PURSUANT TO FEDERAL RULE OF EVIDENCE 611

Pamela Rogers Chepiga
Andrew Rhys Davies
Brandon D. O'Neil
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

John P. Coffey
LAW OFFICE OF JOHN P. COFFEY
1350 Avenue of the Americas, 2nd Floor
New York, New York  10019
(646) 790-8988

*Attorneys for Fabrice Tourre*

Dated:    June 7, 2013
            New York, New York

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT .................................................................................................................................... 2

I.      THERE IS NO BASIS FOR GRANTING THE SEC BLANKET PERMISSION
        TO USE LEADING QUESTIONS IN THE EXAMINATION OF GOLDMAN
        WITNESSES ...................................................................................................................... 2

II.     THERE IS NO BASIS FOR PERMITTING THE SEC TO TREAT DAVID
        GERST AS A HOSTILE WITNESS ................................................................................. 6

III.    THE SEC'S MOTION IS PREMATURE ......................................................................... 8

CONCLUSION ................................................................................................................................ 10

<u>**TABLE OF AUTHORITIES**</u>

<u>**CASES**</u>

*Ellis v. City of Chicago*,
    667 F.2d 606 (7th Cir. 1981) ...................................................................................4

*Gabelli v. SEC*,
    133 S.Ct. 1216 (2013) ..........................................................................................7

*Haney v. Mizell Mem'l Hosp.*,
    744 F.2d 1467 (11th Cir. 1984) .............................................................................4

*Perkins v. Volkswagen of America, Inc.*,
    596 F.2d 681 (5th Cir. 1979) .................................................................................4

*SEC v. Citigroup Global Markets, Inc.*,
    673 F.3d 158 (2d Cir. 2012)...................................................................................5

*SEC v. World Info. Tech., Inc.*,
    250 F.R.D. 149 (S.D.N.Y. 2008) ..........................................................................9

*Stahl v. Sun Microsystems, Inc.*,
    775 F. Supp. 1397 (D. Colo. 1991) .......................................................................4

*Suarez Matos v. Ashford Presbyterian Cmty. Hosp., Inc.*,
    4 F.3d 47 (1st Cir. 1993).......................................................................................3

*United States v. Brown*,
    603 F.2d 1022 (1st Cir. 1979)...............................................................................7

*United States v. Cisneros-Gutierrez*,
    517 F.3d 751 (5th Cir. 2009) .................................................................................8

*United States v. McLaughlin*,
    No. CRIM.A. 95-CR-0113, 1998 WL 966014 (E.D. Pa. Nov. 19, 1998) .........................4

*United States v. Meza-Urtado*,
    351 F.3d 301 (7th Cir. 2003) .................................................................................8

*United States v. Perez*,
    106 F. App'x 597 (9th Cir. 2004) ..........................................................................8

*United States v. Reddix*,
    106 F.3d 236 (8th Cir. 1997) .................................................................................8

*United States v. Tunnell*,
    667 F.2d 1182 (5th Cir. 1982) ............................................................................8

*Vanemmerik v. The Ground Round, Inc.*,
    No. Civ. A. 97-5923, 1998 WL 474106 (E.D. Pa. July 16, 1998)...................................3, 8

**RULE**

Fed. R. Evid. 611 ................................................................................................................3

Defendant Fabrice Tourre respectfully submits this memorandum of law, together with the supporting declaration of Pamela Rogers Chepiga ("Chepiga Decl."), in opposition to the SEC's motion *in limine* to permit the use of leading questions during the SEC's direct examination of current and former employees of Goldman Sachs & Co. ("Goldman").

## PRELIMINARY STATEMENT

The SEC seeks, in advance of trial, a broad exception to the rule governing the conduct of direct examination for witnesses it will call in its own case-in-chief.  It seeks leave to put leading questions to all current and former employees of Goldman on the basis that these witnesses are "identified" with Mr. Tourre, simply by virtue of the fact that each worked at Goldman six years ago.  As discussed below, however, courts have restricted the categories of persons who may be considered "identified" with a party such that they may be subject to leading questions, and the cases cited by the SEC fail to show that any of the potential Goldman witnesses falls into any of these limited categories.

