UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

           v.

FABRICE TOURRE,

                Defendant.
_____

10 Civ. 3229 (KBF)

ECF Case

# SEC'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE DEFENDANT FABRICE TOURRE FROM OFFERING EVIDENCE OR ARGUMENT AT TRIAL THAT HE REASONABLY RELIED ON ADVICE OF COUNSEL

Matthew T. Martens
Richard E. Simpson
Christian D. H. Schultz
Bridget Fitzpatrick
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4481 (Martens)
(202) 772-9362 (facsimile)

Dated: June 12, 2013
       Washington, D.C.

martensm@sec.gov
*Attorneys for Plaintiff*

1

**PRELIMINARY STATEMENT**

The SEC has moved to preclude defendant Fabrice Tourre from offering evidence or argument at trial that he reasonably relied on advice of counsel.[1] (Dkt. 285). In opposing the SEC's Motion, Tourre avers that he has no intention of arguing that he sought and received legal advice regarding the disclosure of the role a short investor, Paulson, played in the portfolio selection process for the AC1 transaction. (Dkt. 306 at 2). But Tourre also asserts his intention to argue that he reasonably relied on the "institutional processes" in place at GS&Co. (*Id*. at 2). And as Tourre goes on to explain, the "institutional processes" on which he purports to have relied consist almost entirely of the involvement of counsel (both for Goldman and other institutions) in the AC1 transaction. This defense is virtually identical to the defense pursued by the defendant in *S.E.C. v. Brian Stoker*, No. 11-CV-07388 (S.D.N.Y.). Notably, Tourre's Opposition fails to answer the question posed by Judge Rakoff in that case:

> What is the relevance of any of this stuff about counsel if there is no reliance on counsel defense?

(Fitzpatrick Decl., Ex. J, Jul. 23, 2012 Stoker Tr. at 977).

Nor does Tourre cite any case law that would exempt his planned defense from Judge Rakoff's ruling:

> [Evidence defendant] believed that counsel had attested to the legal appropriateness of these documents, [] is just another way of saying reliance on counsel.

(*Id*. at 978-79).

---

[1] This Reply Memorandum adopts defined terms from the opening Memorandum in support of this Motion. (Dkt. 285). Exhibits to the Declaration of Bridget M. Fitzpatrick (Dkt. 286) are cited in the format "Fitzpatrick Ex. __," and exhibits to the Declaration of Pamela R. Chepiga (Dkt. 307) are cited in the format "Chepiga Ex. __."

Tourre cannot sidestep the affirmative legal burden placed on defendants who pursue an advice of counsel defense by simply renaming the defense. GS&Co's institutional processes have no relevance to this litigation unless they resulted in a legal opinion upon which Tourre could reasonably rely. Tourre has conceded that they did not. (Dkt. 306 at 5). Accordingly, his renamed, but still legally infirm, advice of counsel defense should be precluded.

## ARGUMENT

### I. Reliance On The Silence Of Institutional Processes Is Not A Viable Defense.

Tourre does not cite a single case that recognizes reliance on institutional processes as a viable defense, explains the burden entailed with such a defense, or how, if at all, it differs from the defense of reasonable reliance on the advice of counsel. Instead, Tourre cites Seventh Circuit and Tenth Circuit authority to argue that the jury may draw inferences from the absence of a dog barking, or, in this case, the absence of questions about the relevant disclosures.[2] (Dkt. 306 at 11). However, the absence of a dog, or counsel, barking has to be relevant. In the Second Circuit, there is a four-part test for relevance in the context on "non-barking" counsel, and that test begins with complete disclosure and seeking legal advice on the relevant issue. *See, e.g., Markowski v. S.E.C.*, 34 F.3d 99, 105 (2d Cir. 1994) (articulating four-part test for advice of counsel defense); *S.E.C. v. Enterprises Solutions, Inc.*, 142 F. Supp. 2d 561, 576 (S.D.N.Y.

---

[2] Tourre relies on *Johnson v. Acevedo*, 572 F.3d 398, 401 (7th Cir. 2009), and *United States v. Lopez*, 518 F.3d 790, 798 (10th Cir. 2008), to support his argument about the relevance of a quiet dog. (Dkt. 306 at 11). *Johnson* addressed a Fifth Amendment issue on appeal from a state court conviction for armed robbery, aggravated battery and unlawful use of a weapon. 572 F.3d at 401. *Lopez* addressed a Fourth Amendment issue on appeal from a suppression hearing in a drug case. 518 F.3d at 798. Neither case discussed the relevance of a non-barking dog within the context of a defendant claiming to have reasonably relied on the advice of counsel. *See Johnson*, 572 F.3d at 401; *Lopez*, 518 F.3d at 798.

