UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

   v.

FABRICE TOURRE,

      Defendant.

---

10 Civ. 3229 (KBF)

ECF Case

**SEC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
*IN LIMINE* TO PRECLUDE EVIDENCE OR ARGUMENT
PERTAINING TO THE SEC'S FAIR FUND DISTRIBUTION, OIG REPORT,
INVESTIGATIVE STEPS, AND CHARGING DECISIONS**

Matthew T. Martens
Richard E. Simpson
Christian D. H. Schultz
Bridget Fitzpatrick
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4481 (Martens)
(202) 772-9362 (facsimile)

Dated: June 17, 2013
   Washington, D.C.

martensm@sec.gov
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ..............................................................................................................................2

      A.  The GS&Co Settlement and Fair Fund Distribution ......................................................2

      B.  The OIG Report .............................................................................................................3

      C.  The Defense Pleadings..................................................................................................4

      D.  The Defense Motion Regarding the GS&Co Settlement...............................................6

STANDARD OF REVIEW ..............................................................................................................6

ARGUMENT ....................................................................................................................................6

I.     Evidence Regarding the SEC's Fair Fund Distribution of GS&Co Settlement
      Funds is Not Relevant....................................................................................................6

II.    Evidence Pertaining to OIG Report is Not Relevant .............................................................9

III.   Evidence Pertaining to SEC Investigative and Charging Decisions is Not Relevant........10

CONCLUSION...............................................................................................................................13

## TABLE OF AUTHORITIES

**CASES**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
    Case No. 08-cv-7508 (SAS), 2013 WL 1155420 (S.D.N.Y. Mar. 20, 2013) ...................... 9

*Bell v. Ercole*,
    No. 05 CV 4532(ERK), 2011 WL 5040436 (E.D.N.Y. Oct. 21, 2011) ............................. 11

*City of New York v. Pullman Inc.*,
    662 F.2d 910 (2d Cir. 1981) ................................................................................................ 10

*Cole Systems Associates, Inc. v. Municipal Emergency Services, Inc.*,
    Case No. 08-cv-6417(BSJ), 2010 WL 4942229 (S.D.N.Y. Dec. 3, 2010) .................... 9, 12

*In re Sept. 11 Litigation*,
    621 F. Supp. 2d 131 (S.D.N.Y. 2009) ................................................................................ 10

*Li v. Canarozzi*,
    142 F.3d 83 (2d Cir. 1998) .................................................................................................... 9

*Palmeri v. Defaria*,
    88 F.3d 136 (2d Cir. 1996) .................................................................................................... 7

*United States v. Bautista*,
    252 F.3d 141 (2d Cir. 2001) ............................................................................................... 11

*United States v. Cheung Kin Ping*,
    555 F.2d 1069 (2d Cir. 1977) ............................................................................................. 12

*United States v. Delgado*,
    903 F.2d 1495 (11th Cir. 1990) .......................................................................................... 11

*United States v. Patrick*,
    248 F.3d 11 (1st Cir. 2001) ................................................................................................ 11

*United States v. Ramos*,
    169 F. App'x 865 (5th Cir. 2006) ...................................................................................... 11

*United States v. Veal*,
    23 F.3d 985 (6th Cir. 1994) ................................................................................................ 11

*United States v. White*,
    692 F.3d 235 (2d Cir. 2012) ............................................................................................... 11

*United States v. Watts*,
    No. 10–CR–627 (KAM), 2013 WL 1192781 (E.D.N.Y. Mar. 22, 2013) .................... 11, 12

**STATUTES AND REGULATIONS**

Federal Rule of Evidence § 401 ................................................................................................ 9, 10

Federal Rule of Evidence § 403 ........................................................................................ 8, 9, 10, 12

**OTHER AUTHORITIES**

*Goldman Sachs to Pay Record $550 Million to Settle SEC Charges Related to Subprime
    Mortgage CDO*, U.S. Securities and Exchange Commission (July 15, 2010),
    http://sec.gov/news/press/2010/2010-123.htm ................................................................... 3

