UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff,

                         v.

FABRICE TOURRE,

                        Defendant.

10 Civ. 3229 (KBF)

ECF Case

---

## SEC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE CERTAIN ARGUMENT OR EVIDENCE REGARDING PAULSON & CO., INC.

Plaintiff U.S. Securities and Exchange Commission (the "SEC") respectfully submits this memorandum of law in support of its motion *in limine* to preclude defendant Fabrice Tourre from presenting argument or evidence at trial pertaining to press reports regarding the investment strategy of Paulson & Co. ("Paulson").[1] For the reasons stated below, the Court should grant the SEC's motion.

### PRELIMINARY STATEMENT

This case is about a fraud by defendant Fabrice Tourre and his employer, Goldman Sachs & Co. ("GS&Co"), in the offer and sale of securities and security-based swap agreements in the ABACUS 2007-AC1 ("AC1") transaction.[2] Tourre seeks to offer into evidence news articles and related testimony about Paulson and its purported macro investment strategy of shorting the

---

[1] In the report of purported defense expert Charles Cox, reference was also made to losses incurred by Paulson in other unrelated transactions sub subsequent to AC1. Given the Court's ruling precluding testimony by Dr. Cox, the SEC assumed that evidence regarding Paulson losses will not be admitted. Such evidence should not be permitted, as it is irrelevant to the case at hand.

[2] The SEC's Memorandum of Law in Support of its Motion for Partial Summary Judgment (Dkt. 192) contains a more complete description of the facts about AC1.

subprime housing market. Such articles are irrelevant, prejudicial and confusing. With respect to most or all of them, there is no evidence that they were read by the employees of ACA Management Ltd. and its affiliates (collectively, "ACA") – a victim in this action whom Tourre deceived concerning Paulson's economic interest in AC1.[3] Pursuant to Rules 401 and 403 of the Federal Rules of Evidence, the Court should preclude Tourre from introducing the articles or referring to them in argument or testimony at trial.

## BACKGROUND

In depositions in this action, counsel for Tourre has examined former employees of ACA about news articles that contained references to Paulson and asked the witnesses whether they had read the articles or knew that Paulson was pursuing a purported macro investment strategy of shorting the subprime housing market in the winter of 2007. Defense counsel sought to demonstrate that ACA must have known of Paulson's investment strategy and, therefore, must have known that Paulson was taking a pure short position in AC1. However, the witnesses testified that they did not remember reading the articles about Paulson. Consequently, there is no evidence that the articles affected the ACA witnesses' beliefs about Paulson's economic interest and role in AC1.

For example, defense counsel asked former ACA employee Laura Schwartz about a *New York Times* article entitled "Winners Amid Gloom and Doom."

> Q. Let me show you . . . what has already been marked as Roseman Exhibit 141, a *New York Times* article . . . Winners Amid Gloom and Doom. . . . Did you see this article in *The New York Times* on or about March 9, 2007?
>
> A. I have no recollection.
>
> Q. Did anyone at ACA discuss this article with you?

---

[3] The other victims, IKB Deutsche Industriebank AG and ABN AMRO Bank, N.V., did not know of Paulson's involvement in AC1 at all, and were defrauded by the half-truth that ACA selected the reference portfolio.

    A.  Not that I recall.

    Q.  Did anyone at ACA ask you in light of this article whether in fact Paulson was taking a long position in Abacus 2007-AC1?

    A.  Not that I recall.

    Q.  Did you speak to Paolo Pellegrini about this article?

    A.  I do not believe so.  (4/13/11 Schwartz Dep. at 325-27)

Similar questions of Schwartz and other ACA witnesses were repeated with regard to numerous press reports concerning Paulson.  (*Id.* at 331-32; 3/10/11 Gorman Dep. at 194-201; 4/6/11 Roseman Dep. at 156-57, 163-65).

    Using the ACA witnesses as a foil, Tourre apparently intends to introduce into evidence numerous news articles that no one remembers reading.  Tourre's DX-1800 is a *Financial Times* article entitled "Hedge Funds – Wavering, not Drowning;" his DX-1802 is a *Financial Times* article entitled "Survivors of the Subprime Storm;" his DX-1805 is a *Bloomberg* article entitled "Subprime Defaults to Soar, Hurt Lenders, Funds Say;" and his DX-1806 is a *Financial Times* article entitled "Taking a Long View on Shorting Subprime Loans."  Then there is DX-1801, the *New York Times* "Winners Amid Gloom and Doom."  No witness in this case has testified that he or she saw or read any of these articles.

