UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

     v.

FABRICE TOURRE,

        Defendant.
_____

: 
: 
: 
: 
:  10 Civ. 3229 (KBF)
: 
:  ECF Case
: 
: 
: 
: 

**SEC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE*
TO PRECLUDE JURY ARGUMENT THAT SWAP AGREEMENT
<u>WAS NOT A "SECURITY-BASED SWAP AGREEMENT"</u>**

Matthew T. Martens
Richard E. Simpson
Christian D. H. Schultz
Bridget Fitzpatrick
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4481 (Martens)
(202) 772-9362 (facsimile)
martensm@sec.gov
Attorneys for Plaintiff

Dated:  Washington, D.C.
    June 18, 2013

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..............................................................................................1

BACKGROUND ...............................................................................................................1

    A.  The Amended Complaint ..........................................................................................1

    B.  The Record Evidence ................................................................................................2

ARGUMENT ...................................................................................................................3

I.      Whether An Instrument Is a "Security Or Security-Based Swap Agreement" Is
      a Question of Law For the Court .........................................................................3

II.     The Statutory Definition of a "Security-Based Swap Agreement" ....................................4

III.    The CDS Between ABN and ACA LLC Satisfies the Statutory Definition of a
      "Security-Based Swap Agreement" ......................................................................5

IV.   The Defense Should Not Be Permitted To Confuse The Jury By Arguing That
      The CDS Between ABN and ACA LLC Was Not A "Security-Based Swap
      Agreement" ...................................................................................................7

CONCLUSION..................................................................................................................8

## TABLE OF AUTHORITIES

<u>CASES</u>

*CFIP Master Fund, Ltd. v. Citibank, N.A.*,
    738 F. Supp. 2d 450 (S.D.N.Y. 2010)............................................................................2

*Fraglin v. Mezei*,
    No. 09 Civ. 10287(AJN), 2012 WL 3613813 (S.D.N.Y. Aug. 22, 2012) .........................3

*KMW Int'l v. Chase Manhattan Bank, N.A.*,
    606 F.2d 10 (2d Cir. 1979)...............................................................................................3

*McNabb v. S.E.C.*,
    298 F.3d 1126 (9th Cir. 2002) .........................................................................................4

*Pryor v. Connolly*,
    460 F. Supp. 2d 530 (S.D.N.Y. 2006)..............................................................................7

*S.E.C. v. Edwards*,
    540 U.S. 389 (2004).........................................................................................................4

*S.E.C. v. W.J. Howey Co.*,
    328 U.S. 293 (1946).........................................................................................................4

*Stoiber v. S.E.C.*,
    161 F.3d 745 (D.C. Cir. 1998) .........................................................................................4

*United States v. Austin*,
    462 F.2d 724 (10th Cir. 1972) .........................................................................................4

*United States v. Leonard*,
    529 F.3d 83 (2d Cir. 2008)...............................................................................................4

<u>STATUTES AND REGULATIONS</u>

Section 2(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77b(a)(1) ......................................4, 7

Section 2A(b)(1) of the Securities Act of 1933, 15 U.S.C. § 77b-1(b)(1)....................................4

Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a)......................................... *passim*

Section 3(a)(10) of the Exchange Act of 1934, 15 U.S.C. § 78c(a)(10).......................................4

Section 3 of the Exchange Act of 1934, note, 15 U.S.C. § 78c ....................................................5

Section 3A(b)(1) of the Exchange Act of 1934, 15 U.S.C. § 78c-1(b)(1) ......................................4

Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b) .......................................... *passim*

Rule 10b-5, 17 C.F.R. § 240.10b-5..................................................................................................1

Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Pub. L. 111-203, H.R. 4173)..................................................................................................................................4

Section 1a of the Commodity Exchange Act, 7 U.S.C. § 1a (2007)...........................................5, 6

Section 1(b) of the International Banking Act of 1978, 12 U.S.C. § 3101(7) ............................5, 6

