UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|   |   |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : Civil Action<br>: No.: 10-cv-3229 (KBF)<br>:<br>: <u>ELECTRONICALLY FILED</u> |
| v. | : |
| FABRICE TOURRE, | : |
| Defendant. | : |

**MEMORANDUM OF LAW OF FABRICE TOURRE IN OPPOSITION TO
<u>LUCAS WESTREICH'S MOTION TO QUASH OR MODIFY THE TRIAL SUBPOENA</u>**

        Pamela Rogers Chepiga
        Andrew Rhys Davies
        Brandon D. O'Neil
        ALLEN & OVERY LLP
        1221 Avenue of the Americas
        New York, New York  10020
        (212) 610-6300

        John P. Coffey
        LAW OFFICE OF JOHN P. COFFEY
        1350 Avenue of the Americas, 2nd Floor
        New York, New York  10019
        (646) 790-8988

        *Attorneys for Fabrice Tourre*

Dated:  June 20, 2013
          New York, New York

Defendant Fabrice Tourre respectfully submits this memorandum of law, together with the supporting declaration of Pamela Rogers Chepiga ("Chepiga Decl."), in opposition to the motion of Lucas Westreich to quash or modify the trial subpoena served by Mr. Tourre on December 19, 2012.

**PRELIMINARY STATEMENT**

More than six months after accepting service of Mr. Tourre's trial subpoena (the "Subpoena"), and on the eve of a trial in which his testimony may play a pivotal role, Mr. Westreich now protests that compliance with the Subpoena would interfere with honeymoon plans purportedly made many months ago.[1] Mr. Westreich offers no explanation for his failure to raise this purported conflict when his counsel accepted service of the Subpoena last December—a subpoena that plainly identified the July 15, 2013 trial date—or at any other time in the months that followed. Indeed, Mr. Westreich's objection was not raised until after discovery of the ACA audio files and, more specifically, the January 17, 2007 call (the "January 17 Call") between Mr. Westreich and Gail Kreitman, a former employee of Goldman Sachs & Co. ("Goldman"). In light of the inexcusable delay in bringing this matter to the attention of the Court, and given how the SEC now proffers the January 17 Call as its primary evidence of Mr. Tourre's supposed wrongdoing, the motion should be denied.

As this Court is well aware, despite its review of millions of documents, thousands of ACA tapes, and dozens of investigation interview and deposition transcripts, the SEC has come to regard the January 17 Call as its foremost piece of evidence against Mr. Tourre. *See* Dkt. No. 192 at 2 (where call receives top billing on bullet point list of Mr. Tourre's supposed wrongs). Leaving aside what its reliance on a call in which Mr. Tourre does not speak

---

[1] As discussed below, although counsel for Mr. Westreich asserts that his honeymoon plans are "long-standing," *see* Mot. to Quash at 4, Mr. Westreich's supporting declaration is lacking in detail as to when his honeymoon plans were made.

and is not mentioned says about the SEC's case, Mr. Tourre is entitled to confront this evidence and Mr. Westreich, the only ACA employee to appear on the January 17 Call, is thus a critical and indispensable witness.  Although Mr. Westreich avers in a declaration that he has no "independent recollection" of the January 17 Call, Mr. Tourre is not obligated simply to accept Mr. Westreich's representations, and the jury is entitled to see for itself whether Mr. Westrich "looks like a guy who just doesn't recall or a guy who is squirming around and doesn't recall." *See* Chepiga Decl. Ex. 1 (June 14, 2013 Tr. at 73:16-18).

Nor is Mr. Westreich's relevance limited to his recollection of the January 17 Call.  Following this Court's order directing that ACA produce all relevant audio files, Mr. Tourre has already identified (and intends to use at trial) additional audio files on which Mr. Westreich appears.  Indeed, Mr. Tourre's review of the recently produced ACA audio files, of which more than 3,000 are from Mr. Westreich's recorded line at ACA, continues and will not be completed until trial.  *See* Chepiga Decl. ¶ 3.

Given Mr. Westreich's critical importance to this litigation, a videotape deposition, taken before trial and outside of the context of the SEC's presentation of its case to the jury, would be inadequate and result in unfair prejudice to Mr. Tourre.  Mr. Westreich's motion to quash the Subpoena should therefore be denied.  Moreover, any modification of the Subpoena must require that Mr. Westreich appear for testimony at trial.

## ARGUMENT

Pursuant to Rule 45(c)(3)(A)(iv), a court must grant a timely motion to quash or modify a subpoena only where the subpoena subjects a witness to "undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv).  The determination of whether a subpoena subjects a witness to "undue burden" is left to the sound discretion of the trial court and depends upon "such factors as

relevance … and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48-49 (S.D.N.Y. 1996) (citations omitted).  The burden of persuasion, however, "is borne by the movant." *Id.* at 48-49.  The party seeking relief may not merely assert that compliance would be burdensome, and "inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." *Kirschner v. Klemons*, No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005).  Here, Mr. Westreich has failed to show that any inconvenience which might result from complying with a trial subpoena that was served over six months ago, outweighs the unfair prejudice that would result to Mr. Tourre if he is unable to call Mr. Westreich as a trial witness.

