UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil Action No.: 10-cv-3229 (KBF) |
| Plaintiff, | ELECTRONICALLY FILED |
| v. |  |
| FABRICE TOURRE, |  |
| Defendant. |  |

**REPLY MEMORANDUM OF LAW OF FABRICE TOURRE IN FURTHER SUPPORT OF HIS MOTION IN LIMINE TO PRECLUDE THE SEC FROM OFFERING EVIDENCE OR ARGUMENT IN RELIANCE ON AN UNPLEADED AND LEGALLY UNSUSTAINABLE "SCHEME" THEORY OF LIABILITY**

Pamela Rogers Chepiga
Andrew Rhys Davies
Brandon D. O'Neil
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

John P. Coffey
LAW OFFICE OF JOHN P. COFFEY
1350 Avenue of the Americas, 2nd Floor
New York, New York  10019
(646) 790-8988

*Attorneys for Fabrice Tourre*

Dated:   June 24, 2013
         New York, New York


**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

ARGUMENT .............................................................................................................................2

I.   THE SEC CANNOT EXPLAIN HOW A COMPLAINT "BASED ON MATERIALLY MISLEADING STATEMENTS AND OMISSIONS" PUT MR. TOURRE ON NOTICE TO DEFEND A SCHEME CASE ................................................2

  A.   The SEC is Mute as to Its Prior Characterization of This Case as a "Misstatements and Omissions" Case. ........................................................................2

  B.   Applying the Legal Standards Ignored by the SEC, the Complaint Plainly Fails to Plead a Scheme Case. ..................................................................................3

  C.   The SEC Knows How to Plead a Scheme Case. ......................................................7

II.  THE SEC FAILS TO ADDRESS THE SUBSTANTIAL AND UNFAIR PREJUDICE TRIGGERED BY RAISING SCHEME LIABILITY ON TRIAL'S EVE ............................................................................................................................9

III. THE SEC'S PRESUMPTION REGARDING THE ADMISSIBILITY OF THE JANUARY 17 CALL IS ILL-FOUNDED ....................................................................10

**TABLE OF AUTHORITIES**

**CASES**

Affiliated Ute Citizens of Utah v. United States,
    406 U.S. 128 (1972)...................................................................................................3, 4

IBEW Local 90 v. Deutsche Bank AG, --- F. Supp. 2d --, 11 Civ. 4209, 2013 WL
    1223844 (S.D.N.Y. Mar. 27, 2013) ............................................................................4, 6

In re Parmalat Sec. Litig.,
    376 F. Supp. 2d 472 (S.D.N.Y. 2005)............................................................................3

In the Matter of Cady, Roberts & Co.,
    40 S.E.C. 907, 1961 WL 60638 (Nov. 8, 1961) ...........................................................6

McNally v. United States,
    483 U.S. 350 (1987).......................................................................................................7

Mori v. Saito,
    No. 10 Civ. 6465 (KBF), 2013 WL 1736527 (S.D.N.Y. April 19, 2013) ....................4

SEC v. Boock,
    No. 09 Civ. 8261 (DLC), 2011 WL 3792819 (S.D.N.Y. Aug. 25, 2011)....................8

SEC v. Garber,
    No. 12 Civ. 9339 (SAS), 2013 WL 1732571 (S.D.N.Y. April 22, 2013)....................3

SEC v. KPMG, LLP,
    412 F. Supp. 2d 349 (S.D.N.Y. 2006)...........................................................................3

SEC v. Kelly,
    817 F. Supp. 2d 340 (S.D.N.Y. 2011)...........................................................................3

SEC v. Obus,
    693 F.3d 276 (2d Cir. 2012)...........................................................................................6

SEC v. Stoker,
    865 F. Supp. 2d 457 (S.D.N.Y. 2012).................................................................4, 5, 6

United States v. Autuori,
    212 F.3d 105 (2d Cir. 2000)...........................................................................................7

United States v. Doherty,
    929 F.2d 425 (7th Cir. 1992) .........................................................................................6

United States v. Rybicki,
    354 F.3d 124 (2d Cir. 2003).......................................................................................................7

Defendant Fabrice Tourre respectfully submits this reply memorandum of law in further support of his motion *in limine* addressing the SEC's unpleaded scheme theory.[1]

## INTRODUCTION

In his opening memorandum, Mr. Tourre demonstrated that the SEC's eleventh-hour flight to a "scheme" theory of liability flatly contradicts the plain language of its Complaint (Tourre Mem. at 1, 3-5), is legally unsustainable (*id.* at 5-8), and would trigger substantial and inexcusable prejudice to a defendant who for three-plus years has prepared to defend what the SEC itself had explicitly described as a misstatements and omissions case (*id.* at 8-11). Mr. Tourre also explained that the SEC is attempting this eve-of-trial maneuver not to follow through on some well-pleaded and duly-probed theory of liability, but rather to conjure some basis for admission of the January 17 Call as "evidence" of Mr. Tourre's culpability. *Id.* at 11-13.

