UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                  :
SECURITIES AND EXCHANGE         :
COMMISSION,                                   :

                           Plaintiff,         :

          -v-                                    :

FABRICE TOURRE,                  :

                          Defendant.     :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 2 6 2013

10 Civ. 3229 (KBF)

<u>MEMORANDUM & ORDER</u>

KATHERINE B. FORREST, District Judge:

       This matter is scheduled for trial on July 15, 2013. This has been a hard date since the Court set it on October 11, 2012. From the beginning of this action, the role of ACA has been central to the SEC's claims. Now before the Court are two motions to quash trial subpoenas issued by defendant Fabrice Tourre to two former ACA employees — Lucas Westreich and Keith Gorman. Westreich's counsel accepted service of the trial subpoena on December 11, 2012, and Gorman was served on November 19, 2012. Counsel acting for both individuals filed the instant motions to quash on June 14 and June 17, 2013, respectively. (ECF Nos. 321, 331.) Tourre opposed these motions on June 20, 2013. (ECF Nos. 350, 352.)

       ACA plays a significant role in the facts of this case. Central to the SEC's claims is the contention that ACA did not know certain facts relating to the role of Paulson & Co. in the ABACUS 2007-AC1 transaction.

       There was significant motion practice in March and April of 2013 relating to the production of an audio recording of a telephone call between a Goldman Sachs &

1

Co. employee and ACA employees. The SEC featured one such audio recording — what the parties and Court refer to as the "January 17 Call" — as the centerpiece of its motion for summary judgment. The SEC has expressed an intention to seek to introduce that call at trial.

Westreich was a participant on the January 17 Call. He has submitted a declaration in support of his motion to quash this subpoena in which he states that he has no independent recollection of the call. Of the additional audio recordings from ACA, 3,347 of them are from Westreich's line at ACA. Given the late receipt of these recordings, Tourre's process of reviewing and identifying those that he may seek to introduce at trial is ongoing. This is understandable under the circumstances. Westreich argues that Tourre never sought to take his deposition in this matter and that he could do so now in lieu of trial testimony. Of course, the January 17 Call and the other ACA telephone calls only came to light after the close of fact discovery. All discovery relating thereto and arising therefrom has been by order of this Court. Westreich also notes that he has honeymoon scheduled for the same time as the trial in this matter.

Since receiving the subpoena, Gorman (a U.S. citizen) has taken an assignment in London. He has not set forth any reason other than the distance between London and New York and the normal inconveniences of appearing at a trial, as to why he could not appear. Gorman has been deposed, but at the time of his deposition, it was anticipated that he would be available for trial. Of the ACA

recordings that Tourre's counsel is reviewing at present, 1700 are from Gorman's line at ACA.

Westreich

The Court is sympathetic to the personal issue confronting Westreich with respect to his honeymoon. However, Tourre issued his trial subpoena well in advance of trial, and this is far from a last minute surprise. While inconvenient to those plans, if Tourre persists in his desire to call Westreich, the Court will enforce the subpoena compelling him to attend the trial. Westreich's role in the January 17 Call is simply too important not to allow Tourre to test Westreich's credibility in front of the jury. Westreich's testimony may be short, but duration is not the issue.

It is also not predictable which day he will be called; that depends on the parties' trial strategy. The Court will not now require that Westreich be called on a particular day or time. As trial approaches, that type of accommodation may be possible, but the Court cannot offer such an accommodation at this point in time.

Gorman

It is not yet clear that Tourre will ultimately need to or want to call Gorman at trial. The SEC may be of assistance in making this determination once it reveals to Tourre the recordings and other exhibits it will seek to introduce at trial.

Gorman was a player in the events here at issue and was duly served with a trial subpoena in the United States. The Court believes that his voluntary attendance would be preferable — rather than raising his refusal to appear

voluntarily as a potential issue at trial.[1] Gorman, of course, is entitled to pursue his rights as he sees fit.

Gorman argues that the subpoena should be quashed in part because he was already deposed in this matter. But the prior deposition does not resolve the issue. First, depositions are always a second choice to live trial testimony before a jury. Second, the deposition was not a trial deposition when Gorman was known to be unavailable. The parties may have chosen to conduct the deposition differently had they believed Gorman would be unavailable for trial. Third, the deposition occurred prior to the audio recordings of ACA becoming an issue in this case. He has not been examined on the recordings currently under review.

Given Gorman's role at ACA and ACA's role in the core events in this lawsuit, his attendance at trial is in the interests of justice. As set forth above, his prior depositions do not encompass the areas he may be needed to address — due to the timing of his departure and when the audio-recording issue arose. Accordingly, the factors for issuance of a subpoena pursuant to 28 U.S.C. § 1783 have been met.

Conclusion

For the foregoing reasons, Lucas Westreich and Keith Gorman's motions to quash their subpoenas are DENIED. If, after discussing this order with Westreich and Gorman, Tourre believes an addition order of the Court is necessary to ensure the attendance of those witnesses at trial, he should make any motion or propose any order as he believes appropriate.

---

[1] The Court leaves for another day the question whether Tourre would be permitted to raise during cross examination Gorman's potential failure to appear at trial voluntarily.

4

The Clerk of Court is directed to terminate the motions at ECF Nos. 321 and 331.

SO ORDERED.

Dated:   New York, New York
         June 26, 2013

                                            KATHERINE B. FORREST
                                            United States District Judge