UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK _____ x

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : |
| Plaintiff, | : Civil Action : No.: 10-cv-3229 (KBF) : |
| v. | : ELECTRONICALLY FILED : : |
| FABRICE TOURRE, | : : |
| Defendant. | : : : |

_____ x

**CONSOLIDATED MEMORANDUM OF LAW OF FABRICE TOURRE IN
OPPOSITION TO THE SEC'S AND LAURA SCHWARTZ'S MOTIONS
TO QUASH RULE 45 SUBPOENAS**

Pamela Rogers Chepiga
Andrew Rhys Davies
Brandon D. O'Neil
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

John P. Coffey
LAW OFFICE OF JOHN P. COFFEY
1350 Avenue of the Americas, 2nd Floor
New York, New York  10019
(646) 790-8988

*Attorneys for Fabrice Tourre*

Dated:   July 1, 2013
         New York, New York

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...............................................................................................................3

I.   TO ENSURE THE JURY CAN MEANINGFULLY ASSESS WHAT CREDIT
     TO GIVE TO SCHWARTZ'S TESTIMONY, MR. TOURRE MUST BE
     PERMITTED TO EXAMINE THE EXISTENCE AND EXTENT OF THE
     SEC'S LEVERAGE OVER HER FUTURE .........................................................3

     A.   Mr. Tourre Must Be Permitted to Explore Schwartz's Potential Bias as a
          Witness Threatened with Potentially Ruinous Litigation by the Same Party
          that Will Put Her on the Stand ...................................................................3

     B.   Access to the Wells Materials Is Essential for Effective Cross-
          Examination of Schwartz's Bias ................................................................6

II.  THE SEC'S REFLEXIVE INVOCATION OF LAW ENFORCEMENT
     PRIVILEGE FAILS AND IN ANY EVENT MUST YIELD TO MR. TOURRE'S
     SUBSTANTIAL NEED FOR THE BIAS MATERIALS ...................................12

III. MOVANTS' PROCEDURAL ARGUMENTS DISTORT THE RECORD AND
     PROVIDE NO BASIS TO IMPEDE MR. TOURRE'S ABILITY TO CONDUCT
     A FAIR CROSS-EXAMINATION AS TO BIAS.............................................15

     A.   Pertinent Procedural Record ...................................................................15

     B.   There Is No Genuine Procedural Obstacle to the Production of the Bias
          Materials to Mr. Tourre............................................................................18

CONCLUSION..........................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Abdell v. City of N.Y.*,
    No. 05 Civ. 8453 (KMK) (JCF), 2006 WL 2664313 (S.D.N.Y. Sept. 14, 2006) .................... 15

*Burns v. Bank of Am.*,
    No. 03 Civ. 1685(RMB)(JCF), 2007 WL 1589437 (S.D.N.Y. June 4, 2007) ......................... 19

*Colon v. Cole Bros. Circus*,
    Nos. 04-CV-3606 (JFB)(JO), 2007 U.S. Dist. LEXIS 1403 (E.D.N.Y. Jan. 8, 2007) ............ 19

*Crowe v. Bolduc*,
    334 F.3d 124 (1st Cir. 2003) ...................................................................................................... 9

*Davis v. Alaska*,
    415 U.S. 308 (1974) ................................................................................................................ 1, 4

*Dodson v. CBS Broadcasting Inc.*,
    No. 02 Civ. 9270(KMW)(AJP), 2005 WL 3177723 (S.D.N.Y. Nov. 29, 2005) .................... 19

*EEOC v. Smokin' Joe's Tobacco Shop*,
    Civil Action No. 06-1758, 2007 WL 3287429 (E.D. Pa. Nov. 27, 2007) ............................... 10

*Eng v. Blood*,
    9:04-CV-1146, 2008 U.S. Dist. LEXIS 54802 (N.D.N.Y. July 17, 2008) .............................. 19

*Hatcher v. Precoat Metals*,
    271 F.R.D. 674 (N.D. Ala. 2010) ............................................................................................ 19

*Haus v. City of N.Y.*,
    No. 03 Civ. 4915 (RWS) (MHD), 2004 WL 3019762 (S.D.N.Y. Dec. 29, 2004) .................. 13

*In re City of N.Y.*,
    607 F.3d 923 (2d Cir. 2010) ...................................................................................... 12, 13, 14

*In re Dep't of Investigation of the City of N.Y.*,
    856 F.2d 481 (2d Cir. 1988) .................................................................................................... 13

*Joseph P. Carroll Ltd. v. Baker*,
    No. 09 Civ. 3174(SHS), 2012 WL 1232957 (S.D.N.Y. April 12, 2012) .................................. 19

*Justice v. Hoke*,
    90 F.3d 43 (2d Cir. 1996) .......................................................................................................... 8

*Mortg. Info. Servs. Inc. v. Kitchens*,
    210 F.R.D. 562 (W.D.N.C. 2002) ........................................................................................... 19

*Pasternak v. Kim*,
    No. 10 Civ. 5045(LTS)(JLC), 2013 WL 1729564 (S.D.N.Y. Apr. 22, 2013) ......................... 19

*People v. Hudy*,
    73 N.Y.2d 40 (1988) ...................................................................................................... 8

*Pitter v. Am. Express Co.*,
    No. 82 Civ. 7451-CSH, 1984 WL 1272 (S.D.N.Y. Nov. 27, 1984) ......................................... 20

*Price v. Thurmer*,
    514 F.3d 729 (7th Cir. 2008) ............................................................................................ 11

*Puritan Inv. Corp. v. ASLL Corp.*,
    No. Civ. A. 97-1580, 1997 WL 793569 (E.D. Pa. Dec. 9, 1997) ............................................ 19

