UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SECURITIES AND EXCHANGE
COMMISSION,                                   :
                              Plaintiff,   :
     - against -                             :
FABRICE TOURRE,                             :
                            Defendant.   :
------------------------------------------------------------X

Civil Action No. 10 Civ. 3229 (KBF)

ECF Case


**REPLY MEMORANDUM OF LAURA SCHWARTZ IN FURTHER SUPPORT OF HER MOTION FOR A PROTECTIVE ORDER AND TO QUASH OR MODIFY THE SUBPOENA SERVED UPON HER BY DEFENDANT FABRICE TOURRE**

Robin L. Alperstein
Jesse T. Conan
BECKER, GLYNN, MUFFLY, CHASSIN
& HOSINSKI LLP
299 Park Avenue
New York, NY 10171
212-888-3033

*Attorneys for Laura Schwartz*

BECKER, GLYNN, MUFFLY, CHASSIN AND HOSINSKI LLP
299 PARK AVENUE
NEW YORK, NEW YORK 10171
(212) 888-3033

Non-party Laura Schwartz submits this reply memorandum of law in further support of her motion for a protective order pursuant to Rule 26(c) and to quash or modify the subpoena served upon her by defendant Fabrice Tourre ("Tourre") pursuant to Rule 45(c)(3).[1]

### PRELIMINARY STATEMENT

On June 27, 2013, Ms. Schwartz received a termination letter from the staff of the New York Regional Office (the "New York Staff") of the Securities and Exchange Commission ("SEC" or "Commission"), notifying her that "[t]his investigation has been completed as to Laura Schwartz, against whom we do not intend to recommend any enforcement action by the Commission."[2] The New York Staff's decision not to recommend an enforcement action against Ms. Schwartz forecloses Tourre's principal argument—wrongheaded in any event—that the threat of a potential enforcement action could cause Ms. Schwartz to "shade" her testimony at trial in order to "curry favor" with the SEC in "her own case." *See* Tourre Opp. at 3-4. Because there is no enforcement action pending against Ms. Schwartz, Tourre's speculative claims of potential bias on her part are moot.[3]

Ms. Schwartz's motion to quash and for a protective order should be granted for the reasons below and those set forth in her opening memorandum of law ("Prin. Br.").

---

[1] This motion is supported by the Declaration of Robin L. Alperstein, dated July 3, 2013 ("Alp. Decl."). Citations to the "Tourre Opp." refer to Tourre's opposition memorandum of law, dated July 1, 2013. Citations to the "Coffey Decl." refer to the Declaration of John P. Coffey, dated July 1, 2013.

[2] Ms. Schwartz's current employer filed an amended U-4, disclosing this fact, on June 28, 2013. *See* Alperstein Decl. ¶ 3 and Ex. 2.

[3] Capitalized terms have the same definitions provided in Ms. Schwartz's opening memorandum of law.

## ARGUMENT

I. **THE WELLS MATERIALS ARE NOT DISCOVERABLE TO SHOW BIAS IN LIGHT OF THE NEW YORK STAFF'S DECISION NOT TO RECOMMEND ANY ENFORCEMENT ACTION AGAINST MS. SCHWARTZ**

   A. **The SEC's Termination Of The Unrelated Investigation As To Ms. Schwartz Renders The Wells Materials Irrelevant**

Tourre's supplemental trial subpoena for documents seeks Wells Materials that concern an unrelated SEC investigation (the "Unrelated Investigation"), initiated by the SEC's New York Staff, which came to involve Ms. Schwartz in October 2011. *See* Alp. Decl. ¶ 6. At the time Tourre served the subpoena, the Unrelated Investigation was still pending. However, on June 27, 2013, the SEC's New York Staff notified Ms. Schwartz, through a letter to her counsel (the "Termination Letter"), that "[t]his investigation has been completed as to Laura Schwartz, against whom we do not intend to recommend any enforcement action by the Commission." [4] Alp. Decl., Ex. 1.

