UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                        :
SECURITIES AND EXCHANGE COMMISSION,                     :
                                                        :   Civil Action
            Plaintiff,                                  :   No.: 10-cv-3229 (KBF)
                                                        :
        v.                                              :   ELECTRONICALLY FILED
                                                        :
FABRICE TOURRE,                                         :
                                                        :
            Defendant.                                  :
                                                        :
                                                        :
------------------------------------------------------- x

# MEMORANDUM OF LAW OF FABRICE TOURRE IN OPPOSITION TO THE SEC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE "SECURITY-BASED SWAP AGREEMENT" ISSUE

Pamela Rogers Chepiga
Andrew Rhys Davies
Brandon D. O'Neil
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300

John P. Coffey
LAW OFFICE OF JOHN P. COFFEY
1350 Avenue of the Americas, 2nd Floor
New York, New York  10019
(646) 790-8988

*Attorneys for Fabrice Tourre*

Dated:   July 12, 2013
         New York, New York

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

STANDARD OF LAW ...............................................................................................................3

ARGUMENT ................................................................................................................................4

I.  WHETHER AN INSTRUMENT IS A "SECURITY-BASED SWAP AGREEMENT" IS NOT A QUESTION OF LAW FOR THE COURT .............................4

II. THE SEC HAS NOT MET ITS BURDEN TO SHOW THAT THERE IS NO ISSUE OF MATERIAL FACT RELEVANT TO THE "SECURITY-BASED SWAP AGREEMENT" ELEMENT ....................................................................................6

CONCLUSION ...........................................................................................................................13

**TABLE OF AUTHORITIES**

**Cases**

*Brod v. Omya, Inc.*,
  653 F.3d 156 (2d Cir. 2011) ................................................................................................... 3

*Hester v. Navigators Ins. Co.*,
  --- F. Supp. 2d ----, 12 Civ. 4033 (KBF), 2013 WL 264807 (S.D.N.Y. Jan. 23, 2013) ............. 3

*In re U.S. Fin. Secs. Litig.*,
  609 F.2d 411 (9th Cir. 1979) ................................................................................................... 1

*Lifetime Siding, Inc. v. United States*,
  359 F.2d 657 (2d Cir. 1966) .................................................................................................... 1

*Safeco Insurance Co. v. Burr*,
  551 U.S. 47 (2007) ................................................................................................................ 11

*Schaafsma v. Morin Vermont Corp.*,
  802 F.2d 629 (2d Cir. 1986) .................................................................................................... 5

*SEC v. Rorech*,
  673 F. Supp. 2d 217 (S.D.N.Y. 2009) ..................................................................................... 5

*SEC v. Rorech*,
  720 F. Supp. 2d 367 (S.D.N.Y. 2010) .................................................................... 6, 7, 10, 11

*Tcherepnin v. Knight*,
  389 U.S. 332 (1967) ................................................................................................................ 9

*United Hous. Found. v. Forman*,
  421 U.S. 837 (1975) ................................................................................................................ 9

*United States v. McDonald*,
  No. 11 Cr. 19, 2011 WL 1812782 (S.D.N.Y. May 10, 2011) .................................................. 5

*United States v. Rogers*,
  9 F.3d 1025 (2d Cir. 1993) ...................................................................................................... 5

*Williams v. R.H. Donnelley, Corp.*,
  368 F.3d 123 (2d Cir. 2004) .................................................................................................... 3

*Wilson v. Northwestern Mut. Ins. Co.*,
  625 F.3d 54 (2d Cir. 2010) ...................................................................................................... 3

**Statutes**

Commodity Futures Modernization Act of 2000, Pub. L. 106–554 §§ 301-303 ............................ 3

Exchange Act of 1934, Section 3A, 15 U.S.C. § 78c-1 .................................................................. 3

Graham-Leach-Bliley Act, Section 206B, 15 U.S.C. § 78c note ............................................ 1, 2, 4

Securities Act of 1933, Section 2A(b)(1), 15 U.S.C. § 77b-1(b)(1) ................................................ 3


**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................................... 3


**Other Authorities**

Commodity Futures Modernization Act (as introduced), S. 2697, 106th Cong. § 22 (2000) ........ 3

December 15, 2000 Statement of Senator Gramm, 146 Cong. Rec. S11867 (2000) ...................... 4

Defendant Fabrice Tourre respectfully submits this memorandum of law in opposition to the SEC's motion for partial summary judgment on the "security-based swap agreement" issue.

