UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                         :

SECURITIES AND EXCHANGE      :
COMMISSION,
                         :
               Plaintiff,    :

      -v-              :

FABRICE TOURRE,         :
                         :
            Defendant.  :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: **JUL 1 5 2013**

10 Civ. 3229 (KBF)

ORDER

KATHERINE B. FORREST, District Judge:

On July 9, this Court notified counsel that it would not resolve the SEC's

motion *in limine* regarding whether the swaps at issue in this matter were security-

based swaps or financial guarantees in the context of a pre-trial *in limine* ruling.

Rather, the Court agreed with the defendant that this issue is a substantive one

and should be resolved by way of summary judgment, if it could be resolved at all

pre-trial. The Court ordered that the parties make submissions not later than July

12, 2013. The parties both made submissions and provided supporting declarations

with materials—the SEC on July 11, 2013 and Tourre on July 12, 2013.

For the reasons that the Court will now recite, the SEC's motion for partial

summary judgment on the issue of whether the ACA/ABA and GSI/ABN swaps

were security-based swaps is GRANTED.

## I.    STANDARD ON SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 sets forth the well-known standard on summary judgment—and the Court will not recite it here other than to say the inquiry must be whether there is a triable issue of fact as to the question presented. The Court may not weigh evidence or make credibility findings—that is for the jury. However, if the Court finds that no reasonable juror could find other than as the Court determines, then the Court may enter summary judgment.

## II.    QUESTION PRESENTED

There can only be a violation of the securities laws if the instruments in question are covered by the securities laws. Here, the question presented concerns two swap transactions: an ACA/ABN swap and a GSI/ABN swap. If these swaps are "security-based swap agreements," then they are subject to Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and the SEC's corresponding Rule 10b-5. If they are not, then conduct associated with the swaps could not constitute a securities law violation.

The Gramm-Leach-Blilely Act defines the type of swaps covered as "security-based" swaps. Whether a swap is security-based is determined by whether a material term of the agreement is "based on" the price, yield, value or volatility of a security or group of securities.

The SEC argues that this question only has one simple answer: yes; Tourre argues that this question is fact intensive and must be presented to the jury. The Court agrees with the SEC in this instance.

III.   DISCUSSION

As part of the joint pre-trial order in this matter, the parties stipulated that the AC1 notes are "securities" for purposes of the securities laws.  In his papers in opposition to the SEC's motion here for partial summary judgment, Tourre further concedes that the agreements under discussion are swaps.  The sole issue for this Court to determine, therefore, is simply whether the swaps are security-based.

Tourre argues that this issue should be determined based on the economic reality of the transaction at issue—in other words, that the issue should be subjected to the same type of inquiry as a court undertakes if it is deciding whether an instrument is a security or not.  However, whether a swap is security-**based— when the question of whether there are securities at issue has been determined already by stipulation**—is not the same question and does not require the same inquiry.  Indeed, the sole question here relates to the question of what the word "based" means.  All other aspects of this issue have been conceded.

The Court finds that this is not a complicated question—and is not a question that any rational juror could find other than one answer to.  The swaps at issue—as Tourre also concedes in his submissions on this motion—in fact reference the portfolio of securities in the ABACUS 2007 – AC1 transaction.

Tourre argues, however, that the fact that the swaps reference the securities is somehow different from being based on the securities.

This is precisely where Section 206B of the Gramm-Leach-Blilely Act provides the Court with guidance in determining what the word "based" should

mean here: a material term based on price, yield, value or volatility of any security or group of securities. That is, in fact, precisely what these swaps are based on.

The trade confirmations are clear on this point: the Confirmation contained at Exhibit 3 of the Martens Declaration (ECF No. 397-3) states in numerous places that the credit default swap transaction between ACA and ABN relates to Reference Obligations set out in Underlying Instruments—those Reference Obligations and Underlying Instruments are the securities at issue here—and the instruments which the parties have agreed are securities. All aspects of payment—including price and value—are defined in relation to the Reference Obligations. There are references to the outstanding notional amount being based on the Reference Obligations—that calculations regarding payments are to be made with respect to various aspects and occurrences directly impacting the value of the Reference Obligations. All key events of the swap are determined only in relation to the Reference Obligations. The Reference Obligations are referred to collectively as the Reference Portfolio and attached to the swap agreement. Those are the AC1 securities. There are terms relating to what happens if any of the securities are changed; there are terms relating to credit events, defined only with regard to the Reference Obligations.

Indeed, no reading of the swap confirmation can lead to any other answer than that these swaps are securities-based. They are based on the Reference Obligations, which are securities.

In addition, in his prior motion for partial summary judgment, Tourre himself referred to the value of the swaps as referencing a portfolio of assets where in the event of losses of value, the long investor must pay the short investor an amount commensurate with the losses in value of the reference portfolio. This statement concedes the point at issue in this motion, and is certainly not an earth-shattering admission because it is simply consistent with the swap agreement itself.

Tourre would ask that this Court ignore that the swap agreement itself is securities-based, and instead look to the overall motivation of the parties to enter into the swap. Tourre argues that the evidence will show that the motivation was in fact the desire to have another agreement between ABN and ACA Financial Guarantee, which was in the nature of an insurance policy. However, this argument misses the mark. First, the question is whether the swap agreement is securities-based—not whether other agreements may have been occurring as well. The second issue is that all swap agreements are about shifting risk—they are like what one could call insurance between two parties: one agreeing to pay if an event occurs, and the other paying premiums to insure that payment if the event occurs. That, however, does not change the fact that the swap agreement is securities-based—it is simply descriptive of what the parties are trying to do.

No rational juror could determine that the swaps here at issue are not securities-based.

Accordingly, the Court GRANTS the SEC's motion for partial summary judgment on this issue and the jury will be instructed accordingly.

The Clerk of Court is directed to terminate the motion at ECF No. 395.


SO ORDERED.

Dated:      New York, New York
            July 15, 2013


_____
KATHERINE B. FORREST
United States District Judge