The SEC's heavy reliance on Judge Rakoff's decision to let it elicit testimony from Citigroup witnesses through leading questions in *SEC v. Stoker* is unavailing.  At the time of Mr. Stoker's trial, Citigroup remained his co-defendant, had not entered into any final settlement with the SEC, and steadfastly maintained that it intended to contest every fact alleged, thus placing it in what Judge Rakoff called a "starkly adversarial position" with the SEC. Moreover, both Citigroup and Mr. Stoker continually asserted a common interest privilege throughout depositions and trial preparations, with counsel for Citigroup and Mr. Stoker jointly attending meetings with potential Citigroup witnesses in preparation for trial.  The circumstances of Goldman's posture vis-à-vis the SEC are quite different here.

Unlike the ongoing litigation between Citigroup and the SEC in *Stoker*, Goldman and the SEC entered into a final settlement agreement three years ago.  Further, that agreement

expressly requires that Goldman cooperate with the SEC.  Indeed, the SEC has made ample use of this cooperation.  The SEC has sought and obtained from Goldman declarations in support of various motions filed in this litigation.  It enlisted Goldman's assistance in securing the deposition of a former Goldman employee residing outside of the United States, obviating the need for the SEC to resort to the Hague Convention.  Finally, lest it be overlooked, the new centerpiece of the SEC's case—the January 17 Call—was provided to the SEC by Goldman.  *See* Chepiga Decl. Ex. 1 (April 26, 2013 Tr.) at 77:24-78:1 ("[W]e only learned about it when Goldman [Sachs] just threw it over the trans[om] to us.").

Moreover, the SEC's memorandum fails to deal with other key distinctions from the *Stoker* case, such as the fact that Mr. Tourre has not been represented by counsel for Goldman for three years, and that Goldman (unlike Citigroup) did not participate in discovery, other than to produce witnesses requested by the SEC.  Indeed, the only party in a starkly adversarial position to the SEC in this case is Mr. Tourre himself, not Goldman.

In any event, the decision as to whether each and every Goldman witness should be subject to leading questions is premature.  Mr. Tourre respectfully submits that the necessity for such a departure from the normal rules of direct examination is properly left to this Court's assessment of the demeanor, candor and reliability of each individual witness as he or she testifies at trial.

## ARGUMENT

### I.  THERE IS NO BASIS FOR GRANTING THE SEC BLANKET PERMISSION TO USE LEADING QUESTIONS IN THE EXAMINATION OF GOLDMAN WITNESSES

Rule 611(a) of the Federal Rules of Evidence grants the court substantial control over the "mode and order of examining witnesses and presenting evidence" so as to establish an effective mechanism for determining the truth, avoiding wasting time, and protecting witnesses

from harassment or undue embarrassment.  Pursuant to Rule 611(c), "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony," and otherwise may be used only (1) on cross-examination or (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party. Fed. R. Evid. 611(c).  Here, the SEC has failed to make any showing that would warrant granting blanket permission to presumptively treat all Goldman witnesses as identified with Mr. Tourre.

As an initial matter, the SEC has not explained how Rule 611(c)'s allowance for leading questions of witnesses "identified with an adverse party" extends to former co-workers of the adverse party.  Indeed, the very cases cited by the SEC make clear that the list of persons who are presumed to be "identified" with an adverse party is limited, and is understood to mean "an employee, agent, friend, or relative of an adverse party." *See Vanemmerik v. The Ground Round, Inc.*, No. Civ. A. 97-5923, 1998 WL 474106, at *1-2 (E.D. Pa. July 16, 1998) (denying motion to use leading questions during trial depositions of adversary's treating physicians for failure to show that physicians fell into limited class of persons considered to be "identified" with adversary); *see also Suarez Matos v. Ashford Presbyterian Cmty. Hosp., Inc.*, 4 F.3d 47, 50 (1st Cir. 1993) ("We find no case … suggesting that simply because a party expects favorable testimony from a witness, the opponent is entitled to call him, or her, as hostile.").  The SEC has failed to show that any of the potential Goldman witnesses, co-workers of Mr. Tourre over six years ago, fall into these limited categories such that they are identified with Mr. Tourre.[1]