2

2001) (same).  Tourre cannot skip these steps and nonetheless argue the relevance of an attorney's subsequent silence.[3]

Tourre is essentially asking for permission to argue his lack of scienter based on an absence of evidence that lawyers addressed the disclosure issue at the heart of this litigation. (Dkt. 306 at 12).  But, again, he fails to cite a single case that permits defendants to argue lack of scienter to a jury based on the absence of a relevant discussion among lawyers.  (*Id*.).  The law has developed "to encourage clients to be forthcoming and candid with their attorneys so that the attorney is sufficiently well-informed to provide sound legal advice." *United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir.1995) (discussing attorney-client privilege); *see also United States v. Zolin*, 491 U.S. 554, 562 (1989) (The fundamental purpose of the privilege is to "encourage full and frank communication between attorneys and their clients.") (citation omitted).  Reliance on institutional processes, if it is even a defense, should not be exempt from this principle.  And "[i]t would be extending the 'advice of counsel' exception to an unprecedented degree to apply it to a situation like this, where [this] defendant[] neither consulted counsel, nor received any advice whatever, relating to the statute [he is] accused of violating." *Spirt v. Bechtel*, 232 F.2d 241, 255-56 (2d Cir. 1956).

---

[3] To the contrary, Second Circuit authority contemplates that, as a matter of fundamental fairness, an opposing party will have access to all relevant communications with counsel when a defendant mounts an advice of counsel defense.  *See, e.g., In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) ("implied waiver may be found where the privilege holder asserts a claim that in fairness requires examination of protected communications"); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.")  Here, GS&Co invoked the privilege as to thousands of documents.

## II. There Is No Competent Evidence That Tourre Reasonably Relied On Any Relevant Process.

In its initial Motion, the SEC reviewed the evidentiary material Tourre cited in his summary judgment reply in support of his institutional processes defense. (Dkt. 285 at 11-13). At that time, Tourre could not even establish that the relevant attorneys were advised about Paulson's role in the selection process and its economic interest in the CDO performing poorly. (*Id*.). The evidence Tourre currently cites in support of his institutional processes defense is equally flawed. For example, Tourre avers that the AC1 Mortgage Capital Committee Memorandum ("MCC Memo") was copied to representatives of GS&Co's legal and compliance departments. (Dkt. 306 at 5-6). However, the MCC Memo does not disclose that Paulson had input on the portfolio, much less seek advice on whether that input needed to be disclosed to investors. (Chepiga Ex. 3). To the contrary, the memo misleadingly states, "ACA has selected a Reference Portfolio of 90 Baa2 rated RMBS obligations for the Transaction." (*Id*. at 4). Moreover, in the section addressing potential conflicts of interest, the MCC Memo does not make a single reference to Paulson's participation in the collateral selection process. (*Id*. at 6). Tourre also cites a memorandum summarizing the MCC meeting for AC1. (Dkt. 306 at 5). The entire document is redacted except for the list of attendees and a single paragraph noting that the transaction has been approved. (Chepiga Ex. 4). The document simply has no relevance to whether GS&Co's legal and compliance departments vetted the transaction and/or approved the absence of disclosure as to Paulson's conflict.

Tourre also purports to have relied on the review of deal documents by Paulson's attorney, even though Paulson would have been reviewing these documents to protect its own interests as an investor, and was not responsible for the offering documents distributed by AC1's

underwriter.[4]  (Dkt. 306 at 6-7).  Nevertheless, Tourre cites to an edited version of an engagement letter between GS&Co and Paulson, an email where Gerst forwards the draft preliminary term sheet to Paulson's attorneys, and an email where Paulson forwards his own lawyers a copy of the preliminary offering circular.  (Chepiga Exs. 8-11).  Tourre's reliance on the final document is curious since he is not even copied on the correspondence.  (Chepiga Ex. 11).  Regardless, none of the Paulson documents contain a discussion – much less a legal opinion – regarding Paulson's conflict of interest in the collateral selection process and whether the underwriter of the transaction had a duty to inform long investors of that conflict.  (*Id*.).

Finally, in a very creative argument, Tourre purports to have relied on the review of certain documents by ACA's attorneys.[5]  Tourre cites the signature of ACA's general counsel on an engagement letter with GS&Co and avers that the letter made clear that ACA's selection of the reference portfolio was "subject to the consent of the Protection Buyer."  (Dkt. 306 at 8).  Tourre fails to mention that the letter specifically defines the "Protection Buyer" as GS&Co, not Paulson.  (Chepiga Ex. 12 at 3).  Tourre then notes that ACA's attorneys reviewed the offering circular and did not "raise[] any comments concerning the disclosure that ACA 'selected' the reference portfolio."  (Dkt. 306 8-9).  However, ACA had been told that Paulson was purchasing

---

[4]  Tourre notes that one of Paulson's former attorneys has served as Co-Chief General Counsel of the SEC's Division of Risk, Strategy and Financial Innovation since November 2009.  (Dkt. 306 at 7).  Tourre offers no explanation as to how this attorney assuming an unrelated position at the SEC more than a year after the AC1 transaction was executed is relevant to the present litigation.  (*Id*.).