Office of Inspector General Report, U.S. Securities and Exchange Commission (September 30,
    2010), http://www.sec.gov/foia/docs/oig-534.pdf ............................................................. 3

Plaintiff U.S. Securities and Exchange Commission (the "SEC") respectfully submits this memorandum of law in support of its motion *in limine* to preclude defendant Fabrice Tourre from offering argument or evidence at trial pertaining to the SEC's distribution of funds arising from its settlement with co-defendant Goldman Sachs & Co. ("GS&Co"), the September 30, 2010 Report of Investigation of the Office of Inspector General ("OIG"), entitled "Allegations of Improper Coordination Between the SEC and Other Governmental Entities Concerning the SEC's Enforcement Action Against Goldman Sachs & Co." (the "OIG Report"), the SEC's charging decisions in this matter, and the SEC's investigative steps in this matter. For the reasons stated below, the Court should grant the SEC's motion.

## PRELIMINARY STATEMENT

This case is about a fraud by defendant Fabrice Tourre and his employer, Goldman Sachs & Co. ("GS&Co"), in the offer and sale of securities and security-based swap agreements in connection with the CDO at issue: ABACUS 2007-AC1 ("AC1").[1] The SEC alleges misstatements and omissions by Tourre about the role of Paulson & Co., Inc. in the structuring and marketing of AC1. Shortly after the filing of this matter, GS&Co settled with the SEC by, among other things, making payments totaling $550 million. During the course of this litigation, Tourre has made inflammatory arguments regarding the SEC's exercise of discretion with regard to the distribution of the GS&Co settlement funds. In addition, Tourre has commented repeatedly on the OIG Report, the SEC's charging decisions, and the quality of the SEC's initial investigation. In short, Tourre seems intent on litigating everything except the merits of this case. The defense should not be permitted to inject this irrelevant material into the trial and thereby distract the jury from the sole question at issue – namely, whether Mr. Tourre's conduct

---

[1] The SEC's Memorandum of Law in Support of its Motion for Partial Summary Judgment (Dkt. 192) contains a more complete description of the facts about AC1.

1

in connection with the AC1 transaction constitutes securities fraud. In order to ensure that this case focuses on the issue at hand, the SEC respectfully requests that the Court preclude the defense from offering evidence or argument regarding the other irrelevant events.

## BACKGROUND

### A. The GS&Co Settlement and Fair Fund Distribution.

On April 16, 2010, the SEC filed a Complaint in this matter against GS&Co and Tourre, alleging violations of Section 10(b) of the Exchange Act of 1934 and Section 17(a) of the Securities Act of 1933. On July 14, 2010, GS&Co signed a consent resolving this matter with regard to the corporation. (Dkt. 25). Pursuant to that consent, judgment was entered against GS&Co on July 20, 2010, requiring it to pay $15 million in disgorgement and a $535 million civil penalty. (*Id.,* Final Judgment, Section II).

In the GS&Co consent, which was signed by GS&Co General Counsel Gregory K. Palm, (*Id.*, Consent, at 10), GS&Co

> acknowledge[d] that the marketing materials for the ABACUS 2007-AC1 transaction contained incomplete information. In particular, it was a mistake for the Goldman marketing materials to state that the reference portfolio was 'selected by' ACA Management LLC without disclosing the role of Paulson & Co. Inc. in the portfolio selection process and that Paulson's economic interests were adverse to CDO investors. Goldman regrets that the marketing materials did not contain that disclosure.