## STANDARD OF REVIEW

    "The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *Palmeri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); a*ccord Island Intellectual Property LLC v. Deutsche Bank AG*, Case No. 09-cv-2675(KBF), 2012 WL 526722, at *1 (S.D.N.Y. Feb. 14, 2012) (same); *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) ("[a]lthough the Federal Rules of Evidence do

not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials").

## ARGUMENT

### I. The Court Should Preclude News Articles About Paulson's Investment Strategy.

News articles about Paulson's purported macro investment strategy of shorting the subprime housing market are not relevant. Rule 401 defines "relevant evidence" as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Defense counsel has apparently conducted a Lexis-Nexus search for news reports in late 2006 and 2007 regarding Paulson and its investment strategy. But the former ACA employees testified that they did not remember reading the news articles, and the defense has no evidence to the contrary.[4] Like the tree that falls unheard in a deserted forest, articles left unread cannot make any fact of consequence more probable than it otherwise would be. Those unread articles tell the jury nothing about how the ACA witnesses perceived Paulson's economic interest or role in AC1.

Nor are the news articles relevant to the materiality of Tourre's fraud. Materiality is an objective standard, *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004), and is determined based on the total mix of information that a reasonable CDO investor would consider important, *Basic, Inc. v. Levinson*, 485 U.S. 224, 232 (1988). As this Court recently stated, the total mix of information "is not just the mix of information out there in the ether in some nonspecific way." (6/10/13 Hrg. Tr. at 20). Here, the defense has offered no evidence, expert or otherwise, that its

---

[4] The defense has identified a single issue of *Securitization News*, containing an article regarding Paulson, that Brad Larson of ACA emailed to Alan Roseman of ACA to bring an entirely separate article to Roseman's attention. (DX 1200). The SEC does not object to the defense using that single issue of *Securitization News* at trial.

4

stack of press clippings, replete with hearsay and speculation, is the type of information that a reasonable investor would consider in making CDO investment decisions in early 2007. Absent such evidence to link the press reports to this case, these press articles are simply not relevant.

Even were the news articles identified by defense counsel somehow relevant, they should be precluded pursuant to the Rule 403 balancing test between probative value and unfair prejudice, confusion of the issues, or misleading the jury. *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989) (Rule 403 "gives the trial court broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of confusion of the issues or if it would be needlessly cumulative"); accord *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008); *City of New York v. Pullman Inc.*, 662 F.2d 910, 915 (2d Cir. 1981). Watching the ACA witnesses being pointlessly confronted with a bevy of news reports regarding Paulson that they did not read, the jury could be misled to believe that ACA's negligence, if any, bears on its verdict in this case. The law is clear that the negligence of an investor is no defense to a securities fraud charge. *See S.E.C. v. Pentagon Capital Mgmt.*, 612 F. Supp. 2d 241, 264-66 (S.D.N.Y. 2009). In fact, the pattern jury instructions in this area provide that "it does not matter whether the intended victims are gullible buyers or sophisticated investors, because the securities laws protect the gullible and unsophisticated as well as the experienced investor." L. Sand, et al., *Modern Federal Jury Instructions*, Instruction No. 82-4. In order to avoid jury confusion on this point, the defense should be precluded from introducing the press reports not read by ACA.

## CONCLUSION

Introducing news articles about Paulson's purported macro investment strategy of shorting the subprime housing market would have no proper legal basis. The articles are not

relevant because no ACA witness testified that he or she had read them. Even if they had minimal relevance, it is outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury. Pursuant to Rules 401 and 403, the Court should preclude Tourre from presenting the news articles at trial.

Dated: Washington, D.C.  
       June 18, 2013

Respectfully submitted,

*Richard E. Simpson*  
Matthew T. Martens  
Richard E. Simpson  
Christian D. H. Schultz  
Bridget Fitzpatrick  
Attorneys for Plaintiff  
Securities and Exchange Commission  
100 F Street, N.E.  
Washington, D.C. 20549  
(202) 551-4481 (Martens)  
(202) 772-9292 (fax)  
martensm@sec.gov