Federal Rule of Evidence 50(a) .....................................................................................................4

Federal Rule of Evidence 201(b) ...................................................................................................3

Federal Rule of Evidence 403.....................................................................................................3, 7

Plaintiff, the Securities and Exchange Commission ("SEC" or "Commission"), respectfully submits this memorandum of law in support of its motion *in limine* to preclude the defense from arguing to the jury that the swap transaction between ABN AMRO Bank, N.V. ("ABN") and an affiliate of ACA Capital Holdings, Inc. (collectively with affiliates, "ACA") was a "financial guarantee transaction."

## PRELIMINARY STATEMENT

The defense apparently intends to argue to the jury that the transaction into which ACA entered with ABN was a financial guaranty transaction, and not a security-based swap agreement subject to the anti-fraud provisions of the Section 17(a) of the Securities Act of 1933 or Section 10(b) of the Securities Exchange Act of 1934. As an initial matter, the question of whether an instrument is a "security or security-based swap agreement" under the federal securities statutes is a question of law for the Court. What is more, the defense argument is plainly incorrect given the undisputed documentary evidence that will be admitted at trial. In the meantime, however, the defense appears intent on attempting to confuse the jury on this point. Accordingly, the SEC respectfully moves *in limine* for an order precluding the defense from arguing to the jury, contrary to the documented facts, that the swap transaction at issue was "a financial guaranty transaction" rather than a security-based swap agreement.

## BACKGROUND

### A.  The Amended Complaint.

The SEC's Amended Complaint alleges three claims against Tourre: (1) a primary violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); (2) a primary violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5; and (3) aiding and abetting GS&Co's violations of Section 10(b) and Rule 10b-5. Both the

Section 17(a) and Section 10(b) claims alleged fraud in connection with the sale of "securities or security-based swap agreements." Amend. Compl. ¶¶ 76, 80, 83.

Of particular relevance here, the Amended Complaint alleges that Tourre committed his fraud in the offer and sale to ACA of a credit default swap ("CDS") agreement that referenced the ABACUS 2007-AC1 ("AC1") portfolio of residential mortgage-based securities ("RMBS"). *Id.* ¶¶ 67-69. That swap agreement was previously the subject of the SEC's motion for partial summary judgment with regard to *Morrison*'s domesticity requirement. In the summary judgment briefing, the SEC argued that the CDS between ABN and ACA was security-based, (Dkt. No. 192, at 24), and the defense did not appear to dispute that that CDS was covered by Section 17(a) and Section 10(b), (*see* Dkt. No. 227, at 30-31; Dkt. No. 228, at ¶¶ 45, 47, 49).

Recently, however, when the parties exchanged draft jury instructions, the defense proposal stated that "the transaction that ACA entered into with ABN was a financial guaranty transaction, and not a security-based swap agreement," while the "SEC contends that it was a security-based swap agreement." (Martens Decl., Ex. 1, at 16). The defense's proposed jury instructions offer no definition of a "financial guaranty transaction." (*See id.*).

**B. The Record Evidence.**

As set forth in the parties' summary judgment papers, on or about May 31, 2007, an ACA affiliate known as ACA Credit Products – ABN AMRO LLC ("ACA LLC") entered into a CDS agreement with ABN referencing the super senior (50-100%) tranche of the AC1 reference portfolio of residential mortgage-backed securities. (Martens Decl., Exs. 2, 3 and 4).[1] This Court has ruled that ACA LLC incurred irrevocable liability in the United States with regard to this swap transaction. (Dkt. No. 302). ACA LLC was a limited liability company incorporated

---

[1] *See CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 455 (S.D.N.Y. 2010) (discussing the various documents that make up a CDS).

in Delaware for purposes of executing this transaction.  Dahlman Decl. ¶ 2.  ABN was a bank incorporated under the laws of the Netherlands.[2]