    Although Mr. Westreich now asserts that compliance with the Subpoena directly interferes with honeymoon plans allegedly made months before he accepted service, counsel for Mr. Tourre expressly told Mr. Westreich's counsel that the trial was "scheduled to begin on July 15, 2013" and was "expected to last for two to three weeks." *See* Chepiga Decl. Ex. 2 (e-mail dated Dec. 11, 2012).  Counsel for Mr. Westreich subsequently accepted service of the Subpoena on December 19, 2012.  *See* Chepiga Decl. Ex. 2 (e-mail dated Dec. 19, 2012).  At no time during these exchanges did counsel for Mr. Westreich ever indicate that there was any potential conflict in Mr. Westreich's schedule or ask for any accommodation.  Indeed, Mr. Westreich's declaration in support of his pending motion is devoid of any details as to the precise date on which he made his honeymoon travel plans.  *See* Dkt. No. 325 (Westreich Decl.) at ¶¶ 4-5.  Even assuming that such plans were in fact made months before he accepted service of the Subpoena, Mr. Westreich has provided no explanation as to why he never informed counsel for Mr. Tourre of this alleged conflict until May 13, 2013, some six months after accepting service.  *See* Chepiga Decl. ¶ 2.  The explanation, however, is obvious:  Mr. Westreich's objection was filed

3

only after this Court's April 29, 2013 order denying Mr. Tourre's motion to preclude the January 17 Call, thus keeping alive (for now) the potential of the SEC's use of the January 17 Call at trial.[2]

Accordingly, even if the Court were to excuse Mr. Westreich's unexplained failure to raise this alleged conflict six months ago, his appearance as a trial witness, live, is critical. It cannot be remedied by use of videotaped testimony, which would be taken outside of the context of the SEC's presentation of its case to the jury. As this Court aptly noted, the January 17 Call is "not just any phone call" and Mr. Westreich's testimony is, therefore, "highly relevant." *See* Chepiga Decl. Ex. 1 (June 14, 2013 Tr. at 73:9-11). As to such a critical witness, live testimony is essential. Though Mr. Westreich now claims to have no "independent recollection" of the January 17 Call, the jury has the right to see for itself whether he "looks like a guy who just doesn't recall or a guy who is squirming around and doesn't recall." *See* Chepiga Decl. Ex. 1 (June 14, 2013 Tr. at 73:16-19). Moreover, Mr. Westreich, one of the custodians included in ACA's production of audio files, appears on a number of recorded calls besides the January 17 Call that Mr. Tourre intends to question him on at trial and, in fact, Mr. Tourre's review of the audio recordings produced by ACA is ongoing and likely will not be completed until the start of trial (a timing complication that further undermines the proposed videotaped deposition alternative). *See* Chepiga Decl. ¶ 3. In addition, the SEC has refused to confirm that it will not seek to introduce additional ACA audio files, other than the January 17 Call, at trial, thus raising the distinct possibility that even more calls with Mr. Westreich will be presented to

---

[2] While Mr. Tourre's motion to preclude use of the January 17 Call on grounds of discovery misconduct was denied, in the subsequent back and forth over exhibit lists and motion practice concerning the SEC's newly-unveiled "scheme" theory, the issue has arisen of whether there is an evidentiary basis for the Call to be admitted at trial.

4

the jury.  *See* Chepiga Decl. ¶ 4.  For all of these reasons, a pre-trial deposition of Mr. Westreich, taken before all of the relevant evidence has even been reviewed, is simply not a feasible option.

        Mr. Westreich's remaining assertions, that his testimony is somehow not relevant simply because Mr. Tourre did not depose him during discovery or that his testimony would be otherwise duplicative, fall flat.  Counsel for Mr. Westreich represents ACA in the separate state court litigation in which the January 17 Call was located (and handed over to the SEC); he, is well aware that the existence of ACA audio files was not disclosed to Mr. Tourre until almost two years after the close of discovery in this action.  In the absence of the audio files and based on the evidentiary record available at the time, neither counsel for Mr. Tourre nor the SEC took the depositions of either Mr. Westreich or Ms. Kreitman, the only two individuals appearing on the January 17 Call.  Nor may Mr. Westreich's testimony be deemed duplicative.  Mr. Westreich is the only ACA participant on the January 17 Call and there is no other ACA witness who can testify to his recollection of the Call and its contents.

        Finally, Mr. Westreich's demand that Mr. Tourre consent to adjourning his appearance to the week of July 29, 2013 asks too much.  Mr. Tourre is the defendant in this case, and thus has no control as to the timing of when he will begin to present his case and whether the trial will extend to a third week.  Given the SEC's reliance on the January 17 Call, Mr. Tourre simply cannot consent to such modification in advance of trial and risk not being able to present Mr. Westreich to the jury.  Thus, should the Court determine that a modification of the Subpoena is warranted, Mr. Tourre respectfully submits that any such modification must require Mr. Westreich's appearance at trial.

## CONCLUSION

For all the foregoing reasons, Fabrice Tourre respectfully requests that the Court deny Mr. Westreich's motion to quash or modify the subpoena.

Dated: June 20, 2013
      New York, New York

Respectfully submitted,

/s/ Pamela Rogers Chepiga
Pamela Rogers Chepiga
(pamela.chepiga@allenovery.com)
Andrew Rhys Davies
(andrew.rhys.davies@allenovery.com)
Brandon D. O'Neil
(brandon.o'neil@allenovery.com)

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

/s/ John P. Coffey
John P. Coffey
(seancoffey78@gmail.com)
LAW OFFICE OF JOHN P. COFFEY
1350 Avenue of the Americas, 2nd Floor
New York, New York  10019
(646) 790-8988

*Attorneys for Fabrice Tourre*