The SEC brief in opposition ("SEC. Opp.") does not even acknowledge—let alone explain away—the Complaint's explicit description of its case against Mr. Tourre as a misstatements case. *See* ECF No. 319. Mindful that the Complaint's factual allegations lack core components of a properly pleaded scheme case, the SEC invokes a strained waiver argument—faulting Mr. Tourre for not previously challenging as inadequately pleaded that which was never in fact pleaded—and sidesteps the many cases in this District that firmly reject efforts to convert misstatement allegations into scheme claims. And the SEC continues to play hide-and-seek with the fundamentals of the supposed scheme—in particular its nature, scope and membership—further aggravating the enormous prejudice this tactic would inflict if tolerated.

---

[1] Defined terms in this memorandum shall have the same meaning as in Mr. Tourre's opening memorandum, ECF No. 296 ("Tourre Mem."). Submitted simultaneously herewith is the June 24, 2013 Declaration of John P. Coffey ("Coffey Reply Decl.").

**ARGUMENT**

I. **THE SEC CANNOT EXPLAIN HOW A COMPLAINT "BASED ON MATERIALLY MISLEADING STATEMENTS AND OMISSIONS" PUT MR. TOURRE ON NOTICE TO DEFEND A SCHEME CASE**

   A. **The SEC is Mute as to Its Prior Characterization of This Case as a "Misstatements and Omissions" Case.**

The very first sentence of the Complaint declares that this is a case "based on materially misleading statements and omissions" in connection with the AC1 transaction. Complaint ¶1. Nowhere in its opposition does the SEC explain why Mr. Tourre should have interpreted that explicit description of its liability theory to mean something other than what the words say.

Ignoring its own pronouncement entirely, the SEC blames Mr. Tourre for not realizing that he had been sued on a scheme theory as well as a misstatements theory because, after all, the statutory text in the legal claims in paragraphs 76 and 80 that follow the factual allegations includes the word "scheme." But fraud cases, and securities fraud cases in particular, do not proceed on the basis of "notice pleading" (even if this could somehow be construed as such), where boilerplate could later be invoked to implicate a landscape of potential liability far broader than that framed by the specific factual allegations of a complaint.[2]

Mr. Tourre had posited that the SEC might acknowledge its failure to plead a scheme and seek leave to amend the Complaint (Tourre Mem. at 10-11), but the SEC has opted instead to "double-down" and insist, stridently, that it had indeed intended to sue Mr. Tourre on a scheme theory from the very beginning. SEC Opp. at 7-11. The SEC doth protest too much, for the best evidence on that score rests on what facts are, and are not, alleged in the Complaint itself.

---

[2] With the June 13, 2013 filing of the SEC's opposition to this motion, a month before trial, Mr. Tourre received the first confirmation that the SEC would extend its scheme theory to its Section 10(b) claim. *See* Tourre Mem. n.2 (noting that SEC's summary judgement reply brief had unveiled new scheme theory only as to Section 17(a) claim, and stating that Mr. Tourre's arguments on this motion would also apply to the Section 10(b) claim should the SEC eventually seek to recast that claim as well).

The SEC stocked the Complaint with abundant allegations relevant to the only fraud theory on which its claims were explicitly "based": a misstatements theory.  *See* Tourre Mem. at 3-4 (recitation of Complaint's pervasive references to purported misstatements, misrepresentations, and omissions).  The Complaint's seventy-three paragraphs of factual allegations do not describe a scheme, or even mention the word "scheme".  No deceptive or manipulative device is identified.  No co-schemers are identified.

Until the filing of the SEC's summary judgment reply brief, the absence of such allegations was unremarkable, given that the SEC had so prominently declared that its case was "based on materially misleading statements and omissions." Complaint ¶1.  But as the SEC now struggles to stretch the allegations it did plead to cover a different legal theory now more to its liking, that absence is critical and, as discussed below, dispositive.