*Revander v. Denman*,
    No. 00 Civ. 1810(RJH), 2004 WL 97693 (S.D.N.Y. Jan. 21, 2004) ....................................... 19

*SEC v. Chakrapani*,
    No. 09 Civ. 325 (RJS), 2010 WL 2605819 (S.D.N.Y. June 29, 2010) ............................ 12, 14

*SEC v. Vitesse Semiconductor Corp.*,
    771 F. Supp. 2d 310 (S.D.N.Y. 2011) ................................................................................. 14

*Surles v. Air France*,
    No. 00CIV5004RMBFM, 2001 WL 815522, (S.D.N.Y. July 19, 2001) ................................... 10

*United States v. Abel*,
    469 U.S. 45 (1984) ..................................................................................................... 4, 10

*United States v. Blackwood*,
    456 F.2d 526 (2d Cir. 1972) .............................................................................................. 8

*United States v. Blanco*,
    861 F.2d 773 (2d Cir. 1988) ............................................................................................. 11

*United States v. Brooke*,
    4 F.3d 1480 (9th Cir. 1983) .............................................................................................. 10

*United States v. Singh*,
    628 F.2d 758 (2d Cir. 1980) ............................................................................................. 11

*Zdanok v. Gliddon Co.*,
    327 F.2d 944 (2d Cir. 1964) ............................................................................................. 18

*Zhao v. City of N.Y.*,
    No. 07 Civ. 3636 (LAK) (MHD), 2007 WL 4358470 (S.D.N.Y. Dec. 5, 2007) ...................... 13

**Statutes**

15 U.S.C. § 78d-5(a)(1) ..................................................................... 3

**Regulations**

17 C.F.R. § 202.5(b) ........................................................................ 6

**Rules**

Fed. R. Civ. P. 26(c)(1)(G) ............................................................. 14

**Treatises**

3A J. Wigmore *Evidence* § 940 (Chadbourn rev. 1970) .................. 1

Wright & Miller, 27 Fed. Prac. & Proc. Evid. (2d ed.) § 6095 .............................................. 9, 11

**Other Authorities**

T. Mauet, *Trial Techniques and Trials* (9th ed. 2013) .................... 1

W.R. McLucas, et al., "A Practitioner's Guide to the SEC's Investigative and Enforcement Process," 70 Temple L. Rev. 53 (1997) ..................................................... 15

Defendant Fabrice Tourre respectfully submits this consolidated memorandum of law in opposition to the SEC's and Laura Schwartz's motions to quash the trial subpoenas ("Subpoenas") seeking production of eight documents relating to the SEC's potential litigation against the primary witness the SEC will call in its case against Mr. Tourre.

## PRELIMINARY STATEMENT

This Court recently observed that "[f]rom the beginning of this action, the role of ACA has been central to the SEC's claims." ECF No. 361 (Weistrich and Gorman Appearance Order) at 1. Laura Schwartz has in turn been central to the role of ACA, and whether and to what extent the jury credits her testimony later this month may well determine the outcome of this trial. No fair assessment of her testimony can be had, however, if the jury is kept ignorant of the fact that this witness will testify in support of the SEC's case while, at the same time, she knows that the very same government agency is contemplating whether to file a ruinous enforcement action against her. The prospect that Schwartz may color her testimony to curry favor with the SEC and to bolster her defense in her own case is neither speculative nor collateral. This presents a manifest case of potential bias, interest and motive.

It is axiomatic that Mr. Tourre should be permitted to cross-examine Schwartz about her potential bias. *See, e.g., Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'") (quoting 3A J. Wigmore *Evidence* § 940, at 775 (Chadbourn rev. 1970)); T. Mauet, *Trial Techniques and Trials*, at 200 ("The category of bias, interest, and motive, though not mentioned specifically by the FRE, is well recognized and may always be raised on cross-examination.") (9th ed. 2013). Of course, the opportunity to cross-examine a witness about potential bias is of limited value if the party against whom the witness testifies is denied the ability to *fairly* cross-examine the witness. In this instance, that means Mr.

Tourre's counsel must have access to, at a minimum, the handful of subpoenaed documents that relate directly to the litigation the SEC has threatened against this witness (the "Bias Materials").

The movants' principal argument for quashing the Subpoenas rests on the rank fiction that the issue of whether Mr. Tourre may cross-examine Ms. Schwartz as to bias has already been squarely presented to the Court.  As noted by defense counsel at the June 10 conference and discussed more fully in Point III below, the Court did not have the benefit of a response from Mr. Tourre squarely addressing either the propriety of probing bias or timeliness; the SEC had conceded those matters before defense counsel's May 21 letter (which accordingly addressed only the law enforcement privilege) but later, when Mr. Tourre had no reply opportunity, reversed itself on those concessions.  Nor did Mr. Tourre have the opportunity to address the SEC's response to the questions posed by the Court (ECF No. 289) or the May 24 letter from Schwartz's counsel (ECF No. 366-6 (Alperstein Decl. Ex. F)).  Far from executing an "end run" that "flout[s]" the Court's June 4 Order (ECF No. 363 (SEC Mem. of Law in Support of Mot. to Quash ("SEC Br.")) at 2), Mr. Tourre appropriately alerted the Court to the reasons why issue on this critical question had not been fully joined, and has set about to "bring on the issue" in accordance with the Court's instructions.  ECF 366-9 (June 10, 2013 Hr'g Tr. (Alperstein Decl. Ex. I)) at 42; *see also id.* at 39 ("I understand the bias point.").