The decision by the SEC's New York Staff not to recommend bringing an enforcement action against Ms. Schwartz forecloses and moots the arguments that Tourre offers in his attempt to convince the Court that the Wells Materials are relevant and should be produced for impeachment purposes. Tourre's primary argument in favor of production is his unfounded concern that Ms. Schwartz might attempt to "curry favor" with the SEC in this action because of her status as a "witness threatened" by a potential SEC litigation arising out of the Unrelated Investigation. *See* Tourre Opp. at 3; *see also* Coffey Decl., Ex. 1. Indeed, each of the purported arguments Tourre offers in support of Ms. Schwartz's alleged "bias" is founded on the putative existence of a pending investigation that presented an alleged risk for Ms. Schwartz. *See* Coffey

---

[4] Ms. Schwartz's employer amended her U-4 the following day; a broker check search now indicates that Ms. Schwartz is not currently the subject of any disclosure events, which include: "certain criminal matters; regulatory actions; civil judicial proceedings; customer complaints, arbitrations, or civil litigations; employment terminations; and financial matters in which the broker has been involved." *See* Alp.Decl.¶ 3 and Ex. 2.

Decl., Ex. 1; *see* Tourre Opp. at 3-11.  Now that the SEC's New York Staff has completed its investigation as to Ms. Schwartz without recommending that the Commission initiate an enforcement action against her, Tourre's claimed basis for "bias, interest and motive" (Tourre Opp. at 1) no longer exists.[5]  There is no pending investigation, no potential for litigation in which Ms. Schwartz could conceivably "curry favor" and no motive for her to "shade" her testimony.  The potential lines of inquiry about which Tourre seeks to cross-examine her at trial, and for which he purportedly seeks the Wells Materials, are similarly moot.

> **B.  Other Factors, Such As The Timing Of The Two Investigations And Absence Of Any Cooperation Agreement Between Ms. Schwartz And The SEC, Further Confirm The Correctness Of The Court's June 4, 2013 Order Denying Production Of The Wells Materials**

As this Court has already correctly found, Tourre's putative concern of bias never had any merit:  all testimony provided by Ms. Schwartz in connection with this case and the Abacus Investigation pre-dates the Unrelated Investigation that is the subject of Tourre's document subpoena.[6]  *See* June 4, 2013 Order; *see also* Prin. Br. at 12, n.9; Letter from Robin L. Alperstein to Judge Forrest dated May 24, 2013 at 2-3.  Ms. Schwartz was informed of the existence of the Unrelated Investigation by the undersigned counsel in late July 2011, well after her testimony in this matter, and at that time, Ms. Schwartz was neither informed nor had any reason to believe or expect that she might become a subject of the Unrelated Investigation. *See* Alp. Decl. ¶ 6-9.  Nor was the undersigned counsel even aware of the existence of the Unrelated Investigation until late July 2011.  *Id.* ¶ 8.  All of Ms. Schwartz's testimony in connection with

---

[5] Tourre's claim that he needs access to the Wells Materials to assess the magnitude of leverage the SEC has over Ms. Schwartz (Tourre Opp. at 4) is similarly moot.  The SEC has no leverage, as it has completed its investigation as to Ms. Schwartz and no threat of litigation from the SEC exists.

[6] We do not know how Tourre got the mistaken idea that Ms. Schwartz provided testimony on December 21, 2012 in connection with the Unrelated Investigation (Tourre Opp. at 17); she did not do so. *See* Alp. Decl. ¶ 7.  Tourre's speculation that Ms. Schwartz is "Person B" on the SEC's Privilege Log (*see* Tourre Opp. at 16-17) is also incorrect. *See* Alp. Decl. ¶ 5.

the present litigation—her April 2011 depositions, January 2010 declaration, and November 2008 investigative testimony—pre-dated her knowledge of the existence of the Unrelated Investigation, as to which no enforcement action is being recommended.[7]  Thus, at the time Ms. Schwartz previously testified in connection with this case, the SEC had no leverage over Ms. Schwartz, and no bias on her part existed or could have existed.

Nor, given the termination of the Unrelated Investigation, could the SEC have any leverage over Ms. Schwartz now, in connection with her anticipated trial testimony.  And even if such an investigation were pending, given the chronology of Ms. Schwartz's existing testimony, the Court's decision to preclude the production of the Wells Materials was correct on Rule 403 grounds.  *See United States v. Jimenez*, 513 F.3d 62, 76 (3d Cir. 2008) (precluding evidence of unrelated investigation on FRE 403 grounds because "the unrelated investigation occurred years after the investigation of the actions at issue here with which [the witness's employer] cooperated [and] the marginal relevance and the risk of delay and confusion created by a mini-trial to explain the evidence support the district court's decision to limit the cross-examination"); *United States v. James,* 1992 U.S. App. LEXIS 33329, at *4 (9th Cir. 1992) (district court did not err in prohibiting witness cross examination of pending investigation; "alleged bias toward the government because of the pending investigation would have been easily detected had his testimony deviated from his reports which had been completed prior to the unrelated shootings and subsequent investigation").