## PRELIMINARY STATEMENT

As the Court aptly noted at the final pre-trial conference on July 9, 2013, whether the super-senior transactions entered into by ACA Credit Products-ABN AMRO, L.L.C. ("ACA Credit"), ACA Financial Guaranty Company ("ACA Insurance") and ABN AMRO Bank N.V. ("ABN") were "security-based swap agreements" within the relevant statutory definition is a complicated question. Complexity is not, however, a basis for taking the issue away from the jury. To the contrary, the complexity of the issue underscores the need for fact finding on whether the agreements at issue qualify as "security-based swap agreements." *See In re U.S. Fin. Secs. Litig.*, 609 F.2d 411, 413 (9th Cir. 1979) (no "'complexity' exception to the Seventh Amendment right to a jury trial in civil cases"); *Lifetime Siding, Inc. v. United States*, 359 F.2d 657, 662 (2d Cir. 1966) ("While we may question the wisdom as a matter of policy of claiming such a case for jury trial, raising judicial eyebrows is about all we can do. Certainly it is not within our competence to question the right to jury trial granted by Congress . . . .").

The SEC alleges that Mr. Tourre made misrepresentations and omissions in connection with the super-senior transactions. There can, however, only be a violation of Section 10(b)/Rule 10b-5 and Section 17(a), as those statutes were in force in 2007, if the SEC can prove that these were security-based swap agreements, as defined in section 206B of the Gramm-Leach-Bliley Act, 15 U.S.C. § 78c note. Under that statute, not all swaps are security-based swap agreements and whether the statutory definition of "security-based swap agreement" is met depends on whether a "material term" is "based on" the price, yield, value or volatility of

a security or group of securities.  *Id.*  This is a fact-intensive inquiry that requires evidence on, *inter alia*, the contemporaneous understandings of the transaction parties.

The SEC's view that the transactions are "security-based swap agreements" is essentially an argument based on the SEC's reading of the swap documents.  As so often in this litigation, however, the SEC ignores the economic reality.  ACA's Laura Schwartz explained at her deposition that the business of ACA's structured credit division involved ACA Insurance selling insurance policies, in this case, on the securities referenced by the ABACUS 2007-AC1 ("AC1") super-senior tranches.  As ABN's Dean Atkins explained, the ABN intermediation transaction involved ABN taking credit risk on the monoline insurer, *i.e.*, on ACA Insurance.  Thus, in substance, the super-senior transactions involved, not security-based swap agreements, but rather a monoline insurance policy issued by ACA Insurance, with ABN guaranteeing ACA Insurance's performance.  The linkage of the swaps to perform these functions was explicitly recognized in the swap agreements.

The record reflects that how the parties viewed the transactions, *i.e.*, as a sale of insurance and a guarantee of the insurer's payment obligations, clearly influenced what the terms of the transactions were "based on" from their perspectives.  On that issue, the evidence reflects that ABN was "primarily" focused on the credit risk presented by ACA, and only secondarily concerned with the composition of the reference portfolio, and that ACA was focused on questions of systemic risk, as reflected in its focus on correlation issues.

Thus, although the SEC is free to present its contractual interpretation argument to the jury, Mr. Tourre is entitled to have the jury consider this evidence about what the transactions participants contemporaneously considered their deals to be "based on," so that the jury can make the required factual findings.  Certainly, the testimony and evidence in the record

does not permit the "security-based swap agreement" issue to be taken away from the jury and determined by the Court as a matter of law or on the basis of undisputed facts.

## STANDARD OF LAW

To prevail on its motion for partial summary judgment, the SEC must demonstrate, "based on admissible evidence in the record placed before the court, 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hester v. Navigators Ins. Co.*, --- F. Supp. 2d ----, 12 Civ. 4033 (KBF), 2013 WL 264807, at *4 (S.D.N.Y. Jan. 23, 2013) (quoting Fed. R. Civ. P. 56(a)). On summary judgment, courts do not seek to "resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). In making this assessment, courts "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Id.* (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