No case cited by the SEC provides support for permitting leading questions of a former co-worker of an adversary.  To the contrary, every case cited by the SEC involved the

---

[1] The SEC has identified eight Goldman witnesses in its witness list.  Notably, the SEC's list of witnesses as to whom it argues this Court should permit leading questions includes the custodian of records for Goldman and Michael Nartey, whose testimony, which is replete with responses to leading questions asked by the SEC during his deposition over Mr. Tourre's objections, will be introduced by videotape as Mr. Nartey is not a U.S. citizen and resides outside of the United States.

testimony of a current or former *employee* of the *defendant*, who was dependent on staying in his or her employer's good graces.  *See Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467, 1477-78 (11th Cir. 1984) (nurse who was employed by defendant hospital in medical malpractice action); *Ellis v. City of Chicago*, 667 F.2d 606, 613 (7th Cir. 1981) (police officer employed by defendant, City of Chicago, in Fourteenth Amendment case involving separate police officer's fatal shooting of dog); *United States v. McLaughlin*, No. CRIM.A. 95-CR-0113, 1998 WL 966014, at *1 (E.D. Pa. Nov. 19, 1998) (defendant's primary accountant, engaged as "independent contractor," who had worked closely with defendant for ten years); *Perkins v. Volkswagen of America*, Inc., 596 F.2d 681, 682-83 (5th Cir. 1979) (employee of defendant in products liability action); *Stahl v. Sun Microsystems, Inc.*, 775 F. Supp. 1397, 1398 (D. Colo. 1991) (former employee of defendant in employment discrimination case where witness was identified with defendant employer through her former employment and her "ongoing relationship" with another "key witness" for defendant).  Nor may the SEC manufacture an identity of interest simply because Goldman is a defendant in two private civil actions in which Mr. Tourre is not even named.

        Having failed to establish any recognized basis by which any Goldman witness is "identified" with Mr. Tourre, the SEC next attempts to fit a square peg into a round hole, asserting that this Court should simply adopt the ruling on the SEC's motion *in limine* to use leading questions in *SEC v. Stoker*, regardless of the glaring factual and legal differences between the two cases.  *See SEC v. Stoker*, No. 11-CV-07388 (S.D.N.Y.).  Most significantly, although the SEC had entered a proposed consent judgment with Citigroup, Brian Stoker's former employer, the settlement had been rejected by Judge Rakoff, who had ordered that Citigroup and Mr. Stoker be tried together.  Citigroup did not appear at trial only because the

case against it was stayed by the Second Circuit pending decision on a mandamus petition. *See SEC v. Citigroup Global Markets, Inc.*, 673 F.3d 158 (2d Cir. 2012). Thus, at the time of Mr. Stoker's trial, Citigroup remained an active co-defendant and shared a common interest privilege with Mr. Stoker. In granting the SEC's motion to use leading questions, Judge Rakoff emphasized that Citigroup "couldn't have made it more clear that they totally disagreed with just about every material fact being alleged" and was repeatedly on record that, if the consent judgment was not approved, they would "vigorously contest each and every material fact being asserted by the SEC." *See* Dkt. No. 278, Ex. D at 32:18-22; 34:12-17. Thus, because Citigroup was a defendant in the same case in which Mr. Stoker was being tried, the SEC and Citigroup were in a "starkly adversarial position." *See id.* at 33:8.