[5]  Tourre also discusses the role of his colleague, David Gerst, in the AC1 transaction.  (Dkt. 306 at 4).  The SEC is not seeking to preclude Tourre from presenting evidence that Gerst undertook certain actions, only from arguing that Tourre reasonably relied on Gerst because he had a law degree.  In his Opposition, Tourre fails to address that Gerst was retired from the Bar and not acting as a lawyer. Moreover, Gerst was not a conduit for legal advice from third parties.  Tourre concedes that "Mr. Gerst did not solicit specific advice on whether Paulson's role needed to be disclosed."  (Dkt. 306 at 5).

5

the equity in AC1.  (Dkt. 192 at 2, 4-6).  Their silence is not particularly relevant when they were not aware of the conflict that had permeated the collateral selection process.  (*Id*. at 7).

Tourre plans to argue that "[t]hrough the whole of this rigorous approval process," no one suggested that additional disclosures were required.[6]  (Dkt. 306 at 6).  He fails to explain the relevance of this statement if (a) there is no evidence the participants in the process were informed of the relevant conflict, and (b) the documentation of the approval process is either redacted, or discusses other aspects of the transaction.  Fed. R. Evid. 401 (evidence is only relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action").

As set forth in the SEC's opening Memorandum, this evidence should also be excluded because its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  (Dkt. 285 at 14; Fed. R. Evid. 403).  Tourre's counter to this argument is to accuse the SEC of believing "the jury will have a very low confusion threshold."  (Dkt. 306 at 14).  However, part of the SEC's own confusion stems from Tourre's inability to describe the "institutional processes" defense he intends to mount in terms that meaningfully distinguish it from an advice of counsel defense.  (*Id*.).  Tourre proposes to parade a series of documents before the jury to establish that lawyers for multiple parties to the transaction were copied on drafts.  Judge Rakoff noted the "dangers of the jury misunderstanding the alleged purpose" of such evidence during the *Stoker* trial. (Fitzpatrick Decl., Ex. J, Jul. 23, 2012 Stoker Tr. at 980-

---

[6] It is notable that this assertion is couched in terms of Tourre's recollection.  (Dkt. 306 at 6).  Both GS&Co and Paulson withheld documents on the basis of privilege during the SEC's investigation.  Thus, we have no way of knowing whether counsel for either entity was concerned with the absence of disclosure and simply failed to voice those concerns in the limited number of unprivileged documents selected by Tourre.

81). There is a danger of confusion of the issues when evidence is related to a defense the defendant claims he is not pursuing. The evidence is also needlessly cumulative when the final versions of the same documents will be introduced into evidence for other purposes.

Tourre claims that he does not intend to present an advice of counsel defense and, as set forth in the SEC's initial Motion, he could never hope to meet the evidentiary burden of such a defense. Thus, Tourre should be held to his own commitment and the Court should preclude the introduction of evidence that is only relevant to a defense he has foresworn and could never satisfy.

## CONCLUSION

For the reasons set forth above and in its initial Memorandum, the SEC respectfully requests that its motion *in limine* be granted, and that the Court preclude Defendant Fabrice Tourre from referencing reliance on the advice of counsel, Gerst's legal background, or the institutional processes in place at GS&Co.

Dated: Washington, D.C.
   June 12, 2013

Respectfully submitted,

/s/ Bridget Fitzpatrick
Matthew T. Martens
Richard E. Simpson
Christian D. H. Schultz
Bridget Fitzpatrick
Attorneys for Plaintiff
Securities and Exchange
Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4481 (Martens)
(202) 772-9292 (fax)
martensm@sec.gov

## CERTIFICATE OF SERVICE

I certify that on June 12, 2013, I electronically filed the foregoing SEC'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE DEFENDANT FABRICE TOURRE FROM OFFERING EVIDENCE OR ARGUMENT AT TRIAL THAT HE REASONABLY RELIED ON ADVICE OF COUNSEL using the CM/ECF system, which will send notification of such filing to the following email addresses:

Pamelachepiga@allenovery.com
Pamela Rogers Chepiga
Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020
Attorney for defendant Fabrice Tourre


seancoffey78@gmail.com
John Patrick Coffey
Law Office of John P. Coffey
1350 Avenue of the Americas, 2d Floor
New York, New York 10019
Attorney for defendant Fabrice Tourre


/s/ Bridget Fitzpatrick
Bridget Fitzpatrick