(*Id.* at 2). In addition, GS&Co undertook in that consent to enhance the role of inside and outside counsel in the review of mortgage securities offerings. (*Id.* at 4-5).[2]

---

[2] At the hearing before this Court on June 14, 2013, defense counsel represented to the Court that the undertakings in the GS&Co consent related to the legal and compliance functions at GS&Co, and "not [to] the business function[s]." (Ex. 1, 6/14/2013 Hearing Tr. at 47). That is plainly incorrect. The consent contains numerous undertakings to reform GS&Co's business functions with regard to the offering of RMBS, CDOs, and other residential mortgage-related securities. (Dkt. 25, Consent at 3-6).

2

The GS&Co consent also provided that the SEC "may," in its discretion distribute to harmed investors the funds paid by GS&Co through a Fair Fund distribution under Section 308(a) of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7246. (*Id*. at 2).  In its discretion, the SEC elected to return $250 million of the GS&Co funds to harmed investors, with the remaining $300 million being paid to the U.S. Treasury.  *See Goldman Sachs to Pay Record $550 Million to Settle SEC Charges Related to Subprime Mortgage CDO*, U.S. Securities and Exchange Commission (July 15, 2010), http://sec.gov/news/press/2010/2010-123.htm.  Accordingly, GS&Co made payments of $150 million payment to IKB Deutsche Industriebank, AG ("IKB"), $100 million to ABN AMRO Bank, N.V.'s ("ABN") successor-in-interest, Royal Bank of Scotland, and $300 million to the U.S. Treasury.  (Dkt. 25, Final Judgment, Section II).

### B. The OIG Report.

Shortly after this case was filed, the SEC's OIG issued a report[3] on September 30, 2010, describing the results of an investigation into allegations by United States Representative Darrell Issa and other members of the House of Representatives that SEC employees communicated or coordinated with the White House, Members of Congress, or Democratic political committees on bringing and the timing of this action to affect debate concerning the financial regulatory reform legislation pending before the United States Senate.[4]  (OIG Report at 1).  The OIG Report found no such communication or coordination and concluded that the "investigation did not find that the SEC's investigation of, or its action against, Goldman was intended to influence, or was influenced by, financial regulatory reform legislation."  (*Id*. at 76).  However, the OIG Report

---

[3]   The report is available online at http://www.sec.gov/foia/docs/oig-534.pdf.
[4]   At the request of Congressman Issa, the Office of Inspector General also examined whether the timing of the SEC's settlement with GS&Co related to the financial reform legislation passed by the United States Senate the same day. (OIG Report at 1).

3

disclosed a number of facts concerning the SEC's investigation, including the division in the Commission's vote to approve this matter. (*Id.* at 32).

### C. The Defense Pleadings.

In pleadings filed in this action, Tourre has at times focused more on the SEC's initial investigation and other peripheral matters than on the merits of the SEC's case. For example, in his Opposition to the SEC's Motion *in Limine* to Preclude Evidence or Argument that Tourre Reasonably Relied on Advice of Counsel, Tourre did not begin his pleading with a discussion of the issue raised in the SEC's Motion. Instead, Tourre engaged in a brief diatribe claiming that the "SEC's investigation into [AC1] and its charging decisions pertaining thereto" were "deeply flawed." (Dkt. 306 at 1). Similarly, in his Motion to Preclude the January 17 Recording, Tourre averred that the SEC proceeded with this action on the basis of an "incomplete record" and that the agency "knowingly failed to exercise its investigative authority." (Dkt. 210 at 1-2).

Tourre has also directed his inflammatory rhetoric at the SEC's decision to charge Tourre and GS&Co, the SEC's distribution of settlement funds from GS&Co, and the SEC's decision not to charge at least one of Tourre's co-workers. In his Motion *in Limine* to Preclude Reference to the Goldman Sachs Settlement, Tourre focused on the timing of the SEC's initial Complaint and the SEC's issuance of a press release soon thereafter. (Dkt. 300 at 2). Tourre also referenced the impact of the Complaint on GS&Co's share price, (*id.* at 3), and recited the evidence he could use to "explain why the SEC brought this lawsuit." (*Id.* at 7). Tourre's purported evidence included a newspaper article reporting that two SEC Commissioners voted against filing this lawsuit, and that the "Goldman Complaint was filed shortly before hearings of the Senate Permanent Subcommittee on Investigation at which Goldman employees were to testify so the SEC could 'show the world they were on top of this.'" (*Id.* at 7-8). Tourre also

referenced congressional testimony by the then-Director of Enforcement regarding the SEC's work to bring matters related to the financial crisis. (*Id*. at 8).