On or about that same date as the swap agreement was entered, another ACA affiliate known as ACA Financial Guaranty Corporation ("ACA FG") issued an insurance policy on the swap agreement.  (Martens Decl., Ex. 5)  ACA FG was a stock insurance company regulated by the state of Maryland.  (*Id.*)

## ARGUMENT

Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 prohibit fraud in the offer or sale of any "securities or any security-based swap agreement."  The undisputed record evidence establishes that the swap transaction between ABN and ACA LLC was a "security-based swap agreement," as that term is statutorily defined.  The question of whether the CDS between ABN and ACA is a "security or security-based swap agreement" is a question of law to be decided by the Court.  Thus, allowing the defense to argue to the jury, contrary to all record evidence, that the swap transaction was a "financial guaranty transaction" rather than a covered swap agreement would serve no useful purpose.  At the same time, such argument risks misleading the jury, unduly delaying this proceeding, and wasting time.  Accordingly, the Court should preclude such a line of jury argument pursuant to Federal Rule of Evidence 403 and the Court's inherent power.

## I.     Whether An Instrument Is a "Security Or Security-Based Swap Agreement" Is a Question of Law For the Court.

In a civil case, "[t]he question of whether an instrument is a security is a question of law for the court."  *Fraglin v. Mezei*, No. 09 Civ. 10287(AJN), 2012 WL 3613813, at *8 n.3

---

[2]      This Court can take judicial notice of the fact that ABN AMRO Bank, N.V. was incorporated under the laws of the Netherlands.  *See* Fed. R. Evid. 201(b); *cf. KMW Int'l v. Chase Manhattan Bank, N.A.*, 606 F.2d 10, 15 n.2 (2d Cir. 1979) (taking judicial notice that Chase Manhattan Bank conducted business in foreign countries).  It is not subject to reasonable dispute that "N.V.", which stands for Naamloze Vennootschap, is the designation commonly used for companies incorporated in the Netherlands.

(S.D.N.Y. Aug. 22, 2012); *see also McNabb v. S.E.C.*, 298 F.3d 1126, 1130 (9th Cir. 2002)

("Whether a note is a security under the 1934 Act is a question of law"); *Stoiber v. S.E.C.*, 161

F.3d 745, 749 (D.C. Cir. 1998) (same); *United States v. Austin*, 462 F.2d 724, 736-37 (10th Cir.

1972) (same).[3]   Accordingly, the question of whether the CDS between ABN and ACA LLC is a

"security or security-based swap agreement" for purposes of the SEC's claims under Section

17(a) and Section 10(b) will never be presented to the jury for its resolution.[4]

## II.    The Statutory Definition of a "Security-Based Swap Agreement."

As noted above, Section 17(a) and Section 10(b) prohibit fraud in the offer or sale of

"any securities or any security-based swap agreement."   15 U.S.C. §§ 77q(a), 78j(b) (2007).[5]

The Securities Act and the Exchange Act both broadly define the term "security" to include,

among other things, a "note" or an "investment contract."[6]   15 U.S.C. §§ 77b(a)(1), 78c(a)(10).

Both the Securities Act and the Exchange Act also exempt from the definition of a "security" a

"security-based swap agreement."   *Id.* §§ 77b-1(b)(1), 78c-1(b)(1).

For purposes of both the Securities Act and the Exchange Act, a "security-based swap

agreement" is defined by reference to Section 206B of the Gramm-Leach-Bliley Act.   15 U.S.C.

§§ 77b-1(b)(1), 78c-1(b)(1).   Section 206B of the Gramm-Leach-Bliley Act in turn defines a

---

[3]      In a criminal case, the question of whether an instrument is a "security" may be a question for the jury.  *See United States v. Leonard*, 529 F.3d 83, 91 (2d Cir. 2008) (assuming without deciding that the question whether an instrument was a "security" was a question for the jury in a criminal case).