### B. Applying the Legal Standards Ignored by the SEC, the Complaint Plainly Fails to Plead a Scheme Case.

In his opening brief, Mr. Tourre cited several opinions by judges in this District who rejected attempts to press a scheme liability claim without alleging a deceptive act distinct from the alleged misstatements.  Tourre Mem. at 5-7, 12-13 (citing *SEC v. Kelly*, 817 F. Supp. 2d 340, 344, 346 (S.D.N.Y. 2011) (McMahon, J.); *SEC v. KPMG, LLP,* 412 F. Supp. 2d 349, 377 (S.D.N.Y. 2006) (Cote, J.); *In re Parmalat Sec. Litig.,* 376 F. Supp. 2d 472, 503 (S.D.N.Y. 2005) (Kaplan, J.); *cf. SEC v. Garber*, No. 12 Civ. 9339 (SAS), 2013 WL 1732571 (S.D.N.Y. April 22, 2013) (Scheindlin, J.) (sustaining scheme claim that pleaded deceptive acts)).  In a tacit concession that its Complaint cannot pass muster under this test, the SEC does not address *any* of these cases by name.  Rather, it disparages them as a group in an opaque footnote that would have the Court conclude that (a) Judges Cote, Kaplan, McMahon and Scheindlin somehow reached their conclusions in defiance of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S.

3

128 (1972), and the text of Section 17(a) and Rule 10b-5; and (b) the statutory differences between misstatement and scheme are mere surplusage because, in the SEC's world, allegations sufficient to plead the former are all that is needed to plead the latter. SEC. Opp. n.3.[3]

Sidestepping the aforementioned cases, the SEC defends its "actionable scheme" theory by citing two other cases in this District: Judge Rakoff's decision to allow the SEC to proceed on a scheme theory in *SEC v. Stoker*, 865 F. Supp. 2d 457, 459 (S.D.N.Y. 2012), and this Court's decision in *IBEW Local 90 v. Deutsche Bank AG,* --- F. Supp. 2d ----, No. 11 Civ. 4209 (KBF), 2013 WL 1223844 (S.D.N.Y. Mar. 27, 2013). SEC. Opp. at 8-11.

The Court is of course familiar with the complaint in *Local 90* and thus can readily decide whether, as the SEC contends, the "only" deceptive acts alleged in that case were misstatements. SEC. Opp. at 10 (citing to *6 of opinion). *Contrast* Tourre Mem. at 6-7 (noting Court had found scheme laid out "with specificity" and described, at *3-5 of opinion, allegations distinct from mere misstatements). As the Court observed in *Local 90,* that complaint "stated clearly and prominently" that defendants had "engaged in a scheme". 2013 WL 1223844, at *2. There is no presence—let alone clarity or prominence—of such allegations here.[4]

The SEC's reliance on *Stoker* backfires. As a threshold matter, Judge Rakoff is among the ranks of S.D.N.Y. judges who require the SEC to allege "a deceptive scheme or course of conduct that went beyond the misrepresentations." *Stoker*, 865 F. Supp. 2d at 467. Indeed, Judge Rakoff instructed the *Stoker* jury that to prevail on its Section 17(a)(3) claim:

---

[3] The SEC's reliance on *Affiliated Ute* is misplaced. The Supreme Court's description of the fraud as "involving *primarily* a failure to disclose" of course confirms (as does the Court's discussion of the defendants' conduct) that the case involved additional conduct beyond that mere non-disclosure. 406 U.S. at 152-53.

[4] The SEC does not address, let alone distinguish, Mr. Tourre's reliance on this Court's opinion in *Mori v. Saito*, No. 10 Civ. 6465 (KBF), 2013 WL 1736527 (S.D.N.Y. April 19, 2013), which sustained a scheme claim based in part on false bank accounts, sham corporate books and the like. *See* Tourre Mem. at 5-6.

> the SEC must prove, by a preponderance of the evidence, that Mr. Stoker engaged in deceptive conduct that went beyond the use of material misrepresentations or material omissions that were part of the claim under Section 17(a)(2). Those misrepresentations or omissions can form part of that course of conduct, but they cannot be the entirety of that course of conduct. Specifically, you must find that Mr. Stoker took additional steps that helped to deceive or defraud investors ….