Mindful that the Court asked for "as much particularity as you're willing to go into on the kinds of questions you want to ask her on this topic" (*id.* at 39), Mr. Tourre attaches as Exhibit 1 to the July 1, 2013 Declaration of John P. Coffey ("Coffey Decl.") submitted herewith a list of proposed lines of inquiry ("Bias Topics") exploring Schwartz's potential bias. Probing these areas is entirely appropriate, indeed necessary, if the jury is to assess meaningfully whether Schwartz's testimony has been influenced by the enormous leverage the SEC has

2

maneuvered to place over her until after she testifies at this trial.  And because the true extent of

that leverage and its concomitant impact on Schwartz's testimony can only be illuminated if Mr.

Tourre has access to the Bias Materials, the motions should be denied.

**ARGUMENT**

I.     **TO ENSURE THE JURY CAN MEANINGFULLY ASSESS
       WHAT CREDIT TO GIVE TO SCHWARTZ'S TESTIMONY,
       MR. TOURRE MUST BE PERMITTED TO EXAMINE THE
       EXISTENCE AND EXTENT OF THE SEC'S LEVERAGE OVER
       HER FUTURE**

        A.     **Mr. Tourre Must Be Permitted to Explore Schwartz's
              Potential Bias as a Witness Threatened with Potentially
              Ruinous Litigation by the Same Party that Will Put Her on the
              Stand**

        One of the central factual disputes the jury will have to resolve is whether to

believe Schwartz's prospective testimony that Mr. Tourre fooled her into believing that the

Paulson & Co. hedge fund ("Paulson") was purchasing the equity in the ABACUS 2007-AC1

CDO ("AC1") and thus had its interests aligned with long AC1 investors.  The SEC will elicit

that testimony from a witness fully aware that the same government agency calling her to testify

is considering, or even intent on, bringing charges against her relating to another CDO

transaction in which ACA served as reference portfolio selection agent.[1]  Pursuant to 15 U.S.C. §

78d-5(a)(1), the SEC has until August 12, 2013—coincidentally or not, just days after Schwartz

testifies at this trial—to decide whether to charge Schwartz, a decision that would trigger

undoubtedly severe consequences for her.  Under these circumstances, Schwartz has at least two

motives to shade her testimony at the Tourre trial: *first*, to curry favor with the SEC as that

---

[1]     As the SEC notes (SEC Br. n.1), a Wells notice may state either that the Enforcement
Division "intends" to recommend an action or is merely "considering" doing so.  Given its effort
to downplay the seriousness of its investigation of Schwartz here (*see, e.g., id.* at 6 (Wells notice
"not even an allegation of misconduct")), if the less serious of those two options had been
declared in the February 15, 2013 Wells notice the SEC presumably would have said so in its
motion papers.

3

deadline approaches, and *second*, to say what she needs to say to bolster the defense of her own case.

Though careful not to say so expressly, Schwartz effectively acknowledges that Mr. Tourre may inquire about her potential bias; she just wants his ability to prepare for that cross-examination to be limited to "the publicly available U-4 that Tourre already has."  ECF No. 365 (Schwartz Mem. of Law in Support of Mot. to Quash ("Schwartz Br.")) at 12-13.  In contrast—and in direct contradiction of the position it took when the parties discussed this matter on a May 16, 2013 conference call—the SEC says flatly that any inquiry into even the *fact* that a Wells notice has been issued to Schwartz must be forbidden.  SEC Br. at 6-7.  Counsel for Mr. Tourre explained at the June 10 conference that access to certain materials was necessary to assess whether what the SEC had over this witness's head was the Sword of Damocles or a penknife (ECF No. 366-9 (June 10, 2013 Hearing Tr.) at 41); in its zeal to hide not only the magnitude of the leverage but also its very existence, the SEC extends the Court a reckless invitation for reversible error.

The Supreme Court has held that impeachment evidence offered to show a witness's bias is *per se* relevant because "[a] successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would without such testimony." *United States v. Abel*, 469 U.S. 45, 51 (1984); *see also id.* at 52 ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess *all* evidence which might bear on the accuracy and truth of a witness' testimony.") (emphasis added); *Davis v. Alaska*, 415 U.S. at 316 (partiality of witness always relevant to weight of testimony).  The Court is of course familiar from its criminal docket with the unremarkable proposition that potential charges which

the government may or may not bring against a prosecution witness are fair game for cross-examination as to bias.  In a civil case where, as here, the plaintiff is a government regulator with the power to offer inducements or punishments comparable to those wielded by a prosecutor, the opportunity to elicit testimony about witness bias and credibility is likewise of paramount importance.

The SEC's absolutist stand here is not only foolhardy, it is starkly at odds with the view it previously expressed to the Court in the course of this very same pre-trial period.  In asserting that it should be permitted to lead all Goldman witnesses during their direct examination, the SEC argued that

> testimony elicited by the SEC in this matter could become an admission by a party opponent in the two pending cases against GS&Co, and *that risk provides the witness a* **motive** *to guard against* and minimize any suggestions contained in questions posed by the SEC.

ECF No. 277 (SEC Mem. of Law in Support of Mot. to Lead) at 10 (emphasis added).

Appearing in court after that motion had been filed but not yet decided, counsel for the SEC raised the issue again, noting:

> There is also going to be issues as we see in our Rule 611 motion about alignment of interests and how the party, *what* **interest** *parties might have when they're testifying*.  In fact, there is ongoing litigation against Goldman and *whether witnesses might have any* **bias** as a result of that.

ECF No. 366-9 (June 10, 2013 Hr'g Tr.) at 25-26 (emphasis added).

Here of course, the motive, interest and bias of the witness in question is much more acute.  Unlike employees whose testimony might be imputed to their employer as a party opponent, Laura Schwartz would of course *be* the party opponent.  Accordingly, Mr. Tourre must be permitted wide latitude to explore this potential bias.