---

[7] Tourre's suggestion that it is "not credible" that Ms. Schwartz did not know about a separate 2008 investigation referenced in the SEC's Privilege Log (s*ee* Tourre Opp. at 8) is false, the product of additional incorrect speculation on his part.  That separate investigation concerned an investment bank, and Ms. Schwartz has never been contacted, either directly or through counsel, in connection with that 2008 investigation. *See* Alperstein Decl. ¶ 8. Indeed, neither she nor the undersigned counsel was aware of the existence of that investigation before late July 2011.  *Id.*

4

Similarly, neither the fact nor the timing of the decision by the SEC's New York Staff renders the Wells Materials relevant for impeachment purposes. As reported in the amended U-4 filed by Ms. Schwartz's current employer in March 2013, the SEC's New York Staff was only ever "considering whether to recommend" that the Commission bring an enforcement action against Ms. Schwartz.[8] *See* Letter from John P. Coffey to Judge Forrest, dated May 21, 2013, Exhibit 5 at 10 (Doc. No. 280). Ms. Schwartz has never had any settlement discussion of any kind with the New York Staff, directly, through counsel or otherwise, and she has never sought or been offered leniency or any other relief in connection with the Unrelated Investigation in exchange for any aspect of her testimony in this or any other matter. Alp. Decl. ¶ 10. There is no *quid pro quo* with the SEC, and none has ever been suggested or offered at any time in any context to her or by her, whether directly, through counsel or otherwise, orally or in writing. *Id.* In short, no arrangement with the SEC exists. *Id.* Ms. Schwartz's testimony has always been and will be based on her best recollection of the events in question and the Wells Materials have no relevance to show bias or otherwise impeach her testimony. *See, e.g., United States v. Campbell*, 426 F.2d 547, 549 (2d Cir. 1970) ("actions evidencing the intention of the government to trade leniency for cooperation are, however, irrelevant unless it can be established that the witness knew of these actions").

Tourre cites no case in which a court has permitted inquiry into an unrelated investigation that was terminated without charges being brought and without a cooperation

---

[8] Though Tourre recognizes that a Wells notice may be drafted in two ways, one of which uses "less serious" language than the other, he inexplicably argues that the Wells Notice that Ms. Schwartz received did not, in fact, include this "less serious" language. *See* Tourre Opp. at 3 n. 1. But this "less serious" language was not only reported in March 2013 by Ms. Schwartz's employer on the Amended U-4 that Tourre himself attached as an exhibit to his May 21, 2013 letter to the Court, we specifically quoted and cited this language in our May 24, 2013 letter to the Court. Thus, from the date of the Wells Notice until the date of the Termination Letter, the New York Staff was, in Tourre's words, "merely considering" (Tourre Opp. at 3 n. 1) *whether to recommend* that the Commission initiate an enforcement action. His suggestion that the New York Staff included the stronger and more serious language in the Wells Notice to Ms. Schwartz is baseless.

agreement. The caselaw Tourre cites stands merely for the unremarkable principle that a party, on cross examination, is entitled to inquire into the bias and credibility of a witness. The scope of such an examination is necessarily limited to only those facts that would demonstrate bias and is further limited by the extent to which the probative value of those facts are outweighed by potential prejudice. For instance, in *United States v. Blanco,* 861 F.2d 773, 781 (2d Cir. 1988), cited by Tourre, the Court allowed inquiry into a cooperation agreement between the witness and the government and into past acts of untruthfulness, but precluded inquiry into a murder as failing under FRE 403. *Id.*

Here, by contrast, there is no cooperation agreement and the Unrelated Investigation has been terminated. These two facts, coupled with the timing of Ms. Schwartz's testimony (which was complete long before Ms. Schwartz was even aware of the Unrelated Investigation), preclude the possibility of bias on the part of Ms. Schwartz. Courts confronted with similar facts have not permitted inquiry into the unrelated investigation.[9]

## II. TOURRE'S PUBLIC MISSTATEMENTS DEMONSTRATE THAT THE PRODUCTION OF THE WELLS MATERIALS WILL RESULT IN UNNECESSARY HARM TO MS. SCHWARTZ

We are constrained to note that in each of its statements to the Court seeking the Wells Materials, Tourre's counsel has made unsupported and factually incorrect statements about the status of the Unrelated Investigation and about Ms. Schwartz's past and expected testimony.