Swap agreements are explicitly carved out from the definition of "security" under both the Securities Act and the Exchange Act. 15 U.S.C. § 77b-1(b)(1); 15 U.S.C. § 78c-1. The Commodity Futures Modernization Act of 2000, as originally introduced, did not grant the SEC any jurisdiction over swap agreements. S. 2697, 106th Cong. § 22 (2000) ("Nothing in this Act or any amendment made by this Act grants the . . .[SEC] any jurisdiction over any swap agreement . . . ."). The Act as ultimately passed amended the Gramm-Leach-Bliley Act to subject a narrow sub-set of swap agreements, *i.e.*, "security-based swap agreements," to specific portions of the securities laws only, including Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act. Commodity Futures Modernization Act of 2000, Pub. L. 106–554 §§ 301-303. All swap agreements, including security-based swap agreements, remained exempt

from other provisions of the securities laws, such as registration, reporting and record-keeping requirements.

Thus, Section 206B of the Gramm-Leach-Bliley Act as amended defines a "security-based swap agreement" as a "swap agreement" (as defined in Section 206A of the Act) of which "a material term is based on the price, yield, value, or volatility of any security or any group or index of securities, or any interest therein"  15 U.S.C. § 78c note.  Section 206A of the Act defines "swap agreement" to include credit default swaps whose material terms (other than price and quantity) are individually negotiated, and that are entered into between eligible contract participants.  *Id.*

The narrow sub-set of swap agreements covered by Section 206B of Gramm-Leach-Bliley and the limited scope of the securities laws made applicable to them was intentional.  In a December 15, 2000 statement in the Senate, Senator Gramm explained that "[b]anks are already heavily regulated institutions. . . . [and f]urther regulatory burden, rather than discouraging wrongdoing, would be more likely to discourage development and innovation, driving business overseas instead." 146 Cong. Rec. S11867 (2000).

Mr. Tourre does not dispute that the swaps entered into by ACA Credit and by ABN, viewed in isolation, were "swap agreements," but that does not entitled the SEC to summary judgment.

## ARGUMENT

I. **WHETHER AN INSTRUMENT IS A "SECURITY-BASED SWAP AGREEMENT" IS NOT A QUESTION OF LAW FOR THE COURT**

Repeating an argument it presented in its Motion *in Limine* to Preclude Jury Argument that Swap Agreement was not a "Security-Based Swap Agreement," ECF No. 343, the SEC insists that whether the super-senior transactions into which ACA and ABN entered were

4

"security-based swap agreements" is a question of law for the Court.  *See* ECF No. 396 (SEC's Mem. of Law in Support of its Mot. for Partial Summary Judgment on the "Security-Based Swap Agreement" Issue) ("SEC Br.") at 5.  For the reasons articulated in Mr. Tourre's opposition to the SEC's motion *in limine*, ECF No. 377, the SEC is wrong.

As Mr. Tourre previously showed, even the determination of whether an instrument is a "security" is a mixed question of fact and law, which must be submitted to the jury if there is a factual dispute that bears on the issue.  ECF No. 377 (Mem. of Law of F. Tourre "Tourre *Limine* Br.") at 1-2; *United States v. McDonald*, No. 11 Cr. 19, 2011 WL 1812782, at *1 (S.D.N.Y. May 10, 2011) ("[A] defendant is 'entitled to have the judge instruct the jury on what a security is and to let the jury decide whether the items at issue were securities.'") (quoting *United States v. Rogers*, 9 F.3d 1025, 1033 (2d Cir. 1993)); *Schaafsma v. Morin Vermont Corp.*, 802 F.2d 629, 637 (2d Cir. 1986) (whether instrument was "security" was question for judge only where factual predicates were "undisputed" by either party).

It is very clear, too, that a determination of whether an instrument is a security-based swap agreement rests on a number of factual predicates that, if disputed, must be submitted to the jury.  Tourre *Limine* Br. at 2-4.  Thus, in *SEC v. Rorech*, 673 F. Supp. 2d 217, 224 (S.D.N.Y. 2009), Judge Koeltl denied a motion for judgment on the pleadings on the issue of whether the swaps satisfied the statutory definition of a security-based swap agreement, because that raised "issues of fact that are not amenable to a motion for judgment on the pleadings."  *Id.*  Having held that he could not determine the issue as a matter of law, Judge Koeltl held a three-week bench trial at which evidence was adduced on the relevant factual issues, following which he wrote a lengthy opinion summarizing the detailed factual and expert evidence that bore on whether the instruments met the statutory definition of security-based swap agreements, and set

5

forth his conclusions of law based on those facts. *See SEC v. Rorech*, 720 F. Supp. 2d 367, 371, 400-03, 404-08 (S.D.N.Y. 2010).