In stark contrast to Citigroup's position, the SEC and Goldman entered into a final consent judgment settling all claims between them almost three years ago. *See* Dkt. No. 25. Notably, as the SEC concedes, the consent judgment requires Goldman to cooperate with the SEC. *See id.* at ¶ 17. Indeed, the SEC touted Goldman's cooperation agreement at the press conference announcing the settlement. *See* Chepiga Decl. Ex. 2 (July 15, 2010 Remarks). And the SEC has relied on the cooperation of Goldman witnesses, obtaining the declarations of Goldman employees in this action, securing the deposition of a former Goldman employee residing outside of the United States without resort to the Hague Convention, and receiving ACA voice recordings which the SEC itself had failed to obtain in years of investigation and discovery. Mr. Tourre, however, has steadfastly maintained that the SEC's allegations against him are without merit and unequivocally denies the allegations. Thus, here, it is Mr. Tourre and the SEC—not the SEC and its cooperating former defendant Goldman—that are in a "starkly adversarial position."

The SEC's attempt to invoke *Stoker* to manufacture some identity of interest between Mr. Tourre and Goldman on the basis of the assertion of a common interest privilege is similarly misplaced.  In *Stoker*, counsel for Mr. Stoker continued to assert a common interest privilege with his co-defendant, Citigroup, throughout the litigation and met with several potential Citigroup witnesses with Citigroup's counsel present thus enabling Mr. Stoker to correct on cross-examination any leading questions that provided only a partial presentation of the facts.  *See*, *e.g.*, Dkt. No. 278, Ex. D at 38:1-4.  Here, counsel for Goldman acted as co-counsel for Mr. Tourre for a period, but that period ended three years ago – when Goldman settled its case with the SEC in July 2010.  Mr. Tourre has not been represented by counsel for Goldman since.  Indeed, the SEC cites but a *single* instance since August 2010 in which Mr. Tourre asserted a common interest privilege with respect to communications with Goldman (*see* Dkt. No. 278, Ex. A at 10), but that assertion of the common interest privilege was limited to communications pertaining to the period when Mr. Tourre was still represented by Goldman's counsel.  Similarly, the email from Mr. Tourre referring to developing a defense strategy with Goldman is dated May 5, 2010, two months *before* the SEC settled its case against Goldman. *See* Dkt. No. 278, Ex. E.

## II.    THERE IS NO BASIS FOR PERMITTING THE SEC TO TREAT DAVID GERST AS A HOSTILE WITNESS

The SEC also seeks leave of this Court to treat Mr. Gerst as a hostile witness on the basis that his role in the ABACUS 2007-AC1 transaction and his purported inability to recall in exact detail events occurring years ago, somehow reflect an inherent "bias" against the SEC. The SEC's motion should be denied.

First, there is no support for the SEC's re-characterization of Mr. Gerst as a "co-conspirator" based on alleged conduct that has been known to the SEC since the start of its

investigation.  Notably, Mr. Gerst never received a Wells notice.  Moreover, he voluntarily

provided his investigative testimony to the SEC more than four years ago and, until its pending

motion, was never identified as a "co-conspirator" by the SEC.[2]  Moreover, the SEC's

insinuation that Gerst's actions "could form a basis for liability in this case" rings particularly

hollow as the five-year statute of limitations has long since expired for conduct occurring in

2006 and 2007.  *See Gabelli v. SEC*, 133 S.Ct. 1216, 1220 (2013).

       Second, the SEC has shown no basis by which Mr. Gerst could be considered

"biased" such that he should be treated as a hostile witness.  Although the SEC now asserts that

Mr. Gerst's deposition testimony was "replete with lapses of memory," it relies on cherry-picked

responses to a handful of questions asked over the course of a seven-hour deposition, and omits

reference to the many questions he was able to answer despite the passage of time.  *See* Chepiga

Decl. Ex. 3 (Gerst Dep. Tr.).  Notably, despite now charging that Mr. Gerst demonstrated bias

simply by not recalling facts in a manner consistent with the SEC's theory of liability in this case,

the SEC did not seek the relief of this Court with respect to Mr. Gerst's deposition and made no

objections based on his purported lack of recollection during the course of his deposition

testimony.  *See id.*

       The out-of-circuit criminal cases cited by the SEC provide it no support, and

instead confirm that treatment of a witness as hostile is proper only where that witness has been

charged as a co-conspirator in a crime, has a close familial relationship with the adversary, or

otherwise demonstrates an inability to provide honest testimony.  In *United States v. Brown*, 603