At the same time, Tourre has delved into the SEC's failure to charge at least one of his co-workers. In his Opposition to the SEC's Motion *in Limine* Pursuant to Rule 611, Tourre argued that his former colleague David Gerst should not be treated as a hostile witness. (Dkt. 304 at 6-7). Rather than addressing the portions of the SEC's pleading that detailed Gerst's role in the AC1 transaction, Tourre simply noted that "Mr. Gerst never received a Wells notice." (*Id*. at 7).

Finally, Tourre has treated the SEC's discretionary distribution of settlement funds from GS&Co as evidence. In his Opposition to the SEC's Motion for Partial Summary Judgment, Tourre alleged that the SEC "correctly did not view ACA as a 'victim' at all." (Dkt 227 at 2). In support of this assertion, Tourre noted that ACA did not receive any money when the SEC distributed Fair Fund payments to victims of GS&Co and Tourre's fraud. (*Id.* at 2-3). Tourre then quoted the SEC's in-court statement that it had "never said that ACA was completely without fault here."[5] (*Id*. at 3).

In a similar vein, Tourre has, in numerous court filings during the course of this litigation, referenced portions of the OIG Report. For example, on at least two occasions, Tourre has filed pleadings making reference to averments in the OIG Report that the SEC's Enforcement staff traveled to Germany and obtained a declaration from an individual and that the five Commissioners authorized this action by a three-to-two vote. (Dkt. 39 at 12; Dkt. 47 at 3).

---

[5] Any evidentiary use of this statement by Tourre would be inappropriate on the additional ground that it relates to the GS&Co settlement which Tourre successfully moved to exclude. (Dkt. 300).

5

### D. The Defense Motion Regarding The GS&Co Settlement.

Despite Tourre's repeated diversionary discussions of material irrelevant to the merits of this matter, Tourre deemed it appropriate to file a motion to preclude the SEC from introducing at trial evidence concerning the GS&Co settlement in this matter. (Dkt. 300). As noted above, in the GS&Co consent, which was signed by GS&Co's General Counsel (Dkt. 25 at 10), GS&Co expressed regret for the incompleteness of the AC1 marketing materials and undertook a number of corporate reforms. (*Id.* at 4-5). In response to the defense motion to preclude the SEC from introducing these admissions at Tourre's trial, the SEC stated at the June 10, 2013 status conference that it did not intend to introduce these GS&Co admissions at trial, but also noted that the defense should similarly be precluded from discussing the SEC's discretionary distribution of GS&Co's settlement payment to victims. (Ex. 2, 6/10/13 Hearing Tr. at 25). As this Court noted, reference to GS&Co's involvement in this litigation is sensitive because, "once the door is open, the horse has bolted and people have the ability to respond." (*Id.*).

Subsequent to the June 10, 2013 status conference, the SEC spoke with defense counsel in an effort to reach agreement that no reference would be made at trial to the Fair Fund distribution, the OIG Report, and the Commission vote in deciding to charge Tourre and GS&Co here. On June 15, 2013, Tourre's counsel advised the SEC in writing that it would not agree to forgo the introduction of such materials at trial. The SEC now moves to preclude reference to such irrelevant and unduly prejudicial material in the upcoming trial.

### STANDARD OF REVIEW

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are

definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmeri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted).