[4]      Even were the question one of fact, the facts surrounding the swap transaction between ABN and ACA LLC are not in dispute in this case as they are documented.  Accordingly, the Court would, at a minimum, resolve the question at the close of the case pursuant to Federal Rule of Evidence 50(a).  In either event, the question will not be presented to the jury.

[5]      Citations throughout are to the versions of the Securities Act and Exchange Act in effect in 2007 when the events in question occurred.  Certain amendments were made to the relevant provisions in the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Pub. L. 111-203, H.R. 4173).

[6]      The Supreme Court has interpreted the term "investment contract" to have a broad reach.  *See S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298 (1946) (noting that the term "investment contract" has been "broadly construed"); *see also S.E.C. v. Edwards*, 540 U.S. 389, 393-94 (2004).

"security-based swap agreement" as "a swap agreement (as defined in Section 206A) of which a material term is based on the price, yield, value or volatility of any security or any group or index of securities, or any interest therein." 15 U.S.C. § 78c note. Section 206A of the Gramm-Leach-Bliley Act defines a "swap agreement" as "any agreement, contract, or transaction between eligible contract participants (as defined in . . . the Commodity Exchange Act . . . ), . . . the material terms of which . . . are subject to individual negotiation, and that . . . provides for any . . . payment . . . that is dependent on the occurrence, non-occurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence . . . ." *Id.*

The Commodity Exchange Act defines an "eligible contract participant" as, among other things, a "financial institution," "an insurance company that is regulated by a State," or an entity the obligations of which under an agreement are guaranteed or otherwise support by an agreement by a financial institution or state-regulated insurance company. 7 U.S.C. § 1a(12) (2007). A "financial institution" is defined by the Commodity Exchange Act as, among other things, "a foreign bank or a branch of or agency of a foreign bank (each as defined in section 3101 of Title 12 [International Banking Act of 1978])." 7 U.S.C. § 1a(15) (2007). The International Bank Act of 1978 defines a "foreign bank" as, among other things, "any company organized under the laws of a foreign country . . . which engages in the business of banking." 12 U.S.C. § 3101(7).

## III. The CDS Between ABN and ACA LLC Satisfies the Statutory Definition of a "Security-Based Swap Agreement."

The undisputed and documented record evidence establishes that the CDS between ABN and ACA LLC was a "security-based swap agreement" as defined in both the Securities Act and the Exchange Act, and is thus subject to the anti-fraud provisions in Section 17(a) and Section

10(b).  The CDS between ABN and ACA LLC meets each of the elements of the definition of a "security-based swap agreement," as detailed above.

First, as its name suggests, the CDS between ABN and ACA LLC was a "swap agreement" as defined in Section 206A of the Gramm-Leach-Bliley Act.  The swap was between ABN and ACA LLC, both of which are "eligible contract participants."[7]  ABN is a foreign bank, in that it was incorporated in the Netherlands and was in the business of banking, and was thus a "financial institution" as defined in the International Banking Act of 1978.  ACA LLC was also an "eligible contract participant" in that it was an entity the obligations of which were guaranteed by an insurance company regulated by a State.  On the same day that the swap agreement was entered between ABN and ACA LLC, ACA FG, which was regulated by the state of Maryland, issued a "credit default swap insurance policy" on the swap agreement.  (*See* Martens Decl., Ex. 5).  Still further, the undisputed evidence at summary judgment showed, and at trial will show, that the terms of the swap agreement were subject to individual negotiation.  As just one example, the swap agreement's reference portfolio was uniquely constructed for this transaction.  (Martens Decl., Ex. 4, at 25-28).  Finally, the swap agreement provides for payment by the protection seller that is dependent on the occurrence of a financial or commercial contingency, namely the failure to pay principal or a writedown with respect to one or more of the reference obligations.  (Martens Decl., Ex. 6, at 25 (providing that the parties shall make payment "[u]pon the occurrence of a Credit Event"); Martens Decl., Ex. 4, at 11 (defining the "Credit Events" for purposes of the swap transaction)).