Jury Instructions in *SEC v. Stoker*, Case No. 11 Civ. 07388 (JSR) (S.D.N.Y. July 31, 2012), at 15 (excerpt attached as Ex. 1 to Coffey Reply. Decl.).[5]

The notion that the scheme the SEC would allege against Mr. Tourre "is not meaningfully distinguishable from that in *Stoker*" (SEC Opp. at 2-3) is specious. In *Stoker*, Citigroup structured a CDO (to be precise, a part cash, part synthetic or "hybrid" CDO squared) "so that it could take a short position on those assets." *See* SEC Opp. at 2. According to the complaint, Citigroup intended to take a "naked short" position on assets in the CDO – "in other words to buy protection on those CDOs for its own account – without an offsetting long trade with a customer." *Stoker*, 865 F. Supp. 2d at 459. And Citigroup had in fact shorted those assets by about $500 million when notes were sold to investors. *See* SEC Opp. at 2, 8-10. Here, Goldman created AC1 not as a "prop" trade for its own account but as a neutral market maker between institutional investors looking to wager on their opposing views of the subprime housing market. One other key distinction: just weeks after the AC1 notes had been sold, Goldman took a significant *long* position on the AC1 portfolio, to the tune of about $100 million. The SEC will have to square that last inconvenient fact with its "designed to fail" narrative at trial, but for purposes of this motion the fact that Goldman was "long" AC1 extinguishes any attempt to equate *Stoker* and the present case. Thus, even if one were to assume that Judge

---

[5] The SEC relied extensively on the *Stoker* jury instructions in the proposed jury charge that it emailed to defense counsel on June 21, 2013, s*ee* Coffey Reply Decl., Ex. 2, at 16, 17, 21, 23, 25-28, 31, 32, 34, but did not include the portion of Judge Rakoff's instructions quoted above. The SEC's proposed jury charge also relied on Judge Gardephe's instructions from *SEC v. Reserve Management Co., Inc., see* Coffey Reply Decl., Ex. 2, at 16, 25, 32, but omitted similar language from those instructions as well. S*ee id.,* Ex. 3 (excerpt from Judge Gardephe's instructions in *Reserve Management*).

Rakoff's decision to allow a scheme claim to proceed in *Stoker* was correct (and given the absence of scheme allegations in that complaint, Mr. Tourre respectfully submits that it was not), the factual allegations here are fundamentally different from what was alleged in *Stoker*.

As shown above, neither *Stoker* nor *Local 90* provides sufficient tissue to paper over the utter absence of scheme allegations in the Complaint. Nor do the other cases relied on by the SEC support the proposition that a misstatement or omission can provide the sole basis for a scheme liability claim.

The SEC quotes an SEC administrative decision in *In the Matter of Cady, Roberts & Co.*, 40 S.E.C. 907, 1961 WL 60638, at *4 (Nov. 8, 1961), which stated, "[t]hus, a breach of duty of disclosure may be viewed as a device or scheme, an implied misrepresentation, and an act or practice, violative of all three subdivisions" of Section 17 and Rule 10b-5.[6] That 50-year old decision must be viewed in the context of a securities broker's "breach of duty of disclosure", which was not a misleading statement or omission, but instead the failure to disclose inside information concerning an issuer's upcoming dividend cut prior to executing sell orders for the broker's client accounts. *Id*. at *2 (broker tipped about dividend cut by director of issuer). The SEC fares no better with its citations to cases arising under the mail, wire and bank fraud statutes. For example, the SEC cites *United States v. Doherty*, 929 F.2d 425, 429 (7th Cir. 1992), for the proposition that a "scheme to defraud" covers a "broad range of conduct," some of which involve misrepresentations and others which do not. *Id*. Indeed, *Doherty* held that a course of conduct not involving any factual misrepresentation can be prosecuted under the bank fraud statute. *Id*. (relying on "settled judicial interpretation" of "scheme to defraud" under mail and

---

[6] The SEC notes that *Cady, Roberts* has been cited by the Second Circuit with approval. *See* SEC Opp. n.2. However, the Second Circuit did not cite *Cady, Roberts* for the SEC's interpretation of Section 17 and Rule 10b-5, but rather for the unremarkable conclusion that insider trading violates Section 10(b). *See SEC v. Obus*, 693 F.3d 276, 284 (2d Cir. 2012).