**B.**     **Access to the Wells Materials Is Essential for Effective Cross-Examination of Schwartz's Bias**

Experienced trial lawyers understand the difference between a "blind" cross-examination and a cross-examination conducted with the benefit of pertinent documents.  In light of the centrality of Schwartz's role in this case, Mr. Tourre's counsel must have access to the Bias Materials so they can prepare and execute a reasonable cross-examination of this witness.

The fact that Schwartz has been given a Wells notice is a helpful starting point for the inquiry into bias, but it is far from adequate.  The Bias Materials are vital to assessing the extent of that bias.  The Wells notice will identify the potential charges that the SEC contemplates filing against Schwartz, *see* 17 C.F.R. § 202.5(b), which would in turn reveal the size and scope of the potential penalties.  Schwartz's Wells and white paper submissions will help assess how serious Schwartz considers the charges to be, and will likely describe the negative ramifications for Schwartz should an enforcement action be brought.  Together, those documents will reveal the magnitude of the SEC's leverage and thus Schwartz's incentive both to favor the SEC in her testimony and craft her testimony to bolster her own defense.  *See* Coffey Decl. Ex. 1, Bias Topic 1.  Schwartz's submissions will also reveal whether she has cited her cooperation in this action as a mitigating circumstance to be weighed in her favor.  *See* Bias Topic 2.

Given the passage of time since the events that are the subject of the SEC's investigations of ACA and Schwartz, Mr. Tourre believes that a tolling agreement between the SEC and Schwartz must exist.  The circumstances of that tolling agreement, and the related (and curious) timing of a Wells notice raising a threat that will not expire until shortly after Schwartz testifies, are both fair grist for cross.  *See* Bias Topic 1(c)-(d).

In light of the regulatory void as to how synthetic CDO reference portfolio selection should have been described in offering materials, Mr. Tourre's defense will rely on proving up market practice in the 2006-07 period.  When Mr. Tourre put to Schwartz at her deposition questions to help develop the record regarding CDO market practice, she displayed a chronic lack of familiarity and/or recollection, notwithstanding her years presiding over billions of dollars of CDO creation as head of that business at ACA.  Mr. Tourre believes that Schwartz's investigative testimony, taken when it was her conduct that was under scrutiny, will describe the relevant market practice more fulsomely.  The Bias Materials are expected to demonstrate that during the period in which ACA was creating the AC1 reference portfolio (and deciding to purchase AC1 notes and sell protection on the super-senior tranche of the AC1 portfolio), Schwartz not only was well-aware of, but participated in, the market practice of involving short investors in portfolio selection.  Such evidence would directly contradict Schwartz's testimony that she had no such knowledge or participation, and thereby impeach her credibility with respect not only to such practices, but with respect to all other subjects of her testimony.  Schwartz's contention that the relevance of the Bias Materials is speculative is frivolous, and not supported by the cases she cites in which broad categories of documents were sought in fishing expeditions; here, it cannot be gainsaid that the Bias Materials will disclose relevant and crucial information about the nature and extent of Schwartz's potential liability.  *See* Bias Topic 3.

As noted above, the SEC would prohibit any inquiry whatsoever into the issue of Schwartz's bias, let alone an inquiry aided by the Bias Materials.  SEC Br. *passim* (characterizing impeachment evidence as "irrelevant").  But impeachment evidence is different, and should not be viewed through the lens of whether it tends to prove or disprove an element of a claim or defense.  *Justice v. Hoke*, 90 F.3d 43, 48 (2d Cir. 1996) ("'[E]xtrinsic proof tending to

establish a reason to fabricate is never collateral and may not be excluded on that ground.'")
(quoting *People v. Hudy*, 73 N.Y.2d 40, 56 (1988)); *see also United States v. Blackwood*, 456
F.2d 526, 530 (2d Cir. 1972) (evidence "of bias or motive to falsify . . . . is never collateral").
Instead, "the determinative question in deciding whether extrinsic evidence contradicting a
witness' testimony is admissible is not whether the contradicting extrinsic evidence is material or
collateral, but whether the assertion that the impeaching party seeks to contradict is itself
material or collateral." *Justice*, 90 F.3d at 48.  As Schwartz is the SEC's key witness, there can
be no doubt that evidence tending to impeach her credibility is material under this test.

   Schwartz does not go so far as to say impeachment is irrelevant, but rather
contends that there is no basis for impeachment because the Wells notice was issued in 2013
and"[n]o reason exists to believe that Ms. Schwartz will deviate from two rounds of sworn
testimony and a sworn declaration" given before 2013.  ECF No. 366-6 (May 24, 2013 Schwartz
Letter to Court), at 3.  This argument is unavailing for several reasons.

   First, there is indisputable evidence that the investigation into ACA's CDO
business *pre-dated* Schwartz's testimony in this case.  *See* ECF No. 289 (SEC response to
Court's questions) (materials date to 2008)); ECF No. 363-1 (SEC privilege log, attached to Rule
45 subpoena of SEC ("SEC Log") (SEC Br. Ex. 1)) (investigative testimony taken in December
2008).  The lawyers representing ACA in that investigation are the same lawyers who
represented Schwartz when she gave testimony in this case.  *See* Coffey Decl. Ex. 2 (Apr. 12,
2011 Schwartz Depo. Tr.) 3:3-8 (Schwartz represented by K. Groskaufmanis); Coffey Decl. Ex.
3 (Oct. 8, 2008 letter from K. Groskaufmanis to SEC re: recorded calls).  The assertion that
Schwartz was somehow ignorant of the SEC probe of ACA (and in particular, the division of
ACA's business that she had recently led) when she gave testimony in this case is not credible.