---

[9] *See, e.g., United States v. Casoni*, 950 F.2d 893, 919 (3d Cir. 1991) (precluding cross examination concerning unrelated criminal investigation: "district court correctly determined that the government's criminal investigation of Guida was factually unrelated to its case against Casoni and Reeher. We detect no abuse of discretion in the district court's ruling precluding cross-examination of Guida about an unrelated criminal investigation"); *Jimenez,* 513 F.3d at 76 (precluding inquiry into unrelated investigation on FRE 403 grounds where "the unrelated investigation occurred years after the investigation of the actions at issue here with which [the witness] cooperated" and thus minimized risk of bias); *James*, 1992 U.S. App. LEXIS 33329, at *4 (prohibiting cross examination of pending investigation because any bias "would have been easily detected had his testimony deviated from his reports which had been completed prior to the unrelated shootings and subsequent investigation"), *Campbell*, 426 F.2d at 549 (refusing to permit inquiry into pending collateral investigation absent evidence of a cooperation agreement or evidence that would have led witness to believe that his prospects for leniency depended on cooperation).

Tourre's Opposition falsely suggests that the Wells Notice contained more serious language than it did (*see supra* n. 8), just as counsel previously falsely told the Court that the New York Staff had decided to recommend bringing charges against Ms. Schwartz, when it had not (*cf.* Chepiga statement to the Court at 98:22-24 of April 26, 2013 Transcript).  Nor has Ms. Schwartz ever, for example, styled herself as a "CDO specialist" (*cf.* Coffey statement to the Court at 40:9 of June 10, 2013 Transcript) or suggested, much less claimed, "that she was shocked, shocked to find there was a short involved in a synthetic CDO." (*cf. id.* at 40:7-8).  Counsel's continued willingness, if not eagerness, to discredit Ms. Schwartz's reputation with misstatements and inaccuracies, in order to obtain the Wells Materials, belie Tourre's argument that the production of the Wells Materials would not be used for the purpose of damaging Ms. Schwartz's reputation.[10]  The Court's original conclusion that prejudicial and unnecessary reputational damage to Ms. Schwartz could result from production of the Wells Materials is only reinforced by the submissions and statements Tourre's counsel has made since the Court's order.

*   *   *

The Court has already decided that Tourre is not entitled to the Wells Materials.  Prin. Mem. at 2-5.  Tourre's opposition does not present any legitimate reason why the Court should revisit its well-reasoned decision.  At bottom, Tourre's untimely trial subpoena *duces tecum* seeks the production of the Wells Materials based on his admitted speculation that they might contain impeachment evidence (Tourre Opp. at 6-7).  Such a speculative and untimely request falls outside the scope of discovery permitted by the Federal Rules of Civil Procedure.  *See, e.g., Dzanis v. J.P. Morgan Chase & Co.*, 2011 U.S. Dist. LEXIS 137356, at *17-18

---

[10] Indeed, while Tourre suggests that production of the Wells Materials will "ameliorate" any prejudice to Ms. Schwartz because he will no longer be "shooting in the dark," (*See* Tourre Opp. at 10), the misstatements his counsel has made and continues to make in the face of contrary record evidence reveals that suggestion to be a canard.

(S.D.N.Y. November 30, 2011) (barring speculative request for impeachment materials based upon generic arguments about how information in a personnel file could be used to impeach a witness); *see also* Prin. Mem. at 6-13.  Moreover, the Wells Materials would have no bearing on the lines of inquiry proposed by Tourre in the Coffey Decl.  And even those lines of inquiry are now moot given the termination of the unrelated investigation.

## CONCLUSION

For the foregoing reasons, and those set forth in Ms. Schwartz's opening memorandum of law, non-party Laura Schwartz respectfully requests that the Court enter a protective order and quash the trial subpoena as to the Wells Materials.

Dated: July 3, 2013
       New York, New York

                                    Respectfully submitted,

                                    BECKER, GLYNN, MUFFLY, CHASSIN
                                    & HOSINSKI LLP


                                    By:    /s/ Robin L. Alperstein
                                        Robin L. Alperstein (RA 3496)
                                        Jesse T. Conan (JC 5948)
                                        299 Park Avenue
                                        New York, NY 10171
                                        ralperstein@beckerglynn.com
                                        jconan@beckerglynn.com

                                        *Attorneys for non-party Laura Schwartz*