The SEC contends that, in connection with the summary judgment briefing, Mr. Tourre either admitted that the question of whether the super-senior transactions were security-based swap agreements is a question of law for the Court, or that he admitted the factual issues relevant to that inquiry by not specifically disputing them. SEC Br. at 5 n.3. By burying this argument in a footnote, the SEC betrays its recognition that it is wholly insubstantial. The SEC merely proposed as an undisputed fact that "[t]he credit default swap transaction between ABN and ACA LLC was based on securities, namely the RMBS in the swap's reference portfolio." ECF No. 228 (Tourre Local Rule 56.1 Counter-Statement) ¶ 49. Mr. Tourre interpreted that as an attempt by the SEC to secure an admission that the ACA/ABN super-senior transaction was a security-based swap agreement, without addressing any of the factual issues that are relevant to that determination, which was why he objected that it amounted to legal argument. *Id.* Moreover, to the extent Mr. Tourre is deemed to have admitted that the swap between ACA and ABN referenced securities, that is, indeed, undisputed. The SEC has still, however, not proven that a material term of the super-senior transactions was based on the price, yield, value or volatility of those securities.

**II.   THE SEC HAS NOT MET ITS BURDEN TO SHOW THAT THERE IS NO ISSUE OF MATERIAL FACT RELEVANT TO THE "SECURITY-BASED SWAP AGREEMENT" ELEMENT**

The SEC's motion is based on its arguments about the correct interpretation of the swap contracts entered into by ACA Credit and ABN. *See* SEC Mem. at 9-10. First, the SEC argues that the obligation to make protection payments is a material term. Second, the SEC argues that the obligation to make protection payments is triggered by a write-down of the reference obligations, which, the SEC argues, necessarily implies a decrease in the value of the

6

referenced securities.  Putting these two arguments together allows the SEC to argue that a material term of the swaps is based on the value of the referenced securities.

The SEC can argue that position at trial, but Mr. Tourre is entitled to have the jury hear the countervailing evidence and to decide whether the SEC has met its burden of proof. Notably, in *Rorech*, apparently the only decision that has determined that an instrument was a security-based swap agreement, the court held that the issue could not be determined solely by reading the trade confirmations, even though they, like the confirms at issue in this case, described the reference obligations and the triggering credit events.  *See Rorech*, 720 F. Supp. 2d at 403, 405 (declining to limit the analysis to the contractual language).  Rather, the *Rorech* court based its ruling on extensive evidence about what the parties contemporaneously viewed the contracts' terms to be "based on," as well as market and expert evidence as to whether the market contemporaneously understood the terms to be "based on" the price, value, yield or volatility of the referenced securities.  *See id.* at 400-03.

Although the SEC would like to focus myopically on the swap agreements, the record is replete with evidence that the parties to the super-senior transactions viewed them, not as security-based swap agreements, but, rather, as a monoline insurance policy issued by ACA Insurance, which ABN, in essence, guaranteed by assuming the credit risk that ACA Insurance would be unable to meet its obligations.  Insurance transactions are, of course, not subject to the federal securities laws, but rather are subject to other laws that are enforced by other regulators.

The ACA/ABN swap and the ABN/GSI swap must be viewed as part of an integrated transaction, rather than as two separate agreements.  The confirmation for the ACA/ABN swap confirms this linkage, referring to ABN as the "INTERMEDIARY," identifying GSI as the Calculation Agent under the "GSI Transaction" (defined as the ABN/GSI

7

swap) and providing that the amendment or termination of the GSI Transaction constitutes a "Direct Transaction Event." ECF No. 397-3 (Martens Ex. 3 (ACA/ABN Swap Confirmation)) at 1, 5, 18 and 19. In addition, ACA Credit was made a party to the confirmation for the ABN/GSI swap, under which it was entitled to take certain actions. ECF No. 397-7 (ABN/GSI Swap Confirmation) at 16.