F.2d 1022, 1026 (1st Cir. 1979), the court affirmed the use of leading questions of a witness in a

case involving the theft of several birds from Boston Logan airport where the witness, a close

---

[2] As set forth in Mr. Tourre's motion *in limine*, the very notion of a "scheme" in which there may have
been co-conspirators was simply never pled in this action.

friend of the defendant, was a "participant in the crime," spoke with the adversary at length up to

trial and, due to drug and alcohol abuse, presented a "general air of confusion" that rendered his

testimony "prolix and difficult to comprehend."  In *United States v. Cisneros-Gutierrez*, 517

F.3d 751, 762 (5th Cir. 2008), the court affirmed the use of leading questions of the defendant's

brother who had pled guilty to drug conspiracy but suddenly suffered from "feigned" memory

lapses one week before testifying against his brother.  In *United States v. Reddix*, 106 F.3d 236,

238 (8th Cir. 1997), the court affirmed the use of just three leading questions in the examination

of a co-conspirator who was arrested for possession of crack cocaine she claimed to have

received from the defendant.  In *United States v. Tunnell*, 667 F.2d 1182, 1188 (5th Cir. 1982),

the court affirmed the use of leading questions of a co-conspirator of the defendant who had pled

guilty to misprision of a felony.  In *United States v. Meza-Urtado*, 351 F.3d 301, 303 (7th Cir.

2003), the court affirmed the use of limited leading questions of a co-defendant and confidential

informant in a drug conspiracy case.  Finally, in *United States v. Perez*, 106 F. App'x 597, 598

(9th Cir. 2004), the court affirmed the use of leading questions of the defendant's mother who

was deemed by the court to be reluctant or suffering from significant lapses of memory, or both.

       The SEC's newly-formulated portrayal of Mr. Gerst as a "co-conspirator"

suffering from lapses of memory provides no basis for treating Mr. Gerst as presumptively

hostile and the SEC's motion should therefore be denied.

## III.    THE SEC'S MOTION IS PREMATURE

       Finally, the SEC's motion to use leading questions should be denied as premature.

As detailed above, the SEC has failed to make any showing that any Goldman witness, much less

each of the eight Goldman witnesses on its witness list, falls into one of the narrowly defined

categories that would warrant use of leading questions.  *See*, *e.g.*, *Vanemmerik*, 1998 WL 474106,

at *1 (limiting use of leading questions to employees, agents, friends or relatives).  Nor has the SEC shown any basis by which Mr. Gerst, who voluntarily provided investigative testimony to the SEC over four years ago, should be treated as presumptively hostile.  Should the SEC be able to establish at trial that any Goldman witness is in fact hostile, it may then seek leave to use leading questions at that time.  *See*, *e.g.*, *SEC v. World Info. Tech., Inc.*, 250 F.R.D. 149, 151 (S.D.N.Y. 2008) (deferring to trial SEC's motion *in limine* permitting leading questions where SEC failed to present any evidence regarding witnesses' lack of cooperation).  Until such time as the SEC in fact establishes that a witness is hostile, however, any blanket ruling allowing leading questions as to any person ever employed by Goldman is overbroad and premature.

## CONCLUSION

For all the foregoing reasons, Fabrice Tourre respectfully requests that the Court deny the SEC's motion pursuant to Rule 611(c) to use leading questions during the SEC's direct examination of current and former Goldman employees.

Dated: June 7, 2013
       New York, New York

Respectfully submitted,

/s/ Pamela Rogers Chepiga
Pamela Rogers Chepiga
(pamela.chepiga@allenovery.com)
Andrew Rhys Davies
(andrew.rhys.davies@allenovery.com)
Brandon D. O'Neil
(brandon.o'neil@allenovery.com)

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

/s/ John P. Coffey
John P. Coffey
(seancoffey78@gmail.com)
LAW OFFICE OF JOHN P. COFFEY
1350 Avenue of the Americas, 2nd
Floor
New York, New York  10019
(646) 790-8988

*Attorneys for Fabrice Tourre*