## ARGUMENT

I. **Evidence Regarding the SEC's Fair Fund Distribution of GS&Co Settlement Funds Is Not Relevant.**

As noted above, only weeks ago, Tourre moved to preclude the SEC from introducing at trial the admissions of wrongdoing made by GS&Co in its settlement with the SEC that resulted in the payment of $550 million in disgorgement and civil penalties. (Dkt. 300). Tourre argued, among other things, that such evidence was inadmissible because it was irrelevant, more prejudicial than probative, and precluded by Federal Rule of Evidence 408 as evidence of an offer of compromise. (*Id.* at 5-12). Despite these arguments, Tourre has refused to agree that, in a similar vein, he cannot offer evidence of the SEC's exercise of discretion in the distribution of GS&Co's settlement funds to certain victims of Tourre's fraud. Accordingly, this Court should order such evidence precluded as irrelevant, unduly prejudicial, and impermissible under Federal Rule of Evidence 408.

As an initial matter, it is unclear how Tourre reconciles his desire to offer evidence or argument regarding the Fair Fund distribution with Federal Rule of Evidence 408. That rule precludes, among other things, evidence of the offer or acceptance of valuable consideration in compromise of a claim in order to disprove the validity of that claim. It is hard to see imagine how Tourre could offer evidence of the lack of a Fair Fund distribution to ACA without contrasting it with evidence of such a distribution to IKB and ABN. But evidence of such distributions, or lack thereof, to disprove the validity of the SEC's claim that Tourre defrauded ACA is precisely what Rule 408 prohibits.

7

Furthermore, it is hard to see how Tourre could offer evidence of the distribution of GS&Co's settlement payments without putting before the jury that fact that a settlement was reached – the very fact that Tourre previously moved this Court to preclude. And as this Court noted, "once the door is open, the horse has bolted and people have the ability to respond." (Ex. 2, 6/10/13 Hearing Tr. at 25). Were Tourre to offer evidence or argument regarding the discretionary distribution of funds to IKB and ABN, but not ACA, the door would seemingly be open for the SEC to note that distribution was based on the same GS&Co consent that provided for that distribution. The GS&Co consent expressed regret for the misleading AC1 marketing materials that stated that the AC1 reference portfolio was "selected by ACA." (Dkt. 25, Consent at 2). That particular deception did not apply to ACA, as ACA was aware of Paulson's role in the AC1 portfolio selection process but had instead been deceived about Paulson's economic interest in the transaction.

In any event, it is hard to see how any of this evidence would be relevant. The SEC's authority to make a Fair Fund distribution under Section 308(a) of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7246, is entirely discretionary and involves policy judgments, that do not necessarily reflect any decision about whether a particular entity or institution was actually victimized as a result of a defendant's fraud. Thus, a Fair Fund distribution, or lack thereof, is not necessarily probative of even the SEC's belief about whether an entity was a victim. To the contrary, the best evidence of the SEC's belief in that respect is the SEC's complaint, and the SEC's complaints in this matter have consistently represented that ACA was deceived by Tourre regarding Paulson's equity interest in the AC1 transaction. At a minimum, litigation over the reasons underlying the SEC's exercise of discretion to make a Fair Fund distribution to IKB and ABN, but not ACA, would be substantially more prejudicial than probative. Fed. R. Evid. 403.

8

For all these reasons, the SEC respectfully requests that the Court preclude the defense from offering evidence or argument at trial regarding the Fair Fund distribution in this case.

## II.     Evidence Pertaining to OIG Report Is Not Relevant.

As noted above, Tourre has throughout this litigation invoked various aspects of the OIG Report. Tourre has refused to agree that such evidence or argument would be improper at trial. Accordingly, the SEC requests that the Court preclude such evidence as irrelevant and more prejudicial than probative.

As an initial matter, it is hard to imagine how the OIG Report could be relevant to the merits of this case. Rule 401 defines "relevant evidence" as that having "any tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. The Report has nothing to do with the facts of consequence to the determination of this action, but instead describes events that occurred three years later, just prior to the filing of the complaint in April 2010. Whether SEC staff members took a trip to Germany and obtained a declaration from an individual who will not testify at trial, or whether the five Commissioners approved this action by less than a unanimous vote, do not make any material fact more probable or less probable.