What is more, the CDS between ABN and ACA LLC was a "security-based" swap agreement under Section 206B of the Gramm-Leach-Bliley Act given that numerous material

---

[7]        The documentation for the CDS between ABN and ACA LLC expressly represented that each party was an "eligible contract participant" under Section 1a(12) of the Commodity Exchange Act.  (Martens Decl., Ex. 3, at 10).

terms of the swap agreement were based on the price, yield, value or volatility of any security. The trade confirmation for the CDS attaches a list of the reference obligations consisting of RBMS.  (Martens Decl., Ex. 4, at 25-28).  In addition, the trade confirmation defines a "credit event" as a "writedown" (*i.e.*, change in value) of a particular security in the reference portfolio. Because a material term of the CDS was defined by reference to the value of the RMBS in the reference portfolio, it falls squarely within the definition of a "security-based swap agreement" for purposes of Section 206B of the Gramm-Leach-Bliley Act, and thus also for purposes of both the Securities Act and Exchange Act.

## IV.    The Defense Should Not Be Permitted To Confuse The Jury By Arguing That The CDS Between ABN and ACA LLC Was Not A "Security-Based Swap Agreement."

As noted above, Tourre's draft jury instructions make clear that he intends to argue to the jury that the arrangement between ABN and ACA LLC was a "financial guaranty transaction," rather than a "security-based swap agreement."  Notably, Tourre provides no definition for a "financial guaranty transaction," and the undisputed and undisputable facts in this case will establish that the CDS between ABN and ACA LLC was a "security-based swap agreement," as that term is defined in both the Securities Act and the Exchange Act for purposes of Section 17(a) and Section 10(b), respectively.

Given the record evidence, it would be misleading and confusing to the jury for the defense to argue that the evidence demonstrates that the CDS was a "financial guaranty transaction" – a term for which the defense provides no legal definition.[8]  Accordingly, defense argument to that effect should be precluded as significantly more prejudicial than probative and likely to confuse and mislead the jury.  *See* Fed. R. Evid. 403; *see Pryor v. Connolly*, 460 F.

---

[8]     In any event, the Securities Act defines a "security" to include a "guarantee" on a security.  15 U.S.C. §77b(a)(1).

Supp. 2d 530, 538-39 (S.D.N.Y. 2006) (holding that trial court may strike misleading opening statements).

## **CONCLUSION**

For the foregoing reasons, the SEC respectfully submits that this Court should preclude the defense from arguing to the jury that the CDS between ABN and ACA LLC was not a "security" or "security-based swap agreement."


Dated:  Washington, D.C.                          Respectfully submitted,
       June 18, 2013

                                            /s/ *Matthew T. Martens*
                                            Matthew T. Martens
                                            Richard E. Simpson
                                            Christian D. H. Schultz
                                            Bridget Fitzpatrick
                                            Attorneys for Plaintiff
                                            Securities and Exchange Commission
                                            100 F Street, N.E.
                                            Washington, D.C. 20549
                                            (202) 551-4481 (Martens)
                                            (202) 772-9292 (fax)
                                            martensm@sec.gov

8

## CERTIFICATE OF SERVICE

I certify that on June 18, 2013, I directed the foregoing SEC'S MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE JURY ARGUMENT THAT SWAP AGREEMENT WAS NOT A "SECURITY-BASED SWAP AGREEMENT" to be hand delivered and electronically filed using the CM/ECF system, which will send notification of such filing to the following email addresses:

Pamelachepiga@allenovery.com
Pamela Rogers Chepiga
Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020

seancoffey78@gmail.com
John Patrick Coffey
Law Office of John P. Coffey
1350 Avenue of the Americas, 2d Floor
New York, New York 10019

Attorneys for defendant Fabrice Tourre


/s/ *Matthew T. Martens*
Matthew T. Martens