6

wire fraud statutes). Mr. Tourre agrees that a "scheme to defraud" does not always require a misrepresentation; this only supports his argument that some other act separate and distinct from a misrepresentation is required to impose scheme liability. And while the SEC cites to *United States v. Rybicki*, 354 F.3d 124, 146 n.20 (2d Cir. 2003), and *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000), for the opposite proposition—that a scheme to defraud in fact requires a material misrepresentation—those cases also support Mr. Tourre's argument that scheme liability depends on conduct beyond an underlying misrepresentation or omission.[7]

It is illustrative of the inability of the SEC to fit the Complaint's square factual allegations into the round scheme hole that its block quote from the Complaint is anchored by the phrase "but failed to disclose to investors". SEC Opp. at 10. As the foregoing analysis confirms, this case is what the SEC said it was at the outset: a misstatements and omissions case.

### C. The SEC Knows How to Plead a Scheme Case.

No defendant should be forced to speculate as to whether the SEC means what it says when it explicitly describes the basis for its claims in the very first sentence of its pleading. The SEC routinely files securities fraud complaints in this District and elsewhere, and knows how to plead a scheme case if it wants to do so.

Attached as Exhibits 4 through 7 to the Coffey Reply Declaration are four complaints, filed in this District, in which the SEC pleaded scheme liability. There is no mystery, no ambiguity, no mincing of words about what theory of liability the SEC presented to the defendant(s) in these cases. *See SEC v. Garber*, 12 Civ. 9339 (Coffey Reply Decl. Ex. 4), ¶ 3

---

[7] In *Autuori*, for example, the Second Circuit explained that the "mail and wire fraud statutes do not define 'scheme to defraud,' but it has been described as a plan to deprive a person 'of something of value by trick, deceit, chicane or overreaching.'" 212 F.3d at 115 (quoting *McNally v. United States*, 483 U.S. 350, 358 (1987)). Indeed, any reasonable interpretation of the term "scheme" must include some sort of plan separate and distinct from the underlying deception. In *Autuori*, the Court described a combination of conduct beyond the underlying misrepresentations that allowed it to find that there was sufficient evidence of a scheme to defraud. *Id.* This conduct included misleading marketing efforts by the defendants, the destruction of PPM rescission letters, recommendations that the issuer get another auditor, and bribery of unions in exchange for investments. *Id.*

("to effectuate their scheme"); *SEC v. Pentagon Capital Mgmt. PLC*, 08 CV 03324 (Coffey Reply Decl. Ex. 5), ¶1 ("orchestrated a scheme"); *SEC v. Bennett*, 08 CV 1631 (Coffey Reply Decl. Ex. 6), ¶1 ("core of this fraud was a scheme that periodically concealed hundreds of millions of dollars owed to Refco"); *SEC v. Simpson Capital Mgmt., Inc.*, 07 CV 6072 (Coffey Reply Decl. Ex. 7), ¶1 ("conducted a fraudulent scheme involving unlawful 'late trading' in shares of mutual funds"). Each complaint lays out a course of conduct that goes beyond simply misstatements and omissions. *See, e.g., Garber* (Coffey Reply Decl. Ex. 4) ¶4 (created virtual corporate presences in several states), ¶39 (improperly obtained exemptions from registrations), ¶46 (purported Delaware presence was sham), ¶¶59-64 (deposited stock certificates into falsely named accounts).

The complaint for another SEC case filed in this District, *SEC v. Boock*, No. 09 Civ. 8261 (DLC), 2011 WL 3792819 (S.D.N.Y. Aug. 25, 2011), is attached as Exhibit 1 to the Coffey Declaration filed with Mr. Tourre's opening brief. *See* Tourre Mem. at 7 (*Boock* explicitly alleges scheme in detail). The SEC had relied on *Boock* in its summary judgment reply (ECF No. 253, SEC SJM Reply at 5), but its brief on this motion includes no rejoinder to Mr. Tourre's analysis.

As demonstrated by the sample scheme complaints, and by the cases examining scheme complaints, the Complaint filed against Mr. Tourre does not provide the notice or particularity to which a defendant is entitled—and which the SEC can provide when it deems it appropriate. In the face of this authority the SEC contends that Mr. Tourre has waived highlighting the Complaint's pleading deficiencies because he should have raised them at the motion to dismiss or summary judgment phases of this case. SEC. Opp. at 1-2. According to the SEC, Mr. Tourre's argument that the Complaint contains no factual basis to put him on notice that he was

to defend a scheme case must be rejected because Mr. Tourre never challenged that which was never asserted in the first place. That circular logic is unavailing and should be rejected.