Second, there is no guarantee Schwartz will tell the same story on the stand as she did in her prior testimony in this case (or in the investigative testimony in her own matter, which Mr. Tourre will never see if the motions to quash are granted). It is one thing to impeach with prior testimony (as Schwartz suggests be Mr. Tourre's sole recourse (Schwartz Br. at 12)), but that often leaves the jury weighing whether to credit the earlier testimony or the current testimony. It is another thing entirely to be able to show *why* a witness has changed her story. The opportunity to impeach by showing a direct contradiction in prior testimony is often not adequate to impeach a witness who may be biased because "even the words a witness chooses to employ can be influenced by bias," Wright & Miller, 27 Fed. Prac. & Proc. Evid. (2d ed.) § 6095, yet an attempt to impeach on the basis of a change in word choice is unlikely to be effective on its own. The tools of impeachment are not limited to use of prior inconsistent statements, not when the specter of bias, interest and motive is as salient as it is here.

Third, denying Mr. Tourre access to materials relevant to Schwartz's motives and credibility on the basis that there is no reason to disbelieve her testimony now is circular and improper. "It is error to exclude evidence of bias on the ground that the witness seems trustworthy to the court." *Id.* (citing *Crowe v. Bolduc*, 334 F.3d 124, 132-33 (1st Cir. 2003) (reversing district court's exclusion of evidence of testifying attorney's contingency arrangement on basis that attorney was officer of the court)). To the extent the SEC wants to argue (in spite of the record) that Schwartz had no motive to shade her testimony in this matter because of the timing of her various statements, it may make that argument to the jury.

The SEC and Schwartz also argue that the Bias Materials should be kept hidden on the basis of conclusory allegations that their contents will invade Schwartz's privacy or prejudice the jury. SEC Br. at 5-6; Schwartz Br. at 13-14. Movants overreach. Schwartz relies

9

on cases in which the materials sought related to private, personal characteristics in transparent attempts to incite jury prejudice on an irrelevant basis. *See Surles v. Air France*, No. 00CIV5004RMBFM, 2001 WL 815522, at *3-5 (S.D.N.Y. July 19, 2001) (sexual orientation); *EEOC v. Smokin' Joe's Tobacco Shop*, Civil Action No. 06-1758, 2007 WL 3287429, at *2 (E.D. Pa. Nov. 27, 2007) (suicide attempts and domestic violence). Here, Schwartz has already publicly disclosed the existence of the Wells notice, and concedes in her motion to quash that Mr. Tourre is entitled to question her about it. Schwartz Br. at 12.

Indeed, access to the Bias Materials will actually ameliorate, not aggravate, concerns of harassment and embarrassment. Rather than shooting in the dark at what might or might not be the conduct and potential penalties at issue, defense counsel would be constrained (and would welcome such constraint) to posing questions tied in good faith to the substance in the Bias Materials. The SEC and Schwartz offer no reason why any potentially unfair prejudice, invasion of privacy or confusion could not be prevented by limiting the scope of questioning and giving appropriate limiting instructions. *See Abel*, 469 U.S. at 54-55 (disclosure of witness's membership in prison gang not unduly prejudicial as confined by court's direction that name of gang not be given and delivery of limiting instruction about purpose of testimony); *cf. United States v. Brooks*, 4 F.3d 1480, 1489 (9th Cir. 1983) ("Federal jurors, who are expected to follow the complex testimony and even more intricate instructions that are presented in many of our criminal cases, such as multiple conspiracy prosecutions, are unlikely to be confounded by a defendant's inquiry into the bias and credibility of a key government witness.").

Only with access to these materials can Mr. Tourre's counsel fairly prepare to explore the Bias Topics. This is even more imperative given Schwartz's chronic lack of recall during her deposition; Mr. Tourre must be armed with the particulars to "jog her memory" and

deny this witness the refuge of blanket disclaimers of memory.  The Court must not foreclose access to the materials that would help show the jury the extent of Schwartz's bias.  *See United States v. Blanco*, 861 F.2d 773, 781 (2d Cir. 1988) ("A trial judge abuses his discretion in curtailing cross-examination of a government witness when the curtailment denies the jury 'sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government.'") (quoting *United States v. Singh*, 628 F.2d 758, 763 (2d Cir. 1980)).[2]

Provided he can fairly explore the Bias Topics through his cross-examination of Schwartz, Mr. Tourre does not presently intend to offer any of the Bias Materials as evidence at trial.  For example, he likely would not need to introduce the Wells notice into evidence unless Schwartz denied its existence.  As noted above, Mr. Tourre intends to elicit testimony that the Wells notice relates to potential charges by the SEC against Schwartz arising out of other CDO transactions, without getting into irrelevant details of those transactions or the conduct potentially giving rises to the charges.  Mr. Tourre would not object to the Court instructing the jury that the evidence is relevant only to Schwartz's motivation to testify in a way favoring the SEC and exonerating her conduct, and not to show that she is in fact guilty of any wrongdoing.  Such a presentation of the evidence would overcome the SEC's conclusory assertions of

---

[2]     The SEC's discussion (ECF No. 363, at 6-7) of an undisclosed fraud indictment in *Price v. Thurmer*, 514 F.3d 729 (7th Cir. 2008), is inapposite.  When a pending or potential indictment is offered to show the witness's motive to assist the prosecution (or exonerate her own conduct) and thereby gain lenient treatment in her own case, a conviction is not required.  *See* Wright & Miller, 27 Fed. Prac. & Proc. Evid. (2d ed.) § 6095 ("Evidence of pending charges against a prosecution witness is not excludable on the grounds that it fails to satisfy the requirement of Rule 609 that the witness was convicted.  Since the impeachment is based on showing bias rather than criminal character, admissibility is controlled by Rule 607 and not Rule 609.").

11

prejudice and confusion while preserving Mr. Tourre's significant interest in presenting the jury

with important evidence bearing on a key witness's credibility.