From the ACA side, Laura Schwartz testified that the ACA structured credit business existed to "insure and guarantee" securities, in this case, the securities referenced by the super-senior tranche of AC1. It did that by selling insurance policies issued by ACA's monoline insurance business, ACA Insurance. Schwartz Apr. 12, 2011 Dep. Tr. (attached as Exhibit 1 to the July 12, 2013 Declaration of Andrew Rhys Davies ("Davies Decl.")) at 13-14. Mechanically, and for their own accounting, regulatory and legal reasons, ACA accomplished these super-senior wraps by having a special purpose vehicle ("ACA Credit") with negligible capital enter into a swap agreement referencing the securities, with ACA Insurance issuing an insurance policy guaranteeing ACA Credit's performance.[1] ECF No. 397-1-397-3 (Martens Exs. 1-3 (agreements related to the ACA/ABN swap entered into by ACA Credit)); ECF No. 397-5 (Martens Ex. 5 (insurance policy issued by ACA Insurance)).

Indeed, ACA's own internal transaction approval memorandum reflects that the swap agreement that ACA Insurance guaranteed was nothing more than a "Delivery Mechanism" to effectuate this insurance transaction. Roseman Dep. Ex. 127 (Davies Decl. Ex. 2) at ACA-ABACUS-0000063473. Although he noted that the swaps were not "technically" insurance, ACA's CEO, Alan Roseman, used insurance terminology in explaining that ACA's overall aim

---

[1]   ACA Credit was, as the SEC has acknowledged, merely a special purpose vehicle established by the ACA structured credit business specifically and exclusively to enter into this transaction. SEC Br. at 3; ECF No. 343 at 2-3.

8

in entering into these super-senior wraps was to "underwrite" them to the level where ACA expected zero dollar losses. Roseman Apr. 5-6, 2011 Dep. Tr. (Davies Decl. Ex. 3) at 52, 180-81.

The record evidence reflects that ABN, too, viewed the super-senior transaction in terms of insurance. In its discussion of the transaction's "Risk Factors," ABN's internal approval documents noted that ABN would be buying protection from a trust established by ACA, *i.e.*, the special purpose vehicle, ACA Credit, but that "any protection payments will come from an insurance policy." PX-327 (Davies Decl. Ex. 4) at 3. That insurance policy was issued by ACA Insurance. ECF No. 397-5 (Martens Ex. 5 (insurance policy issued by ACA Insurance)). ABN noted this arrangement was "standard for trades with monolines." PX-327 (Davies Decl. Ex. 4) at 3. ABN employee Dean Atkins explained at his deposition that, in these kinds of monoline insurance wrap transactions, ABN specifically sought to act as an intermediary to monetize the bank's "appetite for credit risk to a counterparty, in these cases monoline insurers," such as ACA Insurance. Atkins Oct. 4, 2011 Dep. Tr. (Davies Decl. Ex. 5) at 17-18.

In the context of applying the term "security," which the SEC argues is analogous to applying the term "security-based swap agreement," the Supreme Court has held that "'the emphasis should be on economic reality.'" *United Hous. Found. v. Forman*, 421 U.S. 837, 848 (1975) (quoting *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967)). In this case, the record would permit the jury to conclude that the "economic reality" was that the super-senior transactions involved, respectively, the sale of an insurance policy by ACA Insurance and ABN taking exposure to ACA Insurance credit risk, with the swaps constituting nothing more than a "[d]elivery [m]echanism" to deliver that insurance/guarantee arrangement.

Moreover, in determining whether the transactions were actually security-based swap agreements, the jury is entitled to hear evidence about what ACA and ABN actually

considered the transactions to be "based on" when it entered into them. In *Rorech*, Judge Koeltl considered it relevant to take into account evidence that the spread on the underlying bonds was "central" to the decision to enter into the credit default swap at issue, *Rorech*, 720 F. Supp. 2d at 407-08, and that other market evidence demonstrated that the price, yield and value of the referenced bonds was "critical" to the credit default swap price, *see id.* In light of the evidence in the record, the Court should not conclude, on a summary judgment standard, that a "material" term of the super-senior transactions into which ACA and ABN entered were "based on" the price, yield, value or volatility of the referenced securities.