Even if the Report were relevant, it is inadmissible pursuant to the Rule 403 balancing test between probative value and unfair prejudice, confusion of the issues, or misleading the jury. *Li v. Canarozzi*, 142 F.3d 83, 89 (2d Cir. 1998) (excluding evidence under Rule 403); *Cole Sys. Assocs., Inc. v. Municipal Emergency Servs., Inc.*, Case No. 08-cv-6417(BSJ), 2010 WL 4942229, at *2 (S.D.N.Y. Dec. 3, 2010) (same). Compelling the jury to hear argument and evidence about the extraneous events in the Report would divert their attention and waste their time. Like the report of the U.S. Senate Permanent Subcommittee on Investigations in *Abu*

9

*Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, Case No. 08-cv-7508 (SAS), 2013 WL 1155420 (S.D.N.Y. Mar. 20, 2013), the Report "is irrelevant and, to the extent that it has any relevance to the alleged fraud at issue here, more prejudicial than probative." *Id*. at *7; a*ccord City of New York v. Pullman Inc.*, 662 F.2d 910, 915 (2d Cir. 1981) (interim report precluded under Rule 403 because it "was prepared for very different purposes tha[n] those for which it was offered at trial"); *In re Sept. 11 Litig.*, 621 F. Supp. 2d 131, 157-58 (S.D.N.Y. 2009) ("admitting longer sections of the report would cause the trial to digress into innumerable arguments relating to myriad issues, causing undue prejudice, extensive delay, and confusion").

### III. Evidence Pertaining to SEC Investigative And Charging Decisions Is Not Relevant.

Equally irrelevant are Tourre's allegations about the quality of the SEC's investigation, deliberations surrounding the filing of the Complaint in this case, or decisions not to charge certain participants. These allegations too should be excluded from the trial of this matter.

What the SEC did during the course of its investigation, its internal deliberations, its charging decisions, and the views of individual Commissioners, have nothing to do with the facts of consequence to the determination of this action. Indeed, the vast majority of the SEC conduct that Tourre cites in his pleadings occurred three years after the transaction at the center of this case and, thus, could not make any material fact more probable or less probable. In particular, any failure on the part of the SEC to uncover certain evidence during its investigation cannot conceivably make the existence of any "fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Whether the SEC should have uncovered certain evidence earlier in its investigation does not make the facts proven by that evidence more or less probable. Accordingly, evidence or argument regarding mistakes or shortcomings in the SEC's investigation − as opposed to

arguments about the absence of evidence at trial – is not relevant and should be precluded.  *See United States v. Bautista*, 252 F.3d 141, 145 (2d Cir. 2001) (holding that defense summation "amounted to an (improper) invitation for the jury to consider the government's choice of investigative techniques"); *United States v. Patrick*, 248 F.3d 11, 22 (1st Cir. 2001) ("Merely showing that an investigation is sloppy does not establish relevance."); *United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994) (defendant precluded from offering evidence at trial about the government's calculation error during its investigation); *Bell v. Ercole*, No. 05 CV 4532(ERK), 2011 WL 5040436, at *27 (E.D.N.Y. Oct. 21, 2011) (quoting *Patrick* for the proposition that "merely showing that an investigation is sloppy does not establish relevance").