## II.  THE SEC FAILS TO ADDRESS THE SUBSTANTIAL AND UNFAIR PREJUDICE TRIGGERED BY RAISING SCHEME LIABILITY ON TRIAL'S EVE

In his opening brief, Mr. Tourre described the substantial unfair prejudice that would be inflicted should the SEC's abrupt pivot to a scheme theory be accommodated so close to trial. Tourre Mem. at 8-11 (describing how strategic decisions were made, discovery objectives pursued, and expert reports written based on SEC's description of case as "based on materially misleading statements and omissions"). The SEC gives short shrift to the indisputable prejudice, offering a survey of discovery that in its mind was sufficient for trial on both theories—as if to say that counsel's vigorous efforts to defend its client by land should be deemed sufficient to deal with a surprise assault by sea. Remarkably, the SEC even speculates that counsel may have chosen "for strategic reasons" not to have taken discovery on the scheme theory. SEC Opp. at 13.

While amusing under other circumstances, the SEC's response is noteworthy for what it does not say. The SEC responds to none of questions posed on pages 9-10 of Mr. Tourre's opening brief. For example, the SEC still has not identified the other members of the supposed scheme, nor does it deny that a Rule 12(e) request would have disgorged those names from the SEC. The SEC's opposition does suggest that it would include Paolo Pellegrini of Paulson &Co. as a member of the supposed scheme. SEC. Opp. at 5. Pellegrini thus joins David Gerst, whom the SEC recently branded a "co-conspirator" in a *limine* motion, as the only two co-schemers the SEC has ever identified. The fact that such partial "disclosure" has taken place in the context of *limine* motions just weeks from trial further underscores the absurdity and prejudice of the SEC's gambit on scheme liability.

### III. THE SEC'S PRESUMPTION REGARDING THE ADMISSIBILITY OF THE JANUARY 17 CALL IS ILL-FOUNDED

Mr. Tourre explained in his opening memorandum that the SEC's eleventh-hour shift to a new legal theory is all about getting the January 17, 2007 Call in front of the jury. Tourre Mem. at 11-13. The SEC disputes that connection, in essence asking the Court to accept that it was happenstance that the scheme theory was unveiled only after Mr. Tourre's summary judgment papers put the admissibility of that call in jeopardy.

For the reasons set forth above and in Mr. Tourre's opening memorandum, the January 17 Call cannot be admitted in reliance on an unpleaded, legally unsustainable and highly prejudicial "scheme" theory. As to whether the call may be admissible on other grounds, the SEC overreaches. Mr. Tourre's motion to preclude use of the ACA tapes on grounds of discovery misconduct was denied, thus denying the defense the "red light" it believes is justified by the SEC's inexcusable discovery failures. But that does not equate to a "green light" for admission of the call. This is not the place for that debate but where, as here, each participant to the call has indicated his or her inability to link the substance of that communication to anyone else, there are myriad evidentiary hurdles that must be overcome before that call could conceivably be admitted as "evidence" against Mr. Tourre. Again, perhaps the best evidence that this analysis is not a "figment of the defense imagination" (SEC Opp. at 13) is the timing of the SEC's resort to scheme liability.

### CONCLUSION

For all the reasons set forth above and in his opening memorandum, Fabrice Tourre respectfully requests that the Court preclude the SEC from referencing, eliciting, or introducing into evidence at trial arguments or evidence offered in reliance on a theory that Mr. Tourre participated in a "scheme" to defraud.

Dated: June 24, 2013
       New York, New York

Respectfully submitted,

*/s/* Pamela Rogers Chepiga

Pamela Rogers Chepiga
(pamela.chepiga@allenovery.com)
Andrew Rhys Davies
(andrew.rhys.davies@allenovery.com)
Brandon D. O'Neil
(brandon.o'neil@allenovery.com)

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300


*/s/ John P. Coffey*

John P. Coffey
(seancoffey78@gmail.com)

LAW OFFICE OF JOHN P. COFFEY
1350 Avenue of the Americas, 2nd Floor
New York, New York  10019
(646) 790-8988

*Attorneys for Fabrice Tourre*