## II.     THE SEC'S REFLEXIVE INVOCATION OF LAW
ENFORCEMENT PRIVILEGE FAILS AND IN ANY EVENT MUST
YIELD TO MR. TOURRE'S SUBSTANTIAL NEED FOR THE
BIAS MATERIALS

      As a threshold matter, Schwartz has no standing to assert the law enforcement

privilege and cannot resist production of the Bias Materials on that basis. *See* SEC Br. at 2.  And

even the SEC concedes that the tolling agreement sought by the Subpoenas is not covered by its

assertion of privilege.  *Id.* at n.3.  Accordingly, all documents called for by the Subpoenas, and in

particular the tolling agreement, should be produced.

      Moreover, the SEC has not carried its burden of demonstrating that the law

enforcement privilege applies to documents here, particularly with their use limited by the

constraints Mr. Tourre has offered to observe.  *See SEC v. Chakrapani*, No. 09 Civ. 325 (RJS),

2010 WL 2605819, at *6 (S.D.N.Y. June 29, 2010) ("'[T]he party asserting the law enforcement

privilege bears the burden of showing that the privilege applies to the documents in question.'")

(quoting *In re City of N.Y.*, 607 F.3d 923, 944 (2d Cir. 2010)).  Despite the SEC's broad rhetoric

about the importance of protecting ongoing law enforcement efforts generally (SEC Br. at 4-6),

the Court will recall that the *sole* basis previously cited for the privilege was the privacy prong of

the *City of New York*  test.[3]  ECF No. 366-8 (May 24, 2013 SEC letter (Alperstein Decl. Ex. G))

at 2-3 (claiming that "disclosure of the requested materials would disrupt the investigation by

---

[3]    The law enforcement privilege may be available when the documents at issue contain
"information pertaining to 'law enforcement techniques and procedures,' information that would
undermine 'the confidentiality of sources,' information that would endanger 'witness and law
enforcement personnel [or] the privacy of individuals involved in an investigation,' [or]
information that would 'otherwise . . . interfere[ ] with an investigation.'"  *City of N.Y.*, 607 F.3d
at 944 (alterations in original) (quoting *In re Dep't of Investigation of the City of N.Y.*, 856 F.2d
481, 484 (2d Cir. 1988)).

endangering the privacy interests of the witnesses and parties"). The SEC does not explain why, in this case, the disclosure of a Wells notice that it is public knowledge Schwartz received and documents and testimony she has supplied to the SEC would implicate the concerns that law enforcement privilege is intended to protect. Such a general assertion of the privilege, without a showing of likely harm, is insufficient. *See, e.g.*, *Zhao v. City of N.Y.*, No. 07 Civ. 3636 (LAK) (MHD), 2007 WL 4358470, at *3 (S.D.N.Y. Dec. 5, 2007) ("[D]efendants must make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted, and they may not rely simply on generalized reiterations of the policies underlying the privilege.") (internal quotation omitted); *Haus v. City of N.Y.*, No. 03 Civ. 4915 (RWS) (MHD), 2004 WL 3019762, at *4 (S.D.N.Y. Dec. 29, 2004) (concluding that defendants' "collection of generalizations fails to justify invocation of the privilege in light of the type of information actually withheld"), *aff'd*, No. 03 Civ. 4915, 2005 WL 1021173 (S.D.N.Y. Apr. 28, 2005).

The Court must also cast a skeptical eye to the "formal" invocation of law enforcement privilege over materials in the investigation of Schwartz. SEC Br. at 5 & Ex. 2. That blessing was bestowed over seven years after the events in question, five years after the investigation had begun, two-plus years after service of a discovery request that the SEC later conceded called for the materials, but only days after Mr. Tourre brought this matter to the Court's attention. Given the utter lack of particularity in the SEC's submission, Mr. Tourre respectfully submits that the only "ongoing Commission enforcement efforts" (SEC Br. Ex. 2 ¶ 5) the SEC is concerned might be interfered with by further disclosure regarding its leverage over Schwartz is the Tourre matter.

The SEC simply ducks the issue of why this matter could not be resolved through reasonable limits on the disclosure of the information, such as confining it to attorney's eyes only, redacting the names of persons as to whom the investigation is not public knowledge and requiring court approval before use as evidence at trial. *See Chakrapani*, 2010 WL 2605819, at *6 ("Neither the government nor the SEC has met its burden in establishing that the requested documents, *in their redacted form*, are protected by the law-enforcement privilege. . . . As for . . . potential informants or cooperators, their names can be redacted out of the documents.") (emphasis in original); *City of N.Y.*, 607 F.3d at 949 ("In an effort to minimize the effects of disclosure . . . the district court may order that the documents be 'revealed only in a specified way' . . . . [and] may wish to consider making the documents available only on an 'attorneys' eyes only basis' . . . .") (quoting Fed. R. Civ. P. 26(c)(1)(G)).  The SEC also has not offered to provide the documents to the Court, even though determinations of whether the qualified law enforcement privilege applies typically involve *in camera* review of the documents over which the privilege is asserted.  *See City of N.Y.*, 607 F.3d at 948 ("To assess both the applicability of the privilege and the need for the documents, the district court must ordinarily review the documents in question.").  The reasonable inference is that the SEC's professed concerns would not be validated by the Court's review.