    To the contrary, ABN's principal basis of decision for engaging in the super-senior transaction concerned, not the reference portfolio at all, but the credit risk associated with ACA Insurance and the premium ABN would be paid for taking that risk. As ABN employee Dean Atkins testified, when determining whether to enter into such an intermediation trade with a monoline insurer like ACA Insurance, ABN "[p]rincipally" considered the availability of a credit line for that insurer, and the economics of the proposed trade, meaning the spread ABN would be paid for taking that credit risk. Atkins Dep. Tr. (Davies Decl. Ex. 5) at 19-20. In response to questioning by the SEC, Mr. Atkins reaffirmed that, in entering into intermediation transactions with monoline insurers like ACA Insurance, its "principal concern was the creditworthiness of the counterparty." *Id.* at 54. Thus, it was ACA Insurance's ability to meet its obligations under the insurance policy, and not the likelihood of those obligations being triggered by write-downs of the referenced securities, that drove ABN's entry into the super-senior transactions.

    Mr. Atkins characterized the portfolio composition as a "secondary, but important" factor in analyzing the transaction (*id.* at 54), creating a clear factual question for the

10

jury as to what the transaction was "based on" from ABN's perspective.  Mr. Tourre acknowledges that, in *Rorech*, Judge Koeltl held that the expression "based on," as used in Gramm-Leach-Bliley, did not "require a necessary dependence or exclusive relationship." *Rorech*, 720 F. Supp. 2d at 406.  Judge Koeltl declined to apply the definition of "based on" set forth in *Safeco Insurance Co. v. Burr*, 551 U.S. 47, 63 (2007), which adopted, in the context of the Fair Credit Reporting Act, a "'but-for causal relationship and thus a necessary logical condition'" standard.  Judge Koeltl based that holding on his view of the "statutory scheme as a whole," *Rorech*, 720 F. Supp. 2d at 406, but, to the contrary, the statutory scheme of the Commodity Futures Modernization Act and Gramm-Leach-Bliley was to confer limited SEC jurisdiction over a narrow set of instruments.

    ACA's committee approval documents, too, raise genuine fact questions about what factors ACA thought the transaction was "based on."  They clearly reflect that ACA Insurance's pricing decisions rested, not so much on the price, yield, value or volatility of the reference portfolio, but on anticipated correlation factors.  In its February 27, 2007 committee memorandum, ACA calculated that a doubling in the assumed correlation would require the fair premium to increase over eleven times, from 3.1 basis points to 35.6 basis points.  Roseman Ex. 127 (Davies Decl. Ex. 2) at ACA-ABACUS-0000063474.  By May 15, 2007, ACA calculated that an increase in the loss correlation from 30% to 70% would cause the fair premium to increase almost eighteen times, from 3.6 basis points to 64.6 basis points.  *Id*. at ACA-ABACUS-0000063492.  Correlation—meaning the extent to which securities are projected to perform uniformly—is essentially a measure of systemic risk, meaning that ACA's premium calculations were very heavily influenced by its projections of how the subprime sector as a whole would perform.

11

Based on this evidence, the jury could rationally conclude that the economic substance of the two swaps was that ACA Insurance was writing insurance on the super-senior tranche of AC1, using a swap merely as a "[d]elivery [m]echanism" for that insurance arrangement, and that ABN's issuance of protection amounted merely to a guarantee of ACA Insurance's payment obligations.  The jury could also conclude that, from the perspective of ACA and ABN, the SEC has failed to carry its burden of proof that a "material term" of the transactions was "based on" the price, yield, value or volatility of the referenced securities. Certainly, there are sufficient genuine issues of fact that the "security-based swap agreement" issue cannot be determined on summary judgment.

**CONCLUSION**

For all the foregoing reasons, Fabrice Tourre respectfully requests that this Court deny the SEC's motion and permit the jury to determine, based on the evidence presented at trial, whether the super-senior transactions at issue in this case were security-based swap agreements.

Dated: July 12, 2013
      New York, New York

Respectfully submitted,

/s/ Pamela Rogers Chepiga
Pamela Rogers Chepiga
(pamela.chepiga@allenovery.com)
Andrew Rhys Davies
(andrew.rhys.davies@allenovery.com)
Brandon D. O'Neil
(brandon.o'neil@allenovery.com)

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300


/s/ John P. Coffey
John P. Coffey
(seancoffey78@gmail.com)

LAW OFFICE OF JOHN P. COFFEY
1350 Avenue of the Americas, 2nd Floor
New York, New York  10019
(646) 790-8988

*Attorneys for Fabrice Tourre*