Equally irrelevant is evidence or argument concerning the SEC's exercise of prosecutorial discretion not to charge other participants in the GS&Co fraud.  Evidence of the government's charging decisions is admissible only if the Court finds that it is otherwise relevant, such as when a prior charge against another person for the same offense tends to prove that the defendant did not commit the offense at issue.  *See United States v. White*, 692 F.3d 235, 246-47 (2d Cir. 2012).  By contrast, it is proper to exclude evidence regarding the government's decision ***not*** to charge another individual, as the absence of charges against that other person does not negate the defendant's culpability.  *See United States v. Watts*, No. 10–CR–627 (KAM), 2013 WL 1192781, at *25-26 (E.D.N.Y. Mar. 22, 2013); *see also United States v. Ramos*, 169 F. App'x 865, 866 (5th Cir. 2006) (evidence regarding government's decision to dismiss charge against co-defendant not relevant to defendant's guilt); *United States v. Delgado*, 903 F.2d 1495, 1499 (11th Cir. 1990) (same).  Indeed, the Second Circuit has approved an instruction to the jury that "law enforcement policy [i]s not [the jury's] concern" and the jury should instead "focus its

attention on the real issue, namely, whether the government had proved the facts alleged." *United States v. Cheung Kin Ping*, 555 F.2d 1069, 1073 (2d Cir. 1977).

Similarly, in this case, the SEC's exercise of discretion not to charge other individuals in this case says nothing of Tourre's culpability. The exercise of prosecutorial discretion is a law enforcement policy decision that is not the jury's concern. The sole issue for the jury is whether the SEC has proved the allegations against Tourre. The defense is free to argue the absence of Tourre's scienter from evidence, if there is any, that other individuals[6] were aware of the full scope of his conduct and did not raise concerns. But the defense should not be permitted to introduce evidence and argument regarding the SEC's decision not to charge other individuals at GS&Co or Paulson who may have engaged in similar misconduct, as that charging decision is not relevant to Tourre's culpability.

Even if the SEC's internal deliberations and charging decisions were relevant, evidence regarding such should be precluded pursuant to the Rule 403 balancing test. Fed. R. Evid. 403. Compelling the jury to hear argument and evidence about the extraneous process by which the SEC investigates an allegation and files a complaint would divert their attention and waste their time. *Cole Sys. Assocs.*, 2010 WL 4942229, at *2 (court precluded evidence where extraneous subjects would "become an issue and engender a trial within a trial"). Moreover, Tourre's conclusory statements about the SEC's investigation and charging decisions are highly speculative and should not be permitted to support inflammatory and baseless attacks. *Watts*, 2013 WL 1192781, at *27 (precluding "speculative and baseless line of attack on the credibility of an apparently blameless witness") (citation omitted).

---

[6] Of course, the SEC has elsewhere moved to preclude the defense from emphasizing that the other individuals were attorneys. (Dkt. 285).

12

## CONCLUSION

For the reasons set forth above, the Court should grant the SEC's motion *in limine* and preclude Defendant Fabrice Tourre from presenting evidence or argument pertaining to the SEC's Fair Fund distribution, the OIG Report, the SEC's investigative decisions, and the SEC's charging decisions.

Dated: Washington, D.C.
       June 17, 2013

Respectfully submitted,

*Bridget M. Fitzpatrick*
Matthew T. Martens
Richard E. Simpson
Christian D. H. Schultz
Bridget Fitzpatrick
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4481 (Martens)
(202) 772-9292 (fax)
martensm@sec.gov

**CERTIFICATE OF SERVICE**

I certify that on June 17, 2013, I arranged for hand service and electronically filed the foregoing SEC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT PERTAINING TO THE SEC'S FAIR FUND DISTRIBUTION, OIG REPORT, INVESTIGATIVE STEPS, AND CHARGING DECISIONS using the CM/ECF system, which will send notification of such filing to the following email addresses:

Pamelachepiga@allenovery.com
Pamela Rogers Chepiga
Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020
Attorney for defendant Fabrice Tourre


seancoffey78@gmail.com
John Patrick Coffey
Law Office of John P. Coffey
1350 Avenue of the Americas, 2d Floor
New York, New York 10019
Attorney for defendant Fabrice Tourre


/s/ Bridget Fitzpatrick
Bridget Fitzpatrick