Mr. Tourre's compelling need for the information, and inability to obtain it in any other way, in any event outweighs any potential privilege. *See id.* at 945.  As shown above, evidence of the bias of a witness, particularly a key witness, is of crucial importance at trial. *See, e.g.*, *SEC v. Vitesse Semiconductor Corp.*, 771 F. Supp. 2d 310, 314 (S.D.N.Y. 2011) (without requested document, "defendants' ability to impeach witnesses at trial may be severely compromised"); *Abdell v. City of N.Y.*, No. 05 Civ. 8453 (KMK) (JCF), 2006 WL 2664313, at

*6-7 (S.D.N.Y. Sept. 14, 2006) (previous statements as recorded by lawyers were needed for impeachment purposes).  The SEC itself acknowledges the importance of Wells submissions and related materials for impeachment purposes.  *See* W.R. McLucas, et al., "A Practitioner's Guide to the SEC's Investigative and Enforcement Process," 70 Temple L. Rev. 53, 115 (1997) ("The Division of Enforcement's long-standing position is that Wells Submissions . . . may be used as evidence in subsequent proceedings for impeachment or corroborative purposes or as admissions by a party opponent.")  (authors are the SEC's then-Director of the Division of Enforcement and two Senior Counsels in the Division of Enforcement).

Under these circumstances, Mr. Tourre's need for the handful of documents sought by the Subpoenas significantly outweighs the SEC's non-particularized claim of law enforcement privilege.

### III.    MOVANTS' PROCEDURAL ARGUMENTS DISTORT THE RECORD AND PROVIDE NO BASIS TO IMPEDE MR. TOURRE'S ABILITY TO CONDUCT A FAIR CROSS-EXAMINATION AS TO BIAS

Synthesizing their procedural arguments most succinctly, the SEC and Schwartz contend that because Mr. Tourre did not obtain during a discovery period that ended in January 2011 documents that were not created until 2012 and 2013, he is without recourse and forbidden to seek those recently created materials through a Rule 45 trial subpoena.  In addition to being ridiculous on its face, the argument rests on the fallacy that the Court's June 4 Order, issued in what the SEC and Schwartz had framed as a discovery dispute, had the benefit of full briefing on this matter.  As shown below, that was not the case.

#### A.    Pertinent Procedural Record

On November 15, 2012, over twenty months after the close of document discovery, the SEC informed Mr. Tourre that it was in possession of thousands of ACA

recordings, which it had obtained in the course of a previously undisclosed SEC investigation

regarding certain ACA CDO transactions.  ECF No. 366-4 (Nov. 15 & 16, 2012 emails between

M. Martens and counsel for Mr. Tourre (Alperstein Decl. Ex. D)) at 1-2.  In addition to seeking

immediate production of those tapes, Mr. Tourre's counsel sought "all transcripts of testimony,

notes of witness interviews, Wells or pre-Wells notices and White Papers and Wells

submissions" in that investigation which related to anyone either deposed in Mr. Tourre's case or

identified on Rule 26(a) initial disclosures, "specifically including Laura Schwartz."  *Id.* at 1.

On January 3, 2013, Mr. Tourre's counsel again requested the production of investigative

materials "relating to any ACA-related investigations, with respect to any of the witnesses who

have been deposed in  this litigation and all individuals identified in either party's Rule 26(a)

initial disclosures."  Coffey Decl. Ex. 4 (Jan. 3, 2013 email from Mr. Tourre's counsel to M.

Martens)

       The parties conferred  telephonically on February 21, 2013, and at Mr. Tourre's

request, and in recognition that the documents the SEC sought to withhold were responsive to Mr.

Tourre's timely served document requests, the SEC produced in February 2013 a privilege log of

certain materials the SEC declined to produce on the basis of investigative privilege.  *See* SEC

Log.

       The SEC Log identified for the first time the existence of the following

documents involving a "Person B," whom Mr. Tourre believes (and neither the SEC nor Ms.

Schwartz disputes) is Laura Schwartz:

- transcript of January 4, 2012 investigative testimony;

- transcript of June 7, 2012 investigative testimony;

- July 3, 2012 white paper presented to the SEC;

16

- **transcript of December 21, 2012 investigative testimony**;

- **December 21, 2012 letter from counsel to the SEC**;

- **December 21, 2012 white paper presented to the SEC**;

- **February 15, 2013 Wells notice**;

- **March 22, 2013 letter from counsel to the SEC**; and

- **March 22, 2013 Wells submission**.

SEC Log at 1-2, 4 & 7-9 (bolded items did not exist at the time of Mr. Tourre's November 16, 2012 request for investigative materials). As noted above, Mr. Tourre believes that the SEC also has recently entered into a tolling agreement with Schwartz because the statute of limitations otherwise would have expired on the 2006 and 2007 events of the CDO transaction that is the subject of the investigation, but no tolling agreement of any date is recorded in the privilege log.

On February 21, 2013, the parties conducted a telephonic meet and confer, during the course of which counsel for the SEC refused to produce the documents, citing law enforcement privilege.

At no point during this period did the SEC assert that Mr. Tourre's request for these documents was untimely, nor could it, as after Mr. Tourre's November 16, 2012 request, Schwartz gave investigative testimony on December 21, 2012, submitted a white paper on December 21, 2012, received a Wells notice on February 15, 2013 and made a Wells submission on March 22, 2013. Nor did the SEC at this time assert that these documents were not called for by the defense document requests. Request 8 of Mr. Tourre's Third Request to Plaintiff for Production Of Documents ("Document Request #8") sought:

> All documents concerning any transaction in which ACA, IKB or ABN was involved, either as an investor or a portfolio advisor, portfolio manager, portfolio selection agent, investment advisor or in a similar role, and in which any person,

> including but not limited to Magnetar, took or intended to take a short position
> regardless of whether they were also taking a long position.

Coffey Decl. Ex. 5 (Document Request #8).  In its response to the Court's questions (ECF 289 at

3), the SEC grudgingly acknowledges that Document Request #8 "[a]rguably" covered the

materials at issue at the time, and the SEC had of course produced a privilege log to explain its

resistance to production of materials response to that request and further had referred Mr. Tourre

to its objections covering that request.  ECF 289 at 2 (response to question 3).

### B.   There Is No Genuine Procedural Obstacle to the Production of the Bias Materials to Mr. Tourre

Mr. Tourre's attempts to obtain these documents have been timely and reasonable,

but he could not foresee that the SEC would reverse course shortly before trial, deny all access to

materials it had assured Mr. Tourre would be forthcoming and, in a submission that (as with the

Schwartz letter) Mr. Tourre had no opportunity to counter before the Court ruled, take the

position that the entire subject of the SEC's investigation of Schwartz was off-limits and

untimely raised.  Under these circumstances, where the Court previously ruled on a broad request

to compel the production of all documents related to a particular subject and did so on the basis

of arguments that Mr. Tourre had been led to believe were non-issues and thus not addressed, the

rationale of law of the case doctrine—"where litigants have once battled for the court's decision,

they should neither be required, nor without good reason permitted, to battle for it again"—is

inapplicable.  *Zdanok v. Gliddon Co.*, 327 F.2d 944, 953 (2d Cir. 1964) (quoted in Schwartz Br.

at 5) (considering challenge to contract interpretation resolved in prior appeal).  Tourre promptly

raised the issue with the Court and has proceeded precisely in accordance with the Court's

guidance.

The propriety of serving a trial subpoena to request a handful of documents for

the purposes of trial preparation and impeachment of a key witness is confirmed by the very

cases cited by the SEC and Schwartz.  In each case, the court held that a Rule 45 subpoena was inappropriate because it sought a wide range of documents and, in most cases, was returnable to counsel, not the court, prior to the trial date; those courts also distinguished such use from proper use of trial subpoenas where, as here, the subpoenas sought specific documents "for cross-examination and impeachment only."  *Pasternak v. Kim*, No. 10 Civ. 5045(LTS)(JLC), 2013 WL 1729564, at *3 & n. 5 (S.D.N.Y. Apr. 22, 2013) (quoting *Joseph P. Carroll Ltd. v. Baker*, No. 09 Civ. 3174(SHS), 2012 WL 1232957, at *2 (S.D.N.Y. April 12, 2012)); *see also Hatcher v. Precoat Metals*, 271 F.R.D. 674, 676 (N.D. Ala. 2010); *Eng v. Blood*, 9:04-CV-1146, 2008 U.S. Dist. LEXIS 54802, at *28 (N.D.N.Y. July 17, 2008); *Colon v. Cole Bros. Circus*, Nos. 04-CV-3606 (JFB)(JO), 2007 U.S. Dist. LEXIS 1403, at *4 (E.D.N.Y. Jan. 8, 2007); *Burns v. Bank of Am.*, No. 03 Civ. 1685(RMB)(JCF), 2007 WL 1589437, at *13-14 (S.D.N.Y. June 4, 2007); *Dodson v. CBS Broadcasting Inc.*, No. 02 Civ. 9270(KMW)(AJP), 2005 WL 3177723, at *1-2 (S.D.N.Y. Nov. 29, 2005); *Revander v. Denman*, No. 00 Civ. 1810(RJH), 2004 WL 97693, at *2-3 (S.D.N.Y. Jan. 21, 2004); *Mortg. Info. Servs. Inc. v. Kitchens*, 210 F.R.D. 562, 567 (W.D.N.C. 2002) (noting that "situations may arise in which a subpoena duces tecum may not constitute discovery, and therefore may properly be filed and served following the close of discovery" and quoting from *Puritan Inv. Corp. v. ASLL Corp.*, No. Civ. A. 97-1580, 1997 WL 793569, at *1 (E.D. Pa. Dec. 9, 1997), for the proposition that "[t]rial subpoenas may be used to secure documents at trial for the purpose of memory refreshment or trial preparation or to ensure the availability at trial of original documents previously disclosed by discovery") (brackets in original); *Pitter v. Am. Express Co.*, No. 82 Civ. 7451-CSH, 1984 WL 1272, at *6 (S.D.N.Y. Nov. 27, 1984).  Schwartz's mischaracterization of Mr. Tourre's request for eight specific

19

documents as a "shot-gun subpoena" (Schwartz Br. at 8) is belied by comparing this limited request with those made in the cases she cites.

       None of these cases addresses documents and evidence that could not have been produced in the course of discovery because they did not then exist, and Schwartz admits "that a court has discretion to allow a litigant to seek impeachment materials by trial subpoena where those materials could not have been secured before the close of fact discovery."  Schwartz Br. at n.6.  Tourre could not have obtained the Bias Materials before the close of fact discovery when they were not created until afterward and indeed the existence of the investigation itself was not revealed to Tourre until November 2012, whereupon he promptly requested the materials from the SEC.

       Mr. Tourre respectfully submits that the record now reflects the fully presented arguments on both sides of this important matter.  Where, as here, validly served Rule 45 subpoenas seek production of a discrete handful of documents critical to fair cross-examination of the SEC's key witness at trial, the motions to quash the subpoenas should be denied.

<u>**CONCLUSION**</u>

For all the foregoing reasons, Fabrice Tourre respectfully requests that this Court deny the SEC's and Laura Schwartz's motions, permit him to obtain evidence relating to the Wells notice issued to Schwartz and permit him to inquire about the Wells notice during Schwartz's cross-examination.

Dated: July 1, 2013
      New York, New York

Respectfully submitted,

/s/ Pamela Rogers Chepiga
Pamela Rogers Chepiga
(pamela.chepiga@allenovery.com)
Andrew Rhys Davies
(andrew.rhys.davies@allenovery.com)
Brandon D. O'Neil
(brandon.o'neil@allenovery.com)

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

/s/ John P. Coffey
John P. Coffey
(seancoffey78@gmail.com)

LAW OFFICE OF JOHN P. COFFEY
1350 Avenue of the Americas, 2nd Floor
New York, New York  10019
(646) 790-8988

*Attorneys for Fabrice Tourre*

21